DECLARATION OF AMANDA VELAZQUEZ

I, Amanda Velazquez, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a sole practitioner and I run Florida Keys Immigration, an immigration law firm based in Key West and Miami, Florida. Through Florida Keys Immigration, I represent clients in a wide range of immigration law matters, including affirmative applications for immigration relief and removal defense in proceedings before immigration courts.

3. I am an attorney in good standing in the state of Iowa. I specialize in the practice of immigration law. I have practiced immigration law for the past 25 years.

4. I represent three clients who are currently detained at Alligator Alcatraz. I also represent one client (HE) who was detained at Alligator Alcatraz, but who has been transferred to a different facility, as his family informed me on July 15, 2025. (I do not know where HE is now being held and he does not appear on ICE's online detainee locator.) None of these clients have any criminal convictions.

    a. **EP**: EP is a client who I have represented since 2020. He has a valid work permit and driver's license. He has an immigration case that is pending before the Board of Immigration Appeals (BIA).

    EP works for a pool cleaning company, and his family informed me that he was detained by immigration authorities on July 3, 2025, when he was en route to work. Despite my efforts to contact him, I have not been able to speak with EP since he was detained.

    b. **CM**: I have represented CM since November of 2023. CM has a valid work permit. He has an affirmative asylum application pending before the United States Citizenship and Immigration Services (USCIS); at the time he was detained, he was not in removal proceedings.

    On Sunday, July 6, 2025, CM was detained by immigration officials while en route to his job working for a landscaping company. He was taken directly to Alligator Alcatraz after he was detained. He called me the day he arrived at Alligator Alcatraz on a monitored line.

    c. **HE**: HE is no longer at Alligator Alcatraz, but I do not know where he is. HE is the nephew of CM. He works with CM for a landscaping company. He was

    detained along with CM on July 6, 2025, and was taken directly to Alligator Alcatraz. He called me from Alligator Alcatraz and retained me to represent him on July 6, 2025.

    On July 15, 2025, I was informed by HE's family that HE had called them to let them know he was transferred to a different facility. Although by this time, I had a Form G-28 on-file with ICE, no one from the agency has informed me of this transfer.

    d. **JR**: I was retained by JR to represent him on Monday July 7, when he called me from Alligator Alcatraz. I believe that JR has an upcoming Credible Fear Interview before USCIS scheduled for July 28. However, despite my repeated efforts (described below), I have been unable to learn more about the details of this process, so that I can prepare for it and represent JR.

5. As a result of the barriers to access to counsel at Alligator Alcatraz, Florida Keys Immigration has been unable to provide legal services to the above clients. Due to these many barriers to access to counsel, our firm has spent approximately 6-8 hours of staff time and significant costs that it would otherwise not have incurred. This includes time spent attempting to obtain information about how to establish communication with clients at the facility, time spent attempting to file documents with the immigration court and ICE, and time spent attempting to request access to clients. The attorney access restrictions at the facility harm my firm's ability to sign on new clients and maintain client relationships.

6. Since Thursday, July 3, when I learned of EP's detention at Alligator Alcatraz, I have sought to locate each of my detained clients on ICE's online detainee locator at www.ice.gov/locator. I have run searches on this locator every day, starting on the date that I learned of each client's detention at Alligator Alcatraz. I run searches for every client I know to be detained at Alligator Alcatraz.

7. Once when I ran a search, one of my four clients appeared on the locator with a location that included the word "Everglades" and a contact number for the Krome North Processing Center. However, a day later he no longer appeared on the ICE online detainee locator. None of my other clients have appeared at all on the ICE online detainee locator.

8. Because the Krome phone number was listed for one of my clients at Alligator Alcatraz, on the morning of July 11, I tried calling Krome to find out how I could contact these clients. I spoke with a Krome staff member who told me that Krome has received tons of

calls about Alligator Alcatraz, but that—despite what the ICE website stated—Krome is not the correct number to make requests and seek information for clients at Alligator Alcatraz. He recommended that I email the Krome Deportation Officer assigned to my clients' country of origin.

9. Immediately after this call, I emailed this Krome Deportation Officer, Jordan Gullage. She responded and advised me to email legal@privacy6.com to request attorney calls with my client.

10. I immediately emailed legal@privacy6.com, but I received a bounce-back undeliverable email.

11. I am extremely concerned about EP, CM, HE, and JR. I know that conditions at the facility are very bad, based the single call that I received from CM, HE, and JR. CM and HE both told me that the facility was overrun with mosquitos and that it was filling up quickly. And JR sounded terrified when I spoke with him.

12. Not being able to schedule attorney calls or in-person meetings with my clients is preventing me from being able to prepare their immigration cases or seek release for them.

13. My client CM has confirmed to me via phone that he wishes to be a plaintiff in this lawsuit to ensure confidential, private attorney communication. CM wishes to proceed under pseudonym in this case due to his current asylum proceedings. He fears persecution if returned to his home country and believes that public disclosure of his identity could expose him to further danger of political persecution and torture based on his history of political activism in his home country.

Executed on 16 of July, 2025, at Miami, Florida.

/s/ *Avelazquez*
Amanda Velazquez