**DECLARATION OF SAMAN MOVASSAGHI GONZALEZ**

I, Saman Movassaghi Gonzalez, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I make this declaration based on my own personal knowledge. If called to testify, I could and would do so competently and truthfully to the matters stated herein.

2. I am the Managing Attorney of the South Florida immigration law firm the U.S. Immigration Law Counsel ("U.S.-ILC") and an Adjunct Professor of Law at Nova Southeastern University. I am admitted to practice and remain in good standing with the Florida Bar. I have over two decades of experience in immigration law, including employment-based, investment, and labor-related filings, as well as deportation defense for both detained and non-detained clients.

3. U.S. Immigration Law Counsel is a South Florida-based law firm that provides representation in immigration matters, including detained deportation defense. The firm currently represents one detained client held at the facility known as Alligator Alcatraz, "J.M.C." ("my client"). J.M.C. has confirmed that he wishes to be a plaintiff in this lawsuit to ensure confidential, private attorney communication at the facility. J.M.C. wishes to proceed under pseudonym in this case due to his current asylum proceedings. He fears persecution if returned to his home country and believes that public disclosure of his identity could expose him to further danger of harm.

4. As a result of the barriers to access to counsel at Alligator Alcatraz, US-ILC has been unable to provide legal services to our client detained at the facility. Due to these many barriers to access to counsel, our firm has spent additional time that it would otherwise not have incurred. This includes time spent attempting to obtain information about how to establish communication with detainees at the facility, requesting access to our client at the facility, and waiting in person at the facility, only to be refused an in-person visit. These barriers have also made it more difficult to establish rapport and goodwill with my client, which are key to a productive attorney-client relationship.

5. I currently represent an individual detained at the immigration detention facility now known as "Alligator Alcatraz." My client had a pending TPS application when he was detained, and it remains pending today. He is also married to a U.S. citizen and has a *pending* I-130 petition (a USCIS petition through which a U.S. citizen or lawful permanent resident can request that their spouse—or another qualifying family member—be granted a green card.). My client has no criminal history whatsoever. He is already in proceedings and has a scheduled court date. He should not be detained.

6. My client's family retained me in response to learning that he had been detained at this particular facility, where he was unable to contact an attorney or receive visits from either legal counsel or family members, and in light of reports describing the concerning conditions at the site.

7. On  July 8, 2025, my client went to a CBP office to try and obtain an I-94. There, officials booked and detained him, and took him to "Alligator Alcatraz."

8. My law firm has a department dedicated to detention work. My team in that department regularly arranges video and telephone calls to detention facilities. However, they were unable to find a point of contact for the facility online, nor any references from other attorneys. For example, ICE has a website that provides information on how you may schedule a video call or visit your client in person for all detention facilities. See https://www.ice.gov/detention-facilities. No information regarding the Alligator Alcatraz facility exists.

   On July 8, 2025, I attempted to locate my client using ICE's Online Detainee Locator System at https://locator.ice.gov/odls/#/search. I searched using both his A-number and date of birth. The system did not return any results confirming his location. As of July 15, 2025, there is still no result of his location in the online locator

9. Our firm was retained as an attorney for my client on July 10, 2025 by his wife. She was alarmed and upset by what she learned about the conditions at the facility—especially given that he should not have been detained in the first place—and retained me immediately to try to assist.

10. On July 11, 2025, I traveled from Pembroke Pines to "Alligator Alcatraz." The trip took approximately 1 hour and 20 minutes via Okeechobee Road each way—totaling more than two and a half hours round trip. Other attorneys I spoke with reported waiting in the parking lot for four to five hours, only to be turned away.

11. When I arrived at the facility, the environment was chaotic and disorganized. A woman in a uniform that did not appear to be affiliated with ICE approached my vehicle. I presented my bar card and a Form G-28 ("Notice of Entry of Appearance"). She asked whether I had "some sort of appointment." I did not. In my experience, attorneys have never been required to schedule appointments to visit detained clients. I have conducted attorney-client meetings at detention facilities as late as 9:00 p.m. without any issues or the need for an appointment.

