IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| C.M., *et al.*,<br><br>*Plaintiffs*, on behalf of themselves and all those similarly situated<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-23182 |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs C.M., Borrego, J.M.C., and E.R., by and through undersigned counsel, hereby move to certify this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and Local Rule 23.1.

**INTRODUCTION**

This action is filed on behalf of a class of detained individuals held at the immigration detention facility known as "Alligator Alcatraz."[1] Defendants Kristi Noem, Department of Homeland Security, Todd Lyon, Immigration and Customs Enforcement, and Garrett Ripa (collectively "DHS Defendants"), and Defendants Ronald DeSantis, Shera Green, Kevin Guthrie, and Florida Division of Emergency Management (collectively "Florida Defendants") have unduly

---

[1] *See* Ana Ceballos, *Alligator Alcatraz Is No Nickname. It's Detention Camp's Official Name*, Tampa Bay Times (Jul. 1, 2025), https://www.tampabay.com/news/florida/2025/07/01/alligator-alcatraz-is-no-nickname-its-detention-camps-official-name; Raisa Habersham, *As the Jokes Fly, Alligator Alcatraz Evokes Racist Trope of 'Gator Bait'*, Miami Herald (Jul. 10, 2025), https://www.miamiherald.com/news/state/florida/article310224360.html (discussing historical "gator bait" trope used to dehumanize Black people and its application in naming the facility).

restricted confidential attorney-client communication between people detained at the facility and their counsel, which violates the First Amendment rights of C.M., Borrego, J.M.C., and E.R. to retain and communicate with legal counsel.

Specifically, Plaintiffs seek certification of the following class:
"All persons who are currently, or in the future, held at the Alligator Alcatraz detention facility."

The proposed class easily meets the requirements of Federal Rules of Civil Procedure 23(a) and (b). Hundreds of individuals have been, are now, and will be processed into the facility (a number of class members that makes joinder impracticable). The government has stated that it intends to continue detaining immigrants at the facility. The facility has a reported capacity of 3,000 people. The proposed class is fluid, as the government continues to transfer detainees to and from the facility, making joinder of all members not only impracticable but impossible.

They are all bound together by common questions of law and fact—most prominently, whether the lack of meaningful access to counsel and inability to file documents and motions with the immigration court violates their rights under the First and Fifth Amendments. The named Plaintiffs are proper class representatives because their claims are typical of the absent class members and because they and their counsel will adequately and vigorously represent the class.

Certification of the proposed class under Rule 23(b)(2) is satisfied here because Defendants are acting in the same manner with respect to the class, such that a declaration and injunction with respect to the whole class is appropriate.

Plaintiffs are also adequately represented by a team of attorneys with significant experience in immigrants' rights issues, conditions of confinement, and class action cases from the American Civil Liberties Foundation, the American Civil Liberties Foundation of Florida, and Americans for Immigrant Justice.

Class members' claims are not dependent on the facts regarding their underlying immigration law claims or any other individualized determinations. The central question is whether Defendants' actions and restrictions violate constitutional standards. This Court should grant class certification under Rule 23(b)(2), appoint the Individual Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel.

## BACKGROUND

**A.  Development of the Alligator Alcatraz Detention Center**

Built in just days on a former airstrip at the Big Cypress National Preserve, the Alligator Alcatraz detention facility opened in early July 2025, with the first detained persons arriving on July 3. As of July 13, 2025, there are approximately 900 people held at the camp.[2] The facility is located about 50 miles west of Miami, in the ecologically sensitive Everglades wetlands, surrounded by alligators, pythons, mosquitoes, and swampland.[3] The compound includes tents, trailers, chain-link fences with barbed wire, over 200 cameras, 400 security personnel,[4] and is being rapidly expanded to potentially hold 5,000 beds.[5] Governor DeSantis used existing emergency orders to fast-track construction. Taxpayers have spent $450 million on the facility, diverted from funds allocated to the Federal Emergency Management Agency ("FEMA").[6] On

---

[2] Ana Ceballos et al., *Bunk Beds and 28,000 Feet of Razor Wire. Look Inside Florida's Alligator Alcatraz*, Miami Herald (July 3, 2025), https://www.miamiherald.com/news/local/immigration/article309783885.html.

