UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-23182-RAR

**C.M.**, et al.,

*Plaintiffs*, on behalf of themselves and all those similarly situated,

v.

**Kristi Noem**, Secretary of the United States Department of Homeland Security, in her official capacity, et al.,

*Defendants*.

**SUPPLEMENT TO PLAINTIFFS' EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

Plaintiffs C.M., Borrego, J.M.C., and E.R., by and through undersigned counsel, and on behalf of the proposed class, respectfully provide the following supplement to their Expedited Motion for Temporary Restraining Order and for Preliminary Injunction ("TRO Motion"), ECF No. 5, based on facts not available at the time of filing. All Defendants have now been served.

Plaintiffs filed the TRO Motion because Defendants have barred any meaningful attorney access to detainees held at Alligator Alcatraz. But since then, a host of other problems have emerged. Detainees are being held at the facility without any charges—no criminal charges, no immigration charges. The federal immigration court has canceled bond hearings for people held at Alligator Alcatraz, and DHS counsel and Immigration Judges have told their attorneys that the immigration courts no longer have jurisdiction over their cases. Detainees are therefore unable to seek release on bond in immigration court—something that federal law and due process guarantee.

Meanwhile, ICE officers have disclaimed responsibility for immigration detainees held at the facility and for compliance with the laws that govern their detention. This is an unprecedented situation where hundreds of detainees are held incommunicado, with no ability to access the courts, under legal authority that has never been explained and may not exist. Plaintiffs therefore add a new claim to their TRO motion and request an urgent status conference to sort out what is happening and who is responsible for Plaintiffs' custody, and to set an expedited briefing schedule.

This supplement adds two requests to the existing TRO Motion. First, Plaintiffs, on behalf of themselves and the proposed class, respectfully seek a TRO and preliminary injunction requiring Defendants to identify an immigration court that has jurisdiction over detainees held at Alligator Alcatraz, and to promptly accept and adjudicate petitions for bond by proposed class members. As explained below, the ability to seek bond is a basic feature of immigration detention, and Defendants' denial of this right violates due process and federal law.

Second, Plaintiffs respectfully request that the Court immediately schedule a status conference and order Defendants to clarify which entities have custody over the immigrant detainees held at Alligator Alcatraz, and the legal basis for their custody.

I. **The Federal Defendants' Failure to Identify an Immigration Court with Jurisdiction over Alligator Alcatraz Violates Detainees' Right to Procedural Due Process.**

Since Plaintiffs filed this case, immigrant detainees held at Alligator Alcatraz have been effectively barred from obtaining relief from the federal immigration court, including release from detention on bond. Although some attorneys with clients detained at Alligator Alcatraz had managed to file bond motions with immigration courts overseen by the Executive Office for Immigration Review ("EOIR"), and had their motions scheduled for hearings at the local immigration court, Immigration Judges have now canceled hearings for detainees held at the facility. Attorneys have arrived at scheduled hearings to find their clients absent. Court staff have

2

then informed attorneys that their clients' hearings had been canceled, and taken off the docket because the court no longer has jurisdiction over cases of people held at Alligator Alcatraz.

For example, attorney Anna Weiser filed bond motions at the Krome Immigration Court on behalf of her clients, Hari Koneru and Gonzalo Almanza Valdez, two detainees held at Alligator Alcatraz, but arrived at their scheduled hearings only to be told that the court lacked jurisdiction over their cases. Both men had entered the United States on valid visas, are in the United States as a legal permanent resident or on a student visa, and are eligible for release on bond from immigration detention. Decl. Anna Weiser ¶¶ 4, 12. Ms. Weiser had received notices of hearings for both clients, stating that their bond hearings had been scheduled for July 23, 2025, at 1:00 p.m. *Id.* ¶¶ 10, 15. Ms. Weiser had previously requested that ICE issue Notices to Appear ("NTA") for Mr. Koneru and Mr. Almanza Valdez, but received no meaningful response. *Id.* ¶¶ 6, 13. Notices to Appear are typically issued within 72 hours of a person's detention by ICE, and they initiate the removal process by specifying the charges, legal authority for immigration proceedings, and factual allegations against a noncitizen. *Id.* ¶ 6; Decl. Z. Zareefa Khan ¶ 6.

