## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:25-cv-23182-RAR

**C.M.**, et al.,

*Plaintiffs*, on behalf of themselves and all others similarly situated,

   v.

**Kristi Noem**, Secretary of the United States Department of Homeland Security, in her official capacity, et al.,

     *Defendants*.

## PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Less than six weeks ago, the state of Florida began to construct a temporary immigration detention facility made of tents, trailers, chain-link fence, and barbed wire in the middle of the Florida Everglades, approximately 50 miles from Miami. Now known as "Alligator Alcatraz,"[1] the facility has the capacity to hold at least 3,000 people and is directly surrounded by wetland swamp, home to wildlife, including alligators and venomous snakes.[2] President Trump has

---

[1] *See* Ana Ceballos, *Alligator Alcatraz Is No Nickname. It's Detention Camp's Official Name*, Tampa Bay Times (Jul. 1, 2025), https://www.tampabay.com/news/florida/2025/07/01/alligator-alcatraz-is-no-nickname-its-detention-camps-official-name; Raisa Habersham, *As the Jokes Fly, Alligator Alcatraz Evokes Racist Trope of 'Gator Bait'*, Miami Herald (Jul. 10, 2025), https://www.miamiherald.com/news/state/florida/article310224360.html (discussing historical "gator bait" trope used to dehumanize Black people and its application in naming of the facility).
[2] Chelsea Bailey, Isabel Rosales & Alaa Elassar, *'Alligator Alcatraz': What to Know About Florida's New Controversial Migrant Detention Facility*, CNN (Jul. 13, 2025), https://www.cnn.com/2025/07/01/us/what-is-alligator-alcatraz-florida.

celebrated the location of this facility, noting that, "[W]e're going to teach them how to run away from an alligator if they escape prison . . . . The only way out, really, is deportation."[3]

Defendants currently hold approximately 700 immigrant detainees at the facility,[4] and have barred detained immigrants from communicating confidentially with legal counsel. No protocols exist at this facility for providing the standard means of confidential attorney-client communication, such as in-person attorney visitation and phone or video calls that are available at any other detention facility, jail, or prison. The only way that detainees can communicate with the outside world is via infrequent access to collect pay phone calls that are monitored and recorded, and last approximately five minutes.

The individual Plaintiffs in this case, C.M., Borrego, J.M.C., E.R., Almanza Valdes, Hernandez, G.T.C., F.B., R.P., A.S., G.M.S.G., and N.M.B (collectively "Detained Plaintiffs") are immigrants detained at Alligator Alcatraz, who wish to communicate confidentially with legal counsel. Plaintiffs Florida Keys Immigration, Law Offices of Catherine Perez PLLC, Sanctuary of the South, and U.S. Immigration Law Counsel (collectively "Organizational Plaintiffs") are legal service organizations and law firms that have retained prospective clients detained at the facility with whom they have not been able to contact or communicate with in a confidential manner. The restrictions on attorney access violate the First Amendment rights of all Plaintiffs and the proposed class.

---

[3] Adriana Gomez Licon & Will Weissert, *Trump Tours Florida Immigration Lockup and Jokes about Escapees Having to Run from Alligators*, Associated Press (Jul. 1, 2025), https://apnews.com/article/trump-everglades-immigrant-detention-facility-visit-5dc5568ec15534947c29c9149b773d1d.
[4] Ana Ceballos et al., *Exclusive: Hundreds at Alligator Alcatraz Have No Criminal Charges, Miami Herald Learns*, Miami Herald (Jul. 13, 2025), https://www.miamiherald.com/news/local/immigration/article310541810.html.

In addition, it has become clear that detainees are being held at the facility without any charges—no criminal charges, no immigration charges. The federal immigration court has refused bond motions or canceled bond hearings for people held at Alligator Alcatraz, including Plaintiffs Almanza Valdes, Hernandez, G.T.C., F.B., R.P., A.S., G.M.S.G., and N.M.B. ("Bond Subclass Plaintiffs"), and Department of Homeland Security ("DHS") counsel and Immigration Judges have told their attorneys that the immigration courts no longer have jurisdiction over their cases. Detainees are therefore unable to seek release on bond in immigration court—something that federal law and due process guarantee. Meanwhile, ICE officers have disclaimed responsibility for immigration detainees held at the facility and for compliance with the laws that govern their detention. This is an unprecedented situation where hundreds of detainees are held incommunicado, with no ability to access the courts, under legal authority that has never been explained and may not exist.

Accordingly, the Detained Plaintiffs, on behalf of themselves and the proposed class, and the Organizational Plaintiffs respectfully seek a preliminary injunction requiring Defendants to permit attorney-client communication at Alligator Alcatraz. Bond Subclass Plaintiffs, on behalf of themselves and the proposed subclass, also seek a preliminary injunction requiring Defendants to identify an immigration court that has jurisdiction over detainees held at Alligator Alcatraz, where they and other subclass members may file petitions for release on bond.

## FACTUAL BACKGROUND

### A.  Detainees at Alligator Alcatraz Cannot Speak Confidentially with Legal Counsel.

Immigrants held at Alligator Alcatraz are civil detainees, held pursuant to allegations of violating federal immigration, not criminal law. Detainees held at Alligator Alcatraz have no ability to communicate confidentially with legal counsel. Decl. Michele Borton ¶ 11; Decl. Wendy

Barlow ¶ 12; Decl. Johan Gutierrez ¶ 16; Decl. Efrain Alsina ¶ 14; Decl. Anna Weiser ¶ 8, ECF No. 21-1; Decl. Z. Zareefa Khan ¶ 12, ECF No. 21-2; Decl. Catherine Perez ¶ 8, ECF No. 5-2; Decl. Katherine Blankenship ¶¶ 5-6 ECF No. 5-1; Decl. Saman Movassaghi Gonzalez ¶ 4, ECF No. 5-4; Decl. Amanda Velazquez ¶  5, ECF No. 5-3. The only way that detainees can communicate with the outside world is via infrequent access to collect pay phone calls that are monitored and recorded, and last approximately five minutes. Blankenship Decl. ¶ 31; Movassaghi Gonzalez Decl. ¶ 23; Perez Decl. ¶ 19.

