DECLARATION OF WENDY BARLOW

I, Wendy Barlow, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called on to testify, I could and would do so competently and truthfully to these matters.

2. I am a partner at Cohen, Tucker, & Ades P.C., an immigration law firm based in New York. I have been practicing immigration law for over seventeen years.

3. I currently represent A.S., who is currently detained at the facility known as Alligator Alcatraz.

4. A.S. wishes to proceed under pseudonym in this case due concerns about his safety and wellbeing. He believes that public disclosure of his identity could expose him to abuse by staff or other detainees of Alligator Alcatraz as both have become increasingly aggressive in light of the conditions at the facility. He further believes that public disclosure of his identity could negatively impact his eligibility for future immigration benefits as a way to punish him for participating in this action.

5. A.S. is a national of Saint Christopher & Nevis and the Russian Federation. He entered the United States lawfully on a valid B-2 visa, and subsequently filed a Form I-140, Petition for Alien Worker seeking EB-1A classification and Form I-485, Application to Register Permanent Residence or Adjust Status with U.S. Citizenship and Immigration Services on January 22, 2025; U.S. Citizenship and Immigration Services has not adjudicated A.S.'s Form I-140, Petition for Alien Worker seeking EB-1A classification and Form I-485, Application to Register Permanent Residence or Adjust Status with U.S. Citizenship and Immigration Services. He was in the process of seeking employment authorization. He planned to work as an entrepreneur in the manufacturing industry; A.S. has previous experience redeveloping failing manufacturing businesses. He has no criminal history that would make him ineligible for bond. A.S. is eligible for release from detention on bond. He never received a Notice to Appear.

6. The state of Florida has not charged A.S. with any civil or criminal violation that would justify his detention by the state. A.S. has advised our office he suffers blood pressure, which has been exacerbated by detention. He was moved to a facility within Alligator Alcatraz where his blood pressure is being monitored more closely. A.S. filed his Form I-140, Petition for Alien Worker seeking EB-1A classification and Form I-485, Application to Register Permanent Residence or Adjust Status before his authorized stay expired and therefore, was authorized to remain in the U.S.

7. A.S. was taken into custody on July 14, 2025, after ICE officers came to his residence and advised him that he had overstayed his authorized stay. He was immediately taken into custody. He was first detained at the Miramar ERO Field Office before being transferred to Alligator Alcatraz. We constantly monitored the online detainee locator for

information regarding A.S.'s place of detention. The online detainee locator did not provide a location, but rather stated call the Plantation ERO Field Office. We repeatedly attempted to reach the Plantation ERO Field Office, but the phone was never answered. The phone number designated for attorneys was shut down. It wasn't until later that week that another attorney told us anecdotally that the Plantation ERO Field Office was shut down. We called the Miramar ERO Field Office repeatedly and could not reach anyone. We only learned of A.S.'s detention location from his close friend.

8. On July 21, 2025, our office filed a motion for pre-NTA custody redetermination ("bond motion") on his behalf at the Miami Krome Immigration Court.

9. On July 21, 2025, the Miami Krome Immigration Court rejected our client's bond motion, stating that Alligator Alcatraz does not fall within its jurisdiction. We contacted several immigration courts to determine which one has jurisdiction over individuals in Alligator Alcatraz. The immigration courts directed us to the Department of Homeland Security ("DHS"), but DHS referred us back to the courts without giving us an answer.

10. On July 21, 2025, after Miami Krome Immigration Court rejected our pre-NTA bond motion, our office filed pre-NTA bond motion on his behalf at the Miami Immigration Court.

11. On July 24, 2025, the Miami Immigration Court rejected our client's bond motion, stating that Alligator Alcatraz does not fall within its jurisdiction. We contacted the Miami Immigration Court to determine which one has jurisdiction over individuals in Alligator Alcatraz. The rejection notice advised us to file the bond motion with the detained court. We contacted the Miami Immigration Court to inquire as to which detained court has jurisdiction given Miami Krome Immigration Court had also rejected our pre-NTA bond motion and we were advised to contact DHS. DHS has continually referred us back to the courts without giving us an answer.

12. I have not been able to speak confidentially with A.S. during his detention at Alligator Alcatraz, due to the attorney access restrictions described in this case A.S., however, has confirmed that he would like to participate as a plaintiff and as a class representative in this case.

Executed this 29th day of July, 2025, at New York, New York.

_____
Wendy Barlow