UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 25-CV-23182-RAR

C.M., MICHAEL BORREGO FERNANDEZ, J.M.C., E.R., on behalf of themselves and all others similarly situated, et al., Miami, Florida

Plaintiffs, July 28, 2025

vs. 11:00 a.m. - 12:36 p.m.

KRISTI NOEM, Secretary of the United States Department of Homeland Security, et al.,

Defendants. Pages 1 to 89

---

STATUS CONFERENCE - VIA ZOOM
BEFORE THE HONORABLE RODOLFO A. RUIZ, II
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

EUNICE HYUNHYE CHO
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 15th Street NW, 7th Floor
Washington, DC 20005

CORENE T. KENDRICK
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street
Suite 700
San Fransisco, California 94104

(Appearances continued.)

FOR THE PLAINTIFFS:

AMY NICOLE GODSHALL
4343 W. Flagler Street, Suite 400
Miami, Florida 33134

CHRISTINA ISABEL LaROCCA
AMERICANS FOR IMMIGRANT JUSTICE
LITIGATION and ADVOCACY TEAM
2200 NW 72nd Avenue
Miami, Florida 33152

PAUL RAYMOND CHAVEZ
AMERICANS FOR IMMIGRANT JUSTICE
LITIGATION and ADVOCACY
6355 NW 36th Street, Suite 309
Miami, Florida 33166

FOR DEFENDANTS, RONALD DeSANTIS and KEVIN GUTHRIE

NICHOLAS JOHN PETER MEROS
SHUTTS & BOWEN, LLP
215 S Monroe Street, Suite 804
Tallahassee, Florida 32301

FOR FEDERAL DEFENDANTS:

ANGELA ANGELICA VICIANA
MIAMI-DADE COUNTY ATTORNEY'S OFFICE
111 NW 1st Street, Suite 2810
Miami, Florida 33128

FOR MIAMI-DADE COUNTY DEFENDANTS:

MARLENE RODRIGUEZ
UNITED STATES ATTORNEY OFFICE
99 NE 4th Street, Suite 300
Miami, Florida

STENOGRAPHICALLY REPORTED BY:

ILONA LUPOWITZ, RMR, CRR
Official Court Reporter to:
The Honorable Rodolfo A. Ruiz, II
United States District Court
Southern District of Florida
400 North Miami Avenue
Room 11-2
Miami, Florida 33128
(305) 523-5737

(Call to the Order of the Court.)

THE COURT: A brief word. You may have heard some audio just now about recording. That's internal, for the Court for transcription purposes. To the extent any outlets are here, or individuals that are participating or want to watch, you're more than welcome -- this is a public proceeding -- but I cannot have any recording pursuant to our local rules. So please do not record or take pictures of any of the proceedings.

So with that, we'll go ahead and get started.

We are here this morning in Case No. 25-23182. This is the matter of C.M., Michael Borrego Fernandez, J.M.C., and E.R., on behalf of themselves and all others similarly situated, et al., versus Kristi Noem, Secretary of the United States Department of Homeland Security, et al.

Now, I believe I have my full plaintiffs' team here, but I want to confirm. I see Ms. Cho. I see Ms. Kendrick, Ms. Godshall, Mr. Chavez, and Ms. LaRocca.

Am I right that I've got the team for the plaintiffs?

MS. CHO: Yes, Your Honor.

THE COURT: Ms. Cho, will you be taking the lead for me this morning? I'm sure everyone else might want to be heard, but in terms of looking to one individual lawyer for arguments, is that fair?

MS. CHO: That's right, Your Honor.

THE COURT: Great. Thank you.

Now, I know I have counsel that has appeared for different defendants. I saw that on behalf of Miami-Dade County, I see Ms. Viciana is there, correct?

MS. VICIANA: That's right, Your Honor.

THE COURT: Now, I'm looking for my squares, for both the Department of Homeland Security and the official for the state.

Who do I have -- who's here on behalf of the state defendants?

MR. MEROS: Yes, Your Honor. This is Nick Meros. I'm here for Executive Director Kevin Guthrie and Governor Ron DeSantis.

THE COURT: Very good. Thank you.

And on behalf of the federal officials, who do I have here?

MS. RODRIGUEZ: Good morning, Your Honor. Marlene Rodriguez from the U.S. Attorney's Office -- I believe it shows up as M. Rodriguez -- on behalf of the federal defendants.

THE COURT: Thank you.

Any other lawyers that are making appearances, for purposes of today, that I haven't noted?

Okay. I think I have everybody. All right. So let's get started.

So I think a brief procedural recap is in order so we

can figure out exactly how we got here and what the Court's looking at. As we know, on or about July 16th, 17th, we had the initial complaint hit in this case.

Now, when the complaint came through, the Court noted -- and it continues to be fashioned in this way, of course -- that it is primarily driven by access claims under the First Amendment. There are five counts, as you-all know. We have two that are First Amendment counts against federal entities, on behalf of organizational and individual plaintiffs, and those are being brought in a class action fashion. And then, we also have two counts that are against the state officials, also First Amendment, but, again, under 1983 in those instances and, also, quarterly on behalf of a class.

So the first four counts -- two federal, two state -- two were constitutionally grounded; two 1983. Again, First Amendment, but coming in through 1983, right?

Then we have this fifth count. It's a due process count. That count is unique to the EOIR party, or that proceeding for that one plaintiff, the N.M. plaintiff that is being brought forth, that particular Count 5 is not structured as a class action count. So that's what the complaint looked like.

So you guys filed that, and then I soon thereafter received the motion for temporary restraining order. It is

expedited. I appreciate the plaintiff's clarification in the recent status report.

I think you can understand my concern. It was really driven by the fact that the pleadings and the motion were filed around the 16th, 17th of July, and a ruling was asked by the 21st of July. So the Court, for a moment, thought this looked more like an emergency posture. But in any event, as you guys had clarified, you did seek an expedited ruling on that TRO motion.

Now, that TRO motion that was filed, again, is connected in some ways, as it needs to be, to the complaint. But then on Friday, we received a supplement to the TRO motion.

Now, that supplement has indicated a little more of an expansive view of the relief that's been requested as compared to the original complaint. And specifically, what has happened now -- and again, let me be very clear. This is a very fast-moving situation, so I'm not faulting anybody for theories changing and new facts coming into play. I know a lot is unknown to the plaintiffs, and that's hopefully what I'm going to be getting into today, is getting some clarity from everybody, especially the defendants.

But in any event, that supplement went ahead and focused more on Count 5 now. And specifically -- and again, you did raise it in Count 5 of the complaint as to the individual defendant -- it focuses on this bond determination

issue and the immigration judge jurisdiction concern.

So put simply, we've got individuals that are going in, purportedly, to the facility. They are hoping to get a bond determination, as is provided under our immigration system. And ultimately, immigration judges are indicating that they don't have jurisdiction. And there seems to be some confusion as to who exactly is running the show at Alligator Alcatraz, be it state, be it feds, be it some sort of agreement between the two, which we're going to talk about this morning.

But in any event, the supplement focuses a lot on, through Count 5, a what I would say is a new -- I don't want to say theory, but certainly a new component to the underlying allegations that's not been framed. And what I'm speaking about in particular is the fifth count of the complaint, a Fifth Amendment claim really brought by Victoria Slatton third-party plaintiff on behalf of N.M.B.

Now we see, for the first time, a broader request for relief on behalf of all detained plaintiffs. So we went from a complaint focused on one individual who was facing this immigration bond problem, and now I have a supplement to the TRO that is asking for broader relief. In fact, it's now setting it up as a class. It wasn't a class action count in the original complaint as opposed to the First Amendment counts. It expands beyond what has been defined as the EOIR defendants. And again, we're talking about now new factual

allegations regarding the inability for all detained plaintiffs to file bond petitions, and it requests that the Court identify the immigration court has jurisdiction over all detained plaintiffs.

So we've come a long way. We had a Count 5 with just one individual. We've got a supplement to a TRO that now says I need this relief for everybody. Oh, and by the way, it's a class now; it's no longer just the individual, N.M.B. So obviously, we have a new permutation of the original complaint.

So I say all of that to say this: The goal of today, now that I've set out this procedural history, is to figure out what are the next steps, what are the operative pleadings, and what we really want to do here because -- I think plaintiffs, hopefully, are hearing from the Court some concerns, procedurally, with the way in which the supplement has expanded the relief sought in the TRO and together have expanded the relief sought in the complaint. And my concern -- and case law on this is pretty clear -- is without it being tethered to the complaint, I can't back door in a broader request for relief through the TRO and supplement than has been pled in the original complaint.

And I'll go one step further. Put aside the complaint for a second. The Court is not in the position, on the TRO motion itself, to rule on it by way of in a supplement that expands or changes it. Just by local rule functions we need

one motion, one TRO motion.

And again, I want to be very clear. I understand it's fast-moving, so I'm not faulting the plaintiffs here for seeking to change or at least add or modify the relief. The problem is, we've teed it up now in a bit of a disjointed way, and if we want to do this quickly and we want to do this cleanly, we've got to go ahead and fix this.

So let me ask you, Ms. Cho: My first big question is, this TRO motion and this supplement, I feel like I'm in a position to request, at minimum, that the supplement and TRO be filed as one amended TRO motion because I can't be looking at a supplement that's bigger than the TRO motion.

But I'm going to go one step further. I think you would agree with me that this has been expanding for the detained plaintiffs' Fifth Amendment protections, from the complaint through the TRO, and now the supplement. It makes me think that you might want to file swiftly an amended complaint to expand Count 5 as a class because, right now, I can't give you any of the relief you seek on this bond issue beyond what's been framed. So that's my initial concern.

I want to hear from you and your team. What do I do about that, and what do you want to do about that? I'll turn it to you.

MS. CHO: Yes, Your Honor. Thank you.

Your Honor, our proposal is to request leave to file a

supplemental complaint under Federal Rule of Civil Procedure 15(d). The supplemental complaint would add additional plaintiffs and class representatives to the case that would provide additional factual allegations of the events that took place after the filing of the initial complaint. It would define a new proposed subclass, and it would allege a revised procedural due process claim, that claim five that you were referring to, on behalf of that subclass, and request additional relief as outlined in the supplement to the TRO. So that would ensure that the scope of the requested relief in the supplemental TRO motion would be in alignment with the pleadings.

The plaintiffs would also be very glad to file an amended TRO motion that puts the two TRO pleadings together, and would also be willing to file an amended class certification motion that would request certification of the subclass of detainees at the facility who seek release on bond. We could file that within 24 hours of the hearing today or the conference today.

THE COURT: I appreciate that. That's exactly what I was hoping you were going to say, that you can do all that within 24 hours.

Now, I hate to be difficult on procedure. Any reason why we've got to do it under 15(d)? I only say that because, boy, do I not like having multiple complaints. When I write an

order, I want everything in one place.

Is it really that hard to just add this into the existing complaint so I have, in 24 hours, an amended complaint, an amended motion for class cert., and an amended TRO motion? I know you want to do it supplemental, but -- and I know you have leave, obviously, under Rule 15, but I'm just wondering, is there really that much of a need? Maybe you can tell me why you want to do it that way instead of a fresh complaint.

MS. CHO: Well, Your Honor, what we can do is file one complaint, with the supplemental facts added into one document, so that you have the original -- so you're not working with two sets of pleadings. But we believe that there is a distinction under Rule 15(d). There's a distinction between the supplemental complaint and the amended complaint because the supplemental complaint allows the plaintiffs to add facts that have happened after the initial filing of the complaint, such that we don't have to update the initial facts that were pled.

So what we could do, Your Honor, is file one document that includes all the allegations and facts that were pled in the original complaint, with the supplemental facts, and basically amend the claims in that one document, if that would be okay with you, Your Honor.

THE COURT: That may make the most sense, so it's just one ECF for me going forward. And it would just be you'd

refile the amended complaint and supplemental, but it would be under one, and it would be clear for me that that is the operative complaint in the way you're doing it. I'm fine with that.

And are you okay with doing those three functions? You're a step ahead of me, which is the motion for class cert., of course, must be amended by virtue of what we're talking about.

So any issue with, then, all three of these documents being re-filed so I have one TRO, one amended complaint and supplemental under one filing, and then one new amended motion for class cert.?

MS. CHO: Yes, Your Honor. We'd be able to do that within 24 hours.

The question I have for you, Your Honor: Would you like us to file a formal motion for leave to file supplemental complaint under 15(d) or --

THE COURT: I'm going to treat it today as an ore tenus motion, and I'm going to grant it in an order when we're done today, and you can file it forthwith. I'm going to say, within 24 hours, as agreed and understood by the parties, that'll all be filed by the end of tomorrow. And absolutely, what I'm going to do is give you that leave today and treat this as a motion. And again, it's -- I appreciate you trying to suggest having to go through the filing of it, but we obviously want to

do this quickly. I don't have a problem with that. Okay?

MS. CHO: Thank you, Your Honor.

THE COURT: Let me ask you this, because you've opened a door to something and I want to follow up: We talk a lot about this being framed as a TRO. You know, nowadays, you know, we all -- I think with fast-moving cases like this, it's understandable why people move forward under TRO status. But, you know, one of the things with TROs that to me always can be a little difficult is -- we know, under Rule 65, we have our 14 days. We can reup for a like amount of time.

At its core, you have a TRO and preliminary injunction motion, essentially, you've asked. TROs, as we know, tend to be more status-quo driven. I'm not adverse to them. I always believe, though, in making very sure that the extraordinary relief is there before we even entertain them.

I'm just trying to understand, procedurally, does it make a lot of sense when you refile -- because I know you're going to refile it. Wouldn't this just be -- because here's what I'm thinking: I'm ready to expedite brief this entire thing, and I'm ready to come out of today with a hearing live that we're going to put on calendar. My goal today is do pleading cleanup, get it here on the books, expedite briefing -- I have defendants here, so they're on notice -- get them to file, hear argument, and then issue ruling as soon as possible.

My question to you is, does it really need to be in a TRO posture? We all know it's the same substantive test, other than the procedural part makes for a little bit of a mess. Because I would rather have it just be done expedited, but just have it be motion for preliminary injunction, and we'll set it right away.

Is there any reason why -- since it's not even an ex parte now -- we've got defendants in here. You served them. I noticed them. They're here.

Any reason we don't have it just as a motion for preliminary injunction?

MS. CHO: No, Your Honor. We would be happy to refile it as a motion for preliminary injunction if there's expedited briefing, yes.

THE COURT: You guys have asked for expedited briefing. My goal today is, get it on calendar, order expedited briefing, clocking from the 24 hours. We'll going to have oral argument here in court, and we're going to do this the clean way. Because if not, then we've got the 14 days; then, we have another round. What are we waiting for?

Now, I get it. You filed because you needed to move. But now we've had a chance to get everybody in the case, we might as well do it the best way possible, which is throw away the preliminary injunction and clean it up.

So I would ask that we refile it as a preliminary

injunction motion, and we're going to set expedited briefing on that. That just makes a lot more sense to me. It takes care of a lot of procedural problems that I may have with it, right?

MS. CHO: Yes. We'll do so. Thank you, Your Honor.

THE COURT: All right. So here's the next thing. And let me -- and this is of course -- I know that the defense is here, but this is where the defense is going to come in. And I want to hear what you guys have to say on this. All right?

So you've got your amended complaint. I'm giving you the 15(d), and you're going to come in now with your supplemental facts under one docket number. One of the core concerns -- and it's a driving force behind your pleadings -- is that 1983 issue.

And why is that a concern? You-all know it, and I know it, that the state/federal issue here is of paramount importance when it comes to getting clarity on what is going on at Alligator Alcatraz. You have two counts that are against the state official, right, under 1983, First Amendment counts in your original complaint. My concern -- and you guys raised it in the supplemental -- is 287, 1357. In other words, there has to be an agreement. At least from what I've seen, you guys have pointed to representations made in my colleague, Judge Williams' case across the hall, that there's an understanding that under 1357, that statutory provision that provides for the 287 agreements, that there is a 287 agreement in place whereby

the state is the one running the show at Alligator Alcatraz.

Now, that has a very practical consequence, as you know, Ms. Cho, for you guys because if indeed the state is running the show under 287, there is pretty well-established case law that would essentially negate your 1983 claims, right? Because now they're acting under federal law. They've been deputized, for lack of a better word. Sure, you could argue *Bivens* and other cases, but there wouldn't be a 1983 cause of action anymore because now it would be under a 287 agreement.

Now, you said to me you don't even know -- and that's part of the problem -- who's doing what in this facility, right?

So my next question is really to the defense team, and probably really focused more so on Mr. Meros and Ms. Rodriguez. I don't know if you're prepared to make a representation here today, but I think you would all agree with me that the best thing to do today is to figure out what is the 287 situation because I have to think that there is an agreement between the federal and state government on how this facility is being managed. And if indeed there is an agreement where the state is running the show under 287, then I know that, Ms. Cho, you will file perhaps -- and this is why I was a little worried about the 15(d). Your original complaint may have 1983 causes of action that are now going to be foreclosed because they are acting -- not under state, right? Not under the state

authority and applying the law on the First Amendment concerns you have, but they're going to be federal, essentially, acting as federal officials.

So would you agree with me, Ms. Chose, that that's a major issue on those two counts, that we need to know that to see if those counts are viable?

MS. CHO: Your Honor, I agree that we need to understand the basis of the 287(g) agreement, or whatever agreement is underlying the custody of individuals here. It would implicate our ability. It would shape the claim and which claims we would be bringing properly to which defendants.

THE COURT: And you would agree with me that if you look at the plain language of 287 (g)(1), your supplement casts some doubt on that. I know you're saying you don't know if they're acting under 287(g).

But I think we can all agree that if indeed it is being operated under 287(g), the plain language of the statute makes clear that now our state subdivisions and our state employees are performing the function of immigration officers in relation to the investigation, apprehension, or detention of aliens in the United States.

So again, what would happen is, at that point we are dealing with individuals from the state that are operating under 287, and that could bar the 1983 claims, if indeed they're doing that. Right?

MS. CHO: No, Your Honor. Even in cases where defendants -- state defendants are operating under the auspices of a 287(g) agreement, they are still subject to -- they are still subject to liability under Section 1983 for constitutional violations because they --

THE COURT: I'm sorry. How do you -- is that a position -- and again, we haven't really briefed it. But my understanding is, having looked at all the case law in this area, that when state officials are acting under 8 U.S.C., Section 1357(g), they're acting under color of federal, not state, authority when assisting in enforcing immigration laws and incarcerating illegal aliens, and may not be subject to 1983 actions arising out of that assistance. And that drives from 287(g)(8) which says -- and I'm going to quote it in full: "An officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into this subsection" -- and this is the key part -- "shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit, of the officer or employ in a civil action brought under Federal or State law." And that's directly from 287(g)(8).

So I ask you again, you believe that if I prompt Mr. Meros right now and find out, and he says to me, unequivocally -- and I get the same from Ms. Rodriguez --

Judge, we're running this under a 287 agreement, that you're still going to be able to maintain a 1983 action against the state officials?

MS. CHO: Well, Your Honor, we don't know exactly what the basis is for the agreement. There are concerns with respect to the 287 -- to the extent that the state defendants are claiming that their authority is existing under a 287(g) agreement. There are several anomalies that we are seeing at the facility with respect to Alligator Alcatraz, that we don't know what truly is the basis for custody, and this is why I think it's so important that the plaintiffs be able to understand the legal authority and the agreements upon which this arrangement is based. And we really cannot take a position on this until we see those agreements.

For example, there are many things happening at the facility that are clearly foreclosed by the 287(g) statute.

For example, the -- under 287(g), the federal government cannot disclaim decision-making over detainees because ICE is required to control and supervise the process. Here, ICE has told attorneys that they do not have custody over people who are held at Alligator Alcatraz. Under 287(g) the state can't hand over the reigns to private contractors, as is happening at Alligator Alcatraz. They have contracted out with private contractors to run the facility. That is foreclosed by 287(g) because the statute requires and applies only to state

and local officers.

In addition, under 287(g), the staff dealing with immigrants who are being held in custody must be specially trained, and it does not appear that the Florida state employees at the facility know what an immigration officer is supposed to do, including the facilitation of access to counsel, ensuring the appearance of these detainees at immigration court, and to be able to explain the immigration charges under which a person is being held. If this truly is a 287(g) agreement, this can't be the full story, as there are things happening at the facility that the statute simply says that we cannot do.

So at this time, I don't know, without further information, that we can take a position with respect to which claims can be properly brought against the state defendants or the federal defendants, Your Honor.

THE COURT: That's fair. I hear you. I think that part of it is not understanding the relationship. I mean, certainly, I guess there could be a lot divined from the agreements in that you could have a better understanding of what exactly the responsibilities are. And maybe you believe there is a separate cause of action against the state officials, even if 287 is in place, because they're acting essentially outside the scope or not as permitted by 287, or because there's elements of 287 that are missing. Right? I

mean, that's the concern?

MS. CHO: That's right, Your Honor.

THE COURT: And I guess that could come in many forms right? It could come -- I don't know this -- maybe as some sort of standalone action, or an *Ex Parte Young* issue, or something else. It might not necessarily be 1983, but we just don't know is your concern.

MS. CHO: That's right, Your Honor. We don't understand the legal basis for the authority, and we have not seen the agreements that are animating the relationship between the state and the federal government here.

Again, this is unprecedented, your Honor. We have not ever seen a situation where hundreds of people are being held without charge, without access to the immigration courts, under a legal authority that has not been explained. And people at Alligator Alcatraz are being detained without being charged, either under federal immigration law or state criminal charges. And ICE is disclaiming responsibility for the people held at the facility, saying that they're in Florida state custody, not ICE's. But ICE is then sending attorneys to the state of Florida. And when folks have emailed Florida, Florida sends them right back to ICE. Everyone seems to be avoiding responsibility for providing legal recourse for people who are being held at the facility. We've never seen immigrant detainees denied access to immigration courts in this manner,

and we need to have more clarity as to what -- just the basic sense of who has legal custody over the plaintiffs and on what authority.

THE COURT: Let me ask you this: As we start to reboot, if you will, in the next 24 hours -- the next question is really going to go to the defense. But before I turn it to them, this nature of the agreements would certainly help the Court because, you know, when you file, right, your new supplemental addition to the amended complaint, and your revised motion now for preliminary injunctive relief, certainly when it comes to success of likelihood on the merits, right, it would really help the Court if I knew more about the 287 agreement. And that would be good for all sides because the Court may be walking into a bit of a black hole, as well, about the interplay between the federal and state authorities. And certainly, jurisdictional concerns, right, have been raised here about immigration courts, and what they can and cannot do, and who's responsible for even issuance of bonds, right, for some of these folks that have been detained?

So I would agree with you, and I don't know -- I take it from your answer, you are prepared to move forward without clarity on that answer of the 287 quite yet. Is that fair? You can go forward with it?

Because my question is going to be to the defense -- I'm prepared for some sort of expedited discovery. I don't

necessarily need to open up the floodgates, but the 287 issue is so fundamental as to who the proper parties are, who's under what scope of authority, who's doing what, whether I give them assurances of in-camera review, redactions, under seal. But I am curious because in the very short term, knowing what's happening with the 287 agreements would really help me, let alone all of us, understand what are viable claims.

But I take it you're ready -- I mean, I know you want those agreements, as well, because you've put it in your supplement to the TRO. But you're prepared to go forward on re-pleading without them, correct?

MS. CHO: Well, we have asked again, in the supplemental TRO motion, which we will refile shortly, that the defendants provide that information with a response to the briefing, such that we have an opportunity to reply to that additional information. If there are, for example, additional claims that come to mind, we would, you know, request a leave to be able to perhaps again come back to the Court, amend pleadings if necessary.

THE COURT: Sure. I mean, if there needs to be leave at any point, that's, under Rule 15, liberally granted.

