UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cv-23182-RAR

**C.M., MICHAEL BORREGO FERNANDEZ,
J.M.C., E.R.**, *on behalf of themselves and
all others similarly situated*, *et al.*,

    Plaintiffs,

v.

**KRISTI NOEM,** *Secretary of the
United States Department
of Homeland Security*, *et al.*,

    Defendants.
_____/

**DEFENDANT SHEREA GREEN'S RESPONSE TO PLAINTIFFS'
RENEWED MOTION FOR PRELIMINARY INJUNCTION**

Miami-Dade County—through Sherea Green, Director of the Miami-Dade Corrections and Rehabilitation Department—has been improperly named in this action, which complains of access to a facility that Miami-Dade County did not build, that Miami-Dade County does not operate, and that Miami-Dade County lacks even the ability to monitor. In short, Plaintiffs seek relief that Miami-Dade County cannot provide. As to Defendant Sherea Green, named in her official capacity, Plaintiffs' Renewed Motion for Preliminary Injunction [ECF No. 29] must be denied.

BACKGROUND

In late June 2025, the State of Florida, using emergency powers and pursuant to express statutory authority, commandeered Miami-Dade County's Transition and Training Airport to address a declared immigration emergency. *See* Exhibit 1, Notice of Intent to Utilize from Florida Division of Emergency Management Executive Director Kevin Guthrie ("Notice of Intent to Utilize"). Earlier the same week, on June 21, 2025, the Florida Division of Emergency

Management ("FDEM") had sent correspondence to Miami-Dade County Mayor Daniella Levine Cava and Rick LoCastro, Commissioner on the Collier County Board of County Commissioners, advising of FDEM's intent to purchase the Dade-Collier Training and Transition Airport ("TNT Airport") and proposing various terms of sale. *See* Exhibit 2, Notice of Intent to Purchase from Executive Director Guthrie ("Letter of Intent to Purchase"). The TNT Airport, and the parcel of land upon which it sits, are mostly located in Collier County, but they are owned by Miami-Dade County. To that end, Mayor Levine Cava responded by letter on June 23, 2025, requesting additional information to evaluate the Letter of Intent to Purchase, particularly with respect to "Public Safety and Security," "Financial Analysis and Proper Appraisals for Land Value," and "Environmental Impacts and Mitigation." *See* Exhibit 3, Response to Letter of Intent to Purchase from Mayor Levine Cava to Executive Director Guthrie.

That same day, Executive Director Guthrie issued the Notice of Intent to Utilize. The letter "serve[d] as notice" that FDEM "intends to utilize the Dade-Collier Training and Transition Airport . . . pursuant to Governor DeSantis's emergency powers under section 252.36(6)(b) and (i), Florida Statutes, and delegated to me as the State Coordinating Officer in Executive Order 23-03, which remains in effect and was most recently extended by Executive Order 25-120." Ex. 1. The Notice of Intent to Utilize went on to inform that "the Division [FDEM] will begin immediate utilization of the improved area of the site, as I now deem it necessary to meet the Division's current operational demands in coping with the emergency." *Id.*

The referenced Executive Orders, Executive Order 23-03 and Executive Order 25-120, were issued by Governor DeSantis on January 6, 2023 and June 2, 2025, respectively, and both relate to a declared illegal immigration emergency. *See* Exhibit 4, Executive Order 23-03 (finding "that the migration of unauthorized aliens to the State of Florida is likely to constitute a major disaster" and declaring a state of emergency); Exhibit 5, Executive Order 25-120 (extending

2

Executive Order 23-03). On July 31, 2025, Governor DeSantis again extended Executive Order 23-03. *See* Exhibit 6, Executive Order 25-153.

