# MEMORANDUM OF AGREEMENT
## Warrant Service Officer Program

### I. PARTIES

This Memorandum of Agreement (MOA) constitutes an agreement between U.S. Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the  Miami-Dade County Corrections and Rehabilitation Department  , hereinafter the law enforcement agency (LEA) , pursuant to which ICE delegates to nominated, trained, certified, and authorized LEA personnel the authority to perform certain immigration enforcement functions as specified herein. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein.

### II. PURPOSE

The purpose of this collaboration is to promote public safety by facilitating the custodial transfer of specific aliens in LEA jail/correctional facilities to ICE for removal purposes at the time of the alien's scheduled release from criminal custody. This MOA sets forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and approved by ICE to perform certain limited functions of an immigration officer within the LEA's jail/correctional facilities. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority delegated under this MOA to participating LEA personnel shall occur only as provided in this MOA.

### III. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1357(g) (1996), as amended by the Homeland Security Act of 2002, Pub. L. No. 107-296, authorizes the Secretary of DHS to enter into written agreements with a State or any political subdivision of a State so that qualified personnel can perform certain functions of an immigration officer. Such authority has been delegated by the Secretary to ICE, and this MOA constitutes such a written agreement.

### IV. RESPONSIBILITIES

The LEA is expected to pursue to completion all criminal charges that caused the alien to be taken into custody and over which it has jurisdiction. ICE will assume custody of an alien only after said individual has been released from LEA custody.

#### A. DESIGNATION OF AUTHORIZED FUNCTIONS

Approved participating LEA personnel will be authorized to perform only those immigration officer functions set forth in the Standard Operating Procedures (SOP) in Appendix A.

#### B. NOMINATION OF PERSONNEL

The LEA will use due diligence to screen and nominate candidates for ICE training and approval under this MOA. All candidates must be United States citizens, have knowledge of and have enforced laws and regulations pertinent to their law enforcement activities and their jurisdictions, and have been trained on maintaining the security of LEA facilities, and have enforced rules and regulations governing inmate accountability and conduct.

ICE reserves the right to conduct an independent background check for each candidate. This background check requires all candidates to complete a background questionnaire. The questionnaire requires, but is not limited to, the submission of fingerprints, a personal history questionnaire, and the candidate's disciplinary history (including allegations of excessive force or discriminatory action). ICE reserves the right to query any and all national and international law enforcement databases to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. Upon request by ICE, the LEA will provide continuous access to disciplinary records of all candidates along with a written authorization by the candidate allowing ICE to have access to his or her disciplinary records.

Any expansion in the number of participating LEA personnel or scheduling of additional training classes is subject to all the requirements of this MOA and the accompanying SOP.

### C. TRAINING OF PERSONNEL

Before participating LEA personnel receive authorization to perform immigration officer functions under this MOA, they must successfully complete initial training provided by ICE on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed.

Each LEA nominee must pass a final examination with a minimum score of 70 percent to receive certification. If an LEA nominee fails to attain a 70-percent rating on the examination, he or she will have one opportunity to review the testing material and re-take a similar examination. Failure to achieve a 70-percent rating upon retaking the final examination will result in the disqualification of the LEA nominee and discharge of the nominee from training.

ICE will review the training requirements annually, reserves the right to amend them, and may require additional training as needed.

### D. CERTIFICATION AND AUTHORIZATION

Upon successful completion of initial training, LEA personnel shall be deemed "certified" under this MOA.

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required test(s). Upon receipt of the certification, the ICE Field Office Director (FOD) will provide the participating LEA personnel a signed authorization letter allowing the named LEA personnel to perform specified functions of an immigration officer. ICE will also provide a copy of the authorization letter to the LEA. ICE will also execute ICE Form 70-006, Designated Immigration Officer. Only those certified LEA personnel who receive authorization letters and ICE Form 70-006 issued by ICE and whose immigration enforcement efforts are overseen by ICE may conduct immigration officer functions described in this MOA.

Along with the authorization letter and ICE Form 70-006, ICE will issue the certified LEA personnel official immigration officer credentials. Participating LEA personnel shall carry their ICE-issued credentials while performing immigration officer functions under this MOA. Such credentials provided by ICE shall remain the property of ICE and shall be returned to ICE upon termination of this agreement, when a participating LEA employee ceases his/her participation, or when deemed necessary by the FOD.