12. No one at the facility could provide any information. The woman who approached my vehicle provided me with her card but was unable to answer any questions about detainees, attorney access, or visitation procedures. At some point, the woman handed me her business card and spelled out an email she said had been communicated to her that day. However, she was unsure what had been written down for her and went to verify what had been written on a piece of paper handed to her with the email address written down.

13. She returned to me with the conclusion that the email was Legal@privacy6.com and that I should write there to request an appointment. I mentioned that it was an "interesting" email address. She agreed. I've never seen anything like it related to immigration detention or proceedings and was surprised it didn't contain ".gov" at the end.

14. She also told me another attorney had waited for hours and suggested that I attempt to send an email from my phone immediately, if I had it with me. I was confused at her request and

asked, "As a test?" She confirmed, "yes"—as a test—so that "at least [...] we could make sure that it goes through" and be certain we had the correct address. She gave me her own email address so that if the email came back as "undeliverable" I could send the request to her.

15. It turned out the woman was not affiliated with ICE at all. She worked for the State of Florida investigating fires and had just been brought in to provide security. She had no knowledge of detention center operations whatsoever, and could not answer any questions about attorney access, visitation procedures, or detainees. I did not see any ICE officials or uniforms during my time at the facility.

16. The email I sent from my phone never received a reply or notification. One of my associates also attempted to send an email and had a similar experience.

17. I sent an email to Legal@privacy6.com, asking what information was needed to arrange an visit and if I could visit on the weekend. I received no response.

18. On Saturday, July 12, 2025, I sent a more formal email from my computer. I received the following response: "Your message wasn't delivered because the recipient's email provider rejected it."

19. On July 14, 2025, I wrote another email to Legal@privacy6.com, asking if this was the correct email address to request a visit with a client at Alligator Alcatraz. That day, I received a reply from legal@privacy6.com with instructions to submit an "Attorney Visit Request Form" to admin@southerndetention.com. The email stated that the facility is aiming to ensure "timely" and "secure" attorney-client communication. Yet the facility has held detainees for fourteen days—fifty miles from the city, in a remote swamp—while denying entry to attorneys, loved ones, and even legislators. Only recently have they permitted brief, monitored phone calls, with hundreds reportedly waiting to use a limited number of phones. The process they now require is itself an inappropriate barrier to access, undermining the fundamental right to counsel.

20. On July 14, 2025, my colleague filled out a request form and submitted it, requesting a visit with my client. On July 15, 2025, he sent a follow up email to admin@southerndetention.com asking for an update to the request sent the previous day.

21. Approximately an hour later, my colleague received an email from Legal@privacy6.com stating that my visit form had been received, and would be in contact to schedule a virtual client session. I also received an email with the same language shortly thereafter.

22. Later that day, on July 15, my colleague emailed another potential contact at southfacility@em.myflorida.com, stating that we had requested a visit with our client several times. He requested an update on the situation. That email was apparently forwarded to Legal@privacy6.com. On, July 16, he received another email from Legal@privacy6.com stating that "this message serves as confirmation that we have received your submission," and that "we will be in touch as soon as possible with scheduling details," but did not provide any further details. No visit has been scheduled to date.

23. Since being detained, my client has only been able to make periodic and unscheduled four to five-minute phone calls to his wife from "Alligator Alcatraz." These calls are not confidential and are made on monitored and recorded lines. As of the date of this declaration, I have not been able to speak with my client directly and have only been able to communicate with him through the short phone calls he manages to make to his wife. My client does not feel comfortable providing sensitive information related to his case or conditions of confinement in this setting.

24. I intend to file a bond motion on behalf of my client if I can ever manage to get in touch with him. The lack of process and the total absence of information are delaying his potential release and his access to legal remedies.

Executed on this 16th day of July, 2025, at Pembroke Pines, Florida.

SAMAN MOVASSAGHI GONZALEZ

_____
Name