[3] *Trump Tours "Alligator Alcatraz" Immigration Detention Center in Florida*, CBS News (July 1, 2025), https://www.cbsnews.com/news/trump-alligator-alcatraz-detention-center-florida/ (explaining that the facility is located about 50 miles west of Miami).

[4] *Id.*

[5] Mitch Perry & Jay Waagmeester, *Environmental Groups Sue to Stop 'Alligator Alcatraz' from Operating in the Everglades*, Fla. Phoenix (June 27, 2025), https://floridaphoenix.com/2025/06/27/environmental-groups-sue-to-stop-alligator-alcatraz-from-operating-in-the-everglades/.

[6] Ted Hesson, *Florida Plans 'Alligator Alcatraz' Migrant Detention Center*, Reuters (June 25, 2025), https://www.reuters.com/world/us/florida-plans-alligator-alcatraz-migrant-detention-

3

July 1, 2025, President Donald Trump, Florida Governor Ron DeSantis, and Department of Homeland Security ("DHS") Secretary Kristi Noem attended an opening ceremony for the facility, and promoted the "natural security" provided by alligators and pythons in the surrounding wetlands.[7] People detained at the facility face harsh conditions, including 90-100 °F heat, flooding, heavy mosquito presence, and poor shelter protection against hurricanes.[8] Detainees can go for days without access to basic hygiene items such as toothbrushes and toothpaste, and water shortages limit opportunities to bathe.[9] By July 13, 2025, members of Congress reported that over 900 people were held at the facility.[10]

### B. Lack of Access to Counsel at Alligator Alcatraz

Immigrants detained at Alligator Alcatraz have no ability to communicate confidentially with legal counsel. Defendants have wholly failed to develop any policy or process for detainees to access legal counsel at the facility. Attorneys have been unable to discover any working process for setting up calls, via phone or video, with their clients or prospective clients. Decl. Saman

---

center-2025-06-24/ (reporting that DHS allocated FEMA shelter and services funds to cover a "large part" of the facility's cost)

[7] Matt Dixon & Gabe Gutierrez, *'Alligator Alcatraz' Immigration Detention Facility Opens, with Trump in Attendance*, NBC News (July 1, 2025, 7:56 PM), https://www.nbcnews.com/politics/donald-trump/alligator-alcatraz-set-open-trump-desantis-rcna215943.

[8] Julie K. Brown, *Inside 'Alligator Alcatraz': Detainees Endure Heat, Flooding, and Insects in Remote Florida Camp*, Miami Herald (July 10, 2025), https://www.miamiherald.com/news/local/immigration/article310130645.html; Gisela Salomon et al., *Detainees Describe Worms in Food, Sewage on Floors at 'Alligator Alcatraz'*, ABC News (July 11, 2025), https://abcnews.go.com/US/wireStory/detainees-describe-worms-food-sewage-beds-inside-alligator-123683291; Lori Rozsa and Rachel Hatzipanagos, *Heat, Storms, Mosquitoes the Big Threats at Alligator Alcatraz, Experts Say*, Washington Post (Jul. 5, 2025) https://www.washingtonpost.com/nation/2025/07/05/alligator-alcatraz-immigrants-detention-florida/.

[9] Alaa Elassar & Rafael Romo, *Florida Lawmakers Allowed into "Alligator Alcatraz" Say Detainees Packed Into Cages,* CNN.com (July 13, 2025), https://www.cnn.com/2025/07/12/us/alligator-alcatraz-lawmaker-tour-conditions.

[10] *Id.*

Movassaghi Gonzalez ¶ 8; Decl. Amanda Velazquez ¶¶ 5-10; Decl. Katherine Blankenship ¶¶ 12-13; Decl. Catherine Perez ¶ 10. Defendants have provided no publicly available information to explain how detainees may communicate confidentially with counsel, instead providing faulty email addresses, or directing attorneys to other detention centers where staff have no information as to how attorneys can communicate with clients at Alligator Alcatraz. Velazquez Decl. ¶¶ 5-10; Blankenship Decl. ¶¶ 12-15; Perez Decl. ¶¶ 10-15. Although detainees may make collect phone calls from pay phones in their tents, these calls are limited to approximately five minutes and are recorded and monitored. Perez Decl. ¶ 19.