When Ms. Weiser appeared in immigration court for the hearings, however, a clerk informed her that the court no longer had jurisdiction over cases of people held at Alligator Alcatraz, and that their hearings had been taken off the docket. Weiser Decl. ¶ 16. The clerk stated that she had no further information, and that Ms. Weiser would have to contact DHS. *Id.* Ms. Weiser then emailed multiple officers at DHS, and received a response from the ICE Office of Chief Counsel in Miami, instructing her to email the Alligator Alcatraz facility directly at southfacility@cm.myflorida.com. *Id.* ¶ 17. Ms. Weiser contacted that email, but received no further response. *Id.* ¶ 18.

3

Similarly, attorney Zareefa Khan filed a bond motion on behalf of her client, G.T.C., a native of Guatemala who has no criminal history and has a pending asylum application. Khan Decl. ¶ 4. G.T.C. was taken into custody on June 28, 2025, while fishing in the Everglades, after officers for the Florida Fish and Wildlife Game Department stopped him to see if he had a fishing license. *Id.* ¶ 5. Officers from U.S. Customs and Border Patrol ("CBP") happened to be driving by at the time, and took G.T.C. into custody. *Id.* CBP officers detained G.T.C. at the CBP facility in Dania Beach, Florida, for five days, without issuing a Notice to Appear. *Id.* ¶ 6. On July 3, 2025, CBP transferred G.T.C. to Alligator Alcatraz, where he is currently detained. *Id.* ¶¶ 3, 7. Ms. Khan filed a bond motion on G.T.C.'s behalf with the Immigration Court, and on July 17, 2025, received an email confirming receipt. *Id.* ¶ 8. G.T.C.'s bond hearing was set for July 24, 2025, at 1:00 p.m. *Id.* When Ms. Khan arrived at the virtual courtroom, the Immigration Judge informed her that no hearing for G.T.C. appeared on the docket. *Id.* ¶ 9. The Immigration Judge, Ms. Khan, and the government's counsel conferred off the record, where the government counsel stated that the immigration court had no jurisdiction over cases of people held at Alligator Alcatraz, that ICE had not issued an NTA in his case, and did not plan to issue one, as G.T.C. was in state, not federal custody. *Id.* The Immigration Judge went back on the record, and stated that the immigration court did not have jurisdiction over his case. *Id*.

The Federal Defendants'[1] cancellation of bond hearings, and the failure to make available an immigration court with jurisdiction over claims of people held at Alligator Alcatraz, is a blatant violation of the relevant detention statutes and regulations, and of the Fifth Amendment's guarantee of procedural due process. Immigrant detainees are entitled under statute and regulation to seek release from detention. 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 1003.19. Bond motions and

---

[1] "Federal Defendants" include Defendants Noem, DHS, Lyons, ICE, Ripa, Owen, and EOIR.

hearings are routine in immigration court for detained people, and the inability to file and have bond motions adjudicated by the immigration court is unprecedented. The government may have determined some class members are statutorily ineligible for bond. 8 U.S.C. § 1226(c) (requiring that the government "shall take into custody" certain categories of immigrants pending removal determinations). But even those proposed class members are entitled to request a hearing to redetermine whether they are "not properly included within" the categories ineligible for bond. *Matter of Joseph*, 22 I. & N. Dec. 799, 802 (BIA 1999). DHS regulations set out proposed class members' procedural rights to "review by an Immigration Judge" of "[c]ustody and bond determinations." 8 C.F.R. § 1003.19(a). These regulations further require class members' bond motions to be filed with "the Immigration Court having jurisdiction over the place of detention." 8 C.F.R. § 1003.19(c)(1).