Defendants have failed to issue any publicly available information or protocols regarding attorney access at Alligator Alcatraz. Movassaghi Gonzalez Decl. ¶¶ 8, 12; Perez Decl. ¶ 10. As a result, attorneys have fruitlessly attempted to confirm their clients' detention at the facility and to find any confidential way to communicate with them. Blankenship Decl. ¶ 12; Movassaghi Gonzalez Decl. ¶¶ 8, 17-18; Perez Decl. ¶¶ 9-14; Velazquez Decl. ¶¶ 6-7. ICE's online detainee locator has resulted in no information regarding people known to be detained at the facility, or it has directed attorneys to agency staff who have no information as to how attorneys can communicate with detainees at Alligator Alcatraz. Blankenship Decl. ¶ 12; Decl. Sandra Cherfrere ¶ 4, ECF No. 5-6; Decl. Phillip Issa ¶ 4, ECF No. 5-5; Movassaghi Gonzalez Decl. ¶ 8; Perez Decl. ¶ 9 & Ex. A; Velazquez Decl. ¶¶ 6-8. Attorneys have contacted legislators and state agencies to try and find any means of establishing contact with their clients, but to no avail. Blankenship Decl. ¶¶ 7, 15 & Ex. 2. ICE's Miami Field Office has rebuffed inquiries about contacting detainees at the facility. Blankenship Decl. ¶ 14 & Ex. 1; Perez Decl. ¶ 12 & Ex. B. An email address provided by officials reported to be used for arranging attorney-client communication at the facility results in bounced-back messages. Issa Decl. ¶¶ 12-13; Movassaghi Gonzalez Decl. ¶¶ 13-14, 16-18.

Attorneys who have driven to the facility to attempt to meet their clients in person have been greeted at a military checkpoint and barred from entry. Blankenship Decl. ¶¶ 16-19; Cherfrere Decl. ¶¶ 4-6, 15; Decl. Troy Elder, ¶¶ 5-12, ECF No. 5-7; Issa Decl. ¶¶ 6-10, 12. Attorneys have waited in their cars in the hopes of meeting with their clients, only to be told hours later that they cannot enter the facility. Blankenship Decl. ¶¶ 16-19; Movassaghi Gonzalez Decl. ¶ 10. At one point, facility staff informed attorneys that a "Legal Counsel Visitation Request Form" available only to attorneys who drive to the facility is the only way to request a virtual visit with clients at the facility. Blankenship Decl. ¶ 21 & Ex. 3; Cherfrere Decl. ¶ 12. Facility emails resulting from submission of this form do not provide specific information about how a call with a client might proceed, which client the call may be with, or the planned time for the call. Blankenship Decl. ¶ 25 & Ex. 6. Moreover, these promised calls have not taken place, but rather, have been canceled by the facility. *Id.*; Cherfrere Decl. ¶¶ 16-18. Other attorneys who travel to the facility to meet with detainees have been told that they must apply and obtain approval before any future visit, with no specific timeline for when approval might be granted. Elder Decl. ¶ 10.

There is no way for detainees and their counsel to confidentially exchange legal documents. The Legal Counsel Visitation Request Form also requires attorneys to submit copies of any documents planned for review with the client for approval by the facility. Blankenship Decl. Ex. 3.

### B. Defendants Have Effectively Barred Detainees at Alligator Alcatraz from Obtaining Relief from Immigration Courts.

Immigrant detainees held at Alligator Alcatraz also have been effectively barred from obtaining relief from federal immigration courts, including release from detention on bond. Immigration courts have refused to accept bond motions filed on behalf of detainees held at the facility. Although some attorneys with clients detained at Alligator Alcatraz had managed to file

bond motions with immigration courts, and had their motions scheduled for hearings at the local immigration court, Immigration Judges have now canceled hearings for detainees held at the facility. Attorneys have arrived at scheduled hearings to find their clients absent. Court staff have then informed attorneys that their clients' hearings had been canceled and taken off the docket because the court no longer has jurisdiction over cases of people held at Alligator Alcatraz.

For example, attorney Anna Weiser filed bond motions at the Krome Immigration Court on behalf of Plaintiff Gonzalo Almanza Valdes, who is currently held at Alligator Alcatraz, but arrived at his scheduled hearing only to be told that the court lacked jurisdiction over his case. He had entered the United States on a visa, is in the United States as a legal permanent resident, and is eligible for release on bond from immigration detention. Decl. Anna Weiser ¶¶ 4, 12, ECF No. 21-1. Ms. Weiser had received notices of hearings for Mr. Almanza Valdes, stating that his bond hearing had been scheduled for July 23, 2025, at 1:00 p.m. *Id.* ¶ 15. Ms. Weiser had previously requested that ICE issue a Notices to Appear ("NTA") for Mr. Almanza Valdes, but received no meaningful response. *Id.* ¶ 13. Notices to Appear are typically issued within 72 hours of a person's detention by ICE, and they initiate the removal process by specifying the charges, legal authority for immigration proceedings, and factual allegations against a noncitizen. *Id.* ¶ 6; Khan Decl. ¶ 6.