Mr. Meros, I've held you off long enough. I definitely want to hear from you and, in a little bit, from Ms. Rodriguez, as well as Ms. Viciana. I think you're seeing that the first goal of today is doing housekeeping on the plaintiffs' side.

So there's not really a lot for you guys to jump in on on that front, other than I am certain, if you got a chance in the short time you've been in the case to review the pleadings, you would agree with me, as currently constituted, we have a lot of things that need to be fixed.

Number one: We have this supplemental -- addition to the TRO that under our local rules isn't really a viable way to litigate or expand the scope of relief. They've already agreed they're going to fix that. They've already agreed that this is going to become a preliminary injunction motion. That means we don't have to worry about ex-parte concerns. That means you guys are going to get to brief an opposition to the papers, which is what I wanted. I don't like to rule first and ask questions later. I'd like it to be briefed whenever possible, at least on an expedited timeframe.

So that's been cleaned up. And, of course, you're going to get this 15(d) filing, so you're going to have a better sense, along with the amended motion for class cert.

Now, I take it you guys are prepared, for purposes of expedited briefing, once this comes in. And I'm going to get a sense from you and the fellow co-counsel for the different defendants on what that timeframe can look like. Because I think we can move quickly on some of this, on the preliminary injunctive relief, of course.

And I'm curious about this 287 issue. I don't know if

you're prepared today, or maybe Ms. Rodriguez is, to make a representation to the Court as to what the nature of the agreement is. Perhaps you're even more so comfortable with producing some of these agreements through a court order, and I can give you protection on the production in the sense that if there's anything confidential, we can talk about redactions. But it would really help me if I had a sense. And maybe it comes as an attachment to your papers. I don't know.

Can you speak on -- if you want to pull back, that's fine -- generally, your comfort level with the timeline, the fact that we've done a reboot here to clean this up a bit, and the 287 issue. I'll turn it over to you.

MR. MEROS: Yes, sir. Thank you, Your Honor. That's a lot, so I'll try to keep it --

THE COURT: Yeah, go ahead.

MR. MEROS: So on the -- on the cleanup issue, we absolutely agree. You know, the -- the TRO went further in the requests -- the requests for relief that was in the -- I think, actually, the complaint itself asked for things that were not covered under claims under the complaint, including certain things about accommodations, about interpreters, other things that are not included under the First Amendment. So there are scope issues with both the complaint, the TRO, and surely with the supplement.

On the supplemental issue about the 287(g) agreements,

I'm not prepared today to say definitively what our position is. Obviously, we just started Friday. You know, we -- we certainly have an idea, but I need to confirm that.

You know, my other concern with that, though, is as part of the supplement, they are not tying their request for this agreement to any kind of claim. The First Amendment claim, that doesn't guarantee them the right guarantee them the right to this agreement, nor for an ADA claim or due process claim necessarily. So, you know, I think they would certainly actually need to provide some justification under law, you know, that they would be required to have this agreement.

To the extent it comes under discovery, I mean, obviously, you know, this is an expedited case. It has been 12 days since they filed this case. They have not sought expedited discovery. You know, I think they would need to move forward on expedited discovery, and we would probably need -- have the ability to be able to respond to that quickly because you know there's not -- obviously not a guaranteed right for expedited discovery.

I think there's also an issue with some of the -- some of the allegations, you know, they're seeking -- you know, they're seeking (indiscernible) relief on some things, but obviously there's been no class certified for some of these issues in the TRO and, certainly, in the supplement.

And even, you know, I think -- I probably should have

brought this up first. But even beyond that, I think kind of the threshold issue, we want to make sure that we brought it to the Court. There's a clear venue issue for this Court.

THE COURT: Clear what issue? I'm sorry, Mr. Meros. I didn't hear. Clear what issue?

MR. MEROS: Venue issue.

THE COURT: Venue issue. Let's talk about that.

MR. MEROS: Yes, sir.

So your colleague in the environmental case, Judge Williams, is having a hearing, I believe, on Wednesday on this issue. Your colleague, Judge Altman, in a few other cases --

THE COURT: Let me interrupt you there. I looked at some of those. Judge Altman did a couple of paperless 2241s because it's brought by individuals in custody. We all know that's easy. You've got to go ahead and send those back where people are housed. My understanding is Judge Williams, although it's briefed -- correct me if I'm wrong -- she hasn't ruled on venue yet. I think you've got a hearing in a few days; isn't that right?

MR. MEROS: Yes, sir, that's right. She has not ruled yet.

THE COURT: So just be careful because they're very different claims than 2241s. Because I looked at those. Those, I would agree with my colleague. This is a little different.

Go ahead, though, and finish up the concern on this because I had a similar concern when it came through under our venue statute. And at least as I see it -- you know, I first educated myself on the Dade/Collier sharing of the runway and some of the land, which I know that's been percolating in my colleague's related case.

My issue, though, on the venue statute is -- my understanding is, we do have a government defendant that is located in my district. So under, I believe, 1391 -- it would be (b)(1), right -- a judicial district in which any defendant resides. And that would be, I think, the ICE field director who sits in my district.

And then, if you go one further from that, there is an extension under Subsection (e), where defendant is an officer or employee of the United States. And there, it appears to me that we have no problem once one defendant is properly located, that all the remaining defendants can then be brought in, into our district.

So I think, for example -- I think we have counsel for her here. Ms. Green, is also named, right, as the Director of the Corrections and Rehabilitation Department of Miami-Dade County, and then Garrett Ripa is the one I mentioned earlier, the Field Office Director for ICE's Enforcement and Removal Operations, ERO, in Miami, in the Florida field office.

So I actually had the same thought when this came

through. But after a little bit of digging, when I looked at Subsection (e) of the statute, at long as I have Ripa named, then it appears that the remaining defendants can then be brought in. Because it says there, a civil action in which the defendant is an officer or employee of the United States, or any agency thereof, acting in his official capacity under color of legal authority or an agency may, except as otherwise provided by law, be brought in any judicial district in which a -- a defendant in the action resides. So that means they can bring in the governor, and all the other players down into this district, because Ripa is in it.

So I think -- I don't want to belabor it, but I think the venue argument's a loser. I don't know there's something else there I'm missing. I know that the property is a legitimate concern. Don't get me wrong. I know that it seems to be in the middle district. The runway issue is a little bit sketchy to me. But I didn't focus on that. I focused on the first part of the venue statute. And if Ripa's in the case, then everybody else can come down here.

Am I not right on that?

MR. MEROS: No, Your Honor. We disagree with that because under 1391(e), that applies only to actions solely against a federal official or federal agency. 1391 -- you're right; 1391(b) applies to those not against federal agencies.

In the subsection you quoted, 1391(b)(1) does say "a

judicial district in which any defendant resides." But there's an addition to that, quote: "If all defendants are residents of the state in which the district is located." And the federal defendants here are certainly not residents of the state, certainly not residents of the Southern District of Florida.

So when the Court would apply 1391(e), that would only apply to the federal defendants. The Court would have to apply 1391(b), as in boy, to the state defendants.

So, you know --

THE COURT: You think (b)(1) is the first problem that's not satisfied? And I guess, are you then saying then that (b)(2), it doesn't -- it's outside of my district because it's the middle, given that this is kind of the Collier County area? Is that why -- I believe that you're finding -- you obviously would argue, then, (b)(2) is not appropriate.

Am I right on that?

MR. MEROS: Well, yes, sir. So two issues.

So you're correct, that (b)(1) would not apply for the southern because of the federal defendants. And then (b)(2), not just because of the property, which is certainly -- I think it's probably -- 98 percent of it is in the middle district, is in Collier County.

But even more importantly, the actual -- to the extent -- beyond the actual land itself, to the extent any decisions are being made, you know, any policies have to be made, that

would be occurring certainly not in the southern district. That would be occurring either in the middle district or in the Northern District of Florida. So there's certainly no hope there.

And then, obviously, where -- you know, 1391(b)(3) would only apply, you know, if there was no district in which, you know, a defendant can properly be brought. And we do believe that the federal defendants, potentially, could be brought in the southern district, or they certainly could be brought in the middle district. So 1391(b)(3) would not apply.

THE COURT: So your argument is, then, that the interplay between (b) and (e) -- because I think (e) -- you believe that if the gateway from (b) to (e) is the problem, and that (e) is not a standalone provision that would allow the federal government to be brought -- allow the other official to be brought in -- I want to make sure.

And I'll let you brief this. Don't worry. I'm just obviously understandably concerned with venue as first principle, so I want to make sure. But I also want to get a good sense of your argument. It's that when you're doing the interplaying, your read between venue in general and Subsection (e), titled, Actions Where Defendant is Officer or Employee of the United States, that this -- that breaks down for purposes of bringing you guys into this district.

Am I right on that?

MR. MEROS: Yes, sir. Yes, sir. We'd argue that because -- to the extent, you know, that -- (e) is specific, you know, that specific part couldn't override the general part of (b), which would apply into all their actions.

And I do want to say, you know, we're obviously -- we're ready to make some of these arguments but we would like to have the ability to make more, more arguments on this issue, to the extent the Court has questions about it.

THE COURT: But listen, let me make you feel a little bit better on this front. This is why this Court feels so strongly about TROs generally, as I think every district court today should, in that we need to ask some of these questions before we act outside of the scope either of the relief requested, or we make a mistake as to venue or jurisdictional concerns, which is why we're having this call in an expedited way.

I would fully expect that expedited briefing that's going to happen here, you would file a response to the preliminary injunctive relief motion forthcoming from Ms. Cho and her team in the next 24 hours, and that as part of that opposition, you would raise, first and foremost, a venue argument.

I need you to go ahead and brief that -- I don't want to prejudice you or, of course, plaintiffs -- so that I can fully understand if this is something that needs to be

transferred. Certainly, if you do believe -- if I believe that you're right on this, that may be the remedy. Not necessarily a dismissal, but we know under our federal rules and statutes, the appropriate thing is to go ahead and invoke a transfer.

But I don't know the answer to that yet, and I don't want to prejudice you at all. I do expect you, though, to brief it as part of your response in opposition to the preliminary injunctive motion.

Does that make sense?

MR. MEROS: Yes, sir. One issue I'll -- we would have with that is, it would be our position that it would be more appropriate for the Court to determine this venue issue before any other briefing occurs. So we would ask, just like Judge Williams is having, have briefing on the venue, have a hearing on the venue motion, you know, in an expedited manner. But then only after the Court determines that venue is appropriate, then have briefing and hearing on the other issues to make sure that the Court is not spending time on, you know -- and the parties are not spending time before a Court where venue is not appropriate.

THE COURT: Well, I guess -- and I'm going to hear from the plaintiffs on this. I guess the only reason why I may not necessarily be interested in that is, let's say, hypothetically, that you're right on venue, and the Court rules on venue and reaches no other arguments. The plaintiffs want

to move quick. If we only brief venue, and then we sit around and we wait for transfer, now what ends up happening is, they have to rebrief it in front of a colleague in the middle district. And then, what could happen is, it just adds more delay. It seems that it makes the most sense, even for judicial economy, to tee it up for a colleague if I ultimately transfer, because that would allow a colleague to be ready to go. And I would say in my order, I have only ruled as to the limited issue of venue, but everything else is still viable. And then we can go ahead and have it heard by another member of the middle district.

Now, again, I don't know because the flip side of that is, I disagree with you on venue, and then I would like to press on, at least on the request for preliminary injunctive relief, and not sit on it. That would be my preference than just doing a limited briefing on venue.

Now, if you think you can do venue immediately -- and I mean, like, in a couple of days -- then I'm fine with that. I mean, it would have to be really quick. I don't think this argument is terribly complicated.

Let me ask you, Ms. Cho. What's your sense -- and I know you're litigating, I think, on the other case also in front of Judge Williams. Are you not involved in that one?

MS. CHO: No, Your Honor, we're not involved in that.

THE COURT: I didn't know if it was something you were

already briefing, so it might save everybody some time.

So what's your sense on -- two things. Merit base. We don't want to argue this today. I didn't plan on doing that. But I'm just curious, your read on venue generally, in opposition to what Mr. Meros is saying. And then, regardless of the arguments, I'm curious as to what your take on his suggestion, that we deal with the venue issue upfront, preliminarily and quickly, before we move to anything else. Talk on those two things, if you could. Let me know.

MS. CHO: Sure. Well, Your Honor, we agree with you that this case is properly venued in the Southern District of Florida. We have government defendants here, as you noted, Mr. Ripa and Ms. Green, who are residents and are located in Miami, in this judicial district.

Additionally, venue is not a jurisdictional issue. And given the fact that there is an emergent situation, that -- given the alarming nature of the violations that are alleged in this case, we do not believe that it would make sense to delay briefing on the preliminary injunction for this venue argument. It could easily be dealt with within the context of the response briefing unless, for example, the defendants want to do it in such an expedited manner, that it does not delay the briefing.

But we would agree that it should be done at the response briefing. It would preserve judicial economy. And we

would ask the Court to be able to address the complaints that way.

In addition, I want to point out that the facts in this case and the allegations in this case are -- and the claims raised in this case are quite different than the ones that are raised in the Friends of the Everglades case. Many of -- you know many, of the operative facts have indeed occurred in this judicial district. As you know, decisions made by ICE field office in Miami have had direct impact with respect to both the location of the detainees and their ability to seek relief in immigration court located in Miami. For those reasons, we think that it is also properly venued here.

THE COURT: And I think just -- if I had to summarize your argument quickly, you -- again, I don't want to get into it too deep because it'll be briefed. But my read on what defense is arguing is that there is a general venue provision that somehow controls applicability of (e) as a precursor. I read (e) to be separate and distinct by its plain language, of when you have a defendant in the United States -- or a United States defendant, rather. So I don't know if that's really an argument that is established by the statutory construction. I'd have to look at it. I certainly want Mr. Meros to be able to brief it.

And let me ask you this: Isn't there a separate argument? I didn't want to give it such short shrift, but you

have another venue back-up argument you've made, I think. If my memory serves me right, Miami-Dade County's ownership has been raised. And I know that I made that mention earlier because I educated myself before today about the Collier -- Dade/Collier airstrip. The camp is on top, I think, of the airstrip.

The argument has been, and why you have Miami Dade County even in this -- and I'm sure Ms. Viciana is going to want to be heard on this -- is that they are actually the ones in control of this facility. I think I read somewhere that there's been a dispute about that, and whether or not the county still plays a role in this at all, and whether now the state has taken it over, or whatever it may be, or the feds. But isn't there another venue hook -- because you're right, it's not jurisdictional -- but another venue hook that you've alleged as to Miami-Dade County's ownership? Am I right on that?

MS. CHO: That's correct, Your Honor. We have alleged that in the complaint.

THE COURT: So am I right that there's two venue provisions or two venue bases that you're relying on?

MS. CHO: Yes, Your Honor. There are several venue provisions, and that's why we think it's properly venued in this Court.

THE COURT: Let me get this venue issue touched on by

my other counsel.

Ms. Rodriguez, let me turn to you, only because it's kind of interesting. I've got the state lawyer making federal arguments, so -- I think the federal lawyers will be making the federal arguments too.

What's your take on this venue issue? Again, I have to get into statutory construction, but I am curious if your office is maintaining the same theory.

MS. RODRIGUEZ: Preliminarily, Your Honor -- and I would request time to do the statutory construction analysis and brief the issue -- but I agree with the attorney for the state of Florida, that venue is not proper in this district. And also, not only is it not proper, but really it's a more convenient forum to have this case decided in the middle district of Florida.

What the plaintiff is alleging are that the processes that are being carried out in the middle district of Florida are impinging on their clients' rights and on their rights. These processes are all happening in the middle district of Florida. That's the core of the complaint, Your Honor. So not only is venue not proper in this district, but really it would be a better forum, more convenient forum, to have this matter tried in the middle district.

I agree with my colleague representing the state of Florida, that this is an issue that the Court -- we'd ask the

Court to rule on as a preliminary matter. The federal defendants are prepared to file expedited briefing within 48 hours, or whatever the Court deems appropriate, so that we can deal with this issue before moving to the merits.

If the case is going to go to a judge in the middle district -- and honestly, Your Honor, I've been so -- I've been so impressed with the way that you've carried on this hearing, and the way that you've analyzed this, now I'm thinking maybe we should have made a change of venue argument because you've done such a great job. But it's my responsibility to follow the law and my interpretation of the law. And right now I think that we do have to make that argument. Again, the federal defendants are prepared to brief that on an expedited basis.

THE COURT: And by the way, that second argument, I would agree. Certainly, nothing stops you and Mr. Meros in any response to argue that for the convenience of the parties, the location of the facility, judicial economy, that argument can always be made. Of course, that's more of a deference that I have in the sense that I can make that decision. If I think it's appropriate, there's a multifactor test I can go into.

MS. RODRIGUEZ: Yes.

THE COURT: I'm happy to look at that too. That would be a secondary argument.

But I'm glad to hear that we're trying to get at least

a sense of where everyone is at; that on the venue side, you're obviously prepared to brief that, and that your colleague on the state side would ask to do separate.

Okay. I appreciate that.

So let me ask -- so Ms. Viciana are you also of the opinion that, number one, you don't have venue; number two, let us brief the venue issue before anything else, in an expedited way and, at that point, we can figure if it stays here and brief the rest.

And then, maybe you want to touch on -- because it's unique to your client -- this issue of who exactly in the county, or the county interplay with Collier, has stake to this land. Because that's been in the background, and I'm curious if you have a sense of that. Go ahead.

MS. VICIANA: Thank you so much, Your Honor.

So candidly, I'm not entirely sure why Director Green -- Sherea Green, she's the director of the corrections and rehabilitation department. She's been named in her official capacity, so we're basically talking about an entity suit. We're talking about mainly Miami-Dade County here in a suit that's taking issue with operational decisions relating to the detention center known as Alligator Alcatraz. Miami-Dade County doesn't have anything to do with that, and that's been repeatedly made clear already in the press of the Everglades suit.

While Miami-Dade County does own the parcel of land at issue -- I'm going to quote directly from the state of Florida's response in Friends of the Everglades. "The Florida Division of Emergency Management commandeered the airport under the state emergency authority triggered by Governor DeSantis's executive orders." That's Docket Entry 16, on page 5, in the Friends of the Everglades suit.

I'll also quote from the United States's response in that same case, Docket Entry 21: "Florida is constructing and operating the facility using state funds, on state lands, under state emergency authority, and a preexisting general delegation of federal authority to implement immigration functions."

There is a single allegation in the complaint as it relates to Miami-Dade County, as far as I can see. That allegation is Paragraph Number 62. It has two facts in it. Number one: "The land upon which Alligator Alcatraz sits is owned by Miami-Dade County, Florida."

That's true, but the actual facility, its operation, is being controlled presumably by both the state of Florida and the federal government, the interplay of which the county is entirely ignorant to. The county, as it stands right now, does not have access to that land and has requested it. So we can't even afford any of the relief sought in either the complaint or the current motion for a temporary restraining order.

Because I don't think that we're properly named at all,

I don't even want to get into any questions with this because I don't think we should be used in one way or another to affect the venue analysis. I don't think we're properly here.

THE COURT: So to think about it another way, instead of having you respond as to venue, if the Court were inclined to order limited briefing on the venue question -- and again, I'm not 100 percent sold on this, but I'm thinking out loud a little bit -- the idea would be that, I think, the state and federal response would probably be done together. There would be a consolidated response to the venue question.

And again, the way I would do this is, it would be -- I would tee it up right now -- that I would order that the state and the federal representatives here today would draft a joint motion to transfer for lack of venue by date certain, very tight timeframe. And then, in that same timeframe, Ms. Viciana, I would give the county leave to essentially file what would be a motion to dismiss for improper party. I don't think you necessarily should be arguing venue. You could argue venue as a backdrop, I guess, to it, but your argument is going to be, Judge, we need to be let out of the suit right upfront. Is that fair?

MS. VICIANA: That's fair, Your Honor. Alternatively -- we're streamlining here. I understand that you directed the plaintiffs to file amended pleadings and other filings. We could be dropped by virtue of those amended filings. If we're

not named in a supplemental complaint -- if we're dropped from the TRO and motion for classification, I believe procedurally that also suffices.

THE COURT: Oh, not only that suffices, but that would be the best possible scenario for me, if we trim down any fat on the case that's not even at issue. Yeah, I agree with you 100 percent. I just don't know if the plaintiffs were onboard with that yet. But that would make life a lot easier, if indeed your client is named and has really no role to play.

Ms. Cho, can you tell me, what's the thought on this? Because I'm not sure, given the representations that have been made, why in particular Ms. Green is in there.

Do you think you still need her? Because it would simplify things quite a bit if we focus on state and federal authorities and not put the county in it. I don't think -- again, I don't know if one of the arguments is because it goes back to venue. Maybe that's part of the issue.

But can you share with me what we would be doing by leaving the county in?

MS. CHO: Your Honor, we appreciate the county's statement; however, we don't believe that we can just drop the -- that particular plaintiff from the case without understanding with more depth as to the precise contours of the agreement animating what is happening in Alligator Alcatraz.

Your Honor, I understand the need and desire for

efficiency, but there's a very complicated tangle here, and we need to understand fully the relationships between all of the parties here.

THE COURT: Let me ask you something, Ms. Cho: I'm prepared to move about as fast as it gets on this thing. I'm all-hands-on-deck guy. I know this is very time sensitive. I know you don't want a delay on this venue thing. I get it, 100 percent. I'm hearing, at least from the defense team here, that it be a good preliminary issue. I would order it to be immediately briefed. And what I would do is -- you tell me. We'd come out with an order that looks something like this: You've agreed, and I've given you full leave to file the amended pleadings, as you've indicated, under Rule 15-D, amended class cert., et cetera. You told me how long you need to get that in. The minute that that is filed -- I'd say, maybe you need 24, 48 hours -- I would require expedited briefing on a motion to transfer venue. That would have to be brought by both the state and federal counsel. I mean, I'm talking five days. This is not complicated. Quite frankly, it could honestly be done in less. But I'm just trying to think about when it gets to me and then giving you a chance.

I would do, essentially, five days to file the motion, three days to file a response, and then I could do three days to file a reply. I mean, it seems so narrowly tailored under the venue statute, but I think I can dispose of it. I've got

to write on it anyway. Right? I've got to take care of this anyway, so it's not like I'm wasting time.

And I'm just curious: If I do a very, very streamlined and expeditious schedule, expedited briefing schedule, would that help us out a little bit in the sense of just trying to get this issue resolved one way or the other before we figure out what the next step is? What do you think?

MS. CHO: Your Honor, I think the plaintiffs would oppose that proposal because of the fact that the issues in this case are exigent. The defendants have had the briefing. We emailed it to them on the day of July 17th. They've had this briefing for quite some time with respect to the TRO. They've had the TRO motion.

People are not able to get released from custody while -- you know, we've pled this in -- this has been indicated in the declaration -- while officers at Alligator Alcatraz are going around trying to force people to sign deportation orders without the ability to speak to counsel and without the opportunity to file immigration bond motions with the court. This is of utmost urgency, Your Honor. This has already been going on for several weeks. And the government is making a venue argument that is not jurisdictional, that could be handled in the same briefing as the briefing for the preliminary injunction motion. And we believe that this is not a complicated matter. It could be folded in.

And as you said Your Honor, if the -- if the Court desides that it does not have venue, this issue will be teed up for the other court in order to be able to handle it expeditiously. This is of utmost urgency, and we don't believe this venue argument should lead to further delay on resolution of these issues.

THE COURT: And to your point, it's not dispositive, right?

MS. CHO: Correct, Your Honor.

THE COURT: It's not a waste of time. If they're briefing it, the best-case scenario for them is another judge starts looking at those additional arguments. They're already fully briefed, and they would be able to get into those things. Or I find that I do have venue, and then I can proceed expeditiously through the rest of the complaint. Right?

MS. CHO: That's right, Your Honor.