Since FDEM's commandeering of the TNT Airport, the State of Florida has constructed an immigration detention center known as "Alligator Alcatraz." According to FDEM's own filings in a separate federal lawsuit relating to the construction of this facility, "Florida is now responding to this [illegal immigration] crisis by seeking to enable new housing capacity for detainees awaiting deportation, including at the Dade-Collier Training and Transition Airport." *Friends of the Everglades, et al. v. Kristi Noem, et al.*, Southern District of Florida Case No. 25-cv-22896, ECF No. 16 at 4 (June 30, 2025). FDEM's response to Plaintiffs' sought injunctive relief in *Friends of the Everglades* repeatedly makes clear that the State of Florida, and not Miami-Dade County, is currently operating at the site:

- "The Florida Division of Emergency Management (DEM) commandeered the airport under the state emergency authority triggered by Governor DeSantis's executive orders." (ECF No. 16 at 5);
- "The State is currently funding the construction and operation of the facility." (ECF No. 16 at 5);
- "[T]he State—not DHS—is the primary driver of the project." (ECF No. 16 at 14).

And on July 21, 2025, FDEM supplemented its response in *Friends of the Everglades*, making absolutely plain that Miami-Dade County is not a participant in the operation of Alligator Alcatraz: "Here, all relevant decisionmaking was made or is being made by officials in Washington, DC; in Tallahassee, Florida; or onsite at the facility in Collier County, Florida. . . . No relevant decisionmaking is occurring in Miami-Dade County." *Friends of the Everglades, et*

3

*al. v. Kristi Noem, et al.*, Southern District of Florida Case No. 25-cv-22896, ECF No. 50 at 4 (July 21, 2025). FDEM's supplemented response drives the point home:

> As Plaintiffs themselves explain, FDEM "took control of the Site." <u>The County, in other words, no longer controls what happens there.</u> . . . This case, in short, is about State policy decisions made in Tallahassee affecting property located in Collier County.

*Id.* at 4-5 (emphasis added).

## ARGUMENT

Despite the mountain of publicly-available information establishing to the contrary, Plaintiffs continue to labor under a misunderstanding of Miami-Dade County's role here. There isn't one. As even Plaintiffs' own allegations, declarations, and filings make clear: the County is not involved in the operation of the detention facility known as Alligator Alcatraz. Because Plaintiffs' complained-of harms cannot be traced to or redressed by Miami-Dade County,[1] Plaintiffs' Renewed Motion for Preliminary Injunction must be denied as to Defendant Green.

As an initial matter, it bears noting that Defendant Green has not been properly added to this official-capacity suit, because Miami-Dade County has not been properly served. The Returns of Service filed by Plaintiffs (*see* [ECF No. 19]) reflect that, while other defendants were served using process servers, Plaintiffs have claimed to serve Miami-Dade County by mailing copies of the summons and complaint to Director Sherea Green as well as to the Miami-Dade County Attorney. *See* Returns of Service [ECF No. 19] at 13-16. No one from Miami-Dade County, let alone an appropriate County official, was actually served with process here. *See* Fed. R. Civ. P.

---

[1] Though Plaintiffs have named "Director Sherea Green" in her official capacity as a defendant, the Supreme Court of the United States has long recognized that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1989) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

4

4(j)(2) (providing that service of process on a state or local government must be made by a delivering a copy of the summons and complaint to the chief executive officer or by serving the summons and complaint in the manner prescribed by state law); Fla. Stat. § 48.111 (providing that process against any county shall be served on the president, mayor, chair, or other head thereof); *see also* Fla. Stat. § 48.031 (specifying that service of original process is made by delivering a copy of it to the person to be served). Because Plaintiffs have not properly effectuated service on Miami-Dade County, the County has not been properly added as a defendant in this action. "The defendant's actual notice of the lawsuit does not eliminate this requirement." *Schnabel v. Wells*, 922 F.2d 726, 728 (11th Cir. 1991).