Authorization of participating LEA personnel to act pursuant to this MOA may be withdrawn at any time and for any reason by ICE and must be memorialized in a written notice of withdrawal identifying an effective date of withdrawal and the personnel to whom the withdrawal pertains. Such withdrawal may be effectuated immediately upon notice to the LEA. The LEA and the FOD will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA shall constitute immediate revocation of all immigration enforcement authorizations delegated hereunder.

The LEA will make every attempt, where practicable, to provide ICE with a 90 day notice if participating LEA personnel cease their participation in the program, so that appropriate action can be taken in accordance with ICE policies, including inventorying and retrieval of credentials, and training replacement personnel as needed.

### E. COSTS AND EXPENDITURES

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all of its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. The LEA will cover the costs of all LEA personnel's travel, housing, and per diem affiliated with the training required for participation in this MOA. ICE is responsible for the salaries and benefits of all of its personnel, including instructors and supervisors.

If ICE determines the training provides a direct service for the Government and it is in the best interest of the Government, the Government may issue travel orders to selected personnel and reimburse travel, housing, and per diem expenses only. The LEA remains responsible for paying salaries and benefits of the selected personnel.

The LEA is responsible for providing all administrative supplies (e.g. printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

### F. ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE. Additional supervisory and administrative responsibilities are specified in Appendix A.

The actions of participating LEA personnel will be reviewed by ICE officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for individual training or guidance.

For purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these delegated authorities under this MOA shall be DHS and ICE policies and procedures. ICE is responsible for providing the LEA with the

applicable DHS and ICE policies. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.

If a conflict arises between an order or direction of an ICE officer or a DHS or ICE policy and the LEA's rules, standards, or policies, the conflict shall be promptly reported to the points of contact in Section VII. who shall attempt to resolve the conflict.

### G. INTERPRETATION SERVICES

Participating LEA personnel will provide an opportunity for aliens with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA, as needed.

The LEA will maintain a list of qualified interpreters or companies it contracts with to provide such interpreters. A qualified interpreter, which may include LEA personnel, means an interpreter who can interpret effectively, accurately, and impartially, using any specialized vocabulary. If an interpreter is used when a designated officer is performing functions under this MOA, the interpreter must be identified, by name, in records by annotating on the Warrant for Arrest of Alien or the Warrant of Removal/Deportation.

### H. LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by Federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel with regard to their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees only for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel will enjoy the same defenses and immunities from personal liability for their in-scope acts that are available to ICE officers based on actions conducted in compliance with this MOA. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Chief Counsel at          865 SW 78th Ave, Suite 101, Plantation, Florida 33324          . The Office of the Chief Counsel in turn will notify the ICE Headquarters Office of the Principal Legal Advisor (OPLA), which will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g); and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any Federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any Federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with Federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA are undertaken under Federal authority, the participating LEA personnel will comply with Federal standards and guidelines relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. §552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices with regard to data collection and use of information under this MOA.

## I. CIVIL RIGHTS STANDARDS

Participating LEA personnel are bound by all Federal civil rights laws, regulations, and guidance relating to non-discrimination, including the U.S. Department of Justice "Guidance for Federal Law Enforcement Agencies Regarding the Use of Race, Ethnicity, Gender, National Origin, Religion, Sexual Orientation, or Gender Identity," dated December 2014, Executive Order 13166, "Improving Access to Services for Persons with Limited English Proficiency," (Aug. 2000), Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000 et seq., which prohibits discrimination based upon race, color, or national origin (including limited English proficiency) in any program or activity receiving Federal financial assistance, Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination based on disability and requires the LEA to provide effective communication to individuals with disabilities, and Title II of the Americans with Disabilities Act of 1990, which also prohibits discrimination based on disability and requires the LEA to provide effective communication to individuals with disabilities.

## V.   REPORTING AND DOCUMENTATION

### A. COMPLAINT PROCEDURES

The complaint reporting procedure for allegations of misconduct by participating LEA personnel, including activities undertaken under the authority of this MOA, is included in Appendix B.

### B. COMMUNICATION

The FOD (or the FOD's management representative) and the LEA shall make every effort to meet at least annually to ensure compliance with the terms of this MOA. When necessary, ICE and the LEA may limit the participation of these meetings in regard to non-law enforcement personnel. The attendees will meet at locations to be agreed upon by the parties, or via teleconference. An

initial review meeting between ICE and the LEA should be held within approximately 12 months of the MOAs operational date.

### C. RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to organizations and groups expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the applicability of this section to requests for the release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

### VI. MODIFICATIONS TO THIS MOA

Modifications to this MOA must be proposed in writing and approved and signed by both parties. Modification to Appendix A shall be done in accordance with the procedures outlined in the SOP.