Attorneys have thus gone to great lengths to try and obtain information about how they may contact their clients. Velazquez Decl. ¶¶ 5-10; Blankenship Decl. ¶¶ 12-15; Perez Decl. ¶¶ 10-16. Attorneys have called ICE, legislators, and Florida state agencies in an attempt to figure out how to communicate with their clients. Velazquez Decl. ¶¶ 5-10; Blankenship Decl. ¶¶ 12-15; Perez Decl. ¶¶ 12-14. They have suggested that counsel email legal@privacy6.com in order to arrange a legal visit, but this email address and its variants have not worked, and instead, sent bounce-back notifications. Movassaghi Gonzalez Decl. ¶¶ 13-14, 16-18; Velazquez Decl. ¶¶ 9-10; Blankenship Decl. ¶ 15; Perez Decl. ¶ 14.

Attorneys who have driven to the facility to meet their clients in person—as is the standard practice at any other detention center, jail, or prison—have been stopped at an armed checkpoint. Decl. Troy Elder ¶¶ 4-7; Decl. Sandra Cherfrere ¶¶ 5-6; Decl. Phillip Issa ¶ 6; Blankenship Decl. ¶ 16. Attorneys have waited for hours in their cars, only to be told that they would not be allowed into the facility, but that they could fill out a "Legal Counsel Visitation Request Form" to request a virtual visit. Cherfrere Decl. ¶¶ 8-10; Blankenship Decl. ¶¶ 17-18. Immigration attorneys have been told that the form is only available on site and is only handed out to attorneys who show up

to the gates in person, as the form is not available anywhere online. Cherfrere Decl. ¶ 12; Blankenship Decl. ¶¶ 17-21. Some attorneys have been told to email legal@privacy6.com, but these emails have not gone through. Movassaghi Gonzalez Decl. ¶ 18; Velazquez Decl. ¶ 10. Some attorneys have received emails stating that they would be scheduled for a legal visit after submitting this form, but these email messages have failed to identify specific times, clients, and information as to how a call would take place. Even then, the facility has canceled these calls. Cherfrere Decl. ¶ 18; Blankenship Decl. ¶¶ 24-25.

There is no way for attorneys to confidentially exchange legal documents with their clients held at the facility. The "Legal Counsel Visitation Request Form" Documents and Devices (if applicable)" instructs attorneys to "attach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved." Blankenship Decl. Ex. 3; Perez Decl. Ex. E.

## ARGUMENT

### I. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23.

Civil rights actions are particularly amenable to class treatment as Rule 23 was enacted to "facilitate the bringing of class actions in the civil-rights area." 7AA Wright & Miller, *Federal Practice & Procedure* § 1775 (3d ed. 2018). The arguments in favor of class certification are especially strong in this context, where individual Class Members are unlikely to be able to pursue their claims individually. People in civil immigration detention are hard-pressed to bring their own civil rights claims, since they are all detained and largely lack counsel. *See Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014), *rev'd on other grounds*, 819 F.3d 486 (1st Cir. 2016) (certifying class of people in immigration detention because, among other things, "many do not speak English, a majority do not have counsel, and most are unlikely even to know that they are members of the

6

proposed class"); *Gordon v. Johnson*, 300 F.R.D. 28, 29 (D. Mass. 2014). Here, the difficulties Class Members would face in pursuing their own claims are compounded because not only are the Class Members detained, they are also being held in the Everglades Detention Camp where there is even less access to the outside world, including access to counsel.

As courts in this Circuit have recognized, the purpose behind class actions is to provide individuals with the means of obtaining redress for claims that would be difficult to bring in individual litigation and to deter wrongdoing. *See Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1307 (S.D. Fla. 2015). "Thus, doubts regarding the propriety of class certification should be resolved in favor of certification." *Id.* (cleaned up).

To obtain class certification, plaintiffs must meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and satisfy at least one provision of Rule 23(b). *See* Fed. R. Civ. P. 23(a), (b); *Braggs v. Dunn*, 317 F.R.D. 634, 652 (M.D. Ala. 2016). "The court's role at the class-certification stage is not to decide the underlying claims, but rather to determine whether the requirements for certification are met." *Id.* at 652; *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). Class certification is particularly appropriate here, and all requisite elements of Rule 23 have been met.