The inability to file and have bond petitions adjudicated by the immigration court is an obvious violation of detainees' Fifth Amendment right to procedural due process. *Demore v. Kim*, 538 U.S. 510, 557 (2003) (Souter, J., concurring) ("procedural due process requires, at a minimum, that a detainee have the benefit of an impartial decisionmaker able to consider particular circumstances on the issue of necessity [of detention]."). Where a person has been deprived of a liberty interest, the court must consider whether the procedures "were constitutionally sufficient," by examining "the nature of the private interest affected, the risk of erroneous deprivation, the value of additional safeguards, and the government's interest, including any burdens." *Schultz v. Alabama*, 42 F.4th 1298, 1332 (11th Cir. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Because statute and regulation grant immigrant detainees procedures for custody and bond redeterminations, they have a liberty interest in using these procedures to seek their "[f]reedom

from . . . detention." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The private interest in freedom from immigration detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Id.*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Defendants' failure to provide the process dictated by statute and their own regulations have made custody and bond review effectively unavailable. *Pollgreen v. Morris*, 496 F. Supp. 1042, 1054 (S.D. Fla. 1980) ("Defendants' failure to comply with their own administration regulations concerning notice and hearing is itself violative of due process."). This results in a high risk of erroneous deprivation. This risk could readily be cured if Defendants were simply to make available the process required by statute and regulation. The Defendants have no valid interest or basis whatsoever in disclaiming jurisdiction over immigrant detainees held at Alligator Alcatraz, or in failing to identify which immigration court has jurisdiction over the class members.

The Defendants' failure to identify an immigration court with jurisdiction over Plaintiffs' claims and those of the proposed class have caused irreparable harm. *Grodzki v. Reno*, 950 F. Supp. 339. 342-43 (N.D. Ga. 1996) (continued detention without bond hearing constitutes irreparable injury). Detainees' inability to seek bond and custody redeterminations has prolonged their detention. For example, Plaintiff J.M.C. and proposed class members Hari Koneru, Gonzalo Almanza Valdez, and G.T.C. wish to obtain release on bond, but have been unable to obtain a bond hearing while detained at Alligator Alcatraz. Decl. Saman Movassaghi Gonzalez ¶ 24, ECF No. 5-4; Weiser Decl. ¶ 16; Khan Decl. ¶ 9. The balance of equities further weigh heavily in Plaintiffs' and the proposed class's favor. Defendants have no legitimate interest in preventing people held at Alligator Alcatraz from consideration of their lawful motions to redetermine custody or bond.

For these reasons, the individual Plaintiffs and the proposed class are likely to prevail upon a claim that Defendants are violating their due process right to seek bond in immigration court. A

TRO and preliminary injunction should issue ordering the Federal Defendants to identify an immigration court that has jurisdiction over detainees held at Alligator Alcatraz, and to promptly accept and adjudicate petitions for bond by proposed class members.

**II.     It Is Unclear Who Is Responsible for Plaintiffs' Detention and Under What Authority.**

The inability of Plaintiffs and proposed class members to file bond petitions, or access immigration courts may stem from a related issue: the lack of clarity regarding the legal basis and authority for their detention at Alligator Alcatraz. Plaintiffs therefore request a status conference to sort out the legal arrangement under which detainees are being held, and the production of any agreements that pertain to Defendants' legal authority to detain them.

States lack authority to detain people based on civil immigration violations absent express authorization by the federal government. *Arizona v. United States*, 567 U.S. 387, 410 (2012) (finding "unilateral state action to detain" immigrants to be preempted by federal law); *City of El Cenizo v. Texas*, 890 F.3d 164, 179 (5th Cir. 2018) ("unilateral enforcement" prohibited); *Fla. Immigrant Coal. v. Uthmeier*, --- F. Supp. 3d ---, 2025 WL 1423357, *7-11 (S.D. Fla. Apr. 29, 2025) (state cannot create parallel immigration enforcement scheme), *stay denied*, 2025 WL 1625385 (11th Cir. June 6, 2025), *stay denied*, 2025 WL 1890573 (U.S. July 9, 2025).