When Ms. Weiser appeared in immigration court for the hearings, however, a clerk informed her that the court no longer had jurisdiction over cases of people held at Alligator Alcatraz, and that his hearing had been taken off the docket. Weiser Decl. ¶ 16. The clerk stated that she had no further information, and that Ms. Weiser would have to contact DHS. *Id.* Ms. Weiser then emailed multiple officers at DHS and received a response from the ICE Office of Chief Counsel in Miami, instructing her to email the Alligator Alcatraz facility directly at

southfacility@cm.myflorida.com. *Id.* ¶ 17. Ms. Weiser contacted that email, but received no further response. *Id.* ¶ 18.

Similarly, attorney Zareefa Khan filed a bond motion on behalf of her client, G.T.C., a native of Guatemala who has no criminal history and has a pending asylum application. Khan Decl. ¶ 4. G.T.C. was taken into custody on June 28, 2025, while fishing in the Everglades, after officers for the Florida Fish and Wildlife Game Department stopped him to see if he had a fishing license. *Id.* ¶ 5. Officers from U.S. Customs and Border Patrol ("CBP") happened to be driving by at the time and took G.T.C. into custody. *Id.* CBP officers detained G.T.C. at the CBP facility in Dania Beach, Florida, for five days, without issuing a Notice to Appear. *Id.* ¶ 6. On July 3, 2025, CBP transferred G.T.C. to Alligator Alcatraz, where he is currently detained. *Id.* ¶¶ 3, 7. Ms. Khan filed a bond motion on G.T.C.'s behalf with the immigration court, and on July 17, 2025, received an email confirming receipt. *Id.* ¶ 8. G.T.C.'s bond hearing was set for July 24, 2025, at 1:00 p.m. *Id.* When Ms. Khan arrived at the virtual courtroom, the Immigration Judge informed her that no hearing for G.T.C. appeared on the docket. *Id.* ¶ 9. The Immigration Judge, Ms. Khan, and the government's counsel conferred off the record, where the government counsel stated that the immigration court had no jurisdiction over cases of people held at Alligator Alcatraz, that ICE had not issued an NTA in his case, and did not plan to issue one, as G.T.C. was in state, not federal custody. *Id.* The Immigration Judge went back on the record and stated that the immigration court did not have jurisdiction over his case. *Id.*

Other Plaintiffs have encountered similar barriers. Gustavo Adolfo Lopez Hernandez is a national of Columbia who entered the United States on a valid visa, has no criminal history, and has a pending asylum petition. Gutierrez Decl. ¶ 3. Before he was detained, he worked as an Uber Eats delivery driver and moving assistant. *Id.* On July 17, 2025, Mr. Hernandez was taken into

custody while making a delivery, and he was detained at the Pinellas County Jail. *Id.* ¶ 4. On July 21, 2025, Mr. Hernandez's attorney, Johan Gutierrez, filed a bond motion with the Broward Immigration Court, which was then scheduled to be heard on July 25, 2025. *Id.* ¶ 5. On July 21, 2025, Mr. Hernandez was transferred to Alligator Alcatraz. *Id.* ¶ 6. On the day of the hearing, Mr. Hernandez's attorney appeared before the immigration court, but was informed that the court lacked jurisdiction over cases of detainees held at Alligator Alcatraz. *Id.* ¶ 7. Mr. Gutierrez has made diligent efforts to refile the motion, but no judicial entity, government organization, or person has directed him to any proper court. *Id.* ¶¶ 8-15.

F.B. is a Guatemalan national who has lived in the United States for twenty years, has no criminal history, has had the same job for the past nineteen years, and is an active member of his church. Borton Decl. ¶ 4. He has a pending asylum petition. *Id.*  On July 8, 2025, after leaving his church, F.B. was taken into custody by plainclothes officers, transported to the Krome Detention Center, and then transferred to Alligator Alcatraz on or around July 10, 2025. *Id.* ¶ 8. F.B.'s attorney, Michelle Borton, has attempted to file a bond motion on his behalf, but on July 29, 2025, she was informed that the immigration court lacked jurisdiction over detainees held at Alligator Alcatraz. *Id.* ¶¶ 9-10.

R.P. is a Brazilian national who has lived in the United States for twenty years and is the father of three U.S. citizen children. Alsina Decl. ¶ 3. His removal proceedings were administratively closed in 2016, and he is eligible for release on bond. *Id.* ¶ 4. R.P. was taken into custody on July 8, 2025, after he was stopped by local law enforcement on his way home from work. *Id.* ¶ 5. At the time he was stopped, he had a valid driver's license and was not cited for any violation. *Id.* Officers took him to the Orange County Jail, and by July 12, 2025, he had been transferred to Alligator Alcatraz. *Id.* ¶¶ 5, 7. On July 16, 2025, his attorney, Efrain Alsina, filed a

bond motion on his behalf at the Krome Immigration Court. *Id.* ¶ 8. His motion was accepted, and his hearing was scheduled to take place on July 23, 2025. *Id.* ¶ 10. On July 22, 2025, the Krome Immigration Court informed Mr. Alsina that the court lacked jurisdiction over detainees held at Alligator Alcatraz. *Id.* ¶¶ 11-12. Mr. Alsina made multiple attempts to determine which court had jurisdiction over his client, calling DHS officials and the court, but no one could provide him with an answer. *Id.* ¶¶ 11-12. Mr. Alsina attended the bond hearing on July 23, 2025, but R.P. was not present at the hearing, and the Immigration Judge stated that she did not have jurisdiction over the case. *Id.* ¶¶ 13. When he inquired which court had jurisdiction, the judge suggested that he call DHS. *Id.*