THE COURT: And obviously, I think that if that were the case, there would be an argument, Ms. Viciana, that you would make -- and again, maybe you are able offline to speak to plaintiffs about what the county does or does not do anymore with this facility, in the hopes that perhaps they don't feel you've got to lump your client in.

But I fully understand if, in the response, you have unique arguments that would be raised. I think that although it is the Court's typical course of conduct to have a joint

briefing whenever possible, I will say that this is a unique situation in that arguments available to different entities make it a little difficult, I think, to consolidate everything. So if I ordered briefing in that sense, I think the state has arguments that the federal government doesn't have, and vice-versa, that they may wish to make. The 287 issue alone, I think, is a big one.

And again, I know that Mr. Meros has indicated that they're not in a position to advance any governmental agreements or cooperation details today between the federal and state authorities. That's fine. That may very well come in -- if not before me, by a colleague -- in discovery. Those arguments, though, can certainly be raised in their papers, in opposition to any preliminary injunctive relief. And then separately, Ms. Viciana, you'd have an argument to be made, if your client stays in it, dealing with the issue of why Ms. Green is even in the case. Right?

And again, I can only take you to the trough, right? I can't make you drink on this.

So you guys have to figure out if this is something you might be able to talk to them. I don't know enough at this point where plaintiffs feel they need to go on naming the county, but we'll see how that plays out.

All right. So it seems that the Court's most --

MR. MEROS: Your Honor.

THE COURT: Yes. I'm sorry, Mr. Meros. Go ahead.

MR. MEROS: I apologize. I don't want to belabor the point.

Your Honor's proposed schedule for the briefing, we'd be fine with that. You know, on the point that plaintiffs brought up, that they emailed us a copy, that is just plainly not service. I mean, they had -- they had two weeks to serve us. They could have served us the same day. They know where the capitol is. They didn't serve us. And whether they emailed it to the client -- we only know it was (indiscernible) on Friday. So to the extent they're saying we had this for two weeks, that's clearly not enough. But we are certainly ready to move expeditiously, you know, on schedule like that, as you proposed.

THE COURT: And let me ask you something, Mr. Meros: I know full well that you would just prefer to focus energies on venue, and that may be a briefing schedule that's a lot faster. But I guess -- my question is, let's assume I decide -- because at the end of the day, I don't want to delay. And if it's me that rules on merit on this thing later, great. If it ends up being a colleague in the middle district, great. The venue issue to me is not jurisdictional, as Ms. Cho mentioned. Although it could save resources, it doesn't mean that it wouldn't have to be briefed before a colleague in the middle district.

If I ultimately decide that you can fold in your venue arguments as part and parcel of your opposition to the motion that is forthcoming on preliminary injunctive relief, how long -- I think you're going to get it in about 24 hours, maybe 48, from Ms. Cho in amendments. We're going to get a new operative complaint, really, because we're going to have this supplemental 15(d).

How long do you think you need -- and I'm going to ask all of you this question -- to file a response in opposition to that motion? What do you think you need?

MR. MEROS: Sure. Well, on the -- you know -- about the joint brief, I think the -- one of the reasons why an individual briefing might save judicial economy is because in the 12 or 14 days since this briefing, there have been a number of facts that have changed.

You know, I don't want to get into all the details, but they're going from, you know, just opening the facility, to having video conferences, to now today we have scheduled in-person meetings with counsel. So I think every day that goes past, they're going to be changing fast, and they're getting more opportunities and things (indiscernible) that could (indiscernible) out the case.

So I think, while it not be most convenient for the plaintiffs to have it separate, I think that could actually help clarify a lot and be able to get declarations, you know,

from those at the facility and things like that.

Now, on the briefing schedule, you know, I always hate to negotiate against myself. But, I mean, we would say, you know, time for a -- once it's repled, time for a response of maybe ten days for us, you know, in order to be able to have the declarations and all of that, to be able to be provided. And then maybe for a reply, maybe five days; five to seven days after that.

THE COURT: Sorry. I didn't mean to cut you off.

Just to your first point, you did agree with me that it would be in the best interest of your client and all defendants to separately brief, right? Because it is one of those things where each one of the parties may have their own declarations and their own considerations. You would prefer that as to -- in lieu of a consolidated brief, correct?

MR. MEROS: Yes, sir. For the response to the PI, now. Any briefing on venue, we're fine to do joint.

THE COURT: Now, let me ask you on this next point: I want to be very clear because you touched on something very, very important, and I would agree with it. You guys are obviously arguing, all of you, a much stronger venue argument. But I am very much aware, from pouring through the affidavits that I got from plaintiffs, that it's a changing situation on the ground.

Just by way of example, Mr. Meros -- and you kind of of

were touching on this, I think -- when it came to that access claim, right, under that First Amendment, in particular, some of the affidavits had evidenced a lack of communication, emails that were bouncing back, things like that, but there were also some sections of the affidavit that indicated -- in fact, even a commitment, quite frankly, from the state in a couple of responses to access to counsel in writing -- I saw it -- in those emails back. And there was a willingness to try to set things up. Cancellations happened. But a lot of it looked to be, you know, growing pains, if you will, of a new facility not having their act together or getting up and running in the right way in terms of facilitating private meeting rooms, lines that are not being monitored by facility personnel, that you have actually an ability to schedule an interview.

By the same token, I have heard and seen long lines, two-hour waits, nothing happening. You send in the form. It goes into the circular file.

So there's a lot of back-and-forth here. And I think that one of the benefits of not pulling the trigger on anything too soon is my decision to let this play out a little bit. Because I would imagine that any responsive pleading that you present to me will give us some more information about what's going on, in particular with the access claim, right? Because if we are finding that rooms are being made available; if we are finding that we are getting back to counsel, so they can

figure out when they can speak to the client, then that's going to go to the heart and success of likelihood on the merit arguments, right, on the 1983 issues. Because you may point out that on this record, Judge, it's not to the level of a preliminary injunctive relief. I don't know that to be the case. I think it's a fast-moving situation.

But I would definitely benefit from what you've just stated. Any sort of affidavits, supplemental information you can provide in response, that to me would give me a lot of clarity, and I'm certain you'll be prepared to do that. So I appreciate that because I do need more information on how things are going to date. So that is very important to me.

Let me ask the federal side. Ms. Rodriguez, how do you feel? Do you agree with Mr. Meros's proposal, that if it's obviously venue, it would be shorter. But if it's fulsome briefing, you would have your own opportunity to respond in opposition. You would do so in ten days; get the affidavits; you'd fold venue in to it -- if I decide to have it all together -- and then we can talk to the plaintiffs about the reply time.

What do you think about that?

MS. RODRIGUEZ: I think that sounds look a good proposal, Your Honor.

THE COURT: And Ms. Viciana, what do you think on your end? Do you believe that that's an argument -- I know that you

guys are probably going to file something maybe a little bit different, although you have to prepare for the possibility you're left in the case with a PI motion.

What do you think; ten days, is that something you can do for the county?

MS. VICIANA: Absolutely, Your Honor.

THE COURT: Let me ask the next question on that, going back to the plaintiffs. If I put that schedule together, Ms. Cho, how long do you need?

My hope is the following: If I'm going to fold it all in, if I'm going to put it all into the same pleading, then certainly I'm a little more amenable to giving them closer to the ten days because I do want affidavits. I think it's going to help me a lot more.

How long do you think you need for a reply?

And then, I'm going to set a date today for us to argue this life. We're going to do all this today. It's going to be a briefing schedule. You asked for one; I'm giving you one today: They said five. You said less, but I think five is probably fair.

MS. CHO: Yes, your Honor. Well, we would agree that it is time to file a briefing schedule.

I would like to remind the Court that 100 people have already been deported from Alligator Alcatraz. This is an emergent situation. It is a situation where people's

fundamental rights to remain in the United States is operating.

With respect to the factual changes on the ground, with respect to attorney access, we certainly do not know what the situation is and what the government's -- whether the government's representations here, in court, are actually bearing truth on the ground.

And we'd like to remind the Court, with respect to voluntary cessation, that that would not moot the need for the Court order to ensure continued attorney access at the facility.

With respect to the briefing schedule, again, as I noted, a hundred people have been removed. People are not able to file any petitions with the immigration court at this time, and it is of utmost emergency. And we would recommend that the defendants have seven days to file a response and that the plaintiffs have five days then to file a reply brief.

THE COURT: I suspected you would ask for it closer. And, really if you think about it on the defense side, you probably got an extra day in there because they've got to file their amended pleadings anyway.

I am concerned. I will say, I know full well that there's no allegations in this complaint, that any of these individual named representative plaintiffs are in fear of immediate deportation. I've had other cases where it can change on the ground one minute to the next. Obviously, if

anybody becomes aware of a change in circumstance, we need to advise the Court immediately. My hope is, I'll be able to brief and get this done before anything on the ground changes so material as an actual deportation.

But I agree with you. Because it is class relief you're asking for as well, you are raising the possibilities of other individuals who are not getting the bond determinations and the like, that they need to have a hearing. So I hear you.

And you said, again, Ms. Cho, that you guys can file -- can you file all of your papers by the end of tomorrow? Is that fair? I don't know. I mean, I don't want to go ahead and jam everybody up, but I do want you to have that cleaned up because I've got to have that VI done right; I have to have the supplemental folded in; I need a new class motion; and I need a supplement to the complaint that makes sense here because I'm too disjointed.

How long do you need for that?

MS. CHO: Your Honor, we can file in 24 hours.

THE COURT: So what I'm going to do is the following, for briefing. All right?

I understand where everyone is coming from, but I think that this is an urgent situation. It's a developing situation. This was, of course, filed last week. I also was trying to get my bearings on what was going on. I'm thankful we were able to get this set up today in short order, so I could hear from

defense counsel, because it helps me understand where everybody is at.

I'm going to put together a briefing schedule order at the end of our hearing today that would require that all of these amended pleadings to be filed by plaintiffs by tomorrow, the 29th. And then, I'm going to start a clock, and I'm going to ask that I get all -- and it's going to be, like, one extra day. So I'm going to ask that I get all of the government's responses. So that's the response in opposition of the preliminary injunction motion from the county, from the feds, and from the state. I'm expecting three separate responses by -- let me look here -- August 6th. So that is just about over seven days.

And then I'm going to ask that I get -- tell me if this works for the plaintiffs as well -- that I would get a response to that either by August 11th. Does that work, that Monday? I'm trying to figure out if that is too tight because you said five days, Ms. Cho.

What do you think? Or the 12th?

MS. CHO: Maybe the 12th would be better, Your Honor.

THE COURT: All right. We'll do it on the 12th.

So here's what's going to happen. We're going to set a hearing, and it's going to be in person. I'm going to do it -- I need about 48 hours to figure out exactly what the arguments are.

I'm going to set it for August 14th, that Thursday. That gives everybody enough time to plan ahead. We need to have this done in court. I'll be able to consume everything. I ask that the sooner you can get me the reply before the 12th, the better, so that I can consume it all within a very short period of time since.

But at least, to me, unless there's any strong objection, we're going to do the following briefing:

Everything is going to be in, amended wise, by July 29th for plaintiffs. We're going to get a response from all defendants by August 6th. We're going to get a reply by August 12th. And we're going to go ahead and have a hearing on July 14th.

Does that --

MS. VICIANA: Your Honor?

THE COURT: Yes. Tell me, Ms. Viciana. I'm working this out today, so let me hear if there's concerns with timeline. I want to get this --

MS. VICIANA: I want to put one thing on the record.

THE COURT: Yeah.

MS. VICIANA: Rather two, but -- by August 12th could be 11:00 p.m. Starting on August 14th, in the morning, doesn't give us much more than 24 hours.

And relatedly, August 14th is the first day of school for Miami-Dade County Public Schools. For those of us that

have children -- I'm one of those -- that particular morning would be complicated. But if we can do the Friday, that Friday --

THE COURT: If I move it one day and make the Friday, would that alleviate that concern?

MS. VICIANA: For me, it certainly would, Your Honor.

THE COURT: And I will tell you this: Look, it's all about what I could do to prepare. You know, you give me an extra day, it also helps.

So I'm willing, if the parties would prefer -- and I know people are traveling so this might be the easier play. If you don't want to do it -- let's put it this way. I don't want it to be later than the 18th. The latest I want to go on a hearing on the PI is the 18th.

Let me let everyone understand how this works. I'm already going to be working on this thing. It's not like I'm going to sit around and twiddle my thumbs until I hear from everybody on the 18th. If anything, I'm going to use the time that I have, from the 12th through the 18th, to begin to formulate where I think this is going to go. And as my oral arguments tend to play out, I'm going to ask everybody to tell me why I'm wrong because that's the way I like to make it efficient.

So I'm not going to ask you to summarize the facts. I think everyone can tell, I spent quite a bit of time figuring

out where everybody stands on this. But I have to consume what is new. I have to sit down and look at the venue argument.

So let's make a point -- if it's okay with everybody -- I certainly don't mind, and I'm sure the parties don't mind, for travel arrangements -- if we set it on the 18th, I would do it at 10:00 a.m. on the 18th. And then, if we do that, then I would do the following:

I would be happy because it gives us a little bit more of flexibility. I mean, we still can put -- the response, I could do -- just to give one extra day, I could do the 7th, and then I could go ahead and do the 14th.

So I can offer either one. I can offer August 15th or I can offer August 18th. I'm offering both, depending on how the parties feel it's easier to get down here.

What do you think, Ms. Cho? Do you have a preference or a concern?

MS. CHO: Your Honor, both days would work for me.

THE COURT: What did you think, Ms. Viciana? I'm trying to figure out, for you, the government, and the state, do you think that that would benefit -- I can build in an additional day for the response, which I think also will cut in helping you guys get your affidavits in line.

So what I would do is, I would ask that by the end of tomorrow, July 29th, we get everything filed. Everyone on the government's end gets everything in by the 7th, August 7th. I

hate to be a stickler, but I'm going to say August 7th, by noon, everything would come in. And I would get everything in on reply -- one, by the way -- and I'll put it in the order, Ms. Cho -- one consolidated reply might be the easiest thing to do. I mean, I will give you leave to exceed pages. Don't worry about that.

But just so I can say -- you know, for venue -- this applies to everybody here in the state, here in the feds, here in the county. So I give you whatever leave you want on that, and you guys could file motions, on all sides, for page limitation extensions. They're going to be granted liberally. And then, you can go ahead, get yours in by the 12th. That gives me essentially three days to consume everything and already begin to come up with a shell of where I think I've got to go. And then, we have oral arguments on the 18th at 10:00 a.m. That works for me. And if you guys can live with it...

Now, look, I know that -- and appreciate that a lot, from the plaintiffs, because you guys came in, expedited TRO. And I know this is an expedited briefing schedule, but I'm sure you guys were running it even tighter than this. I'm just worried, and I think it's a fair worry, because of so many changes on the ground, that this schedule could be disrupted; meaning, that if things are really up in the air -- and no pun intended on that one. But if something really goes down in the

interim, I'm going to have to move things around.

So just be ready. My hope is that I can keep these dates, but I don't want anybody to be surprised if the ACLU and company feel they've got to expedite something now; things have to be truncated.

So this is, like, the outer parameter that I can live with because of the situation on the ground with access, but I'm hopeful I can get in and at least get you a ruling right away in the preliminary injunction motion as soon as after we have that hearing. I'm going to try to do as much work as I can upfront so that after the hearing I can get you a ruling very quickly.

Does that work for you, Ms. Cho, if I do it that way?

MS. CHO: Your Honor, the 18th works for us. We appreciate the consolidated briefing. We can do that.

We would ask, since the defendants now have an extra day to file their response, if we might be able to extend our reply briefing deadline by one day as well?

THE COURT: I can give you the 13th. Yeah, go ahead and do the 13th. Do the same thing. If you don't mind, can I do a 7th by noon for them and 13th by noon for you? Does that work?

MS. CHO: (No verbal response.)

THE COURT: All right. Let's do that. Let's do that. That way, it gives me 48 hours and, really, the whole weekend,

which is great for me. I can prep throughout the weekend, and that way hit the ground running on the 18th. We're going to do it live on August 18th at 10:00 a.m. And that'll help us out.

All right. So let me go through my checklist to make sure I've got everything I need. I think we've gone over the need to clean up all of the pleadings. We're going to get that done by the end of tomorrow. We're going to have everything briefed together. We're not going to get caught up in bifurcating venue arguments and anything else. We're going to do it all together because it's going to save judicial economy. Even if it's not me, and it's another judge, they'll be able to handle it because it'll already be briefed.

I think that -- the 287 issue, I just want to put it out there again. I expect that maybe it'll make its way into responsive briefing from the state. We'll see. But obviously, the more information I can get on that, the better we're all going to be. For success of likelihood on the merits on the 1983 causes of action, it could give me clarity. I don't know that it's going to be something I'll have in front of me in the sense of the actual agreement. And we're not ordering expedited discovery on that at all. We're going to live with our affidavits and our pleadings.

But just -- it's something in the back of my mind that I'll probably ask again. I just want to put everybody on notice, when I see you on the 18th, because I am concerned

about the viability of the 1983 claims if indeed there's a 287 agreement in place with a state official.

So I think, Mr. Meros, you hear me loud and clear on that and we'll go from that.

And look, going back to -- just briefly -- to the issue of venue, you know, I've had a chance to take a look because that venue issue has been raised, and I think it's going to be litigated in short order in front of my colleague. I may differ with her. We may agree. I don't know how she's going to respond to that claim.

But I think it goes, at bottom, to this reading of 1391(e). And I think that the position we're going to get from Mr. Meros and company is that it doesn't have any bearing here. I think the reading, for them, is they believe that it is modified, if you will, by the general venue statute. And the only case that I think they've cited is this *Little v. King* case in the other related -- not related, but Alligator Alcatraz matter, at 768 F. Supp. 2d 5665, at number seven footnote. That's a DDC 2011 case, so obviously not binding on me in any way, shape, or form. But I'm going to take a guess that that argument is going to be fleshed out in papers, and I'll have to make a ruling on whether or not there is satisfaction by plaintiffs of independent venue for each defendant and we'll go from there. But let's see what we have to do with that.

But as I stated earlier, we've got to brief it all because I'm not going to get caught up on venue. If I think it's not a winner, we're going to go right to the merits of this thing and get into the elements necessary for preliminary injunctive relief. We're going to get to irreparable harm. I throw that out there because irreparable harm, going back to Mr. Meros's point and Ms. Rodriguez's point earlier on the changing circumstances, I know that there's a little bit of this de facto argument in the papers from plaintiff. We've just got to take a look at that. It keeps evolving on the irreparable harm component because I don't know how much access is being provided to lawyers.

And I will finish with this last little point before I see if anybody wants to add anything else, and that is the interplay between the temporary restraining order and the class cert.

You know, much is made about how much I need to look at the motion for classification that's forthcoming, the amended one, to determine success of likelihood on the merits. I think a preliminary peek is going to be warranted to determine whether or not that class motion has legs. I will say -- and this is without getting into merits -- I have a class definition that basically says everybody in and possibly going to be in to Alcatraz.

I will just point out, we've got a lot of issues with

people and their immigration status. Some people are very different than others in terms of situated in the immigration process.

Then I've got the second part of that, which is some people are under the First Amendment; some people are traveling under the Fifth Amendment. I say that because you-all know -- and you've briefed it already pretty fulsomely. We've got technicality and commonality concerns and other issues. And Mr. Meros mentioned it in passing, but the relief that is being requested and the prayer for relief in the original complaint, it goes pretty broad. I looked at the proposed order, for example. I mean, it goes down to the interpreters and the way in which there's going to be functions played out in Alligator Alcatraz. I just say that because it's important for the Court, as a preview for you-all as we get this briefed, to really focus on whether or not the relief requested is sufficiently tethered to the claims in this complaint or the supplemental 15(d) claims that may be coming. I need to have connection between the TRO, and that, and the class cert. When one pleading expands the scope of the relief in the original complaint, it will run into procedural problems and certainly will not get a fair shake at an injunctive posture because I'm going to be concerned that the relief isn't matched up.

So as you guys go back and fix this, or clean it up for tomorrow, just be aware of that because I was startled at --

the relief sometimes -- I mean, just giving you the example of the interpreters. I had access claims, right, that I got. The line, for example, right? They're listening in on the line. We don't have the private rooms. But then there were some extra steps to that, some of which went really more to the immigration courts.

And I just want to throw out there that there seems to be a suggestion that I should be ordering immigration courts to make bond determinations. You know, there's jurisdictional concerns. I've very worried about some of that, big time.

So be aware of that, because you may not get Judge Ruiz to buy into that argument, where I'm ordering immigration courts to do stuff that may be outside the purview of Article 3. So just be concerned with that.

Now, it's different from you telling me what immigration court do we even file in, very different. That seems to be a little cleaner and easier. Where do I file my paperwork? Who's running the show? I'm with you on that.

But just be careful of the scope of relief because it could run into problems on August 18th. I'm just putting that out there on a high level review of what I've seen.

At bottom, let me be very clear: If there is a success of likelihood on the merit, irreparable harm, and all other statutory and rule-based functions that must be met for preliminary injunctive relief, then the Court will seriously

entertain that relief. But anything that attempts to transform the Court into the warden of Alligator Alcatraz is not going to happen here. We need to make sure it's tethered sufficiently to constitutional claims in the pleadings. That's the only way this is going to work. And the more you clean it up and tighten it, the better I can try to dispose of it cleanly. Grant or deny, you want to set up the record the right way going forward if indeed it stays with me.

I'm going to personally begin the venue review today. So I'm going to get going on that because, obviously, that is an initial concern. I think it's going to be litigated next door, and I want to get ahead of that. So let's get that one taken care of right upfront in all the pleadings.

Also, Ms. Cho, if you're going to add anything on that, you're going to know what's coming. That's the number one argument, and then everything else will flow from that.

So with that, I think we've got a good game plan. An order will come out in the next hour or two that sets the briefing schedule, exactly as we've all agreed, and we're going to run with that briefing schedule and see you-all live, August 18th, at 10:00 a.m. I stand at the ready if there's any changing circumstances.

Let me turn it to the parties for anything else I may have missed that we need to address.

Ms. Cho, on behalf of the plaintiffs, anything else I

need to be aware of?

MS. CHO: Yes, Your Honor. We would like to actually revisit the issue of expedited discovery with respect to production of the 287, the agreements, if they do exist. We believe that it is incumbent, for proper consideration of this matter, not to just look at affidavits that state what the agreements state, but to actually be able to review the text themselves of any agreements that exist with respect to people who are held at Alligator Alcatraz. And for that reason, we would like to request expedited discovery at this point to coincide with the production of the response briefs such that we may be able to properly reply to that -- to those issues. We don't think it would help the Court or any of the parties to be flying blind on this.

THE COURT: And let me tell you, that was kind of where I was going earlier. And I will say this, just so that we're very clear: It is very limited, right? It would be any 287 agreements between the federal and state governments as to Alligator Alcatraz.

Am I correct in that?

MS. CHO: Well, your Honor, we are happy to frame it more precisely in writing to the Court. We can submit the discovery request and our motion to (indiscernible) along with the amended pleadings. I believe it would absolutely include any 287(g).

But to the extent that the government is claiming any other external source of authority for the detention for people at Alligator Alcatraz, we would obviously want to see those agreements as well.

THE COURT: All right. So let me tell you. What we'll do is, we're going to build it into our order, that as part of your filings in the next 24 hours, there will also be a motion -- you have leave from me to file a motion for expedited discovery.

Let me ask you, Ms. Rodriguez, on this point because I didn't get a chance to hear from you on behalf of the federal defendants.

Do we have any major concerns? Again, I could also build in a brief -- very brief, reply deadline, or response deadline to the motion for expedited discovery because that's a separate issue. I continue to believe -- and I can give assurances to all defendants -- if we need to put things in a restricted posture, whether they're redacted, or under seal, or in camera, I can afford those parameters.