But even reaching the merits of Plaintiffs' claims, it's not entirely clear why Plaintiffs have named Director Green as a defendant in this action. A review of Plaintiffs' numerous filings in this action—which include supplemented pleadings as well as multiple motions and declarations in support—reveals that not a single complained-of action is attributable to Miami-Dade County. *See generally* Supplemental Class Action Complaint [ECF No. 28]; Renewed Motion for Preliminary Injunction [ECF No. 29]; Renewed Motion for Class Certification [ECF No. 30]. Throughout their filings, Plaintiffs inexplicably group Defendant Green with the "State Defendants." *See, e.g.*, Renewed Motion for Preliminary Injunction at 11 ("Defendants DeSantis, Green, Guthrie, and Florida Division of Emergency Management ("FDEM") (collectively 'Florida Defendants') have imposed significant and unreasonable barriers to attorney access"); Renewed Motion for Class Certification at 2 ("Defendants Ronald DeSantis, Sher[e]a Green, Kevin Guthrie, and Florida Division of Emergency Management (collectively 'Florida Defendants') have unduly restricted confidential attorney-client communication"). But Miami-Dade County is not a state agency, and this dichotomy is underscored by the fact that the State of Florida, through FDEM, has exercised

5

its emergency authority to commandeer a property that is owned by Miami-Dade County. *See* Ex. 1, Notice of Intent to Utilize.

Plaintiffs make a single allegation specific to Director Green and Miami-Dade County:

> The land upon which Alligator Alcatraz sits is owned by Miami-Dade County, Florida. On June 18, 2025, Sherea Green, on behalf of Miami-Dade County, signed an addendum to modify its 287(g) memorandum of agreement with ICE, to add language specifying that Miami-Dade would have "[t]he power and authority to detain and transport . . . arrested aliens subject to removal to ICE-approved detention facilities." *See* Addendum to Modify Memorandum of Agreement, https://perma.cc/2ULP-35C9.

Supplemental Complaint ¶ 87.

While it is true that Miami-Dade County owns the TNT Airport, "Miami-Dade's ownership has nothing to do with the claims," as the State has already noted, given the state's exercise of its emergency authority to commandeer the site and construct and operate a detention facility there. *Friends of the Everglades, et al. v. Kristi Noem, et al.*, Southern District of Florida Case No. 25-cv-22896, ECF No. 50 at 4 (July 21, 2025).

Nor does the County's 287(g) agreement bear on this action. As required by state law, the County has entered into a 287(g) agreement with ICE, for which an addendum was subsequently and separately executed. *See* Exhibit 7, Memorandum of Agreement Warrant Service Officer Program; Exhibit 8, Addendum to Modify Memorandum of Agreement. Every single sheriff or chief correctional officer operating a county detention facility in the State of Florida has been mandated to enter into a 287(g) agreement with Immigration and Customs Enforcement. *See* Fla. Stat. § 908.11(1) ("The sheriff or the chief correctional officer operating a county detention facility must enter into a written agreement with the United States Immigration and Customs Enforcement to participate in the immigration program established under s. 287(g) of the Immigration and Nationality Act, 8 U.S.C. s. 1357."). But Plaintiffs do not actually allege that the County's 287(g)

6

agreement—an agreement the County is required to enter into under state law—plays a role in the operation of Alligator Alcatraz. *See generally* Supplemental Complaint; Renewed Motion for Preliminary Injunction. Nor could they: neither the State of Florida nor any of its agencies are a party to the County's 287(g) with Immigration and Customs Enforcement. *See generally* Ex. 7; Ex. 8.

Aside from the fact that Miami-Dade County owns the TNT Airport, which is currently commandeered by the Florida Division of Emergency Management pursuant to its statutory authority, and the fact that Miami-Dade County has a 287(g) agreement in place with Immigration and Customs Enforcement, as required by state law, there are no other factual allegations regarding Miami-Dade County in Plaintiffs' filings, much less any allegation that Miami-Dade County is somehow involved in the operations of Alligator Alcatraz. In other words, there are no allegations regarding actions taken, or not taken, by Miami-Dade County <u>specifically</u>.