### VII. POINTS OF CONTACT

ICE and the LEA points of contact (POCs) for purposes of this MOA are:
For the LEA: Director, Miami-Dade County Corrections and Rehabilitation Department
For DHS: Miami Field Office Director

### VIII. EFFECTIVE DATE AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party, upon 90-day written notice to the other party, provides notice of termination or suspension of the MOA. A termination or suspension notice by ICE shall be delivered personally or by certified or registered mail to the LEA and termination or suspension shall take effect 90-days after receipt of such notice, unless exigent circumstances involving public safety dictate otherwise. Notice of termination or suspension by the LEA shall be given to the FOD and termination or suspension shall take effect 90-days after receipt of such notice, unless exigent circumstances involving public safety dictate otherwise.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: 2/18/2025

Signature: *Daniella Levine Cava*

Title: Mayor, Miami-Dade County

**For ICE:**

Date: February 26, 2025

Signature: _____

Title: Acting Director

# APPENDIX A
# STANDARD OPERATING PROCEDURES (SOP)

The purpose of this appendix is to establish standard, uniform procedures for the implementation and oversight of the program within the FOD area of responsibility. This appendix can be modified only in writing and by mutual acceptance of ICE and the LEA.

Pursuant to this MOA, the LEA has been delegated authorities as outlined below. This MOA is designed to facilitate the custodial transfer of designated aliens in LEA's jail/correctional facilities to ICE within 48 hours of alien's release from criminal custody.

## Authorized Functions:

Participating LEA personnel are only delegated the two authorities listed below:

- The power and authority to serve and execute warrants of arrest for immigration violations, 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.5(e)(3), on designated aliens in LEA jail/correctional facilities at the time of the alien's scheduled release from criminal custody in order to transfer custody of the alien to ICE; and

- The power and authority to serve warrants of removal, 8 U.S.C. § 1357(a) and 8 C.F.R. §§ 241.2(b)(2), 287.5(e)(3), on designated aliens in LEA jail/correctional facilities at the time of the alien's scheduled release from criminal custody that executes the custodial transfer of the alien to ICE for removal purposes.

Upon transfer of the alien's custody to ICE, the alien will continue to be held in the LEA's jail/correctional facilities <u>for no more than 48 hours unless</u> there exists an agreement pursuant to which the LEA will continue to detain, for a reimbursable fee, aliens for immigration purposes. In the absence of an agreement, if the alien is not transferred to an ICE field office or an immigration detention facility within 48 hours, the alien <u>shall be released</u> from the LEA jail/correctional facility.

## Additional Supervisory and Administrative Responsibilities:

The above immigration enforcement functions conducted by the participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE. Additional supervisory and administrative responsibilities for each entity include, but are not limited to:

- The LEA shall provide notification to the ICE officer immediately after participating LEA personnel serve any warrant of arrest or warrant of removal that executes the custodial transfer of the alien to ICE for removal purposes, in a manner mutually agreed upon by the LEA and the FOD.

- Participating LEA personnel must report all encounters with asserted or suspected claims of U.S. citizenship to ICE immediately, but generally within one hour of the claim.

# APPENDIX B
# COMPLAINT PROCEDURE

The training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for U.S. citizens' and aliens' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through the complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA or a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall, to the extent allowed by State law, make timely notification to an ICE officer within 48 hours, excluding weekends, of the existence and nature of the complaint or allegation. The results of any internal investigation or inquiry connected to the complaint or allegation and the resolution of the complaint shall also be reported to an ICE officer, as established by ICE. It is the responsibility of the ICE officer to ensure notification is made to the ICE Office of Professional Responsibility (OPR) at **ICEOPRIntake@ice.dhs.gov**.

The LEA will also handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE officer within 48 hours of the LEA receiving notice of the complaint. It is the responsibility of the ICE officer to ensure notification is made to OPR.

287(g) Complaint Process posters will be displayed in the processing areas of the LEA to ensure aliens encountered under the 287(g) Program are aware of the complaint process. Posters will be displayed in English and Spanish. If the alien understands a language other than English or Spanish or is unable to read, LEA personal will read and/or translate the complaint process in a language the alien understands.

# APPENDIX C
# PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section V(D) of this MOA, the signatories agree to coordinate appropriate release of information to the media, provided the release has been previously approved by both the ICE Privacy Officer and Public Affairs Officer, regarding actions taken under this MOA before any information is released. The points of contact for coordinating such activities are:

For the LEA:

For ICE:

Public Affairs Office
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Washington, DC 20536
202-732-4242