### A. The Proposed Class Satisfies the Numerosity Requirement of Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). However, "a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Indeed, "the focus of the numerosity inquiry is not whether the number of proposed class members

7

is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 671-72 (S.D. Fla. 2011) (quoting *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)). Further, "[i]n assessing impracticability, 'courts should take a common-sense approach which takes into account the objectives of judicial economy and access to the legal system.'" *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (quoting 1 Herbert B. Newberg, *Newberg On Class Actions* § 3.03 (2d Ed.1985)). Toward that end, courts in the Eleventh Circuit have found joinder impracticable and the numerosity requirement satisfied in cases with even a minimal number of class members. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (noting that generally "less than twenty-one is inadequate, more than forty adequate," with numbers between varying according to other factors); *see also Sunshine Child.'s Learning Ctr., LLC v. Waste Connections of Fla., Inc.*, 671 F. Supp. 3d 1366, 1372 (S.D. Fla. 2023) (emphasizing that the focus of the numerosity inquiry is on the impracticability of joinder, not merely the number of class members, and reiterating that more than forty is generally adequate).

This requirement is easily met here because there are hundreds of people who have been, and are now, held at Alligator Alcatraz.[11] Additionally, the Class includes not only individuals detained when this suit was filed and those currently detained, but also all future detained individuals at the facility, as people held at the facility now and in the future are or will be subject to Defendants' policies and practices (or lack thereof) related to their access to counsel.

The government continues to transfer people to Alligator Alcatraz, so the current number of detained people represents "merely the floor for this numerosity inquiry." *Reid*, 297 F.R.D at

---

[11] Ana Ceballos, et al., *Exclusive: Hundreds at Alligator Alcatraz Have No Criminal Charges, Miami Herald Learns*, Miami Herald (Jul. 13, 2025), https://www.miamiherald.com/news/local/immigration/article310541810.html.

189; *see also R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 368 (S.D.N.Y. 2019) (finding joinder impracticable for certain immigrants applying for legal status in part because "[n]ew members regularly and continuously join the proposed class as their SIJ status petitions are adjudicated."). Other courts presented with similar proposed classes of current and future people in custody have agreed that the numerosity requirement is readily met in circumstances such as those here. *See, e.g.*, *Rosas v. Baca, No*. CV 12-00428 DDP (SHx), 2012 WL 2061694, at *2 (C.D. Cal. June 7, 2012) ("The Jails currently house thousands of inmates, and are certain to house many more in the future. The court therefore agrees with Plaintiffs' undisputed assertion that the numerosity requirement has been satisfied."); *See also Colo. Cross-Disability Coal. v. Taco Bell Corp*., 184 F.R.D. 354, 359 (D. Colo. 1999) (finding joinder impracticable where many class members could not afford to bring individual actions). The size of the proposed Class and the fact that the Class includes future members seeking injunctive or declaratory relief make joinder impracticable.

In addition to the large number of proposed class members, other relevant factors, such as "the geographic diversity of the class members, the nature of the action, . . . judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" all render joinder infeasible and weigh in favor of class certification in this case. *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1197 (S.D. Fla. 2020). The proposed Class thus satisfies the numerosity requirement of Rule 23(a)(1).

### B. The Proposed Classes Share Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "relatively light burden" does not require that all questions of law and fact be common to the putative class members. *See Vega*, 564 F.3d at 1268. Rule 23(a)(2) commonality can be met where, notwithstanding some factual differences between the class members claims,

controlling questions of law and fact are common to the entire class. *See Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (stating that "factual differences among the claims of the putative class members do no defeat certification.").

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common contention of injury "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is . . . the capacity of a class wide proceeding to general common answers apt to drive the resolution of the litigation." *Id.* (citation omitted). "Even a single common question" will support a commonality finding. *Id.* at 359 (citation, quotation mark, and alterations omitted), so long as its resolution will "generate common answers for the entire class." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 146-47 (D.D.C. 2014).

This case presents shared legal and factual questions across the proposed class. Plaintiffs challenge the lack of access to counsel and their inability to file legal documents with the immigration court on uniform legal grounds: The Defendants' barriers to access to counsel at the facility violates the Plaintiffs constitutional rights under the First Amendment.