In separate litigation, the federal government has stated that 8 U.S.C. § 1357(g)(1) ("287(g)") provides the authority for Florida to hold people at Alligator Alcatraz. *See* Decl. Thomas P. Giles ¶ 7-8, *Friends of the Everglades v. Noem*, No. 1:25-cv-22896-JEM (S.D. Fla. Jul. 3, 2025), ECF No. 21-1 (stating that detentions at the facility would be "pursuant to section 287(g) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1357(g)" and mentioning 287(g) agreements signed by Florida entities). Section 287(g) allows state and local officers to be individually deputized to perform certain "immigration officer function." 8 U.S.C. § 1357(g). But

this statute "creates a highly regulated scheme for adopting 287(g) agreements," *El Cenizo*, 890 F.3d at 177, which requires, among other things, that ICE officers "supervise and direct" all enforcement under the 287(g) agreement, 8 U.S.C. § 1357(g)(5), (3), that enforcement power be delegated in a written agreement, *id.* § 1357(g)(2), and that enforcement power be exercised only by individual "employee[s] of the State or subdivision" who have received adequate training in the specific functions they are expected to perform, *id.* § 1357(g)(1), (2). Yet ICE appears to have *disclaimed* supervision and direction over activities at Alligator Alcatraz. *See* Giles Decl. ¶ 6 ("The ultimate decision of who to detain at the TNT Detention Facility belongs to Florida."); Khan Decl. ¶ 9 (ICE official stating that detainees are no longer in ICE custody); Declaration of Gina Loredo ¶ 13 (same). There are reports that private contractors, not "employee[s] of the State or subdivision," are exercising detention authority at Alligator Alcatraz. *See* Decl. of Katherine H. Blankenship ¶¶ 17-18, ECF No. 5-1; 8 U.S.C. § 1357(g)(1). And it is unclear whether the individuals staffing the facility have been trained in the full set of regulatory, statutory, and constitutional obligations that attach to immigration detention officers. Indeed, the host of emerging problems—including the failure to issue charging documents, to transport people to immigration court, and more—may stem from a failure to abide by these statutory requirements. *See also* Loredo Decl. ¶¶ 8-14 (ICE directed attorneys to an email address at the State of Florida, which in turn directed them back to ICE); Khan Decl. ¶¶ 11 (people being held without immigration charges or state criminal charges); Weiser Decl. ¶ 18 (clients held without immigration charges); Loredo Decl. ¶ 23 (detainees pressured to consent to removal without following any applicable standards).

This is an unprecedented and disturbing situation. Florida cannot operate an independent immigration detention system without federal supervision. It cannot hold people without charge

8

and without access to the immigration courts. And it cannot staff such a facility with officers who are not trained in how to satisfy the most basic legal requirements of immigration detention. Clarity on these questions is urgently needed. Plaintiffs therefore request an immediate status hearing to address these issues and set an expedited briefing schedule, and an order requiring the production of any agreements that pertain to Defendants' legal authority to detain them.

Dated: July 25, 2025

Respectfully Submitted,

/s/ Eunice H. Cho

Paul R. Chavez (Fla. Bar No. 1021395)
Christina LaRocca (Fla. Bar No. 1025528)
AMERICANS FOR IMMIGRANT JUSTICE
2200 NW 72nd Ave
P.O. Box No 520037
Miami, FL 33152
786-218-3381
pchavez@aijustice.org
clarocca@aijustice.org

Amy Godshall, Fla. Bar No. 1049803
Daniel Tilley, Fla. Bar No. 102882
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714
agodshall@aclufl.org
dtilley@aclufl.org

Eunice H. Cho*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. N.W., 7th Floor
Washington, DC 20005
202-548-6616
echo@aclu.org

Corene Kendrick*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
ckendrick@aclu.org
kvirgien@aclu.org

*Attorneys for Plaintiffs*

* Admitted pro hac vice.