A.S. is a noncitizen currently detained at Alligator Alcatraz. Barlow Decl. ¶ 3. He is a national of Saint Christopher and Nevis, a small island country in the Caribbean, and the Russian Federation. *Id.* ¶ 5. He entered the United States on a valid visa and has applications for visas pending with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* On July 14, 2025, A.S. was in the process of seeking employment when officers came to his residence and told him that he had overstayed his visa. *Id.* ¶ 7. Officers detained him at the Miramar ICE Field Office and then transferred him to Alligator Alcatraz. *Id.* On July 21, 2025, his attorney, Wendy Barlow, filed a pre-NTA bond motion with the Krome Immigration Court. *Id.* ¶ 8. Later that day, the immigration court rejected his bond motion, stating that it lacked jurisdiction over detainees held at Alligator Alcatraz. *Id.* ¶ 9. Ms. Barlow asked the court officer which court had jurisdiction and was instructed to call DHS. *Id.* When she called DHS, she was referred back to the immigration court. *Id.* Ms. Barlow attempted to file another pre-NTA bond motion on July 24, 2025, which was again rejected. *Id.* ¶ 11. Ms. Barlow contacted the court again to determine which court has jurisdiction

over Alligator Alcatraz, and was again instructed to contact DHS, who has yet to provide her with an answer. *Id.*

G.M.S.G. is a noncitizen currently detained at Alligator Alcatraz. Ramirez Decl. ¶ 3. He has sickle cell anemia and has experienced serious medical issues while detained. *Id.* ¶ 4. From July 10 to July 12, 2025, G.M.S.G. was transferred from Alligator Alcatraz to a local hospital, where he underwent a blood transfusion. *Id.* He currently has symptoms of worsening anemia or liver involvement but has no follow-up care in place at the facility. *Id.* G.M.S.G. is eligible for release on bond, and on July 16, 2025, his attorney, Aida Marta Ramirez, filed a bond motion with the Krome Immigration Court. *Id.* ¶¶ 3, 5. The motion was scheduled for a hearing on July 21, 2025. *Id.* ¶ 5. However, at the hearing, the Immigration Judge rejected the motion, stating that the court lacked jurisdiction over detainees held at Alligator Alcatraz, and could not provide any information as to which court could hear his case. *Id.* ¶ 6.

N.M.B. is currently detained at the Alligator Alcatraz facility. Decl. Victoria Slatton ¶ 5, ECF No. 11-1. He is currently eligible for asylum, as he fears persecution in his country of birth. *Id.* His attorneys filed a bond motion on his behalf on July 29, 2025, but the Krome Immigration Court rejected his motion, stating that the court lacked jurisdiction over detainees held at Alligator Alcatraz. Suppl. Decl. Victoria Slatton ¶ 3 & Ex. A. His attorneys then contacted the Miami Immigration Court, which likewise stated that it lacked jurisdiction over his claim. *Id.* ¶ 4.

## LEGAL STANDARD

The Court should grant a preliminary injunction if Plaintiffs establish: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant[s]," and (4) "that the preliminary injunction would not be averse to the public interest." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014).

## ARGUMENT

I.      **Plaintiffs Are Likely to Succeed on the Merits.**

   A.  **Defendants' Denial of Access to Counsel Violates Detainee Plaintiffs'
       Constitutional Rights.**

      1.  **The Defendants' Denial of Access to Counsel Violates Detained Plaintiffs'
          First Amendment Rights.**

Defendants Noem, Department of Homeland Security ("DHS"), Lyon, Immigration and
Customs Enforcement ("ICE"), and Ripa (collectively "DHS Defendants") and Defendants
DeSantis, Green, Guthrie, and Florida Division of Emergency Management ("FDEM")
(collectively "Florida Defendants") have imposed significant and unreasonable barriers to attorney
access to immigrant detainees held at Alligator Alcatraz, in violation of the First Amendment.
Incarcerated people have a "First Amendment free speech right to communicate with [their]
attorneys . . . ." *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008). *See also DeLoach v.
Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (under "clearly established First Amendment rights of
association and free speech," prisoners have the right to "retain and consult with an attorney");
*Lashbrook v. Hyatte*, 758 F. App'x 539, 541 (7th Cir. 2019) ("The First Amendment protects a
prisoner's right to consult with an attorney . . . ."). A restriction that "interferes with protected
communications, strips those protected communications of their confidentiality, and accordingly
impinges upon the inmate's right to freedom of speech." *Al-Amin*, 511 F.3d at 1334 (quoting *Jones
v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006)).

This is not a close case. The DHS and Florida Defendants have imposed attorney access
restrictions that have fully foreclosed the ability of immigrants detained at the facility to speak to
counsel in a confidential manner, in clear violation of the First Amendment. The only way for
detainees to speak with anyone outside the facility is via an infrequent, paid, collect phone call

11

system that is monitored and recorded, where calls last for approximately five minutes. Blankenship Decl. ¶ 31; Movassaghi Gonzalez Decl. ¶ 23; Perez Decl. ¶ 19. These Defendants have failed to confirm whether detainees are held at the facility through their online locator websites and have directed attorneys to faulty email addresses or offices that have no information on how attorneys can communicate with clients at the facility. Blankenship Decl. ¶¶ 12, 23 & Ex. 4; Cherfrere Decl. ¶ 4; Issa Decl. ¶ 4; Movassaghi Gonzalez Decl. ¶¶ 8, 17-18; Perez Decl. ¶ 9 & Ex. A; Velazquez Decl. ¶¶ 6-8. Defendants have restricted attorney access by failing to establish any policy or mechanism for detainees and counsel to speak with each other in person, over the phone, or via video call. Movassaghi Gonzalez Decl. ¶¶ 8, 22; Perez Decl. ¶ 10. Defendants have failed to make any information publicly available instructing how attorneys and detainees may communicate with each other. Movassaghi Gonzalez Decl. ¶¶ 8, 12; Perez Decl. ¶¶ 10-11.