But I've got to tell you, for me, I think it would really help me, in terms of preliminary injunctive relief, if I knew who's doing what. I don't know what they're going to ask for. You may say to me, Judge, if they ask for it, if they go too broadly, to give it to you.

But what's your initial read on expedited discovery for

just this 287 issue?

MS. RODRIGUEZ: I mean, I have to check with the agency. I'm not sure what the privacy concerns are. So if there is a motion, I'd request some time to respond to that.

THE COURT: Okay.

MS. RODRIGUEZ: It doesn't have to be --

THE COURT: We'll order -- just be ready. I'll order an expedited response just to the discovery issue, and I may require you to produce something. And in the alternative, you can say to me, Judge, if you do require it, we're asking that it be produced in a certain way, whether it take --

MS. RODRIGUEZ: Yes.

(Cross-talking.)

THE COURT: -- and I will seriously consider that. But just be aware that I'm probably going to ask for that separate and distinct from the briefing. Okay?

MS. RODRIGUEZ: And I'll start looking into that right away, Your Honor.

THE COURT: Very good.

Mr. Meros, are you with me on this too? I want to hear from you in response. But you know what's coming. And I'm willing to entertain a limited expedited discovery request on that 287 issue because I do believe it would assist me.

What's your sense on that?

MR. MEROS: Your Honor, you know, I'm a little troubled

by it. I mean, the plaintiffs knew this was coming for now weeks. They could have filed motions before. Now they're coming, you know, at this hearing not only asking for, you know, seriously expedited discovery, but now also asking additional briefing on expedited discovery for a PI hearing, where they say that affidavits are somehow not enough, but affidavits are sworn statements to the Court.

It's also not even clear how the 287(g) agreements would apply to the claims because the claims that they've pled have nothing to do with, you know, whether there's state authority. All the claims they have are, you know, having First Amendment access to counsel. So we'll have to wait until the complaint is pled.

THE COURT: I don't want to interrupt you, Mr. Meros, but they actually are really relevant when it comes to the 1983s. Because again, if your state officials are acting under federal authority essentially in the immigration space, it actually in many ways would potentially benefit your client because there is clear case law that they couldn't be brought in under a 1983.

Now, as Ms. Cho said, there may be other theories she wants to advance under 1983 or other statutes -- I'm not sure -- under 287. She's listed a litany of things in her papers that are required by 1357.

So I just want to point out the fact that I think it

could be certainly relevant and will be produced at some point. I know you may take issue with its necessity now, but I just want to point out that, actually, it would allow the Court -- just by way of example, the success of likelihood on the merit are going to be lessened against the state in Counts 2 and 4 if indeed the 1983 counts are rebutted by a 287 agreement. So it actually could be a situation where it would be very much on point for the First Amendment claim. So I'm just saying, there is relevance.

Now, as I stated to Ms. Rodriguez, absolutely, if there's concerns on confidentiality and other issues, you can respond to that. But just be aware that I may order some form of expedited discovery, and you guys are going to need to respond to whatever is being requested.

And I will say, in terms of timing, let's be clear. At least they're not coming in here ex parte, all right? They actually are letting you brief it. They're coming in -- when this first came in through the door, they asked for ruling in four days. I balked, because it seemed like a lot of moving parts and there were issues. They have commendably understood they've got to reboot.

So I think we all know this lawsuit is out there. I know service wasn't accomplished that long ago, but I think we're giving you now enough time to get ahead of it.

I don't personally think that these agreements are that

difficult to procure. But as Ms. Rodriguez said, I know you've got to talk to the clients. Just be ready to tell me why they shouldn't be produced. Because it's very limited. I'm not going to open up full-blown discovery here. This is just to help the Court on preliminary injunctive relief. But we kind of need to get to the bottom of the interplay, between the federal and state authorities, on who's running this thing. So that'll help. All right?

MR. MEROS: Yes, Your Honor. Thank you.

THE COURT: You got it.

And Ms. Viciana, obviously -- I think we know where the county's at. They might have some unique arguments.

But are we all on the same page then? I know the expedited discovery probably doesn't have anything to do with you guys. I think there's maybe other documents that you're going to want to bring forth, or attach, or at least ask the Court to take notice of when we figure out if the county has any skin in the game. Right?

MS. VICIANA: Yes, Your Honor.

THE COURT: All right. Ms. Cho, bring me the motion for expedite discovery. I'll look at it. I'm going to build it into my order that I'm going to write right now. Okay?

MS. CHO: Thank you, Your Honor.

THE COURT: So before we conclude, anything else on the plaintiffs' end?

MS. CHO: I think that does it for us, for now, Your Honor.

THE COURT: Anything else on the federal defendants, Ms. Rodriguez?

MS. RODRIGUEZ: No, Your Honor. Thank you.

THE COURT: Anything else on the state defendants, Mr. Meros?

MR. MEROS: No, Your Honor. Thank you.

THE COURT: Ms. Viciana, anything on the county?

MS. VICIANA: No, Your Honor. Thank you very much.

THE COURT: You're welcome. Thank you all for your preparation on short notice.

To recap, the order will set all of these amended pleadings to come in by the end of the day, July 29th. That's tomorrow. We're going to have an August 7th, at noon, response in opposition, separate briefs for each silo of defendants. Reply by noon, August 13th. Hearing in person, here, in my courtroom, August 18th, at 10:00 a.m. And we are going to expect that as part of the amended pleadings, there will also be a motion for expedited discovery on the 287 agreements. And I will separately set a briefing schedule on just that motion. I will direct the defendants to respond as soon as I see the motion and it's breadth. I need to see what they're asking for before I put any deadline onto the defendants.

With that, I think we're set. We have a game plan. We

will move as quickly as possible, given the exigent circumstances on the ground.

And I will end with, of course, what I said in the beginning. If things change, a situation develops, file the appropriate motion and advise me, please. But my hope is we're moving fast enough so that I can read this fully, get a good understanding, deal with the venue. And if it gets past venue we'll get into merits. Okay?

So with that, thank you, everyone, for your time. I hope everyone has a good rest of your day. We'll be standing by for the pleadings. Look for my order here in a few hours' time.

MS. CHO: Thank you, Your Honor.

MR. MEROS: Thank you, Your Honor.

MS. RODRIGUEZ: Thank you, Your Honor.

MS. VICIANA: Thank you, Your Honor.

THE COURT: Thank you everybody.

(Court recessed at 12:36 p.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

This hearing occurred via Zoom and is therefore

subject to the technological limitations of reporting remotely.

DATE: August 1, 2025

/s/Ilona Lupowitz
ILONA LUPOWITZ, CRR, RMR
Official Court Reporter
United States District Court
Southern District of Florida
400 North Miami Avenue
Room 11-2
Miami, Florida 33132
(305) 523-5737

## /

**/s/Ilona** [1] - 76:2

## 1

**1** [2] - 1:10, 76:2
**100** [4] - 42:7, 43:7, 44:8, 53:23
**10:00** [5] - 59:6, 60:16, 62:3, 67:21, 74:18
**11-2** [2] - 2:23, 76:5
**111** [1] - 2:14
**11:00** [2] - 1:7, 57:22
**11th** [1] - 56:16
**12** [2] - 26:14, 49:14
**12:36** [2] - 1:7, 75:18
**12th** [8] - 56:19, 56:20, 56:21, 57:4, 57:12, 57:21, 58:19, 60:12
**1357** [3] - 15:20, 15:24, 71:24
**1357(g** [1] - 18:10
**1391** [2] - 28:9, 29:23
**1391(b** [2] - 29:24, 30:8
**1391(b)(1** [1] - 29:25
**1391(b)(3** [2] - 31:5, 31:10
**1391(e** [2] - 29:22, 30:6
**1391(e)** [1] - 63:12
**13th** [4] - 61:19, 61:20, 61:21, 74:17
**14** [3] - 13:10, 14:19, 49:14
**14th** [5] - 57:1, 57:13, 57:22, 57:24, 59:11
**15** [2] - 11:6, 23:21
**15(d** [5] - 10:24, 12:17, 15:10, 24:17, 65:18
**15(d)** [4] - 10:2, 11:14, 16:23, 49:7
**15-D** [1] - 44:13
**15th** [2] - 1:19, 59:12
**16** [1] - 41:6
**16th** [2] - 5:2, 6:5
**17th** [3] - 5:2, 6:5, 45:11
**18th** [15] - 58:13, 58:14, 58:18, 58:19, 59:5, 59:6, 59:13, 60:15, 61:14, 62:2, 62:3, 62:25, 66:20, 67:21, 74:18
**1983** [19] - 5:13, 5:16, 5:17, 15:13, 15:18, 16:5, 16:8, 16:23, 17:24, 18:4, 18:13, 19:2, 21:6, 52:3, 62:18, 63:1, 71:20, 71:22, 72:6
**1983s** [1] - 71:16
**1st** [1] - 2:14

## 2

**2** [1] - 72:5
**20005** [1] - 1:20
**2011** [1] - 63:19
**2025** [2] - 1:6, 76:2
**21** [1] - 41:9
**215** [1] - 2:11
**21st** [1] - 6:6
**2200** [1] - 2:6
**2241s** [2] - 27:13, 27:23
**24** [13] - 10:18, 10:22, 11:3, 12:14, 12:21, 14:17, 22:5, 32:20, 44:16, 49:4, 55:18, 57:23, 69:7
**25-23182** [1] - 3:11
**25-CV-23182-RAR** [1] - 1:2
**28** [1] - 1:6
**2810** [1] - 2:14
**287** [30] - 15:20, 15:25, 16:4, 16:9, 16:17, 16:21, 17:13, 17:24, 19:1, 19:6, 20:23, 20:24, 20:25, 22:12, 22:22, 23:1, 23:6, 24:25, 25:12, 47:6, 62:13, 63:1, 68:4, 68:17, 70:1, 70:23, 71:23, 72:6, 74:20
**287(g** [12] - 17:8, 17:17, 18:3, 19:7, 19:16, 19:17, 19:21, 19:25, 20:2, 20:10, 25:25, 71:8
**287(g)** [2] - 17:15, 68:25
**287(g)(8** [1] - 18:14
**287(g)(8)** [1] - 18:22
**29th** [4] - 56:6, 57:10, 59:24, 74:14
**2d** [1] - 63:18

## 3

**3** [1] - 66:14
**300** [1] - 2:17
**305** [2] - 2:24, 76:6
**309** [1] - 2:9
**32301** [1] - 2:12
**33128** [2] - 2:15, 2:23
**33132** [1] - 76:6
**33134** [1] - 2:3
**33152** [1] - 2:6
**33166** [1] - 2:9
**36th** [1] - 2:9

## 4

**4** [1] - 72:5
**400** [3] - 2:3, 2:22, 76:5
**425** [1] - 1:22
**4343** [1] - 2:3
**48** [5] - 39:3, 44:16, 49:4, 56:24, 61:25
**4th** [1] - 2:17

## 5

**5** [7] - 5:21, 6:23, 6:24, 7:11, 8:5, 9:18, 41:6
**523-5737** [2] - 2:24, 76:6
**5665** [1] - 63:18

## 6

**62** [1] - 41:15
**6355** [1] - 2:9
**65** [1] - 13:9
**6th** [2] - 56:12, 57:11

## 7

**700** [1] - 1:23
**72nd** [1] - 2:6
**768** [1] - 63:18
**7th** [7] - 1:19, 59:10, 59:25, 60:1, 61:21, 74:15

## 8

**8** [1] - 18:9
**804** [1] - 2:11

## 9

**915** [1] - 1:19
**94104** [1] - 1:23
**98** [1] - 30:21
**99** [1] - 2:17

## A

**a.m** [6] - 1:7, 59:6, 60:16, 62:3, 67:21, 74:18
**ability** [6] - 17:10, 26:17, 32:7, 36:10, 45:18, 51:14
**able** [24] - 12:13, 19:2, 19:11, 20:8, 23:18, 26:17, 36:1, 36:22, 45:14, 46:3, 46:13, 46:19, 47:21, 49:25, 50:5, 50:6, 54:12, 55:2, 55:24, 57:3, 61:17, 62:11, 68:7, 68:12
**above-entitled** [1] - 75:24
**absolutely** [5] - 12:22, 25:17, 53:6, 68:24, 72:10
**access** [14] - 5:6, 20:6, 21:14, 21:25, 41:22, 51:1, 51:7, 51:23, 54:3, 54:9, 61:7, 64:11, 66:2, 71:12
**accommodations** [1] - 25:21
**accomplished** [1] - 72:23
**accurate** [1] - 75:23
**ACLU** [1] - 61:3
**act** [2] - 32:13, 51:11
**acting** [11] - 16:6, 16:25, 17:2, 17:15, 18:9, 18:10, 18:16, 18:18, 20:23, 29:6, 71:16
**action** [12] - 5:10, 5:22, 7:22, 16:9, 16:24, 18:21, 19:2, 20:22, 21:5, 29:4, 29:9, 62:18
**Actions** [1] - 31:22
**actions** [3] - 18:13, 29:22, 32:4
**actual** [5] - 30:23, 30:24, 41:18, 55:4, 62:20
**ADA** [1] - 26:8
**add** [6] - 9:4, 10:2, 11:2, 11:16, 64:14, 67:14
**added** [1] - 11:11
**addition** [5] - 20:2, 22:9, 24:6, 30:2, 36:3
**additional** [8] - 10:2, 10:4, 10:9, 23:16, 46:12, 59:21, 71:5
**additionally** [1] - 35:15
**address** [2] - 36:1, 67:24
**adds** [1] - 34:4
**advance** [2] - 47:9, 71:22
**adverse** [1] - 13:13
**advise** [2] - 55:2, 75:5
**ADVOCACY** [2] - 2:5, 2:8
**affect** [1] - 42:2
**affidavit** [1] - 51:5
**affidavits** [10] - 50:22, 51:3, 52:8, 52:17, 53:13, 59:22, 62:22, 68:6, 71:6, 71:7
**afford** [2] - 41:23, 69:19
**agencies** [1] - 29:24
**agency** [4] - 29:6, 29:7, 29:23, 70:3
**ago** [1] - 72:23
**agree** [22] - 9:14, 16:16, 17:4, 17:7, 17:12, 17:16, 22:20, 24:4, 25:17, 27:24, 35:10, 35:24, 38:11, 38:24, 39:16, 43:6, 50:10, 50:20, 52:14, 53:21, 55:5, 63:9
**agreed** [5] - 12:21, 24:8, 24:9, 44:12, 67:19
**agreement** [23] - 7:8, 15:21, 15:25, 16:9, 16:18, 16:20, 17:8, 17:9, 18:3, 18:17, 19:1, 19:5, 19:8, 20:10, 22:13, 25:3, 26:6, 26:8, 26:11, 43:24, 62:20, 63:2, 72:6
**agreements** [19] - 15:25, 19:12, 19:14, 20:20, 21:10, 22:7, 23:6, 23:9, 25:4, 25:25, 47:10, 68:4, 68:7, 68:8, 68:18, 69:4, 71:8, 72:25, 74:20
**ahead** [20] - 3:10, 6:22, 9:7,

12:6, 25:15, 27:15, 28:1, 32:23, 33:4, 34:10, 40:14, 48:1, 55:11, 57:2, 57:12, 59:11, 60:12, 61:19, 67:12, 72:24
**air** [1] - 60:24
**airport** [1] - 41:4
**airstrip** [2] - 37:5, 37:6
**al** [4] - 1:5, 1:9, 3:14, 3:15
**alarming** [1] - 35:17
**Alcatraz** [19] - 7:7, 15:17, 16:1, 19:9, 19:21, 19:23, 21:16, 40:22, 41:16, 43:24, 45:16, 53:24, 63:18, 64:24, 65:14, 67:2, 68:9, 68:19, 69:3
**aliens** [2] - 17:20, 18:12
**alignment** [1] - 10:11
**all-hands-on-deck** [1] - 44:6
**allegation** [2] - 41:13, 41:15
**allegations** [7] - 7:13, 8:1, 10:4, 11:20, 26:21, 36:4, 54:22
**allege** [1] - 10:6
**alleged** [3] - 35:17, 37:16, 37:18
**alleging** [1] - 38:16
**alleviate** [1] - 58:5
**Alligator** [18] - 7:7, 15:17, 16:1, 19:9, 19:21, 19:23, 21:16, 40:22, 41:16, 43:24, 45:16, 53:24, 63:17, 65:13, 67:2, 68:9, 68:19, 69:3
**allow** [4] - 31:14, 31:15, 34:7, 72:3
**allows** [1] - 11:16
**alone** [2] - 23:7, 47:6
**alternative** [1] - 70:9
**alternatively** [1] - 42:22
**Altman** [2] - 27:11, 27:13
**amenable** [1] - 53:12
**amend** [2] - 11:22, 23:18
**amended** [26] - 9:11, 9:17, 10:14, 10:15, 11:3, 11:4, 11:15, 12:1, 12:7, 12:10, 12:11, 15:9, 22:9, 24:18, 42:24, 42:25, 44:13, 44:14, 54:20, 56:5, 57:9, 64:18, 68:24, 74:13, 74:19
**Amendment** [16] - 5:7, 5:8, 5:12, 5:17, 7:15, 7:23, 9:15, 15:18, 17:1, 25:22, 26:6, 51:2, 65:5, 65:6, 71:12, 72:8
**amendments** [1] - 49:5
**AMERICAN** [2] - 1:18, 1:21
**AMERICANS** [2] - 2:5, 2:8
**amount** [1] - 13:10
**AMY** [1] - 2:2
**analysis** [2] - 38:10, 42:3
**analyzed** [1] - 39:8
**ANGELA** [1] - 2:13
**ANGELICA** [1] - 2:13
**animating** [2] - 21:10, 43:24
**anomalies** [1] - 19:8
**answer** [3] - 22:21, 22:22, 33:5
**anyway** [3] - 45:1, 45:2, 54:20
**apologize** [1] - 48:2
**appear** [1] - 20:4
**appearance** [1] - 20:7
**appearances** [1] - 4:21
**APPEARANCES** [1] - 1:15
**Appearances** [1] - 2:1
**appeared** [1] - 4:2
**applicability** [1] - 36:17
**applies** [4] - 19:25, 29:22, 29:24, 60:8
**apply** [8] - 30:6, 30:7, 30:18, 31:6, 31:10, 32:4, 71:9
**applying** [1] - 17:1
**appreciate** [8] - 6:1, 10:20, 12:24, 40:4, 43:20, 52:11, 60:18, 61:15
**apprehension** [1] - 17:20
**appropriate** [8] - 30:15, 33:4, 33:12, 33:16, 33:20, 39:3, 39:21, 75:5
**area** [2] - 18:9, 30:14
**argue** [7] - 16:7, 30:15, 32:1, 35:3, 39:17, 42:18, 53:16
**arguing** [3] - 36:16, 42:18, 50:21
**argument** [29] - 13:24, 14:17, 31:11, 31:20, 32:22, 34:20, 35:19, 36:14, 36:21, 36:25, 37:1, 37:7, 39:9, 39:12, 39:15, 39:18, 39:24, 42:19, 45:22, 46:5, 46:18, 47:15, 50:21, 52:25, 59:2, 63:21, 64:9, 66:12, 67:16
**argument's** [1] - 29:13
**arguments** [20] - 3:23, 32:6, 32:7, 33:25, 35:6, 38:4, 38:5, 43:16, 46:12, 46:24, 47:2, 47:5, 47:13, 49:2, 52:3, 56:24, 58:21, 60:15, 62:9, 73:12
**arising** [1] - 18:13
**arrangement** [1] - 19:13
**arrangements** [1] - 59:5
**Article** [1] - 66:14
**aside** [1] - 8:22
**assist** [1] - 70:23
**assistance** [1] - 18:13
**assisting** [1] - 18:11
**assume** [1] - 48:18
**assurances** [2] - 23:4, 69:17
**attach** [1] - 73:16
**attachment** [1] - 25:8
**attempts** [1] - 67:1
**attorney** [3] - 38:11, 54:3, 54:9
**ATTORNEY** [1] - 2:16
**Attorney's** [1] - 4:18
**ATTORNEY'S** [1] - 2:13
**attorneys** [2] - 19:20, 21:20
**audio** [1] - 3:3
**August** [19] - 56:12, 56:16, 57:1, 57:11, 57:12, 57:21, 57:22, 57:24, 59:12, 59:13, 59:25, 60:1, 62:3, 66:20, 67:21, 74:15, 74:17, 74:18, 76:2
**auspices** [1] - 18:2
**authorities** [4] - 22:15, 43:15, 47:11, 73:7
**authority** [17] - 17:1, 18:11, 18:16, 18:19, 19:7, 19:12, 21:9, 21:15, 22:3, 23:3, 29:7, 41:5, 41:11, 41:12, 69:2, 71:11, 71:17
**available** [2] - 47:2, 51:24
**Avenue** [3] - 2:6, 2:22, 76:5
**avoiding** [1] - 21:22
**aware** [7] - 50:22, 55:1, 65:25, 66:11, 68:1, 70:15, 72:12

**B**

**b)(1** [3] - 28:10, 30:10, 30:18
**b)(2** [3] - 30:12, 30:15, 30:19
**back-and-forth** [1] - 51:18
**back-up** [1] - 37:1
**backdrop** [1] - 42:19
**background** [1] - 40:13
**balked** [1] - 72:19
**bar** [1] - 17:24
**base** [1] - 35:2
**based** [2] - 19:13, 66:24
**bases** [1] - 37:21
**basic** [1] - 22:1
**basis** [5] - 17:8, 19:5, 19:10, 21:9, 39:14
**bearing** [2] - 54:6, 63:13
**bearings** [1] - 55:24
**become** [1] - 24:10
**becomes** [1] - 55:1
**BEFORE** [1] - 1:13
**begin** [3] - 58:19, 60:14, 67:9
**beginning** [1] - 75:4
**behalf** [13] - 1:4, 3:13, 4:3, 4:9, 4:15, 4:19, 5:9, 5:13, 7:16, 7:18, 10:8, 67:25, 69:11
**behind** [1] - 15:12
**belabor** [2] - 29:12, 48:2
**benefit** [3] - 52:7, 59:20, 71:18
**benefits** [1] - 51:19
**best** [5] - 14:23, 16:16, 43:5, 46:11, 50:11
**best-case** [1] - 46:11
**better** [9] - 16:7, 20:20, 24:18, 32:10, 38:22, 56:20, 57:5, 62:16, 67:6
**between** [13] - 7:8, 11:14, 16:18, 21:10, 22:15, 31:12, 31:21, 44:2, 47:10, 64:15, 65:19, 68:18, 73:6
**beyond** [4] - 7:24, 9:19, 27:1, 30:24
**bifurcating** [1] - 62:9
**big** [3] - 9:8, 47:7, 66:10
**bigger** [1] - 9:12
**binding** [1] - 63:19
**bit** [16] - 9:5, 14:3, 22:14, 23:23, 25:11, 29:1, 29:16, 32:10, 42:8, 43:14, 45:5, 51:20, 53:1, 58:25, 59:8, 64:8
**Bivens** [1] - 16:8
**black** [1] - 22:14
**blind** [1] - 68:14
**blown** [1] - 73:4
**bond** [9] - 6:25, 7:3, 7:20, 8:2, 9:19, 10:17, 45:19, 55:7, 66:9
**bonds** [1] - 22:18
**books** [1] - 13:22
**BORREGO** [1] - 1:4
**Borrego** [1] - 3:12
**bottom** [3] - 63:11, 66:22, 73:6
**bouncing** [1] - 51:4
**BOWEN** [1] - 2:11
**boy** [2] - 10:25, 30:8
**breadth** [1] - 74:23
**breaks** [1] - 31:23
**brief** [23] - 3:2, 4:25, 13:19, 24:12, 31:17, 32:23, 33:7, 34:1, 36:23, 38:11, 39:13, 40:2, 40:7, 40:9, 49:12, 50:12, 50:15, 54:16, 55:3, 64:1, 69:14, 72:17
**briefed** [11] - 18:7, 24:14, 27:17, 36:15, 44:10, 46:13, 48:24, 62:8, 62:12, 65:7, 65:15
**briefing** [50] - 13:23, 14:14, 14:15, 14:16, 15:1, 23:15,