The Eleventh Circuit has explained that traceability—the idea that "a plaintiff's injury must be fairly traceable to the challenged action of the defendant"—is a requirement to satisfy the causation requirement of standing. *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (internal quotation marks and citation omitted). In *Jacobson*, the Eleventh Circuit concluded that the plaintiff voters and organizations lacked standing to bring their claims against the Florida Secretary of State because "any injury would be neither traceable to the Secretary nor redressable by relief against her. Instead, any injury would be traceable only to 67 Supervisors of Elections and redressable only by relief against them." *Id.* Because the plaintiffs in *Jacobson* offered no evidence "to establish that the Secretary play[ed] any role" in the challenged action, they "c[ould] not meet Article III's traceability requirement" *Id.* (citation omitted).

Plaintiffs here likewise cannot establish standing against the County. As in *Jacobson*, Plaintiffs cannot show traceability and redressability as to the County, because the County "didn't

7

do (or fail to do) anything that contributed to [Plaintiffs'] harm." 974 F.3d at 1253. Plaintiffs' claimed injuries are "neither traceable to [the County] not redressable by relief against [it]." *Id.* Miami-Dade County does not have care, custody, or control of any individuals currently housed at Alligator Alcatraz—and Plaintiffs have not even alleged, let alone shown, otherwise. While Mayor Levine Cava has requested the ability to oversee or monitor the conditions at Alligator Alcatraz, those requests have not been approved. *See* Exhibit 9, Letter from Miami-Dade County Mayor Daniella Levine Cava to Florida Division of Emergency Management Executive Director Kevin Guthrie; *see also* Communications Director Jeremy Redfern (@JeremyRedfernFL), X (July 8, 2025, 11:19 PM), https://x.com/JeremyRedfernFL/status/1942785541646475666 (writing "1) No. 2) No, no, and no. Any other questions?" in response to letter from Mayor Levine Cava to Florida Attorney General James Uthmeier requesting that Miami-Dade County be granted monitoring access to Alligator Alcatraz).

In sum: Plaintiffs fail to establish that Miami-Dade County plays any role in the operation of Alligator Alcatraz. *See Jacobson*, 974 F.3d at 1253 ("The problem for the voters and organizations is that Florida law tasks the Supervisors, independently of the Secretary, with printing the names of candidates on ballots in the order prescribed by the ballot statute. . . . <u>The voters and organizations have offered no contrary evidence to establish that the Secretary plays any role</u> in determining the order in which candidates appear on ballots.") (emphasis added). Plaintiffs do not make any allegations or claims specific to Miami-Dade County, and they have otherwise improperly collapsed Defendant Green into their allegations regarding against the State Defendants. Miami-Dade County is not a state agency, and the Renewed Motion for Preliminary Injunction asks this Court to order Miami-Dade County to provide relief it does not have the authority to give. Because the County does not play a role in the complained-of acts, Plaintiffs have not established standing as to the County. "Article III standing requires that the plaintiff's

8

injury be 'fairly traceable' to the defendant's actions and redressable by relief against *that* defendant." *Jacobson*, 974 F.3d at 1256 (emphasis in original, citation omitted). Any injunctive relief against Miami-Dade County will not provide redress, because the County does not play a role in, let alone control, any operations at Alligator Alcatraz. With respect to Miami-Dade County, Plaintiffs' Renewed Motion for Preliminary Injunction must be denied.

## CONCLUSION

Plaintiffs have presumably taken a "kitchen sink" approach by naming Miami-Dade County as a defendant in this action, but that approach is misplaced and must yield to the reality that Miami-Dade County is not involved in the operation of Alligator Alcatraz. Plaintiffs' claimed injuries are neither traceable to the County nor redressable by relief against it. Plaintiffs' Renewed Motion for Preliminary Injunction must be denied as to Miami-Dade County.

Dated: August 7, 2025

Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, FL 33128

By: *s/ Anita Viciana*
Anita Viciana
Assistant County Attorney
Florida Bar No. 115838
Phone: (305) 375-5151
Fax: (305) 375-5611
e-mail: anita@miamidade.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on August 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via CM/ECF.

*s/ Anita Viciana*
Assistant County Attorney