Proposed class members also share a common base of facts. All class members are subject to the same barriers to access to counsel and to lodging of legal documents with the immigration court, as caused by Defendants. The Defendants' policies and practices with respect to attorney access and filing of legal documents affect all class members: they do not arise out of circumstances unique to each member. Their plight is thus sufficient to satisfy commonality. *See*

10

*Gayle*, 614 F. Supp. 3d at 1197 (finding commonality where plaintiffs were subject to the "same substantial risk of serious harm" (internal quotations omitted)). Individual variations in background, immigration relief, or immigration status do not defeat commonality where Plaintiffs "have suffered the same injury" from "the same conduct" by Defendants. *Dukes*, 564 U.S. at 350. Nor must Plaintiffs show that every question can be resolved class wide—just that the matter presents "common questions apt to drive the resolution of the litigation." *Id.*

All class members seek the same declaratory and injunctive relief. The Court's determination of the legality of Defendants' actions and inactions on one or more of the grounds alleged by all class members will resolve all class members' claims "in one stroke." *Id.* Because Plaintiffs challenge classwide lack of access to counsel that applies broadly and uniformly to the entire Class, Rule 23(a)(2)'s commonality requirement is easily satisfied.

### C. The Class Representatives' Claims Are Typical of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement centers on the relationship between the proposed class representatives and the other members of the class. *Ibrahim v. Acosta*, 326 F.R.D. 696, 700 (S.D. Fla. 2018) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)). This analysis turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004).

Commonality and typicality tend to overlap, as each looks to the nature of the claims presented in the case, and whether the class members and the named plaintiffs are similarly situated as to those claims. *Dukes*, 564 U.S. at 349 n.5 ("Both [commonality and typicality] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."). Thus, in *Ibrahim*, having already discussed the questions of law and fact common to the class, the court had no trouble concluding that the typicality requirement was met for the same reasons—with virtually no additional discussion. *See Ibrahim,* 326 F.R.D. at 700 (citing *Dukes*, 564 U.S. at 350).

Here, the Proposed Class Representatives challenge their denial of access to counsel, on the same legal grounds. They seek the same declaratory and injunctive relief as the proposed class, and they face the same unconstitutional barriers to access to counsel. *See Gayle*, 614 F. Supp. 3d at 1198 ("The named plaintiffs' claims are typical if they stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory."). Their claims are not only representative of, but inextricable from, those of the class they seek to represent.

That class members may have different backgrounds or individual circumstances does not defeat typicality. "[T]he commonality and typicality requirements of Rule 23(a) tend to merge," as both serve to ensure the claims of the class representatives align with those of absent class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Because all class members are subject to the same statute and raise the same legal challenges, the typicality requirement is satisfied.

### D. The Class Representatives Are Adequate

Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy depends on the resolution of two questions: (1) "whether plaintiffs have interests antagonistic to those of the rest of the class" and (2) "'whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation[.]" *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 496 (S.D. Fla. 2003)(quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)).

*Proposed Class Representatives Are Adequate Class Representatives*

The proposed class representatives, C.M., Borrego, J.M.C., and E.R., are now being held at the Alligator Alcatraz facility, where they are unable to access their attorneys. Each individual representative also has interests that mirror those of the class and has expressed willingness to pursue this case on behalf of all who may be affected by the lack of access to counsel at the facility. *See* Movassaghi Gonzalez Decl. ¶ 23; Blankenship Decl. ¶¶ 28-33; Velazquez Decl. ¶¶ 5, 8, 11-13; Perez Decl. ¶¶ 7-10, 24.

Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Plaintiffs aim to secure relief that will protect them and the entire class from Defendants' challenged policy (or lack thereof) and to enjoin Defendants from further violations. Nor do Plaintiffs seek financial gain at the cost of absent class members' rights.

*Plaintiffs' Counsel Are Adequate Class Counsel*

Under Federal Rule of Civil Procedure 23(g), any order certifying a class must appoint class counsel who will "fairly and adequately represent the interests of the class." In deciding

whether counsel meet that standard, courts consider "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); s*ee, e.g.*, *Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1308368, at *2 (N.D. Ga. Mar. 23, 2015).

Here, Plaintiffs' counsel satisfy these criteria. Counsel from the American Civil Liberties Union Foundation, the American Civil Liberties Union Foundation of Florida, and Americans for Immigrant Justice represent Plaintiffs. Proposed Class counsel have significant experience with complex class action litigation, including cases involving unconstitutional conditions of confinement in detention facilities, and unconstitutional lack of access to counsel, and will fairly and adequately protect the interest of the Class. Class counsel have invested considerable time gathering facts and researching how the lack of access to counsel at the facility violates the Constitution.