Attorneys who have attempted to visit clients in person at the facility are stopped at military checkpoints and barred from entry. Blankenship Decl. ¶¶ 16-19; Cherfrere Decl. ¶¶ 4-6, 15; Elder Decl. ¶¶ 5-12; Issa Decl. ¶¶ 6-10, 12. Although the facility has developed a "Legal Counsel Visitation Request Form," attorneys who fill out the form are instructed that they cannot visit with their clients in person, and that the facility will respond in "twenty-four to forty-eight hours" to set up a legal call. Blankenship Decl. ¶ 21 & Ex. 3; Cherfrere Decl. ¶¶ 11-12. Emails sent to attorneys resulting from these requests provide no specific information as to how a call with a client might proceed, which client the call might be with, any instructions for connecting to the call, or specific times for the call. Blankenship Decl. ¶ 25 & Ex. 6. Even the vague promises made for a legal call from this email address have been canceled. *Id.*; Cherfrere Decl. ¶ 18. The "Legal Counsel Visitation Request Form" further requires attorneys "to attach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved."

Blankenship Decl. Ex. 3. These restrictions are flagrant violations of First Amendment protections that require detainees to be able to communicate, including in a confidential manner, with counsel. *Al-Amin*, 511 F.3d at 1334.

The government's restrictions on attorney-client communication at Alligator Alcatraz violates detained immigrants' First Amendment rights. This denial of attorney access lacks any reasonable relation to legitimate governmental interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Pesci v. Budz*, 935 F.3d 1159, 1166 (11th Cir. 2019) (modifying *Turner* standard for civil detainees). The federal government itself requires that immigration detention facilities provide detainees with access to counsel. Indeed, DHS Secretary Noem has stated that conditions at Alligator Alcatraz are "held to the same standard that all federal facilities are."[5]

Federal immigration detention standards, of course, require that detainees have access to confidential communication with counsel. ICE National Detention Standards require in-person legal visits, Standard 5.5.II.G.3; require private, unmonitored legal calls, Standard 5.4.II.J-K; and bar staff from reading written communications to or from legal counsel, Standard 5.1.II.E.2.[6] Immigration detention is "civil, not criminal," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), and even prisons are required to provide means for confidential attorney-client communication. The Federal Bureau of Prisons also provides attorney visits in a "private conference room, if available," requires confidential legal mail, and facilitates at least some unmonitored legal telephone calls. 28 C.F.R. §§ 540.19(a), 540.103, 543.13(a)-(b) (2025). Florida's state prison system likewise

---

[5] Mandy Taheri, *Five States in Talks for Detention Centers Like 'Alligator Alcatraz'—Noem*, Newsweek (Jul. 12, 2025), https://www.newsweek.com/five-states-talks-detention-centers-alligator-alcatraz-kristi-noem-2098212.

[6] Immigr. and Customs Enf't, National Detention Standards (2025), https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf [https://perma.cc/3P2T-F382].

guarantees in-person legal visits in a location that "insure[s] . . . privacy," unmonitored legal calls, and confidential legal mail. Fla. Admin. Code R. 33-210.102(2)(c)-(e), (8)(d), 33-602.205(3)(a), 33-601.711(5) (2025). Because the individual Detained Plaintiffs and the proposed class are likely to prevail upon their claim that their First Amendment rights have been violated, a preliminary injunction should issue.

### 2. Defendants' Denial of Access to Counsel Violates the First Amendment Rights of Organizational Plaintiffs.

The Defendants' ban on attorney-client communication also violates the First Amendment rights of the Organizational Plaintiffs. Organizational Plaintiffs are legal service organizations and law firms whose mission is to provide immigration legal services to immigrants, including people in detention. Blankenship Decl. ¶ 3; Movassaghi Gonzalez Decl. ¶ 3; Perez Decl. ¶ 2; Velazquez Decl. ¶ 2. The Organizational Plaintiffs represent people currently detained at the facility. Blankenship Decl. ¶¶ 4, 8; Movassaghi Gonzalez Decl. ¶ 3; Perez Decl. ¶ 3; Velazquez Decl. ¶ 4. Plaintiff SOS has prospective clients detained at the facility whose families, on their behalf, have requested that SOS represent them in their immigration proceedings, but with whom attorneys have not yet been able to meet due to attorney access restrictions at the facility. Blankenship Decl. ¶ 32.

The First Amendment protects a lawyer's ability to advise people of their legal rights and solicit prospective litigants. *NAACP v. Button*, 371 U.S. 415, 428-29 (1963). For legal service organizations, "litigation is not a technique of resolving private differences; it is a form of political expression and political association." *In re Primus*, 436 U.S. 412, 428 (1978) (quotation marks and citation omitted). In *Jean v. Nelson*, the Eleventh Circuit upheld the "purely legal claim" brought under the First Amendment by Plaintiff Haitian Refugee Center to be able to speak with potential clients in immigration detention, holding that "if *Button* and *Primus* mean anything they

permit legal counsel to inform individuals of their legal rights when counsel does so as an exercise of political speech unaccompanied by expectation of renumeration." 711 F.2d 1455, 1508-09 (11th Cir. 1983), *on reh'g*, 727 F.2d 957 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985); *see also Haitian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1982) (holding that "*Button* and *In re Primus* recognize a narrow First Amendment right to associate for the purpose of engaging in litigation as a form of political expression.").