24:20, 32:17, 33:13, 33:14, 33:17, 34:16, 35:1, 35:19, 35:21, 35:23, 35:25, 39:2, 42:6, 44:17, 45:4, 45:10, 45:12, 45:23, 46:11, 47:1, 47:4, 48:4, 48:17, 49:13, 49:14, 50:2, 50:17, 52:16, 53:18, 53:22, 54:11, 55:20, 56:3, 57:8, 60:20, 61:15, 61:18, 62:15, 67:19, 67:20, 70:16, 71:5, 74:21
**briefly** [1] - 63:5
**briefs** [2] - 68:11, 74:16
**bring** [3] - 29:10, 73:16, 73:20
**bringing** [2] - 17:11, 31:24
**broad** [1] - 65:11
**broader** [3] - 7:17, 7:21, 8:19
**broadly** [1] - 69:24
**brought** [19] - 5:10, 5:21, 7:15, 18:21, 20:15, 27:1, 27:2, 27:14, 28:17, 29:4, 29:8, 31:7, 31:9, 31:10, 31:15, 31:16, 44:18, 48:6, 71:19
**build** [4] - 59:20, 69:6, 69:14, 73:21
**buy** [1] - 66:12
**BY** [1] - 2:19

## C

**C.M** [2] - 1:4, 3:12
**calendar** [2] - 13:21, 14:16
**California** [2] - 1:22, 1:23
**camera** [2] - 23:4, 69:19
**camp** [1] - 37:5
**cancellations** [1] - 51:9
**candidly** [1] - 40:16
**cannot** [5] - 3:7, 19:13, 19:18, 20:12, 22:17
**capacity** [2] - 29:6, 40:19
**capitol** [1] - 48:9
**care** [3] - 15:2, 45:1, 67:13
**careful** [2] - 27:22, 66:19
**carried** [2] - 38:17, 39:7
**case** [36] - 5:3, 8:17, 10:3, 14:22, 15:23, 16:5, 18:8, 24:3, 26:13, 26:14, 27:9, 28:6, 29:18, 34:22, 35:11, 35:18, 36:4, 36:5, 36:6, 38:14, 39:5, 41:9, 43:6, 43:22, 45:10, 46:11, 46:18, 47:17, 49:22, 52:6, 53:3, 63:16, 63:17, 63:19, 71:19
**CASE** [1] - 1:2
**Case** [1] - 3:11
**cases** [5] - 13:6, 16:8, 18:1, 27:11, 54:24
**casts** [1] - 17:13
**caught** [2] - 62:8, 64:2
**causes** [2] - 16:23, 62:18
**center** [1] - 40:22
**cert** [7] - 11:4, 12:6, 12:12, 24:18, 44:14, 64:16, 65:19
**certain** [5] - 24:2, 25:20, 42:14, 52:10, 70:11
**certainly** [25] - 7:12, 20:19, 22:7, 22:10, 22:16, 26:3, 26:9, 26:24, 30:4, 30:5, 30:20, 31:1, 31:3, 31:9, 33:1, 36:22, 39:16, 47:13, 48:12, 53:12, 54:3, 58:6, 59:4, 65:21, 72:1
**certification** [2] - 10:16
**certified** [1] - 26:23
**certify** [1] - 75:22
**cessation** [1] - 54:8
**cetera** [1] - 44:14
**chance** [5] - 14:22, 24:2, 44:21, 63:6, 69:11
**change** [5] - 9:4, 39:9, 54:25, 55:1, 75:4
**changed** [1] - 49:15
**changes** [4] - 8:25, 54:2, 55:3, 60:23
**changing** [5] - 6:18, 49:20, 50:23, 64:8, 67:22
**charge** [1] - 21:14
**charged** [1] - 21:16
**charges** [2] - 20:9, 21:17
**CHAVEZ** [1] - 2:7
**Chavez** [1] - 3:18
**check** [1] - 70:2
**checklist** [1] - 62:4
**children** [1] - 58:1
**Cho** [21] - 3:17, 3:21, 9:8, 16:3, 16:21, 32:19, 34:21, 43:10, 44:4, 48:22, 49:5, 53:9, 55:9, 56:18, 59:15, 60:4, 61:13, 67:14, 67:25, 71:21, 73:20
**CHO** [34] - 1:17, 3:20, 3:25, 9:24, 11:10, 12:13, 13:2, 14:12, 15:4, 17:7, 18:1, 19:4, 21:2, 21:8, 23:12, 34:24, 35:10, 37:18, 37:22, 43:20, 45:8, 46:9, 46:16, 53:21, 55:18, 56:20, 59:17, 61:14, 61:23, 68:2, 68:21, 73:23, 74:1, 75:13
**chose** [1] - 17:4
**CHRISTINA** [1] - 2:4
**circular** [1] - 51:17
**circumstance** [1] - 55:1
**circumstances** [3] - 64:8, 67:22, 75:2
**cited** [1] - 63:16
**Civil** [1] - 10:1
**CIVIL** [2] - 1:18, 1:21
**civil** [2] - 18:20, 29:4
**claim** [12] - 7:15, 10:7, 17:10, 26:6, 26:7, 26:8, 26:9, 51:2, 51:23, 63:10, 72:8
**claiming** [2] - 19:7, 69:1
**claims** [19] - 5:6, 11:22, 16:5, 17:11, 17:24, 20:15, 23:7, 23:17, 25:20, 27:23, 36:4, 63:1, 65:17, 65:18, 66:2, 67:4, 71:9, 71:11
**clarification** [1] - 6:1
**clarified** [1] - 6:8
**clarify** [1] - 49:25
**clarity** [6] - 6:20, 15:16, 22:1, 22:22, 52:10, 62:18
**class** [21] - 5:10, 5:14, 5:22, 7:22, 8:8, 9:18, 10:3, 10:15, 11:4, 12:6, 12:12, 24:18, 26:23, 44:14, 55:5, 55:14, 64:15, 64:21, 64:22, 65:19
**classification** [2] - 43:2, 64:18
**clean** [6] - 14:18, 14:24, 25:11, 62:6, 65:24, 67:5
**cleaned** [2] - 24:16, 55:12
**cleaner** [1] - 66:17
**cleanly** [2] - 9:7, 67:6
**cleanup** [2] - 13:22, 25:16
**clear** [16] - 6:16, 8:18, 9:2, 12:2, 17:18, 27:3, 27:4, 27:5, 40:24, 50:19, 63:3, 66:22, 68:17, 71:8, 71:19, 72:15
**clearly** [2] - 19:16, 48:12
**client** [8] - 40:11, 43:9, 46:22, 47:16, 48:10, 50:11, 52:1, 71:18
**clients** [1] - 73:2
**clients'** [1] - 38:18
**clock** [1] - 56:6
**clocking** [1] - 14:17
**closer** [2] - 53:12, 54:17
**co** [1] - 24:21
**co-counsel** [1] - 24:21
**coincide** [1] - 68:11
**colleague** [13] - 15:22, 27:9, 27:11, 27:24, 34:3, 34:6, 34:7, 38:24, 40:2, 47:12, 48:21, 48:24, 63:8
**colleague's** [1] - 28:6
**Collier** [4] - 30:13, 30:22, 37:4, 40:12
**color** [4] - 18:10, 18:16, 18:18, 29:6
**comfort** [1] - 25:10
**comfortable** [1] - 25:3
**coming** [10] - 5:17, 6:18, 55:21, 65:18, 67:15, 70:21, 71:1, 71:3, 72:16, 72:17
**commandeered** [1] - 41:4
**commendably** [1] - 72:20
**commitment** [1] - 51:6
**commonality** [1] - 65:8
**communication** [1] - 51:3
**company** [2] - 61:4, 63:13
**compared** [1] - 6:14
**complaint** [52] - 5:3, 5:4, 5:22, 6:11, 6:15, 6:24, 7:14, 7:19, 7:23, 8:9, 8:17, 8:19, 8:21, 8:22, 9:16, 9:17, 10:1, 10:2, 10:5, 11:3, 11:4, 11:9, 11:11, 11:15, 11:16, 11:17, 11:21, 12:1, 12:3, 12:10, 12:17, 15:9, 15:19, 16:23, 22:9, 25:19, 25:20, 25:23, 37:19, 38:20, 41:13, 41:23, 43:1, 46:15, 49:6, 54:22, 55:15, 65:10, 65:17, 65:21, 71:13
**complaints** [2] - 10:25, 36:1
**complicated** [5] - 34:20, 44:1, 44:19, 45:25, 58:2
**component** [2] - 7:12, 64:11
**concern** [15] - 6:3, 7:1, 8:17, 9:20, 15:14, 15:19, 21:1, 21:7, 26:4, 28:1, 28:2, 29:15, 58:5, 59:16, 67:11
**concerned** [5] - 31:18, 54:21, 62:25, 65:23, 66:14
**concerns** [13] - 8:14, 15:12, 17:1, 19:5, 22:16, 24:11, 32:15, 57:17, 65:8, 66:10, 69:13, 70:3, 72:11
**conclude** [1] - 73:24
**conduct** [1] - 46:25
**CONFERENCE** [1] - 1:12
**conference** [1] - 10:19
**conferences** [1] - 49:18
**confidential** [1] - 25:6
**confidentiality** [1] - 72:11
**confirm** [2] - 3:17, 26:3
**confusion** [1] - 7:6
**connected** [1] - 6:11
**connection** [1] - 65:19
**consequence** [1] - 16:2
**consider** [1] - 70:14
**consideration** [1] - 68:5
**considerations** [1] - 50:14
**considered** [1] - 18:18
**consolidate** [1] - 47:3
**consolidated** [4] - 42:10, 50:15, 60:4, 61:15
**constituted** [1] - 24:4
**constitutional** [2] - 18:5, 67:4
**constitutionally** [1] - 5:16
**constructing** [1] - 41:9
**construction** [3] - 36:21,

38:7, 38:10
**consume** [4] - 57:3, 57:5, 59:1, 60:13
**context** [1] - 35:20
**continue** [1] - 69:16
**continued** [2] - 2:1, 54:9
**continues** [1] - 5:5
**contours** [1] - 43:23
**contracted** [1] - 19:23
**contractors** [2] - 19:22, 19:24
**control** [2] - 19:19, 37:10
**controlled** [1] - 41:19
**controls** [1] - 36:17
**convenience** [1] - 39:17
**convenient** [3] - 38:14, 38:22, 49:23
**cooperation** [1] - 47:10
**copy** [1] - 48:6
**core** [3] - 13:11, 15:11, 38:20
**CORENE** [1] - 1:21
**correct** [8] - 4:4, 23:11, 27:17, 30:18, 37:18, 46:9, 50:15, 68:20
**Corrections** [1] - 28:21
**corrections** [1] - 40:17
**counsel** [12] - 4:2, 20:7, 24:21, 28:19, 38:1, 44:18, 45:18, 49:19, 51:7, 51:25, 56:1, 71:12
**count** [6] - 5:18, 5:19, 5:22, 7:14, 7:22
**Count** [6] - 5:21, 6:23, 6:24, 7:11, 8:5, 9:18
**Counts** [1] - 72:5
**counts** [10] - 5:7, 5:8, 5:11, 5:15, 7:24, 15:17, 15:18, 17:5, 17:6, 72:6
**COUNTY** [2] - 2:16, 2:13
**county** [15] - 37:12, 40:12, 41:20, 41:21, 42:16, 43:15, 43:19, 46:20, 47:23, 53:5, 56:10, 60:9, 73:17, 74:9
**County** [11] - 4:4, 28:22, 30:13, 30:22, 37:8, 40:20, 40:23, 41:1, 41:14, 41:17, 57:25
**county's** [2] - 43:20, 73:12
**County's** [2] - 37:2, 37:16
**couple** [3] - 27:13, 34:18, 51:6
**course** [10] - 5:6, 12:7, 15:6, 24:16, 24:24, 32:24, 39:19, 46:25, 55:23, 75:3
**court** [12] - 8:3, 14:18, 20:8, 25:4, 32:11, 36:11, 45:19, 46:3, 54:5, 54:13, 57:3, 66:16
**Court** [48] - 2:20, 2:21, 3:1, 3:3, 5:4, 6:6, 8:2, 8:14, 8:23, 22:8, 22:12, 22:14, 23:18, 25:2, 27:3, 30:6, 30:7, 32:8, 32:10, 33:12, 33:16, 33:18, 33:19, 33:24, 36:1, 37:24, 38:25, 39:1, 39:3, 42:5, 46:1, 53:23, 54:7, 54:9, 55:2, 65:15, 66:25, 67:2, 68:13, 68:22, 71:7, 72:3, 73:5, 73:17, 75:18, 76:3, 76:4
**COURT** [71] - 1:1, 3:2, 3:21, 4:1, 4:6, 4:14, 4:20, 10:20, 11:24, 12:18, 13:3, 14:15, 15:5, 17:12, 18:6, 20:17, 21:3, 22:4, 23:20, 25:15, 27:4, 27:7, 27:12, 27:22, 30:10, 31:11, 32:9, 33:21, 34:25, 36:13, 37:20, 37:25, 39:15, 39:23, 42:4, 43:4, 44:4, 46:7, 46:10, 46:17, 48:1, 48:15, 50:9, 50:18, 52:24, 53:7, 54:17, 55:19, 56:21, 57:16, 57:20, 58:4, 58:7, 59:18, 61:19, 61:24, 68:15, 69:5, 70:5, 70:7, 70:14, 70:19, 71:14, 73:10, 73:20, 73:24, 74:3, 74:6, 74:9, 74:11, 75:17
**Court's** [3] - 5:1, 46:25, 47:24
**courtroom** [1] - 74:18
**courts** [6] - 21:14, 21:25, 22:17, 66:6, 66:8, 66:13
**covered** [1] - 25:20
**criminal** [1] - 21:17
**Cross** [1] - 70:13
**Cross-talking** [1] - 70:13
**CRR** [2] - 2:20, 76:3
**curious** [7] - 23:5, 24:25, 35:4, 35:6, 38:7, 40:13, 45:3
**current** [1] - 41:24
**custody** [8] - 17:9, 19:10, 19:20, 20:3, 21:19, 22:2, 27:14, 45:14
**cut** [2] - 50:9, 59:21

**D**

**DADE** [2] - 2:16, 2:13
**Dade** [11] - 4:3, 28:21, 37:2, 37:7, 37:16, 40:20, 40:22, 41:1, 41:14, 41:17, 57:25
**Dade/Collier** [2] - 28:4, 37:5
**DATE** [1] - 76:2
**date** [3] - 42:14, 52:12, 53:16
**dates** [1] - 61:3
**days** [23] - 13:10, 14:19, 26:14, 27:19, 34:18, 44:19, 44:22, 44:23, 49:14, 50:5, 50:7, 52:17, 53:4, 53:13, 54:15, 54:16, 56:13, 56:18, 59:17, 60:13, 72:19
**DC** [1] - 1:20
**DDC** [1] - 63:19
**de** [1] - 64:9
**deadline** [4] - 61:18, 69:14, 69:15, 74:24
**deal** [3] - 35:7, 39:4, 75:7
**dealing** [3] - 17:23, 20:2, 47:16
**dealt** [1] - 35:20
**decide** [3] - 48:18, 49:1, 52:18
**decided** [1] - 38:14
**decision** [3] - 19:18, 39:20, 51:20
**decision-making** [1] - 19:18
**decisions** [3] - 30:24, 36:8, 40:21
**deck** [1] - 44:6
**declaration** [1] - 45:16
**declarations** [3] - 49:25, 50:6, 50:13
**deems** [1] - 39:3
**deep** [1] - 36:15
**Defendant** [1] - 31:22
**defendant** [12] - 6:25, 28:8, 28:10, 28:14, 28:16, 29:5, 29:9, 30:1, 31:7, 36:19, 36:20, 63:24
**defendants** [39] - 4:3, 4:10, 4:19, 6:21, 7:25, 13:23, 14:8, 17:11, 18:2, 19:6, 20:15, 20:16, 23:14, 24:22, 28:17, 29:3, 30:2, 30:4, 30:7, 30:8, 30:19, 31:8, 35:12, 35:21, 39:2, 39:13, 45:10, 50:11, 54:15, 57:11, 61:16, 69:12, 69:17, 74:3, 74:6, 74:16, 74:22, 74:24
**Defendants** [1] - 1:10
**DEFENDANTS** [3] - 2:10, 2:13, 2:16
**defense** [9] - 15:6, 15:7, 16:13, 22:6, 22:24, 36:16, 44:8, 54:18, 56:1
**deference** [1] - 39:19
**define** [1] - 10:6
**defined** [1] - 7:24
**definitely** [2] - 23:22, 52:7
**definition** [1] - 64:23
**definitively** [1] - 26:1
**delay** [6] - 34:5, 35:18, 35:22, 44:7, 46:5, 48:19
**delegation** [1] - 41:11
**denied** [1] - 21:25
**deny** [1] - 67:7
**department** [1] - 40:18
**Department** [4] - 1:9, 3:15, 4:7, 28:21
**deportation** [3] - 45:17, 54:24, 55:4
**deported** [1] - 53:24
**depth** [1] - 43:23
**deputized** [1] - 16:7
**DeSantis** [2] - 2:11, 4:13
**DeSantis's** [1] - 41:5
**desides** [1] - 46:2
**desire** [1] - 43:25
**details** [2] - 47:10, 49:16
**detained** [6] - 7:18, 8:1, 8:3, 9:15, 21:16, 22:19
**detainees** [5] - 10:17, 19:18, 20:7, 21:25, 36:10
**detention** [3] - 17:20, 40:22, 69:2
**determination** [2] - 6:25, 7:4
**determinations** [2] - 55:7, 66:9
**determine** [3] - 33:12, 64:19, 64:20
**determines** [1] - 33:16
**determining** [1] - 18:19
**developing** [1] - 55:22
**develops** [1] - 75:4
**differ** [1] - 63:9
**different** [10] - 4:3, 24:21, 27:23, 27:25, 36:5, 47:2, 53:2, 65:2, 66:15, 66:16
**difficult** [4] - 10:23, 13:9, 47:3, 73:1
**digging** [1] - 29:1
**direct** [2] - 36:9, 74:22
**directed** [1] - 42:23
**directly** [2] - 18:22, 41:2
**director** [2] - 28:11, 40:17
**Director** [4] - 4:12, 28:20, 28:23, 40:16
**disagree** [2] - 29:21, 34:13
**disclaim** [1] - 19:18
**disclaiming** [1] - 21:18
**discovery** [22] - 22:25, 26:12, 26:15, 26:16, 26:19, 47:12, 62:21, 68:3, 68:10, 68:23, 69:9, 69:15, 69:25, 70:8, 70:22, 71:4, 71:5, 72:13, 73:4, 73:14, 73:21, 74:20
**disjointed** [2] - 9:5, 55:16
**dismiss** [1] - 42:17
**dismissal** [1] - 33:3
**dispose** [2] - 44:25, 67:6
**dispositive** [1] - 46:7
**dispute** [1] - 37:11
**disrupted** [1] - 60:23

**distinct** [2] - 36:18, 70:16
**distinction** [2] - 11:13, 11:14
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [7] - 2:21, 2:22, 30:5, 31:3, 35:11, 76:4, 76:4
**district** [31] - 28:9, 28:10, 28:12, 28:18, 29:8, 29:11, 29:16, 30:1, 30:3, 30:12, 30:21, 31:1, 31:2, 31:6, 31:9, 31:10, 31:24, 32:11, 34:4, 34:11, 35:14, 36:8, 38:12, 38:15, 38:17, 38:19, 38:21, 38:23, 39:6, 48:21, 48:25
**divined** [1] - 20:19
**Division** [1] - 41:4
**DIVISION** [1] - 1:2
**docket** [1] - 15:11
**Docket** [2] - 41:6, 41:9
**document** [3] - 11:11, 11:19, 11:22
**documents** [2] - 12:9, 73:15
**done** [11] - 12:19, 14:4, 25:11, 35:24, 39:10, 42:9, 44:20, 55:3, 55:13, 57:3, 62:7
**door** [4] - 8:19, 13:4, 67:12, 72:18
**doubt** [1] - 17:14
**down** [8] - 29:10, 29:19, 31:23, 43:5, 59:2, 59:14, 60:25, 65:12
**draft** [1] - 42:13
**drink** [1] - 47:19
**driven** [3] - 5:6, 6:4, 13:13
**drives** [1] - 18:13
**driving** [1] - 15:12
**drop** [1] - 43:21
**dropped** [2] - 42:25, 43:1
**due** [3] - 5:18, 10:7, 26:8

## E

**E.R** [2] - 1:4, 3:13
**easier** [4] - 43:8, 58:11, 59:14, 66:17
**easiest** [1] - 60:4
**easily** [1] - 35:20
**easy** [1] - 27:15
**ECF** [1] - 11:25
**economy** [5] - 34:6, 35:25, 39:18, 49:13, 62:10
**educated** [2] - 28:4, 37:4
**efficiency** [1] - 44:1
**efficient** [1] - 58:23
**either** [6] - 21:17, 31:2, 32:13, 41:23, 56:16, 59:12
**elements** [2] - 20:25, 64:4
**emailed** [4] - 21:21, 45:11, 48:6, 48:10
**emails** [2] - 51:3, 51:8
**emergency** [4] - 6:7, 41:5, 41:11, 54:14
**Emergency** [1] - 41:4
**emergent** [2] - 35:16, 53:25
**employ** [1] - 18:20
**Employee** [1] - 31:22
**employee** [3] - 18:15, 28:15, 29:5
**employees** [2] - 17:18, 20:5
**end** [11] - 12:22, 48:19, 52:25, 55:10, 56:4, 59:23, 59:25, 62:7, 73:25, 74:14, 75:3
**ends** [2] - 34:2, 48:20
**energies** [1] - 48:16
**Enforcement** [1] - 28:23
**enforcing** [1] - 18:11
**ensure** [2] - 10:10, 54:9
**ensuring** [1] - 20:7
**entered** [1] - 18:17
**entertain** [3] - 13:15, 67:1, 70:22
**entire** [1] - 13:19
**entirely** [2] - 40:16, 41:21
**entities** [2] - 5:9, 47:2
**entitled** [1] - 75:24
**entity** [1] - 40:19
**Entry** [2] - 41:6, 41:9
**environmental** [1] - 27:9
**EOIR** [2] - 5:19, 7:24
**ERO** [1] - 28:24
**especially** [1] - 6:21
**essentially** [8] - 13:12, 16:5, 17:2, 20:24, 42:16, 44:22, 60:13, 71:17
**established** [2] - 16:4, 36:21
**et** [5] - 1:5, 1:9, 3:14, 3:15, 44:14
**EUNICE** [1] - 1:17
**event** [3] - 6:7, 6:22, 7:10
**events** [1] - 10:4
**Everglades** [4] - 36:6, 40:24, 41:3, 41:7
**evidenced** [1] - 51:3
**evolving** [1] - 64:10
**Ex** [1] - 21:5
**ex** [3] - 14:7, 24:11, 72:16
**ex-parte** [1] - 24:11
**exactly** [8] - 5:1, 7:7, 10:20, 19:4, 20:21, 40:11, 56:24, 67:19
**example** [10] - 19:15, 19:17, 23:16, 28:19, 35:21, 50:25, 65:12, 66:1, 66:3, 72:4
**exceed** [1] - 60:5
**except** [1] - 29:7
**executive** [1] - 41:6
**Executive** [1] - 4:12
**exigent** [2] - 45:10, 75:1
**exist** [2] - 68:4, 68:8
**existing** [2] - 11:3, 19:7
**expand** [2] - 9:18, 24:8
**expanded** [2] - 8:15, 8:16
**expanding** [1] - 9:14
**expands** [3] - 7:24, 8:25, 65:20
**expansive** [1] - 6:14
**expect** [4] - 32:17, 33:6, 62:14, 74:19
**expecting** [1] - 56:11
**expedite** [4] - 13:19, 13:22, 61:4, 73:21
**expedited** [38] - 6:1, 6:8, 14:4, 14:13, 14:15, 14:16, 15:1, 22:25, 24:15, 24:20, 26:13, 26:15, 26:16, 26:19, 32:15, 32:17, 33:15, 35:22, 39:2, 39:13, 40:7, 44:16, 45:4, 60:19, 60:20, 62:21, 68:3, 68:10, 69:8, 69:15, 69:25, 70:8, 70:22, 71:4, 71:5, 72:13, 73:14, 74:20
**expeditious** [1] - 45:4
**expeditiously** [3] - 46:4, 46:15, 48:13
**explain** [1] - 20:8
**explained** [1] - 21:15
**extend** [1] - 61:17
**extension** [1] - 28:14
**extensions** [1] - 60:11
**extent** [9] - 3:4, 19:6, 26:12, 30:23, 30:24, 32:2, 32:8, 48:11, 69:1
**external** [1] - 69:2
**extra** [6] - 54:19, 56:7, 58:9, 59:10, 61:16, 66:5
**extraordinary** [1] - 13:14