Counsel have extensive familiarity with complex federal litigation, including civil-rights actions, and class-based requests for equitable relief. They likewise have concrete knowledge of the relevant legal frameworks as well as the injunctive remedies required to stop governmental acts that exceed state or federal authority. They also possess adequate resources to manage this class action and to ensure that any relief secured will be monitored and enforced as necessary. No conflicts of interest appear in the record, and the proposed counsel's litigation history demonstrates a proven capacity to undertake representation that demands significant briefing, motion practice, and ongoing oversight. *See* Decl. of Eunice Cho, Ex. A; Decl. of Amy Godshall, Ex. B; Decl. of Paul R. Chavez, Ex. C.

Under these circumstances, appointment of Plaintiffs' counsel as class counsel is warranted. They have satisfied Rule 23(g)(1)(A) by investigating and pleading the claims, demonstrating the requisite knowledge and experience, and pledging to devote the resources required for this litigation. They "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court should therefore appoint them as class counsel concurrent with granting class certification.

**VI. The Classes Satisfy Rule 23(b)(2)**

Class certification under Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) has been liberally applied in the area of civil rights . . . .". *Braggs*, 317 F.R.D. at 667 (internal quotation marks omitted). Indeed, "some courts have gone so far as to say that the rule's requirements are almost automatically satisfied in actions primarily seeking injunctive relief." *Id.* (quoting *Baby Neal v. Casey,* 43 F.3d 48, 59 (3d Cir. 1994) (internal quotation marks omitted)). "The critical inquiry is whether the class members have suffered a common injury that may properly be addressed by class-wide injunctive or equitable relief." *Ibrahim*, 326 F.R.D. at 701 (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983)); *see also Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'").

Courts have repeatedly certified classes of detained immigrants challenging systemic barriers to legal access under Rule 23(b)(2), even where individual circumstances vary. *See Padilla v. U.S. Immigr. & Customs Enf't*, 379 F. Supp. 3d 1170, 1179-81 (W.D. Wash. 2019) (certifying

15

two classes of detained asylum seekers challenging systemic delays in credible fear interviews and bond hearings; court emphasized uniformity of harm and relief sought).

This action falls squarely within the category of cases contemplated by Rule 23(b)(2). Defendants' challenged practices and policies (or lack thereof) with respect to attorney access are not tailored to individuals, but apply to the whole population of detained people held at the facility. They apply to all class members simply by virtue of their status as persons held at Alligator Alcatraz, without regard to the individual circumstances of their underlying immigration cases or any other differences among them. For the same reason, all class members seek the same declaratory and injunctive relief. Certification pursuant to Rule 23(b)(2) is therefore also appropriate.

## CONCLUSION

The proposed Class satisfies the requirements of Rule 23. Plaintiffs request that this Court grant class certification to allow the provision of relief for the Class. Given the emergency nature of this relief, Plaintiffs request that, should the court require additional time to consider the class certification, it grant provisional class certification in connection with a temporary restraining order or preliminary injunction.

Dated: July 16, 2025                                       Respectfully Submitted,

*/s/ Paul R. Chavez*  
Paul R. Chavez (Fla. Bar No. 1021395)  
Christina LaRocca (Fla. Bar No. 1025528)  
AMERICANS FOR IMMIGRANT JUSTICE  
2200 NW 72nd Ave  
P.O. Box No 520037  
Miami, FL 33152  
786-218-3381  
pchavez@aijustice.org  

*/s/ Eunice H. Cho*  
Eunice H. Cho*  
AMERICAN CIVIL LIBERTIES UNION FOUNDATION  
915 15th St. N.W., 7th Floor  
Washington, DC 20005  
202-548-6616  
echo@aclu.org  

16

clarocca@aijustice.org

Amy Godshall, Fla. Bar No. 1049803
Daniel Tilley, Fla. Bar No. 102882
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714
agodshall@aclufl.org
dtilley@aclufl.org

Corene Kendrick*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
ckendrick@aclu.org
kvirgien@aclu.org

*Counsel for Plaintiffs and the Proposed Class*

\* *Motions to appear pro hac vice forthcoming.*