Policies or actions that unreasonably impede communication between attorneys and detained people violate attorneys' First Amendment rights. *See Jean*, 711 F.2d at 1508-09; *see also Procunier v. Martinez*, 416 U.S. 396, 408-09 (1974) (holding that both counsel and an incarcerated person "derive[] from the First and Fourteenth Amendments a protection against unjustified governmental interference with the[ir] intended communication." (citations omitted)); *Haitian Ctr. Council v. Sale*, 823 F. Supp. 1028, 1040 (E.D.N.Y. 1993) (denial of legal advocacy group's access to Haitian detainees at Guantanamo Bay violates the group's speech and associational rights). The First Amendment's protections extend to all stages of communication between attorneys and prisoners, including prior to representation. *See, e.g.*, *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 644-45 (6th Cir. 2015); *Immigr. Defs. L. Ctr. v. Mayorkas*, No. CV 20-9893 JGB (SHKx), 2023 WL 3149243, at *35 (C.D. Cal. Mar. 15, 2023).

As detailed amply in the declarations, here there is a categorical restriction on attorneys' ability to meet with retained and prospective immigrant clients. Organizational Plaintiffs have provided significant evidence that they have been unable to meet with their retained and prospective clients. *See, e.g.*, Blankenship Decl. ¶¶ 5, 25, 32 & Ex. 6; Movassaghi Gonzalez Decl.

¶ 22; Perez Decl. ¶ 24; Velazquez Decl. ¶¶ 5, 12.[7] Due to the lack of any policy or process for Organizational Plaintiffs to contact or meet with current or prospective clients incarcerated at Alligator Alcatraz, they cannot provide legal counsel or advice to these people, nor can they properly represent them in immigration proceedings. *Id.*

The DHS and Florida Defendants, who are government officials, are unreasonably interfering with Organizational Plaintiffs' First Amendment rights, and can offer no explanation as to how their complete abridgment of the right to counsel is "reasonably related to legitimate penological interests" so as to justify overriding the First Amendment rights of the Organizational Plaintiffs. *Turner*, 482 U.S. at 89-91; *see also Pesci*, 935 F.3d at 1166 (modifying *Turner* standard for civil detainees).

Accordingly, because Organizational Plaintiffs are likely to prevail upon their claim that their First Amendment rights have been violated, a preliminary injunction should issue.

### 3. The Defendants' Failure to Identify an Immigration Court with Jurisdiction over Alligator Alcatraz Violates Detainees' Right to Procedural Due Process.

The Defendants' failure to make available an immigration court with jurisdiction over claims of people held at Alligator Alcatraz, is a blatant violation of the relevant detention statutes and regulations, and of the Fifth Amendment's guarantee of procedural due process. Immigrant detainees are entitled under statute and regulation to seek release from detention. 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 1003.19. Bond motions and hearings are routine in immigration court for detained people, and the inability to file and have bond motions adjudicated by the immigration court is unprecedented. The government may have determined some class members are statutorily

---

[7] Other Florida immigration attorneys report similar repeated denials of access to their clients at Alligator Alcatraz. Cherfrere Decl. ¶ 20; Elder Decl. ¶¶ 13-14; Issa Decl. ¶ 14.

ineligible for bond. 8 U.S.C. § 1226(c) (requiring that the government "shall take into custody" certain categories of immigrants pending removal determinations). But even those proposed class members are entitled to request a hearing to redetermine whether they are "not properly included within" the categories ineligible for bond. *Matter of Joseph*, 22 I. & N. Dec. 799, 802 (BIA 1999). DHS regulations set out proposed subclass members' procedural rights to "review by an Immigration Judge" of "[c]ustody and bond determinations." 8 C.F.R. § 1003.19(a). These regulations further require class members' bond motions to be filed with "the Immigration Court having jurisdiction over the place of detention." 8 C.F.R. § 1003.19(c)(1).

The inability to file and have bond petitions adjudicated by the immigration court is an obvious violation of detainees' Fifth Amendment right to procedural due process. *Demore v. Kim*, 538 U.S. 510, 557 (2003) (Souter, J., concurring) ("procedural due process requires, at a minimum, that a detainee have the benefit of an impartial decisionmaker able to consider particular circumstances on the issue of necessity [of detention]."). Where a person has been deprived of a liberty interest, the court must consider whether the procedures "were constitutionally sufficient," by examining "the nature of the private interest affected, the risk of erroneous deprivation, the value of additional safeguards, and the government's interest, including any burdens." *Schultz v. Alabama*, 42 F.4th 1298, 1332 (11th Cir. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Because statute and regulation grant immigrant detainees procedures for custody and bond redeterminations, they have a liberty interest in using these procedures to seek their "[f]reedom from . . . detention." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The private interest in freedom from immigration detention "lies at the heart of the liberty that [the Due Process] Clause protects." *Id.*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Defendants' failure to provide the process dictated by statute and their own regulations have made custody and bond

review effectively unavailable. *Pollgreen v. Morris*, 496 F. Supp. 1042, 1054 (S.D. Fla. 1980) ("Defendants' failure to comply with their own administration regulations concerning notice and hearing is itself violative of due process."). This results in a high risk of erroneous deprivation. This risk could readily be cured if Defendants were simply to make available an immigration court to hear cases of detainees held at Alligator Alcatraz, as required by statute and regulation. The Defendants have no valid interest or basis whatsoever in failing to identify which immigration court has jurisdiction over the class members.