## F

**facilitating** [1] - 51:12
**facilitation** [1] - 20:6
**facility** [21] - 7:3, 10:17, 16:11, 16:19, 19:9, 19:16, 19:24, 20:5, 20:11, 21:19, 21:24, 37:10, 39:18, 41:10, 41:18, 46:21, 49:17, 50:1, 51:10, 51:13, 54:10
**facing** [1] - 7:19
**fact** [7] - 6:4, 7:21, 25:11, 35:16, 45:9, 51:5, 71:25
**facto** [1] - 64:9
**facts** [12] - 6:18, 11:11, 11:16, 11:18, 11:20, 11:21, 15:11, 36:3, 36:7, 41:15, 49:15, 58:24
**factual** [3] - 7:25, 10:4, 54:2
**fair** [9] - 3:24, 20:17, 22:22, 42:21, 42:22, 53:20, 55:11, 60:22, 65:22
**far** [1] - 41:14
**fashion** [1] - 5:11
**fashioned** [1] - 5:5
**fast** [7] - 6:17, 9:3, 13:6, 44:5, 49:20, 52:6, 75:6
**fast-moving** [4] - 6:17, 9:3, 13:6, 52:6
**faster** [1] - 48:17
**fat** [1] - 43:5
**faulting** [2] - 6:17, 9:3
**fear** [1] - 54:23
**federal** [42] - 4:15, 4:19, 5:8, 5:15, 16:6, 16:19, 17:2, 17:3, 18:10, 19:17, 20:16, 21:11, 21:17, 22:15, 29:23, 29:24, 30:3, 30:7, 30:19, 31:8, 31:15, 33:3, 38:3, 38:4, 38:5, 39:1, 39:13, 41:12, 41:20, 42:9, 42:13, 43:14, 44:18, 47:5, 47:10, 52:13, 68:18, 69:11, 71:17, 73:7, 74:3
**Federal** [3] - 10:1, 18:19, 18:21
**FEDERAL** [1] - 2:13
**feds** [4] - 7:8, 37:13, 56:10, 60:8
**fellow** [1] - 24:21
**Fernandez** [1] - 3:12
**FERNANDEZ** [1] - 1:4
**few** [3] - 27:11, 27:18, 75:11
**field** [3] - 28:11, 28:24, 36:8
**Field** [1] - 28:23
**fifth** [2] - 5:18, 7:14
**Fifth** [3] - 7:15, 9:15, 65:6
**figure** [11] - 5:1, 8:11, 16:17, 40:8, 45:6, 47:20, 52:1, 56:17, 56:24, 59:19, 73:17
**figuring** [1] - 58:25
**file** [40] - 8:2, 9:17, 9:25, 10:13, 10:15, 10:18, 11:10, 11:19, 12:16, 12:20, 13:24, 16:22, 22:8, 32:18, 39:2, 42:16, 42:24, 44:12, 44:22, 44:23, 44:24, 45:19, 49:9, 51:17, 53:1, 53:22, 54:13, 54:15, 54:16, 54:19, 55:9, 55:10, 55:18, 60:10, 61:17, 66:16, 66:17, 69:8, 75:4
**filed** [13] - 5:24, 6:4, 6:10, 9:11, 12:10, 12:22, 14:21, 26:14, 44:15, 55:23, 56:5, 59:24, 71:2

**filing** [5] - 10:5, 11:17, 12:11, 12:25, 24:17
**filings** [3] - 42:24, 42:25, 69:7
**fine** [6] - 12:3, 25:10, 34:18, 47:11, 48:5, 50:17
**finish** [2] - 28:1, 64:13
**First** [13] - 5:7, 5:8, 5:12, 5:16, 7:23, 15:18, 17:1, 25:22, 26:6, 51:2, 65:5, 71:12, 72:8
**first** [14] - 5:15, 7:17, 9:8, 23:24, 24:13, 27:1, 28:3, 29:18, 30:10, 31:18, 32:21, 50:10, 57:24, 72:18
**five** [10] - 5:7, 10:7, 44:19, 44:22, 50:7, 53:19, 54:16, 56:18
**fix** [3] - 9:7, 24:9, 65:24
**fixed** [1] - 24:5
**Flagler** [1] - 2:3
**fleshed** [1] - 63:21
**flexibility** [1] - 59:9
**flip** [1] - 34:12
**floodgates** [1] - 23:1
**Floor** [1] - 1:19
**FLORIDA** [1] - 1:1
**Florida** [29] - 1:4, 2:3, 2:6, 2:9, 2:12, 2:15, 2:17, 2:22, 2:23, 20:4, 21:19, 21:21, 28:24, 30:5, 31:3, 35:12, 38:12, 38:15, 38:17, 38:20, 38:25, 41:3, 41:9, 41:17, 41:19, 76:4, 76:6
**Florida's** [1] - 41:3
**flow** [1] - 67:16
**flying** [1] - 68:14
**focus** [4] - 29:17, 43:14, 48:16, 65:16
**focused** [4] - 6:23, 7:19, 16:14, 29:17
**focuses** [2] - 6:25, 7:10
**fold** [3] - 49:1, 52:18, 53:10
**folded** [2] - 45:25, 55:14
**folks** [2] - 21:21, 22:19
**follow** [2] - 13:4, 39:10
**following** [4] - 53:10, 55:19, 57:8, 59:7
**footnote** [1] - 63:19
**FOR** [7] - 1:17, 2:2, 2:5, 2:8, 2:10, 2:13, 2:16
**force** [2] - 15:12, 45:17
**foreclosed** [3] - 16:24, 19:16, 19:24
**foregoing** [1] - 75:22
**foremost** [1] - 32:21
**form** [3] - 51:16, 63:20, 72:12
**formal** [1] - 12:16
**forms** [1] - 21:3
**formulate** [1] - 58:20
**forth** [3] - 5:21, 51:18, 73:16
**forthcoming** [3] - 32:19, 49:3, 64:18
**forthwith** [1] - 12:20
**forum** [3] - 38:14, 38:22
**forward** [7] - 11:25, 13:7, 22:21, 22:23, 23:10, 26:16, 67:8
**FOUNDATION** [2] - 1:18, 1:22
**four** [2] - 5:15, 72:19
**frame** [1] - 68:21
**framed** [3] - 7:13, 9:20, 13:5
**frankly** [2] - 44:19, 51:6
**Fransisco** [1] - 1:23
**fresh** [1] - 11:8
**Friday** [6] - 6:12, 26:2, 48:11, 58:2, 58:3, 58:4
**Friends** [3] - 36:6, 41:3, 41:7
**front** [6] - 24:2, 32:10, 34:3, 34:23, 62:19, 63:8
**full** [7] - 3:16, 18:14, 20:10, 44:12, 48:16, 54:21, 73:4
**full-blown** [1] - 73:4
**fully** [6] - 32:17, 32:25, 44:2, 46:13, 46:23, 75:6
**fulsome** [1] - 52:15
**fulsomely** [1] - 65:7
**function** [1] - 17:19
**functions** [5] - 8:25, 12:5, 41:12, 65:13, 66:24
**fundamental** [2] - 23:2, 54:1
**funds** [1] - 41:10

## G

**g)(1** [1] - 17:13
**game** [3] - 67:17, 73:18, 74:25
**Garrett** [1] - 28:22
**gateway** [1] - 31:13
**general** [5] - 31:21, 32:3, 36:16, 41:11, 63:15
**generally** [3] - 25:10, 32:11, 35:4
**given** [6] - 30:13, 35:16, 35:17, 43:11, 44:12, 75:1
**glad** [2] - 10:13, 39:25
**goal** [4] - 8:10, 13:21, 14:16, 23:25
**GODSHALL** [1] - 2:2
**Godshall** [1] - 3:18
**government** [11] - 16:19, 19:18, 21:11, 28:8, 31:15, 35:12, 41:20, 45:21, 47:5, 59:19, 69:1
**government's** [4] - 54:4, 54:5, 56:8, 59:25
**governmental** [1] - 47:9
**governments** [1] - 68:18
**Governor** [2] - 4:12, 41:5
**governor** [1] - 29:10
**grant** [2] - 12:19, 67:7
**granted** [2] - 23:21, 60:11
**great** [5] - 4:1, 39:10, 48:20, 48:21, 62:1
**green** [3] - 35:13, 43:12, 47:17
**Green** [3] - 28:20, 40:16, 40:17
**ground** [9] - 50:24, 54:2, 54:6, 54:25, 55:3, 60:23, 61:7, 62:2, 75:2
**grounded** [1] - 5:16
**growing** [1] - 51:10
**guarantee** [2] - 26:7
**guaranteed** [1] - 26:18
**guess** [8] - 20:19, 21:3, 30:11, 33:21, 33:22, 42:19, 48:18, 63:20
**Guthrie** [1] - 4:12
**GUTHRIE** [1] - 2:11
**guy** [1] - 44:6
**guys** [23] - 5:24, 6:7, 14:15, 15:8, 15:19, 15:21, 16:3, 24:1, 24:12, 24:19, 31:24, 47:20, 50:20, 53:1, 55:9, 59:22, 60:10, 60:16, 60:19, 60:21, 65:24, 72:13, 73:15

## H

**hall** [1] - 15:23
**hand** [1] - 19:22
**handle** [2] - 46:3, 62:12
**handled** [1] - 45:23
**hands** [1] - 44:6
**happy** [4] - 14:12, 39:23, 59:8, 68:21
**hard** [1] - 11:2
**harm** [4] - 64:5, 64:6, 64:11, 66:23
**hate** [3] - 10:23, 50:2, 60:1
**hear** [15] - 9:21, 13:24, 15:8, 20:17, 23:23, 27:5, 33:21, 39:25, 55:8, 55:25, 57:17, 58:17, 63:3, 69:11, 70:20
**heard** [5] - 3:2, 3:22, 34:10, 37:9, 51:15
**hearing** [20] - 8:14, 10:18, 13:20, 27:10, 27:18, 33:14, 33:17, 39:7, 44:8, 55:8, 56:4, 56:23, 57:12, 58:14, 61:10, 61:11, 71:3, 71:5, 74:17, 75:25
**heart** [1] - 52:2
**held** [8] - 19:21, 20:3, 20:9, 21:13, 21:18, 21:24, 23:22, 68:9
**help** [12] - 22:7, 22:12, 23:6, 25:7, 45:5, 49:25, 53:14, 62:3, 68:13, 69:21, 73:5, 73:8
**helping** [1] - 59:22
**helps** [2] - 56:1, 58:9
**hereby** [1] - 75:22
**high** [1] - 66:21
**history** [1] - 8:11
**hit** [2] - 5:3, 62:2
**hole** [1] - 22:14
**Homeland** [3] - 1:9, 3:15, 4:7
**honestly** [2] - 39:6, 44:20
**Honor** [65] - 3:20, 3:25, 4:5, 4:11, 4:17, 9:24, 9:25, 11:10, 11:19, 11:23, 12:13, 12:15, 13:2, 14:12, 15:4, 17:7, 18:1, 19:4, 20:16, 21:2, 21:8, 21:12, 25:13, 29:21, 34:24, 35:10, 37:18, 37:22, 38:9, 38:20, 39:6, 40:15, 42:22, 43:20, 43:25, 45:8, 45:20, 46:1, 46:9, 46:16, 47:25, 52:23, 53:6, 53:21, 55:18, 56:20, 57:15, 58:6, 59:17, 61:14, 68:2, 68:21, 70:18, 70:25, 73:9, 73:19, 73:23, 74:2, 74:5, 74:8, 74:10, 75:13, 75:14, 75:15, 75:16
**Honor's** [1] - 48:4
**HONORABLE** [1] - 1:13
**Honorable** [1] - 2:21
**hook** [2] - 37:14, 37:15
**hope** [6] - 31:3, 53:10, 55:2, 61:2, 75:5, 75:10
**hopeful** [1] - 61:8
**hopefully** [2] - 6:19, 8:14
**hopes** [1] - 46:21
**hoping** [2] - 7:3, 10:21
**hour** [2] - 51:16, 67:18
**hours** [16] - 10:18, 10:22, 11:3, 12:14, 12:21, 14:17, 22:5, 32:20, 39:3, 44:16, 49:4, 55:18, 56:24, 57:23, 61:25, 69:7
**hours'** [1] - 75:11
**housed** [1] - 27:16
**housekeeping** [1] - 23:25
**hundred** [1] - 54:12
**hundreds** [1] - 21:13
**hypothetically** [1] - 33:24
**HYUNHYE** [1] - 1:17

## I

**ICE** [7] - 19:19, 19:20, 21:18, 21:20, 21:22, 28:11, 36:8
**ICE's** [2] - 21:20, 28:23
**idea** [2] - 26:3, 42:8
**identify** [1] - 8:2
**ignorant** [1] - 41:21
**II** [2] - 1:13, 2:21
**illegal** [1] - 18:12
**ILONA** [2] - 2:20, 76:3
**imagine** [1] - 51:21
**immediate** [1] - 54:24
**immediately** [3] - 34:17, 44:10, 55:2
**immigrant** [1] - 21:24
**IMMIGRANT** [2] - 2:5, 2:8
**immigrants** [1] - 20:3
**immigration** [25] - 7:1, 7:4, 7:5, 7:20, 8:3, 17:19, 18:11, 20:5, 20:8, 21:14, 21:17, 21:25, 22:17, 36:11, 41:12, 45:19, 54:13, 65:1, 65:2, 66:6, 66:8, 66:12, 66:16, 71:17
**immunity** [1] - 18:20
**impact** [1] - 36:9
**impinging** [1] - 38:18
**implement** [1] - 41:12
**implicate** [1] - 17:10
**importance** [1] - 15:16
**important** [4] - 19:11, 50:20, 52:12, 65:14
**importantly** [1] - 30:23
**impressed** [1] - 39:7
**improper** [1] - 42:17
**in-camera** [1] - 23:4
**in-person** [1] - 49:19
**inability** [1] - 8:1
**incarcerating** [1] - 18:12
**inclined** [1] - 42:5
**include** [1] - 68:24
**included** [1] - 25:22
**includes** [1] - 11:20
**including** [2] - 20:6, 25:20
**incumbent** [1] - 68:5
**indeed** [9] - 16:3, 16:20, 17:16, 17:24, 36:7, 43:9, 63:1, 67:8, 72:6
**independent** [1] - 63:23
**indicated** [5] - 6:13, 44:13, 45:15, 47:8, 51:5
**indicating** [1] - 7:5
**indiscernible** [5] - 26:22, 48:10, 49:21, 49:22, 68:23
**individual** [8] - 3:23, 5:9, 6:25, 7:19, 8:6, 8:8, 49:13, 54:23
**individuals** [6] - 3:5, 7:2, 17:9, 17:23, 27:14, 55:7
**information** [7] - 20:14, 23:14, 23:16, 51:22, 52:8, 52:11, 62:16
**initial** [7] - 5:3, 9:20, 10:5, 11:17, 11:18, 67:11, 69:25
**injunction** [11] - 13:11, 14:5, 14:11, 14:13, 14:24, 15:1, 24:10, 35:19, 45:24, 56:10, 61:9
**injunctive** [13] - 22:10, 24:24, 32:19, 33:8, 34:14, 47:14, 49:3, 52:5, 64:5, 65:22, 66:25, 69:21, 73:5
**instances** [1] - 5:13
**instead** [2] - 11:8, 42:4
**intended** [1] - 60:25
**interest** [1] - 50:11
**interested** [1] - 33:23
**interesting** [1] - 38:3
**interim** [1] - 61:1
**internal** [1] - 3:3
**interplay** [6] - 22:15, 31:12, 40:12, 41:20, 64:15, 73:6
**interplaying** [1] - 31:21
**interpretation** [1] - 39:11
**interpreters** [3] - 25:21, 65:12, 66:2
**interrupt** [2] - 27:12, 71:14
**interview** [1] - 51:14
**investigation** [1] - 17:20
**invoke** [1] - 33:4
**involved** [2] - 34:23, 34:24
**irreparable** [4] - 64:5, 64:6, 64:11, 66:23
**ISABEL** [1] - 2:4
**issuance** [1] - 22:18
**issue** [55] - 7:1, 9:19, 12:9, 13:24, 15:13, 15:15, 17:5, 21:5, 23:1, 24:25, 25:12, 25:16, 25:25, 26:20, 27:2, 27:3, 27:4, 27:5, 27:6, 27:7, 27:11, 28:7, 29:16, 32:7, 33:10, 33:12, 34:9, 35:7, 35:15, 37:25, 38:6, 38:11, 38:25, 39:4, 40:7, 40:11, 40:21, 41:2, 43:6, 43:17, 44:9, 45:6, 46:2, 47:6, 47:16, 48:22, 62:13, 63:5, 63:7, 68:3, 69:16, 70:1, 70:8, 70:23, 72:2
**issues** [12] - 25:23, 26:24, 30:17, 33:17, 45:9, 46:6, 52:3, 64:25, 65:8, 68:12, 72:11, 72:20
**it'll** [3] - 36:15, 62:12, 62:14
**it..** [1] - 60:17
**itself** [3] - 8:24, 25:19, 30:24

## J

**J.M.C** [2] - 1:4, 3:12
**jam** [1] - 55:12
**job** [1] - 39:10
**JOHN** [1] - 2:10
**joint** [4] - 42:13, 46:25, 49:12, 50:17
**judge** [4] - 7:1, 39:5, 46:11, 62:11
**JUDGE** [1] - 1:13
**Judge** [13] - 15:22, 19:1, 27:9, 27:11, 27:13, 27:16, 33:13, 34:23, 42:20, 52:4, 66:11, 69:23, 70:10
**judges** [1] - 7:5
**judicial** [10] - 28:10, 29:8, 30:1, 34:6, 35:14, 35:25, 36:8, 39:18, 49:13, 62:10
**July** [9] - 1:6, 5:2, 6:5, 6:6, 45:11, 57:10, 57:13, 59:24, 74:14
**jump** [1] - 24:1
**jurisdiction** [3] - 7:1, 7:6, 8:3
**jurisdictional** [7] - 22:16, 32:14, 35:15, 37:15, 45:22, 48:22, 66:9
**JUSTICE** [2] - 2:5, 2:8
**justification** [1] - 26:10

## K

**keep** [2] - 25:14, 61:2
**keeps** [1] - 64:10
**KENDRICK** [1] - 1:21
**Kendrick** [1] - 3:17
**KEVIN** [1] - 2:11
**Kevin** [1] - 4:12
**key** [1] - 18:18
**kind** [7] - 26:6, 27:1, 30:13, 38:3, 50:25, 68:15, 73:5
**King** [1] - 63:16
**knowing** [1] - 23:5
**known** [1] - 40:22
**KRISTI** [1] - 1:8
**Kristi** [1] - 3:14

## L

**lack** [3] - 16:7, 42:14, 51:3
**land** [6] - 28:5, 30:24, 40:13, 41:1, 41:16, 41:22
**lands** [1] - 41:10
**language** [3] - 17:13, 17:17, 36:18
**LaRocca** [2] - 2:4, 3:18
**last** [2] - 55:23, 64:13
**latest** [1] - 58:13
**law** [12] - 8:17, 16:5, 16:6, 17:1, 18:8, 18:21, 21:17, 26:10, 29:8, 39:11, 71:19
**laws** [1] - 18:11
**lawsuit** [1] - 72:22
**lawyer** [2] - 3:23, 38:3
**lawyers** [3] - 4:21, 38:4, 64:12
**lead** [2] - 3:21, 46:5
**least** [11] - 9:4, 15:21, 24:15, 28:3, 34:14, 39:25, 44:8, 57:7, 61:8, 72:16, 73:16
**leave** [11] - 9:25, 11:6, 12:16, 12:23, 23:17, 23:20, 42:16, 44:12, 60:5, 60:9, 69:8
**leaving** [1] - 43:19
**left** [1] - 53:3
**legal** [6] - 19:12, 21:9, 21:15, 21:23, 22:2, 29:7
**legitimate** [1] - 29:15
**legs** [1] - 64:21
**less** [2] - 44:20, 53:19
**lessened** [1] - 72:5
**letting** [1] - 72:17
**level** [3] - 25:10, 52:4, 66:21
**liability** [2] - 18:4, 18:19
**liberally** [2] - 23:21, 60:11
**LIBERTIES** [2] - 1:18, 1:21
**lieu** [1] - 50:15
**life** [2] - 43:8, 53:17
**likelihood** [6] - 22:11, 52:2, 62:17, 64:19, 66:23, 72:4
**limitation** [1] - 60:11
**limitations** [1] - 76:1
**limited** [6] - 34:9, 34:16, 42:6, 68:17, 70:22, 73:3
**line** [3] - 59:22, 66:3
**lines** [2] - 51:12, 51:15
**listed** [1] - 71:23
**listen** [1] - 32:9
**listening** [1] - 66:3
**litany** [1] - 71:23
**litigate** [1] - 24:8
**litigated** [2] - 63:8, 67:11
**litigating** [1] - 34:22
**LITIGATION** [2] - 2:5, 2:8
**live** [6] - 13:20, 60:16, 61:6, 62:3, 62:21, 67:20
**LLP** [1] - 2:11
**local** [4] - 3:7, 8:25, 20:1, 24:7
**located** [5] - 28:9, 28:16, 30:3, 35:13, 36:11
**location** [2] - 36:10, 39:18
**look** [16] - 17:13, 24:22, 36:22, 39:23, 52:22, 56:12, 58:7, 59:2, 60:18, 63:5, 63:6,

64:10, 64:17, 68:6, 73:21, 75:11
**looked** [8] - 5:22, 6:6, 18:8, 27:12, 27:23, 29:1, 51:9, 65:11
**looking** [6] - 3:23, 4:6, 5:2, 9:11, 46:12, 70:17
**looks** [1] - 44:11
**loser** [1] - 29:13
**loud** [2] - 42:7, 63:3
**lump** [1] - 46:22
**Lupowitz** [1] - 76:2
**LUPOWITZ** [2] - 2:20, 76:3