## II. The Government's Denial of Access to Counsel and Failure to Identify an Immigration Court with Jurisdiction over Detainees at Alligator Alcatraz Causes Plaintiffs Irreparable Harm.

The restrictions Defendants have placed on the Plaintiffs and the proposed class have caused them irreparable harm.

As an initial matter, the Detained Plaintiffs, the purported class, and the Organizational Plaintiffs have demonstrated "an ongoing violation of the First Amendment," which necessarily "constitutes an irreparable injury" as to their First Amendment claims. *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017); *see also Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020) (holding that when a regulation is "an unconstitutional direct penalization of protected speech, continued enforcement, for even minimal periods of time, constitutes a per se irreparable injury").

The evidence further shows that Detained Plaintiffs and proposed class members' inability to speak confidentially with counsel prolongs their detention, impacts their removal cases, and prevents them from obtaining relief from dangerous conditions. For example, Plaintiff Borrego was unable to obtain medical attention at Alligator Alcatraz until his condition progressed to the point where he was severely bleeding, requiring him to be rushed to the hospital. Blankenship

Decl. ¶ 34. After receiving emergency surgery, he was returned to the facility, where staff did not provide him with his post-surgical antibiotics prescribed by the hospital. *Id.* Held in hot, humid conditions without these antibiotics, he reports pus coming out of his operation site. *Id.* U.S.-ILC's inability to communicate confidentially with its client has prevented it from filing a bond motion. Movassaghi Gonzalez Decl. ¶ 24. Americans for Immigrant Justice's inability to communicate confidentially has prevented it from taking on prospective clients, potentially prolonging their detention. Cherfrere Decl. ¶ 20; Elder Decl. ¶¶ 13-14; Issa Decl. ¶ 14. Leaving class members in prolonged detention at a dangerous facility where they are unable to contact counsel to communicate medical issues and other urgent problems places them at serious risk of prolonged detention, injury, and death—all of which are irreparable. *Fla. Immigrant Coal. v. Uthmeier*, No. 25-21524-CV, 2025 WL 1423357, at *12 (S.D. Fla. Apr. 29, 2025) (finding the risk of unlawful "detention" supported irreparable harm); *Rosemarie M. v. Morton*, 671 F. Supp. 2d 1311, 1313 (M.D. Fla. 2009) (finding delaying surgery to address persistent bleeding supported irreparable harm). For similar reasons, multiple other courts have found unreasonable restrictions on access to counsel in ICE detention to constitute irreparable harm. *See, e.g., S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, Civil Action No. CV 18-760 (CKK), 2020 WL 3265533, at *32 (D.D.C. June 17, 2020); *Torres v. U.S. Dep't of Homeland Sec.*, Case No. EDCV 18-2604 JGB (SHKx), 2020 WL 3124216, at *8 (C.D. Cal. Apr. 11, 2020).

The Organizational Plaintiffs have also suffered irreparable harm. As detailed above, Defendants' policies place the Organizational Plaintiffs' clients at risk of irreparable harm, which suffices for their own harm. *Robinson v. Marshall*, 454 F. Supp. 3d 1188, 1205 (M.D. Ala. 2020) (finding an "increase in medical risk" to plaintiff medical providers' patients to show irreparable harm), *aff'd sub nom., Robinson v. Att'y Gen,*, 957 F.3d 1171 (11th Cir. 2020); *S. Poverty L. Ctr.*,

2020 WL 3265533, at *32 (finding irreparable harm because "delays and substantially restricted access to counsel[]" in ICE detention centers caused a plaintiff legal organization's clients "irreparable injuries related to the proceedings for which Plaintiff's clients are preparing"). Additionally, these restrictions impair the Organizational Plaintiffs' ability to speak with prospective and current clients and to effectively represent them, placing a burden on the Organizational Plaintiffs' ability to initiate and maintain client relationships. Blankenship Decl. ¶¶ 5, 7, 32; Movassaghi Gonzalez Decl. ¶ 4; Perez Decl. ¶ 24; Velazquez Decl. ¶ 5; *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) ("[T]he loss of customers and goodwill is an irreparable injury." (quotation marks and citation omitted)).

Likewise, the Defendants' failure to identify an immigration court with jurisdiction over Plaintiffs Almanza Valdes, Hernandez, G.T.C., F.B., R.P., A.S., G.M.S.G., and N.M.B.'s claims and those of the proposed subclass have caused irreparable harm. *Grodzki v. Reno*, 950 F. Supp. 339. 342-43 (N.D. Ga. 1996) (continued detention without bond hearing constitutes irreparable injury). Detainees' inability to seek bond and custody redeterminations has prolonged their detention. For example, the Bond Subclass Plaintiffs and proposed subclass members wish to obtain release on bond, but have been unable to obtain a bond hearing while detained at Alligator Alcatraz. Weiser Decl. ¶ 16; Gutierrez Decl. ¶ 13; Khan Decl. ¶ 9-11; Borton Decl. ¶ 10; Alsina Decl. ¶ 13; Barlow Decl. ¶ 9; Ramirez Decl. ¶ 6; Slatton Suppl. Decl. ¶ 4. This "harm posed by avoidable . . . detentions[] qualifies as irreparable harm." *Tallahassee Bail Fund v. Marshall*, No. 4:22CV297-MW/MAF, 2023 WL 10798351, at *14 (N.D. Fla. Sept. 28, 2023); *see also Walker v. City of Calhoun, Georgia*, No. 4:15–CV–0170–HLM, 2016 WL 361612, at *14 (N.D. Ga. Jan. 28, 2016) (finding "an improper loss of liberty by being jailed simply because [a plaintiff] could not

afford to post money bail . . . constitutes irreparable harm"), *vacated on irrelevant grounds sub nom. Walker v. City of Calhoun, GA*, 682 F. App'x 721 (11th Cir. 2017).