## M

**maintain** [1] - 19:2
**maintaining** [1] - 38:8
**major** [2] - 17:5, 69:13
**managed** [1] - 16:20
**Management** [1] - 41:4
**manner** [3] - 21:25, 33:15, 35:22
**Marlene** [1] - 4:17
**MARLENE** [1] - 2:16
**matched** [1] - 65:23
**material** [1] - 55:4
**matter** [7] - 3:12, 38:22, 39:1, 45:25, 63:18, 68:6, 75:24
**mean** [20] - 20:18, 21:1, 23:8, 23:20, 26:12, 34:18, 34:19, 44:18, 44:24, 48:7, 48:23, 50:3, 50:9, 55:11, 59:9, 60:5, 65:12, 66:1, 70:2, 71:1
**meaning** [1] - 60:24
**means** [3] - 24:10, 24:11, 29:9
**meeting** [1] - 51:12
**meetings** [1] - 49:19
**member** [1] - 34:10
**memory** [1] - 37:2
**mention** [1] - 37:3
**mentioned** [3] - 28:22, 48:22, 65:9
**merit** [5] - 35:2, 48:20, 52:2, 66:23, 72:4
**merits** [7] - 22:11, 39:4, 62:17, 64:3, 64:19, 64:22, 75:8
**MEROS** [19] - 2:10, 4:11, 25:13, 25:16, 27:6, 27:8, 27:20, 29:21, 30:17, 32:1, 33:10, 47:25, 48:2, 49:11, 50:16, 70:25, 73:9, 74:8, 75:14
**Meros** [18] - 4:11, 16:14, 18:24, 23:22, 27:4, 35:5, 36:22, 39:16, 47:8, 48:1, 48:15, 50:25, 63:3, 63:13, 65:9, 70:20, 71:14, 74:7
**Meros's** [2] - 52:14, 64:7
**mess** [1] - 14:3
**met** [1] - 66:24
**MIAMI** [3] - 1:2, 2:16, 2:13
**Miami** [25] - 1:4, 2:3, 2:6, 2:9, 2:15, 2:17, 2:22, 2:23, 4:3, 28:21, 28:24, 35:14, 36:9, 36:11, 37:2, 37:7, 37:16, 40:20, 40:22, 41:1, 41:14, 41:17, 57:25, 76:5, 76:6
**Miami-Dade** [10] - 4:3, 28:21, 37:2, 37:16, 40:20, 40:22, 41:1, 41:14, 41:17, 57:25
**MIAMI-DADE** [2] - 2:16, 2:13
**MICHAEL** [1] - 1:4
**Michael** [1] - 3:12
**middle** [14] - 29:16, 30:13, 30:21, 31:2, 31:10, 34:3, 34:11, 38:14, 38:17, 38:19, 38:23, 39:5, 48:21, 48:24
**might** [11] - 3:22, 9:17, 14:23, 21:6, 35:1, 47:21, 49:13, 58:11, 60:4, 61:17, 73:12
**mind** [5] - 23:17, 59:4, 61:20, 62:23
**minimum** [1] - 9:10
**minute** [2] - 44:15, 54:25
**missed** [1] - 67:24
**missing** [2] - 20:25, 29:14
**mistake** [1] - 32:14
**modified** [1] - 63:15
**modify** [1] - 9:4
**moment** [1] - 6:6
**Monday** [1] - 56:16
**monitored** [1] - 51:13
**Monroe** [1] - 2:11
**moot** [1] - 54:8
**morning** [6] - 3:11, 3:22, 4:17, 7:9, 57:22, 58:1
**most** [4] - 11:24, 34:5, 47:24, 49:23
**motion** [59] - 5:25, 6:4, 6:9, 6:10, 6:12, 8:24, 9:1, 9:9, 9:11, 9:12, 10:11, 10:14, 10:16, 11:4, 11:5, 12:6, 12:11, 12:16, 12:19, 12:24, 13:12, 14:5, 14:10, 14:13, 15:1, 22:10, 23:13, 24:10, 24:18, 32:19, 33:8, 33:15, 41:24, 42:14, 42:17, 43:2, 44:17, 44:22, 45:13, 45:24, 49:2, 49:10, 53:3, 55:14, 56:10, 61:9, 64:18, 64:21, 68:23, 69:7, 69:8, 69:15, 70:4, 73:20, 74:20, 74:21, 74:23, 75:5
**motions** [3] - 45:19, 60:10, 71:2
**move** [12] - 13:7, 14:21, 22:21, 24:23, 26:15, 34:1, 35:8, 44:5, 48:13, 58:4, 61:1, 75:1
**moving** [7] - 6:17, 9:3, 13:6, 39:4, 52:6, 72:19, 75:6
**MR** [18] - 4:11, 25:13, 25:16, 27:6, 27:8, 27:20, 29:21, 30:17, 32:1, 33:10, 47:25, 48:2, 49:11, 50:16, 70:25, 73:9, 74:8, 75:14
**MS** [54] - 3:20, 3:25, 4:5, 4:17, 9:24, 11:10, 12:13, 13:2, 14:12, 15:4, 17:7, 18:1, 19:4, 21:2, 21:8, 23:12, 34:24, 35:10, 37:18, 37:22, 38:9, 39:22, 40:15, 42:22, 43:20, 45:8, 46:9, 46:16, 52:22, 53:6, 53:21, 55:18, 56:20, 57:15, 57:19, 57:21, 58:6, 59:17, 61:14, 61:23, 68:2, 68:21, 70:2, 70:6, 70:12, 70:17, 73:19, 73:23, 74:1, 74:5, 74:10, 75:13, 75:15, 75:16
**multifactor** [1] - 39:21
**multiple** [1] - 10:25
**must** [3] - 12:7, 20:3, 66:24

## N

**N.M** [1] - 5:20
**N.M.B** [2] - 7:16, 8:8
**named** [7] - 28:20, 29:2, 40:18, 41:25, 43:1, 43:9, 54:23
**naming** [1] - 47:22
**narrowly** [1] - 44:24
**NATIONAL** [1] - 1:19
**nature** [3] - 22:7, 25:2, 35:17
**NE** [1] - 2:17
**necessarily** [6] - 21:6, 23:1, 26:9, 33:2, 33:23, 42:18
**necessary** [2] - 23:19, 64:4
**necessity** [1] - 72:2
**need** [46] - 8:7, 8:25, 11:7, 14:1, 17:5, 17:7, 22:1, 23:1, 24:5, 26:3, 26:10, 26:15, 26:16, 32:12, 32:23, 42:20, 43:13, 43:25, 44:2, 44:14, 44:16, 47:22, 49:8, 49:10, 52:11, 53:9, 53:15, 54:8, 55:1, 55:8, 55:14, 55:17, 56:24, 57:2, 62:5, 62:6, 64:17, 65:18, 67:3, 67:24, 68:1, 69:17, 72:13, 73:6, 74:23
**needed** [1] - 14:21
**needs** [3] - 6:11, 23:20, 32:25
**negate** [1] - 16:5
**negotiate** [1] - 50:3
**never** [1] - 21:24
**new** [12] - 6:18, 7:11, 7:12, 7:25, 8:9, 10:6, 12:11, 22:8, 49:5, 51:10, 55:14, 59:2
**next** [13] - 8:12, 15:5, 16:13, 22:5, 32:20, 45:7, 50:18, 53:7, 54:25, 67:11, 67:18, 69:7
**NICHOLAS** [1] - 2:10
**Nick** [1] - 4:11
**NICOLE** [1] - 2:2
**NO** [1] - 1:2
**Noem** [1] - 3:14
**NOEM** [1] - 1:8
**noon** [5] - 60:2, 61:21, 74:15, 74:17
**North** [2] - 2:22, 76:5
**Northern** [1] - 31:3
**noted** [4] - 4:22, 5:5, 35:12, 54:12
**nothing** [3] - 39:16, 51:16, 71:10
**notice** [4] - 13:23, 62:25, 73:17, 74:12
**noticed** [1] - 14:9
**nowadays** [1] - 13:5
**Number** [1] - 41:15
**number** [8] - 15:11, 24:6, 40:6, 41:16, 49:14, 63:18, 67:15
**NW** [4] - 1:19, 2:6, 2:9, 2:14

## O

**objection** [1] - 57:8
**obviously** [21] - 8:9, 11:6, 12:25, 26:2, 26:13, 26:18, 26:23, 30:15, 31:5, 31:18, 32:5, 40:2, 46:17, 50:21, 52:15, 54:25, 62:15, 63:19, 67:10, 69:3, 73:11
**occurred** [2] - 36:7, 75:25
**occurring** [2] - 31:1, 31:2
**occurs** [1] - 33:13
**OF** [1] - 1:1
**offer** [3] - 59:12, 59:13
**offering** [1] - 59:13
**OFFICE** [2] - 2:14, 2:16
**Office** [2] - 4:18, 28:23
**office** [3] - 28:24, 36:9, 38:8
**officer** [5] - 18:15, 18:20, 20:5, 28:14, 29:5
**Officer** [1] - 31:22

**officers** [3] - 17:19, 20:1, 45:16
**Official** [2] - 2:20, 76:3
**official** [7] - 4:7, 15:18, 29:6, 29:23, 31:15, 40:18, 63:2
**officials** [7] - 4:15, 5:12, 17:3, 18:9, 19:3, 20:23, 71:16
**offline** [1] - 46:19
**onboard** [1] - 43:7
**once** [3] - 24:20, 28:16, 50:4
**one** [57] - 3:23, 5:20, 7:19, 8:6, 8:22, 9:1, 9:11, 9:13, 11:1, 11:10, 11:11, 11:19, 11:22, 11:25, 12:2, 12:10, 12:11, 13:8, 15:11, 16:1, 24:6, 28:13, 28:16, 28:22, 33:10, 34:23, 40:6, 41:16, 42:2, 43:16, 45:6, 47:7, 49:12, 50:12, 50:13, 51:19, 53:18, 54:25, 56:7, 57:19, 58:1, 58:4, 59:10, 59:12, 60:3, 60:4, 60:25, 61:18, 64:19, 65:20, 67:12, 67:15
**ones** [2] - 36:5, 37:9
**open** [2] - 23:1, 73:4
**opened** [1] - 13:3
**opening** [1] - 49:17
**operated** [1] - 17:17
**operating** [4] - 17:23, 18:2, 41:10, 54:1
**operation** [1] - 41:18
**operational** [1] - 40:21
**Operations** [1] - 28:24
**operative** [4] - 8:12, 12:3, 36:7, 49:5
**opinion** [1] - 40:6
**opportunities** [1] - 49:21
**opportunity** [3] - 23:15, 45:19, 52:16
**oppose** [1] - 45:9
**opposed** [1] - 7:23
**opposition** [10] - 24:12, 32:21, 33:7, 35:5, 47:14, 49:2, 49:9, 52:17, 56:9, 74:16
**oral** [3] - 14:17, 58:20, 60:15
**order** [29] - 4:25, 5:25, 11:1, 12:19, 14:16, 25:4, 34:8, 41:24, 42:6, 42:12, 44:9, 44:11, 46:3, 50:5, 54:9, 55:25, 56:3, 60:3, 63:8, 64:15, 65:11, 67:18, 69:6, 70:7, 72:12, 73:22, 74:13, 75:11
**Order** [1] - 3:1
**ordered** [1] - 47:4
**ordering** [3] - 62:20, 66:8, 66:12
**orders** [2] - 41:6, 45:17
**ore** [1] - 12:18
**organizational** [1] - 5:9
**original** [10] - 6:15, 7:23, 8:9, 8:21, 11:12, 11:21, 15:19, 16:23, 65:10, 65:20
**otherwise** [1] - 29:7
**outer** [1] - 61:6
**outlets** [1] - 3:4
**outlined** [1] - 10:9
**outside** [4] - 20:24, 30:12, 32:13, 66:13
**override** [1] - 32:3
**own** [4] - 41:1, 50:13, 50:14, 52:16
**owned** [1] - 41:17
**ownership** [2] - 37:2, 37:16

## P

**p.m** [3] - 1:7, 57:22, 75:18
**page** [3] - 41:6, 60:10, 73:13
**pages** [1] - 60:5
**Pages** [1] - 1:10
**pains** [1] - 51:10
**paperless** [1] - 27:13
**papers** [7] - 24:12, 25:8, 47:13, 55:10, 63:21, 64:9, 71:23
**paperwork** [1] - 66:18
**Paragraph** [1] - 41:15
**parameter** [1] - 61:6
**parameters** [1] - 69:19
**paramount** [1] - 15:15
**parcel** [2] - 41:1, 49:2
**part** [15] - 14:3, 16:11, 18:18, 20:18, 26:5, 29:18, 32:3, 32:20, 33:7, 43:17, 49:2, 65:4, 69:6, 74:19
**Parte** [1] - 21:5
**parte** [3] - 14:8, 24:11, 72:16
**participating** [1] - 3:5
**particular** [7] - 5:21, 7:14, 43:12, 43:22, 51:2, 51:23, 58:1
**parties** [11] - 12:21, 23:2, 33:19, 39:17, 44:3, 50:13, 58:10, 59:4, 59:14, 67:23, 68:13
**parts** [1] - 72:20
**party** [3] - 5:19, 7:16, 42:17
**passing** [1] - 65:9
**past** [2] - 49:20, 75:7
**PAUL** [1] - 2:7
**peek** [1] - 64:20
**people** [19] - 13:7, 19:21, 21:13, 21:15, 21:18, 21:23, 27:16, 45:14, 45:17, 53:23, 54:12, 58:11, 65:1, 65:5, 68:8, 69:2
**people's** [1] - 53:25
**percent** [4] - 30:21, 42:7, 43:7, 44:8
**percolating** [1] - 28:5
**performing** [1] - 17:19
**perhaps** [4] - 16:22, 23:18, 25:3, 46:21
**period** [1] - 57:6
**permitted** [1] - 20:24
**permutation** [1] - 8:9
**person** [4] - 20:9, 49:19, 56:23, 74:17
**personally** [2] - 67:9, 72:25
**personnel** [1] - 51:13
**PETER** [1] - 2:10
**petitions** [2] - 8:2, 54:13
**PI** [4] - 50:16, 53:3, 58:14, 71:5
**pictures** [1] - 3:8
**place** [5] - 10:5, 11:1, 15:25, 20:23, 63:2
**plain** [3] - 17:13, 17:17, 36:18
**plainly** [1] - 48:6
**plaintiff** [6] - 5:20, 7:16, 38:16, 43:22, 64:9
**plaintiff's** [1] - 6:1
**Plaintiffs** [1] - 1:6
**plaintiffs** [35] - 3:19, 5:10, 6:19, 7:18, 8:1, 8:4, 8:13, 9:3, 10:3, 10:13, 11:16, 19:11, 22:2, 32:24, 33:22, 33:25, 42:24, 43:7, 45:8, 46:20, 47:22, 48:5, 49:24, 50:23, 52:19, 53:8, 54:16, 54:23, 56:5, 56:15, 57:10, 60:19, 63:23, 67:25, 71:1
**PLAINTIFFS** [2] - 1:17, 2:2
**plaintiffs'** [4] - 3:16, 9:15, 23:25, 73:25
**plan** [4] - 35:3, 57:2, 67:17, 74:25
**play** [5] - 6:18, 43:9, 51:20, 58:11, 58:21
**played** [1] - 65:13
**players** [1] - 29:10
**plays** [2] - 37:12, 47:23
**pleading** [5] - 13:22, 23:11, 51:21, 53:11, 65:20
**pleadings** [20] - 6:4, 8:12, 10:12, 10:14, 11:13, 15:12, 23:19, 24:3, 42:24, 44:13, 54:20, 56:5, 62:6, 62:22, 67:4, 67:13, 68:24, 74:14, 74:19, 75:11
**pled** [6] - 8:20, 11:18, 11:20, 45:15, 71:9, 71:13
**point** [22] - 17:22, 23:21, 36:3, 40:8, 46:7, 47:22, 48:3, 48:5, 50:10, 50:18, 52:3, 59:3, 64:7, 64:13, 64:25, 68:10, 69:10, 71:25, 72:1, 72:3, 72:8
**pointed** [1] - 15:22
**policies** [1] - 30:25
**political** [1] - 18:15
**position** [9] - 8:23, 9:10, 18:7, 19:14, 20:14, 26:1, 33:11, 47:9, 63:12
**possibilities** [1] - 55:6
**possibility** [1] - 53:2
**possible** [6] - 13:25, 14:23, 24:14, 43:5, 47:1, 75:1
**possibly** [1] - 64:23
**posture** [4] - 6:7, 14:2, 65:22, 69:18
**potentially** [2] - 31:8, 71:18
**pouring** [1] - 50:22
**practical** [1] - 16:2
**prayer** [1] - 65:10
**precise** [1] - 43:23
**precisely** [1] - 68:22
**precursor** [1] - 36:17
**preexisting** [1] - 41:11
**prefer** [3] - 48:16, 50:14, 58:10
**preference** [2] - 34:15, 59:15
**prejudice** [2] - 32:24, 33:6
**preliminarily** [2] - 35:8, 38:9
**preliminary** [26] - 13:11, 14:5, 14:11, 14:13, 14:24, 14:25, 22:10, 24:10, 24:23, 32:19, 33:8, 34:14, 35:19, 39:1, 44:9, 45:24, 47:14, 49:3, 52:5, 56:10, 61:9, 64:4, 64:20, 66:25, 69:21, 73:5
**prep** [1] - 62:1
**preparation** [1] - 74:12
**prepare** [2] - 53:2, 58:8
**prepared** [12] - 16:15, 22:21, 22:25, 23:10, 24:19, 25:1, 26:1, 39:2, 39:13, 40:2, 44:5, 52:10
**present** [1] - 51:22
**preserve** [1] - 35:25
**press** [2] - 34:14, 40:24
**presumably** [1] - 41:19
**pretty** [4] - 8:18, 16:4, 65:7, 65:11
**preview** [1] - 65:15
**primarily** [1] - 5:6
**principle** [1] - 31:19
**PRISON** [1] - 1:19
**privacy** [1] - 70:3

**private** [4] - 19:22, 19:24, 51:12, 66:4
**problem** [7] - 7:20, 9:5, 13:1, 16:11, 28:16, 30:10, 31:13
**problems** [3] - 15:3, 65:21, 66:20
**procedural** [6] - 4:25, 8:11, 10:7, 14:3, 15:3, 65:21
**procedurally** [3] - 8:15, 13:16, 43:2
**procedure** [1] - 10:23
**Procedure** [1] - 10:1
**proceed** [1] - 46:14
**proceeding** [2] - 3:6, 5:20
**proceedings** [2] - 3:9, 75:23
**process** [5] - 5:18, 10:7, 19:19, 26:8, 65:3
**processes** [2] - 38:16, 38:19
**procure** [1] - 73:1
**produce** [1] - 70:9
**produced** [3] - 70:11, 72:1, 73:3
**producing** [1] - 25:4
**production** [3] - 25:5, 68:4, 68:11
**PROJECT** [1] - 1:19
**prompt** [1] - 18:23
**proper** [5] - 23:2, 38:12, 38:13, 38:21, 68:5
**properly** [10] - 17:11, 20:15, 28:16, 31:7, 35:11, 36:12, 37:23, 41:25, 42:3, 68:12
**property** [2] - 29:14, 30:20
**proposal** [4] - 9:25, 45:9, 52:14, 52:23
**proposed** [4] - 10:6, 48:4, 48:14, 65:11
**protection** [1] - 25:5
**protections** [1] - 9:15
**provide** [4] - 10:4, 23:14, 26:10, 52:9
**provided** [4] - 7:4, 29:8, 50:6, 64:12
**provides** [1] - 15:24
**providing** [1] - 21:23
**provision** [3] - 15:24, 31:14, 36:16
**provisions** [2] - 37:21, 37:23
**public** [1] - 3:6
**Public** [1] - 57:25
**pull** [1] - 25:9
**pulling** [1] - 51:19
**pun** [1] - 60:24
**purportedly** [1] - 7:3
**purposes** [5] - 3:4, 4:22, 18:19, 24:19, 31:23
**pursuant** [1] - 3:7
**purview** [1] - 66:13
**put** [16] - 7:2, 8:22, 13:21, 23:9, 43:15, 53:8, 53:11, 56:3, 57:19, 58:12, 59:9, 60:3, 62:13, 62:24, 69:17, 74:24
**puts** [1] - 10:14
**putting** [1] - 66:20

**Q**

**quarterly** [1] - 5:13
**questions** [4] - 24:14, 32:8, 32:12, 42:1
**quick** [2] - 34:1, 34:19
**quickly** [8] - 9:6, 13:1, 24:23, 26:17, 35:8, 36:14, 61:12, 75:1
**quite** [7] - 22:22, 36:5, 43:14, 44:19, 45:12, 51:6, 58:25
**quo** [1] - 13:13
**quote** [4] - 18:14, 30:2, 41:2, 41:8
**quoted** [1] - 29:25