Defendants may claim that they plan to change their policies to provide better attorney access in the future, but such speculation cannot defeat Plaintiffs' evidence of harm. Plaintiffs' evidence of "past violations create a cognizable danger of future violations," meaning that even if Defendants claim that they plan to cease their infringement on Plaintiffs' rights, this "mere discontinuance of infringing conduct does not render injunctive relief inappropriate . . . ." *Lutrario v. City of Hollywood, Fla.*, 683 F. Supp. 3d 1361, 1371 (S.D. Fla. 2023) (cleaned up). This risk of future harm is at its peak for the First Amendment claims in this case, as "even the briefest infringement of a First Amendment right constitutes irreparable injury." *S.D. v. St. Johns Cnty. Sch. Dist.*, 632 F. Supp. 2d 1085, 1096 (M.D. Fla. 2009) (rejecting the government's argument that "at the time relief was sought, the remedy Plaintiffs seek . . . was already in place").

### III. The Balance of Equities and the Public Interest Weigh Heavily in Plaintiffs' Favor.

The balance of equities tips in Plaintiffs' favor, and an injunction is in the public interest. As explained above, Plaintiffs and the purported class face real and severe harms. In contrast, Defendants have no legitimate interest in restricting attorney access at Alligator Alcatraz. This is evident because DHS Defendants are readily able to provide attorney access at other ICE detention facilities and Florida Defendants are readily able to provide it in their prison system. ICE, *Performance Based National Detention Standards 2011*, 360, 389-91, 398-401 (Rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf [https://perma.cc/GE73-8PRM] (providing confidential visits, telephone calls, and mail at ICE detention centers); Fla. Admin. Code R. 33-210.102(2)(c)-(e), (8)(d), 33-602.205(3)(a), 33-601.711(5) (providing private attorney visits, unmonitored legal calls, and confidential legal mail

in Florida state prisons). The burden on a governmental agency is minimal when an injunction imposes attorney access requirements that are "no more than what is required by" the agency's own regulations. *S. Poverty L. Ctr.*, 2020 WL 3265533, at *33. Similarly, Defendants have no legitimate interest in depriving people held at Alligator Alcatraz of consideration of motions to redetermine custody or bond that are guaranteed by federal statute and regulation. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 1003.19(a).

For these reasons, the "public interest does not support [Defendants'] expenditure of time, money, and effort in" restricting access to attorneys and bond hearings in ways likely to be found unconstitutional. *Fla. Businessmen for Free Enterprise v. City of Hollywood*, 648 F.2d 956, 959 (11th Cir. 1981); *see also Hispanic Interest Coalition of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1249 (11th Cir. 2012) (holding that the equities favored an injunction against a state law, where the state of "Alabama [had] no interest in enforcing a state law that [was] unconstitutional, and the interference with the educational rights of undocumented children [was] not a harm that [could] be compensated by monetary damages").

## IV.   The Court Should Not Require Plaintiffs to Provide Security Prior to the Issuing a Preliminary Injunction.

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damage sustained by any party found to have been wrongfully enjoined or restrained." Decisions regarding the security required to be posted in connection with the issuance of preliminary relief "are entrusted to the discretion of the district court," including the discretion to "elect to require no security at all." *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres*, 910 F.3d 1130, 1171 (11th Cir. 2018) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978)). District courts exercise this discretion to

require no security in cases brought by indigent, detained, and/or incarcerated people, those seeking to exercise their constitutional rights, and in cases that benefit the public interest. *See, e.g.* *Campos v. I.N.S.,* 70 F. Supp. 2d 1296, 1310 (S.D. Fla. 1998); *Cruz v. Dudek*, No. 10-23048-CIV, 2010 WL 4284955, at *16 (S.D. Fla. Oct. 12, 2010), report and recommendation adopted sub nom. *Cruz v. Arnold*, No. 10-23048-CIV, 2010 WL 11601831 (S.D. Fla. Nov. 24, 2010); *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326 (M.D. Fla. 2009); Wright & Miller, Fed. Practice & Proc. § 2954. This court should do so here.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' motion should be granted.

Dated: July 29, 2025                    Respectfully Submitted,

*/s/ Paul R. Chavez*                    */s/ Eunice H. Cho*
Paul R. Chavez (Fla. Bar No. 1021395)   Eunice H. Cho*
Christina LaRocca (Fla. Bar No. 1025528)  AMERICAN CIVIL LIBERTIES UNION
AMERICANS FOR IMMIGRANT                 FOUNDATION
JUSTICE                                 915 15th St. N.W., 7th Floor
2200 NW 72nd Ave                        Washington, DC 20005
P.O. Box No 520037                      202-548-6616
Miami, FL 33152                         echo@aclu.org
786-218-3381
pchavez@aijustice.org
clarocca@aijustice.org                  Corene Kendrick*
                                        Kyle Virgien*
                                        AMERICAN CIVIL LIBERTIES UNION
Amy Godshall, Fla. Bar No. 1049803      FOUNDATION
Daniel Tilley, Fla. Bar No. 102882      425 California Street, Suite 700
AMERICAN CIVIL LIBERTIES UNION          San Francisco, CA 94104
FOUNDATION OF FLORIDA                   (415) 343-0770
4343 West Flagler Street, Suite 400     ckendrick@aclu.org
Miami, FL 33134                         kvirgien@aclu.org
786-363-2714
agodshall@aclufl.org
dtilley@aclufl.org                      *Attorneys for Plaintiffs*

                                        *  Admitted pro hac vice*