**R**

**raise** [2] - 6:24, 32:21
**raised** [8] - 15:19, 22:16, 36:5, 36:6, 37:3, 46:24, 47:13, 63:7
**raising** [1] - 55:6
**rather** [3] - 14:4, 36:20, 57:21
**RAYMOND** [1] - 2:7
**re** [2] - 12:10, 23:11
**re-filed** [1] - 12:10
**re-pleading** [1] - 23:11
**reaches** [1] - 33:25
**read** [7] - 31:21, 35:4, 36:15, 36:18, 37:10, 69:25, 75:6
**reading** [2] - 63:11, 63:14
**ready** [10] - 13:19, 13:20, 23:8, 32:6, 34:7, 48:12, 61:2, 67:21, 70:7, 73:2
**really** [30] - 6:3, 7:15, 8:13, 11:2, 11:7, 14:1, 16:13, 16:14, 18:7, 19:13, 22:6, 22:12, 23:6, 24:1, 24:7, 25:7, 34:19, 36:20, 38:13, 38:21, 43:9, 49:6, 54:18, 60:24, 60:25, 61:25, 65:16, 66:5, 69:21, 71:15
**reason** [5] - 10:23, 14:7, 14:10, 33:22, 68:9
**reasons** [2] - 36:11, 49:12
**reboot** [3] - 22:5, 25:11, 72:21
**rebrief** [1] - 34:3
**rebutted** [1] - 72:6
**recap** [2] - 4:25, 74:13
**received** [2] - 5:25, 6:12
**recent** [1] - 6:2
**recessed** [1] - 75:18
**recommend** [1] - 54:14
**record** [4] - 3:8, 52:4, 57:19, 67:7
**recording** [2] - 3:3, 3:7
**recourse** [1] - 21:23
**redacted** [1] - 69:18
**redactions** [2] - 23:4, 25:6
**referring** [1] - 10:8
**refile** [6] - 12:1, 13:17, 13:18, 14:12, 14:25, 23:13
**regarding** [1] - 8:1
**regardless** [1] - 35:5
**Rehabilitation** [1] - 28:21
**rehabilitation** [1] - 40:18
**reigns** [1] - 19:22
**related** [3] - 28:6, 63:17
**relatedly** [1] - 57:24
**relates** [1] - 41:14
**relating** [1] - 40:21
**relation** [1] - 17:19
**relationship** [2] - 20:18, 21:10
**relationships** [1] - 44:2
**release** [1] - 10:17
**released** [1] - 45:14
**relevance** [1] - 72:9
**relevant** [2] - 71:15, 72:1
**relief** [38] - 6:14, 7:18, 7:21, 8:7, 8:16, 8:17, 8:19, 9:4, 9:19, 10:9, 10:10, 13:15, 22:10, 24:8, 24:24, 25:18, 26:22, 32:13, 32:19, 34:15, 36:10, 41:23, 47:14, 49:3, 52:5, 55:5, 64:5, 65:9, 65:10, 65:16, 65:20, 65:23, 66:1, 66:19, 66:25, 67:1, 69:21, 73:5
**relying** [1] - 37:21
**remain** [1] - 54:1
**remaining** [2] - 28:17, 29:3
**remedy** [1] - 33:2
**remind** [2] - 53:23, 54:7
**remotely** [1] - 76:1
**Removal** [1] - 28:23
**removed** [1] - 54:12
**repeatedly** [1] - 40:24
**repled** [1] - 50:4
**reply** [14] - 23:15, 44:24, 50:7, 52:20, 53:15, 54:16, 57:4, 57:11, 60:3, 60:4, 61:18, 68:12, 69:14, 74:17
**report** [1] - 6:2
**REPORTED** [1] - 2:19
**Reporter** [2] - 2:20, 76:3
**reporting** [1] - 76:1
**representation** [2] - 16:15, 25:2
**representations** [3] - 15:22, 43:11, 54:5
**representative** [1] - 54:23
**representatives** [2] - 10:3, 42:13
**representing** [1] - 38:24
**request** [14] - 7:17, 8:19, 9:10, 9:25, 10:8, 10:16, 23:17, 26:5, 34:14, 38:10, 68:10, 68:23, 70:4, 70:22
**requested** [7] - 6:14, 10:10, 32:14, 41:22, 65:10, 65:16, 72:14
**requests** [3] - 8:2, 25:18
**require** [4] - 44:16, 56:4, 70:9, 70:10
**required** [3] - 19:19, 26:11, 71:24
**requires** [1] - 19:25
**residents** [4] - 30:2, 30:4, 30:5, 35:13
**resides** [3] - 28:11, 29:9, 30:1
**resolution** [1] - 46:5
**resolved** [1] - 45:6
**resources** [1] - 48:23
**respect** [11] - 19:6, 19:9, 20:14, 36:9, 45:12, 54:2, 54:3, 54:7, 54:11, 68:3, 68:8
**respond** [8] - 26:17, 42:5, 52:16, 63:10, 70:4, 72:12, 72:14, 74:22
**response** [29] - 23:14, 32:18, 33:7, 35:21, 35:25, 39:17, 41:3, 41:8, 42:9, 42:10, 44:23, 46:23, 49:9, 50:4, 50:16, 52:9, 54:15, 56:9, 56:15, 57:10, 59:9, 59:21, 61:17, 61:23, 68:11, 69:14, 70:8, 70:21, 74:15
**responses** [3] - 51:7, 56:9, 56:11
**responsibilities** [1] - 20:21
**responsibility** [3] - 21:18, 21:23, 39:10
**responsible** [1] - 22:18
**responsive** [2] - 51:21, 62:15
**rest** [3] - 40:9, 46:15, 75:10
**restraining** [3] - 5:25, 41:24, 64:15
**restricted** [1] - 69:18
**reup** [1] - 13:10
**review** [5] - 23:4, 24:3, 66:21, 67:9, 68:7

revised [2] - 10:6, 22:10
revisit [1] - 68:3
rights [3] - 38:18, 54:1
Ripa [4] - 28:22, 29:2, 29:11, 35:13
Ripa's [1] - 29:18
RMR [2] - 2:20, 76:3
RODOLFO [1] - 1:13
Rodolfo [1] - 2:21
Rodriguez [12] - 4:18, 4:19, 16:14, 18:25, 23:23, 25:1, 38:2, 52:13, 69:10, 72:10, 73:1, 74:4
RODRIGUEZ [11] - 2:16, 4:17, 38:9, 39:22, 52:22, 70:2, 70:6, 70:12, 70:17, 74:5, 75:15
Rodriguez's [1] - 64:7
role [2] - 37:12, 43:9
Ron [1] - 4:12
RONALD [1] - 2:11
Room [2] - 2:23, 76:5
rooms [3] - 51:12, 51:24, 66:4
round [1] - 14:20
RUIZ [1] - 1:13
Ruiz [2] - 2:21, 66:11
rule [5] - 8:24, 8:25, 24:13, 39:1, 66:24
Rule [6] - 10:1, 11:6, 11:14, 13:9, 23:21, 44:13
rule-based [1] - 66:24
ruled [3] - 27:18, 27:20, 34:8
rules [5] - 3:7, 24:7, 33:3, 33:24, 48:20
ruling [7] - 6:5, 6:8, 13:24, 61:8, 61:11, 63:22, 72:18
run [4] - 19:24, 65:21, 66:20, 67:20
running [10] - 7:7, 16:1, 16:4, 16:21, 19:1, 51:11, 60:21, 62:2, 66:18, 73:7
runway [2] - 28:4, 29:16

S

San [1] - 1:23
satisfaction [1] - 63:23
satisfied [1] - 30:11
save [4] - 35:1, 48:23, 49:13, 62:10
saw [2] - 4:3, 51:7
scenario [2] - 43:5, 46:11
schedule [17] - 45:4, 48:4, 48:13, 48:17, 50:2, 51:14, 53:8, 53:18, 53:22, 54:11, 56:3, 60:20, 60:23, 67:19, 67:20, 74:21
scheduled [1] - 49:18
school [1] - 57:24
Schools [1] - 57:25
scope [8] - 10:10, 20:24, 23:3, 24:8, 25:23, 32:13, 65:20, 66:19
seal [2] - 23:4, 69:18
second [3] - 8:23, 39:15, 65:4
secondary [1] - 39:24
Secretary [2] - 1:8, 3:14
Section [2] - 18:4, 18:10
sections [1] - 51:5
Security [3] - 1:9, 3:15, 4:7
see [17] - 3:17, 4:4, 7:17, 17:6, 19:14, 28:3, 41:14, 47:23, 62:15, 62:25, 63:24, 64:14, 67:20, 69:3, 74:22, 74:23
seeing [2] - 19:8, 23:24
seek [4] - 6:8, 9:19, 10:17, 36:10
seeking [3] - 9:4, 26:21, 26:22
send [2] - 27:15, 51:16
sending [1] - 21:20
sends [1] - 21:21
sense [22] - 11:24, 13:17, 15:2, 22:2, 24:18, 24:21, 25:5, 25:7, 31:20, 33:9, 34:5, 34:21, 35:2, 35:18, 39:20, 40:1, 40:14, 45:5, 47:4, 55:15, 62:20, 70:24
sensitive [1] - 44:6
separate [9] - 20:22, 36:18, 36:24, 40:3, 49:24, 56:11, 69:16, 70:15, 74:16
separately [3] - 47:15, 50:12, 74:21
seriously [3] - 66:25, 70:14, 71:4
serve [2] - 48:7, 48:9
served [2] - 14:8, 48:8
serves [1] - 37:2
service [2] - 48:7, 72:23
set [13] - 8:11, 14:5, 15:1, 51:8, 53:16, 55:25, 56:22, 57:1, 59:5, 67:7, 74:13, 74:21, 74:25
sets [2] - 11:13, 67:18
setting [1] - 7:22
seven [4] - 50:7, 54:15, 56:13, 63:18
several [3] - 19:8, 37:22, 45:21
shake [1] - 65:22
shall [1] - 18:18
shape [2] - 17:10, 63:20
share [1] - 43:18
sharing [1] - 28:4
shell [1] - 60:14
Sherea [1] - 40:17
short [7] - 23:5, 24:3, 36:25, 55:25, 57:5, 63:8, 74:12
shorter [1] - 52:15
shortly [1] - 23:13
show [5] - 7:7, 16:1, 16:4, 16:21, 66:18
shows [1] - 4:18
shrift [1] - 36:25
SHUTTS [1] - 2:11
side [6] - 23:25, 34:12, 40:1, 40:3, 52:13, 54:18
sides [2] - 22:13, 60:10
sign [1] - 45:17
silo [1] - 74:16
similar [1] - 28:2
similarly [2] - 1:5, 3:13
simplify [1] - 43:14
simply [2] - 7:2, 20:11
single [1] - 41:13
sit [4] - 34:1, 34:15, 58:17, 59:2
sits [2] - 28:12, 41:16
situated [3] - 1:5, 3:14, 65:2
situation [15] - 6:17, 16:17, 21:13, 35:16, 47:2, 50:23, 52:6, 53:25, 54:4, 55:22, 61:7, 72:7, 75:4
sketchy [1] - 29:17
skin [1] - 73:18
Slatton [1] - 7:15
sold [1] - 42:7
solely [1] - 29:22
sometimes [1] - 66:1
somewhere [1] - 37:10
soon [5] - 5:24, 13:24, 51:20, 61:9, 74:22
sooner [1] - 57:4
sorry [4] - 18:6, 27:4, 48:1, 50:9
sort [4] - 7:8, 21:5, 22:25, 52:8
sought [4] - 8:16, 8:17, 26:14, 41:23
sounds [1] - 52:22
source [1] - 69:2
Southern [4] - 2:22, 30:5, 35:11, 76:4
southern [3] - 30:19, 31:1, 31:9
SOUTHERN [1] - 1:1
space [1] - 71:17
speaking [1] - 7:13
specially [1] - 20:3
specific [2] - 32:2, 32:3
specifically [2] - 6:15, 6:23
spending [2] - 33:18, 33:19
spent [1] - 58:25
squares [1] - 4:6
staff [1] - 20:2
stake [1] - 40:12
stand [1] - 67:21
standalone [2] - 21:5, 31:14
standing [1] - 75:10
stands [2] - 41:21, 59:1
start [3] - 22:4, 56:6, 70:17
started [3] - 3:10, 4:24, 26:2
Starting [1] - 57:22
startled [1] - 65:25
starts [1] - 46:12
State [3] - 18:15, 18:16, 18:21
state [64] - 4:8, 4:9, 5:12, 5:15, 7:8, 15:18, 16:1, 16:3, 16:19, 16:20, 16:25, 17:18, 17:23, 18:2, 18:9, 18:11, 19:3, 19:6, 19:22, 19:25, 20:4, 20:15, 20:22, 21:11, 21:17, 21:19, 21:20, 22:15, 30:3, 30:4, 30:8, 37:13, 38:3, 38:12, 38:24, 40:3, 41:2, 41:5, 41:10, 41:11, 41:19, 42:8, 42:12, 43:14, 44:18, 47:4, 47:11, 51:6, 56:11, 59:19, 60:8, 62:15, 63:2, 68:6, 68:7, 68:18, 71:10, 71:16, 72:5, 73:7, 74:6
state/federal [1] - 15:15
statement [1] - 43:21
statements [1] - 71:7
STATES [3] - 1:1, 1:13, 2:16
States [11] - 1:9, 2:21, 3:15, 17:21, 28:15, 29:5, 31:23, 36:19, 36:20, 54:1, 76:4
States's [1] - 41:8
status [4] - 6:2, 13:7, 13:13, 65:1
STATUS [1] - 1:12
status-quo [1] - 13:13
statute [10] - 17:17, 19:16, 19:25, 20:11, 28:3, 28:7, 29:2, 29:18, 44:25, 63:15
statutes [2] - 33:3, 71:22
statutory [5] - 15:24, 36:21, 38:7, 38:10, 66:24
stays [3] - 40:8, 47:16, 67:8
STENOGRAPHICALLY [1] - 2:19
step [4] - 8:22, 9:13, 12:6, 45:7
steps [2] - 8:12, 66:5
stickler [1] - 60:1
still [7] - 18:3, 18:4, 19:2, 34:9, 37:12, 43:13, 59:9
stops [1] - 39:16

story [1] - 20:10
streamlined [1] - 45:3
streamlining [1] - 42:23
Street [7] - 1:19, 1:22, 2:3, 2:9, 2:11, 2:14, 2:17
strong [1] - 57:7
stronger [1] - 50:21
strongly [1] - 32:11
structured [1] - 5:21
stuff [1] - 66:13
subclass [3] - 10:6, 10:8, 10:17
subdivision [1] - 18:15
subdivisions [1] - 17:18
subject [4] - 18:3, 18:4, 18:12, 76:1
submit [1] - 68:22
Subsection [3] - 28:14, 29:2, 31:21
subsection [3] - 18:16, 18:17, 29:25
substantive [1] - 14:2
success [6] - 22:11, 52:2, 62:17, 64:19, 66:22, 72:4
suffices [2] - 43:3, 43:4
sufficiently [2] - 65:17, 67:3
suggest [1] - 12:24
suggestion [2] - 35:7, 66:8
suit [6] - 18:20, 40:19, 40:20, 40:25, 41:7, 42:20
Suite [6] - 1:23, 2:3, 2:9, 2:11, 2:14, 2:17
summarize [2] - 36:13, 58:24
supervise [1] - 19:19
Supp [1] - 63:18
supplement [20] - 6:12, 6:13, 6:22, 7:10, 7:20, 8:6, 8:15, 8:20, 8:24, 9:9, 9:10, 9:12, 9:16, 10:9, 17:13, 23:10, 25:24, 26:5, 26:24, 55:15
supplemental [22] - 10:1, 10:2, 10:11, 11:5, 11:11, 11:15, 11:16, 11:21, 12:1, 12:11, 12:16, 15:11, 15:20, 22:9, 23:13, 24:6, 25:25, 43:1, 49:7, 52:8, 55:14, 65:18
supposed [1] - 20:6
surely [1] - 25:23
surprised [1] - 61:3
suspected [1] - 54:17
swiftly [1] - 9:17
sworn [1] - 71:7
system [1] - 7:4

## T

tailored [1] - 44:24
Tallahassee [1] - 2:12
tangle [1] - 44:1
team [6] - 3:16, 3:19, 9:21, 16:13, 32:20, 44:8
TEAM [1] - 2:5
technicality [1] - 65:8
technological [1] - 76:1
tee [2] - 34:6, 42:12
teed [2] - 9:5, 46:2
temporary [3] - 5:25, 41:24, 64:15
ten [4] - 50:5, 52:17, 53:4, 53:13
tend [2] - 13:12, 58:21
tenus [1] - 12:18
term [1] - 23:5
terms [5] - 3:23, 51:12, 65:2, 69:21, 72:15
terribly [1] - 34:20
test [2] - 14:2, 39:21
tethered [3] - 8:18, 65:17, 67:3
text [1] - 68:7
thankful [1] - 55:24
that'll [3] - 12:21, 62:3, 73:8
THE [73] - 1:13, 1:17, 2:2, 3:2, 3:21, 4:1, 4:6, 4:14, 4:20, 10:20, 11:24, 12:18, 13:3, 14:15, 15:5, 17:12, 18:6, 20:17, 21:3, 22:4, 23:20, 25:15, 27:4, 27:7, 27:12, 27:22, 30:10, 31:11, 32:9, 33:21, 34:25, 36:13, 37:20, 37:25, 39:15, 39:23, 42:4, 43:4, 44:4, 46:7, 46:10, 46:17, 48:1, 48:15, 50:9, 50:18, 52:24, 53:7, 54:17, 55:19, 56:21, 57:16, 57:20, 58:4, 58:7, 59:18, 61:19, 61:24, 68:15, 69:5, 70:5, 70:7, 70:14, 70:19, 71:14, 73:10, 73:20, 73:24, 74:3, 74:6, 74:9, 74:11, 75:17
themselves [3] - 1:4, 3:13, 68:8
theories [2] - 6:17, 71:21
theory [2] - 7:12, 38:8
thereafter [1] - 5:24
therefore [1] - 75:25
thereof [1] - 29:6
they've [10] - 16:6, 24:8, 24:9, 45:11, 45:13, 54:19, 61:4, 63:16, 71:9, 72:21
thinking [3] - 13:19, 39:8, 42:7
third [1] - 7:16
third-party [1] - 7:16
three [6] - 12:5, 12:9, 44:23, 56:11, 60:13
threshold [1] - 27:2
throughout [1] - 62:1
throw [3] - 14:23, 64:6, 66:7
thumbs [1] - 58:17
Thursday [1] - 57:1
tight [2] - 42:15, 56:17
tighten [1] - 67:6
tighter [1] - 60:21
timeframe [4] - 24:15, 24:22, 42:15
timeline [2] - 25:10, 57:18
timing [1] - 72:15
titled [1] - 31:22
today [29] - 4:22, 6:20, 8:10, 10:18, 10:19, 12:18, 12:20, 12:23, 13:20, 13:21, 14:16, 16:16, 16:17, 23:25, 25:1, 26:1, 32:12, 35:3, 37:4, 42:13, 47:10, 49:18, 53:16, 53:17, 53:19, 55:25, 56:4, 57:17, 67:9
together [9] - 8:16, 10:14, 42:9, 51:11, 52:19, 53:8, 56:3, 62:8, 62:10
token [1] - 51:15
tomorrow [7] - 12:22, 55:10, 56:5, 59:24, 62:7, 65:25, 74:15
took [1] - 10:4
top [1] - 37:5
touch [1] - 40:10
touched [2] - 37:25, 50:19
touching [1] - 51:1
trained [1] - 20:4
transcription [2] - 3:4, 75:23
transfer [5] - 33:4, 34:2, 34:7, 42:14, 44:17
transferred [1] - 33:1
transform [1] - 67:1
travel [1] - 59:5
traveling [2] - 58:11, 65:5
treat [2] - 12:18, 12:23
tried [1] - 38:23
trigger [1] - 51:19
triggered [1] - 41:5
trim [1] - 43:5
TRO [35] - 6:8, 6:10, 6:12, 7:21, 8:6, 8:16, 8:20, 8:23, 9:1, 9:9, 9:10, 9:11, 9:12, 9:16, 10:9, 10:11, 10:14, 11:5, 12:10, 13:5, 13:7, 13:11, 14:2, 23:10, 23:13, 24:7, 25:17, 25:23, 26:24, 43:2, 45:12, 45:13, 60:19, 65:19
TROs [3] - 13:8, 13:12, 32:11
troubled [1] - 70:25
trough [1] - 47:18
true [1] - 41:18
truly [2] - 19:10, 20:9
truncated [1] - 61:5
truth [1] - 54:6
try [4] - 25:14, 51:8, 61:10, 67:6
trying [9] - 12:24, 13:16, 39:25, 44:20, 45:5, 45:17, 55:23, 56:17, 59:19
turn [5] - 9:22, 22:6, 25:12, 38:2, 67:23
twiddle [1] - 58:17
two [23] - 5:8, 5:11, 5:15, 5:16, 7:9, 10:14, 11:12, 15:17, 17:5, 30:17, 35:2, 35:9, 37:20, 37:21, 40:6, 41:15, 48:7, 48:11, 51:16, 57:21, 67:18
two-hour [1] - 51:16
tying [1] - 26:5
typical [1] - 46:25

## U

U.S [1] - 4:18
U.S.C [1] - 18:9
ultimately [3] - 7:5, 34:6, 49:1
under [67] - 5:6, 5:12, 7:4, 10:1, 10:24, 11:6, 11:14, 12:2, 12:11, 12:17, 13:7, 13:9, 15:11, 15:18, 15:24, 16:4, 16:6, 16:9, 16:21, 16:25, 17:15, 17:17, 17:24, 18:2, 18:4, 18:9, 18:10, 18:16, 18:18, 18:21, 19:1, 19:7, 19:17, 19:21, 20:2, 20:9, 21:14, 21:17, 23:2, 23:4, 23:21, 24:7, 25:20, 25:22, 26:10, 26:12, 28:2, 28:9, 28:14, 29:6, 29:22, 33:3, 41:4, 41:10, 44:13, 44:24, 51:2, 65:5, 65:6, 69:18, 71:16, 71:20, 71:22, 71:23
underlying [2] - 7:12, 17:9
understandable [1] - 13:7
understandably [1] - 31:18
understood [2] - 12:21, 72:20
unequivocally [1] - 18:25
UNION [2] - 1:18, 1:21
unique [5] - 5:19, 40:11, 46:24, 47:1, 73:12
UNITED [3] - 1:1, 1:13, 2:16
United [12] - 1:8, 2:21, 3:14, 17:21, 28:15, 29:5, 31:23, 36:19, 41:8, 54:1, 76:4

**unknown** [1] - 6:19
**unless** [2] - 35:21, 57:7
**unprecedented** [1] - 21:12
**up** [32] - 4:19, 7:22, 9:5, 13:4, 14:24, 23:1, 24:16, 25:11, 27:1, 28:1, 34:2, 34:6, 37:1, 42:12, 46:2, 48:6, 48:20, 51:9, 51:11, 55:12, 55:25, 60:14, 60:24, 62:6, 62:8, 64:2, 65:23, 65:24, 67:5, 67:7, 73:4
**update** [1] - 11:18
**upfront** [4] - 35:7, 42:20, 61:11, 67:13
**urgency** [2] - 45:20, 46:4
**urgent** [1] - 55:22
**utmost** [3] - 45:20, 46:4, 54:14

## V

**venue** [76] - 27:3, 27:6, 27:7, 27:18, 28:3, 28:7, 29:13, 29:18, 31:18, 31:21, 32:14, 32:21, 33:12, 33:14, 33:15, 33:16, 33:19, 33:24, 33:25, 34:1, 34:9, 34:13, 34:16, 34:17, 35:4, 35:7, 35:15, 35:19, 36:16, 37:1, 37:14, 37:15, 37:20, 37:21, 37:22, 37:25, 38:6, 38:12, 38:21, 39:9, 40:1, 40:6, 40:7, 42:3, 42:5, 42:6, 42:10, 42:14, 42:18, 42:19, 43:17, 44:7, 44:17, 44:25, 45:22, 46:2, 46:5, 46:14, 48:17, 48:21, 49:1, 50:17, 50:21, 52:15, 52:18, 59:2, 60:7, 62:9, 63:6, 63:7, 63:15, 63:23, 64:2, 67:9, 75:7
**venued** [3] - 35:11, 36:12, 37:23
**verbal** [1] - 61:23
**versa** [1] - 47:6
**versus** [1] - 3:14
**VI** [1] - 55:13
**VIA** [1] - 1:12
**via** [1] - 75:25
**viability** [1] - 63:1
**viable** [4] - 17:6, 23:7, 24:7, 34:9
**vice** [1] - 47:6
**vice-versa** [1] - 47:6
**Viciana** [12] - 4:4, 23:24, 37:8, 40:5, 42:16, 46:18, 47:15, 52:24, 57:16, 59:18, 73:11, 74:9
**VICIANA** [12] - 2:13, 4:5, 40:15, 42:22, 53:6, 57:15, 57:19, 57:21, 58:6, 73:19, 74:10, 75:16
**Victoria** [1] - 7:15
**video** [1] - 49:18
**view** [1] - 6:14
**violations** [2] - 18:5, 35:17
**virtue** [2] - 12:7, 42:25
**voluntary** [1] - 54:8
**vs** [1] - 1:7

## W

**wait** [2] - 34:2, 71:12
**waiting** [1] - 14:20
**waits** [1] - 51:16
**walking** [1] - 22:14
**wants** [2] - 64:14, 71:22
**warden** [1] - 67:2
**warranted** [1] - 64:20
**Washington** [1] - 1:20
**waste** [1] - 46:10
**wasting** [1] - 45:2
**watch** [1] - 3:5
**ways** [2] - 6:11, 71:18
**Wednesday** [1] - 27:10
**week** [1] - 55:23
**weekend** [2] - 61:25, 62:1
**weeks** [4] - 45:21, 48:7, 48:12, 71:2
**welcome** [2] - 3:6, 74:11
**well-established** [1] - 16:4
**whereby** [1] - 15:25
**whole** [1] - 61:25
**Williams** [4] - 27:10, 27:16, 33:14, 34:23
**Williams'** [1] - 15:23
**willing** [3] - 10:15, 58:10, 70:22
**willingness** [1] - 51:8
**winner** [1] - 64:3
**wise** [1] - 57:9
**wish** [1] - 47:6
**wondering** [1] - 11:7
**word** [2] - 3:2, 16:7
**words** [1] - 15:20
**works** [4] - 56:15, 58:15, 60:16, 61:14
**worried** [3] - 16:22, 60:22, 66:10
**worry** [4] - 24:11, 31:17, 60:6, 60:22
**write** [3] - 10:25, 45:1, 73:22
**writing** [2] - 51:7, 68:22

## Y

**you-all** [5] - 5:7, 15:14, 65:6, 65:15, 67:20
**Young** [1] - 21:5

## Z

**Zoom** [1] - 75:25
**ZOOM** [1] - 1:12