UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-23182-RAR

**C.M., MICHAEL BORREGO FERNANDEZ, J.M.C., E.R.,** *on behalf of themselves and all others similarly situated*, *et al.*,

    *Plaintiffs,*

v.

**KRISTI NOEM**, *Secretary, U.S. Department of Homeland Security*, *et al.*,

    *Defendants*.

_____/

**FEDERAL DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Alligator Alcatraz is a Florida-constructed and Florida-operated facility that temporarily houses federal immigration detainees pursuant to 287(g) agreements between State of Florida agencies and U.S. Immigration and Customs Enforcement (ICE). The named plaintiffs are immigration detainees temporarily housed at the facility (and their lawyers) who – through their motion for a mandatory preliminary injunction – ask this Court to exercise control over federal immigration agencies and officials in their handling of certain immigration matters, among other things. The court should deny plaintiffs' motion because the law, facts, and public interest do not support such extraordinary relief.

**BACKGROUND**

The federal defendants generally agree with the historical background and arguments in the state defendants' opposition memorandum. Rather than repeat the history of Alligator Alcatraz's construction and operation (State of Florida), its location (Middle District of Florida),

and the 287(g) agreements that apply (between State of Florida entities and ICE), the federal defendants refer the Court to the background section of the state defendants' memorandum. They focus the rest of this opposition on arguments and relevant information not otherwise covered.

## ARGUMENT SUMMARY

The Court should deny plaintiffs' motion because they fail to meet their high burden on each of the four requirements for entry of a preliminary injunction.

**First,** plaintiffs fail to establish a substantial likelihood of success on the merits because they do not show a basis for the Court's subject matter jurisdiction. Under 8 U.S.C. §1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Regardless of the framing they choose to present, plaintiffs' claims here arise from ICE's decision or action to commence proceedings, adjudicate cases, or execute removal orders. Thus, there is no jurisdictional basis for this district court lawsuit.

In addition, venue for this case is not proper in the Southern District of Florida. Nor is this district a convenient forum. The proper defendants in official capacity federal agency suits are agency heads, not local field office directors. ICE's Enforcement and Removal Operations (ERO) headquarters is in Washington, D.C., which is also where its head official resides. That official, not Miami field director Ripa, is the proper official capacity defendant for ICE-ERO. While venue is not proper in the Southern District of Florida, it is proper in the Middle District of Florida (which is also a more convenient forum) because the Alligator Alcatraz facility is in Ochopee, Florida (in the Middle District of Florida) and a substantial part of the alleged events or omissions giving rise to plaintiffs' claims occurred there.

Plaintiffs also have no substantial likelihood of succeeding on the merits because the First and Fifth Amendments do not confer the expansive rights and relief that the immigrant detainees and their lawyers seek. In any event, as both the federal defendants' and state defendants' oppositions and supporting declarations show, defendants *are* complying with First and Fifth Amendment requirements.

**Second**, plaintiffs fail to demonstrate that they need a preliminary mandatory injunction to prevent irreparable injury. There is no risk of imminent harm. Lawyers for the immigrant detainees are filing bond petitions with immigration courts, and that the immigration courts are setting them for hearings. *See Exhibit A* (Juan Lopez Vega Declaration). According to the state defendants' memorandum, detainees and lawyers are communicating by telephone, in person, and by video teleconference. As work continues to expand the facility, telephone and video conference equipment will become even more accessible. *See* state defendants' memorandum and accompanying declarations. Because Plaintiffs fail to establish that future harm is imminent, there is no basis for prospective mandatory injunctive relief.

**Third and fourth**, plaintiffs fail to demonstrate that the threatened injury outweighs the harm that a preliminary injunction would cause defendants. They also fail to show that the preliminary injunction would not go against the public interest. To the contrary, the public interest in enforcing this country's immigration laws calls for denial of the requested expansive, overreaching, and unnecessary affirmative injunctive relief.

## ARGUMENT

**I.     Plaintiffs fail to meet the requirements for a mandatory preliminary injunction.**

Preliminary injunctions are "extraordinary and drastic" remedies. *See Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1223, 1231 (*quoting United States v. Jefferson* County, 720 F.2d

1511, 1519 (11th Cir. 1983)); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000). A party seeking a preliminary injunction must establish four elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless an injunction issues; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the opponent and (4) that an injunction will not be averse to the public interest. *Siegel,* 234 F.3d at 1176. A court should not grant the relief unless the movant clearly meets his burden of persuasion on all four elements. *Id*.

Here, plaintiffs do not move for a typical preliminary injunction: a prohibitive one that seeks to maintain the *status quo* pending resolution of the case merits. *See Mercedes–Benz U.S. Int'l, Inc. v. Cobasys, LLC,* 605 F.Supp.2d 1189, 1196 (N.D. Ala. 2009). Rather, plaintiffs ask for a mandatory injunction that forces defendants to affirmatively implement procedures and internal deadlines, among other things. *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.,* 441 F.2d 560, 561 (5th Cir.1971). This makes plaintiffs' burden even higher because courts should grant this disfavored remedy only in rare circumstances where the facts and law clearly favor the moving party. *See Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir.1976) (explaining that mandatory preliminary relief, which goes well beyond simply maintaining the *status quo*, is particularly disfavored); *see also Verizon Wireless Pers. Commc'n LP v. City of Jacksonville, Fla.,* 670 F.Supp.2d 1330, 1346 (M.D.Fla.2009); *Mercedes–Benz,* 605 F.Supp.2d at 1196; *OM Group, Inc. v. Mooney,* 2006 WL 68791, at *8–9 (M.D. Fla. Jan. 11, 2006).

As to each of the four elements, plaintiffs here fail to meet their high burden of clear entitlement to a mandatory injunction. The court should deny their motion.

**A. Plaintiffs fail to establish substantial likelihood of success on the merits.**

**1.** *The Court lacks subject matter jurisdiction.*

The Court should not grant plaintiffs' motion for mandatory preliminary injunction because it lacks subject matter jurisdiction over plaintiffs' case (and therefore plaintiffs' motion). Federal courts have limited jurisdiction; they possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party bringing the claim must establish that the court has subject matter jurisdiction. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). Without subject matter jurisdiction, the court has no power to move forward with the case. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see also Belleri v. United States,* 712 F.3d 543, 547 (11th Cir. 2013) (explaining that, in federal court, jurisdiction takes precedence over the case merits).

Here, 8 U.S.C. §1252(g) precludes subject matter jurisdiction. That statutory section says that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." It is a "discretion-protecting provision" that Congress designed to prevent the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) ("*AAADC*").

No matter how plaintiffs choose to frame their case, the legal challenges of both the immigrant detainees and the organizational (lawyer) plaintiffs *arise from* the discretionary categories in §1252(g)'s jurisdictional bar: the decision or action to commence proceedings, adjudicate cases, and execute removal orders. *See Canal A Media Holding, LLC v. U.S.*

*Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020) (explaining that for bar to apply, one of the actions listed in §1252(g) must form the basis of the claim); *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013); *cf. Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (*en banc*) (noting that "a party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction").

Alligator Alcatraz is used as an immigration staging facility for detainees against whom ICE has decided to commence or continue removal proceedings, or to execute final orders of removal. It is meant as a short-term detention center for the detainees while ICE considers long-term detention placement. *See Exhibit A* (Vega Declaration).

Indeed, the supplemental complaint confirms this, describing some detainees being placed in removal proceedings and issued a notice to appear (NTA) (*commencement of proceedings*); some continuing their removal proceedings and having their claims adjudicated (*adjudication of cases*); and others as having been detained on final orders of removal (*execution of removal*). The detainee plaintiffs are at Alligator Alley in connection with categories set out in §1252(g) and their claims arise from those jurisdictionally barred categories. And, at their core, the claims of the organizational plaintiffs necessarily arise from the jurisdictionally barred categories too since they represent their clients in proceedings. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) (precluding review of methods used by immigration authorities to secure an alien while awaiting an initial removal hearing because the decision to commence proceedings was the foundation of the claim); *Gupta*, 709 F.3d at 1065.

Notably, plaintiffs are not asking the Court to review the legality of the decisions or orders that underlie the basis for detention. Again, plaintiffs fail to establish subject matter jurisdiction. *See Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (distinguishing

between situations where an alien's claims are founded directly on a decision or action to commence proceedings, adjudicate cases, or execute removal orders, from those where an alien challenges the "underlying legal bases" of those decisions or actions); *Grigorian v. Bondi,* 2025 WL 1895479, No. 25-cv-22914-RUIZ (S.D. Fla. July 9, 2025) (denying motion for temporary restraining order; distinguishing covered and noncovered claims under §1252(g) and exercising jurisdiction only on petitioner's challenge to *legality of underlying decision* leading to detention (ICE's alleged failure to comply with the statutory requirements for revoking an order of supervision) which the court found did not fall under §1252's jurisdictional bar); *see also Charles v. United States,* 2023 WL 3341050, *at fn. 6, No. 23-cv-21172-RUIZ (S.D. Fla. May 10, 2023) ("Though the Court need not decide the issue, Plaintiff's Fourth Amendment claim also appears barred from this Court's review by 8 U.S.C. §1252(g)").

Plaintiffs cannot establish a likelihood of success on the merits because the Court lacks subject matter jurisdiction over the case and motion. For this reason, the Court should not grant the motion or move forward with the case.

2. *Venue is improper in the Southern District of Florida.*

Plaintiffs also fail to establish a substantial likelihood of success on the merits since they filed their case in the wrong venue. In actions against federal agencies or officials, venue is proper in any judicial district in which: (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. 28 U.S.C. §1391(e)(1).

No properly named official capacity federal defendant resides in the Southern District of Florida. This is not an individual capacity lawsuit; it is an official capacity suit against federal

agencies and the proper defendants are the heads of those agencies. They reside in Washington, D.C. Plaintiffs cannot circumvent this requirement by naming a local field office agency head that sits in their preferred venue. *See, e.g.*, *Trujillo v. Garland,* 2023 WL 2374445, at *6 (S.D. Fla. Mar. 6, 2023) (federal officer resides in Washington, D.C., not the Southern District of Florida, despite the agency's regional offices in this district); *Brahim v. Holder*, 2014 WL 2918598, at *3 (S.D. Fla. June 26, 2014) ("First, the [federal official] [d]efendant resides in Washington, D.C., not the Southern District of Florida, for venue purposes."); *see also Hernandez v. USCIS*, 2021 WL 9408841, at *2 (S.D. Fla. Aug. 31, 2021) ("Merely maintaining offices within a district does not mean a federal defendant resides in that district."). The proper ICE-ERO official capacity defendant here is the current agency head who resides in Washington, D.C. *See Exhibit A* (Vega Declaration). ICE-ERO Miami Filed Director Garret Ripa is not the proper official representative for the agency and venue cannot lie in this district based on his residence.

Venue here also is improper against the federal defendants under §1391(e)(1)(B) and (C) because no substantial part of the alleged acts or omissions giving rise to plaintiffs' claims arose in the Southern District of Florida and the property involved in this case (the Alligator Alcatraz detention facility) is in the Middle District of Florida. Rather, most (if not all) of the alleged mail and communication issues arose at the facility – in Collier County, Florida – in the Middle District of Florida. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (explaining that "only the events that directly give rise to a claim are relevant," and "of the places where the events have taken place, only those locations hosting a substantial part of the events are to be considered"); *see also TMJ Prac. Mgmt. Assocs., Inc. v. Curran*, 2017 WL 3130421, at *3 n.2 (S.D. Fla. July 24, 2017) ("[I]n accordance with Eleventh Circuit precedent,

the Court must focus its venue analysis not on all aspects of the relationships between the parties, but on the location of the acts and omissions giving rise to the claims asserted, those actions with a close nexus to the wrong.").

As to the alleged acts or omissions regarding the assignment of immigration courts, the Executive Office of Immigration Review (EOIR) handles those and other immigration court matters. EOIR is a Department of Justice component, headquartered in Falls Church, Virginia. The head of the agency resides in Falls Church, Virginia. And, according to the state defendants' submissions, decisions by State of Florida officials on other alleged claims happened in Tallahassee. Neither Washington, D.C. nor Tallahassee is in the Southern District of Florida. In short, no substantial activity or omission occurred in this district. *See, e.g.*, *Harvard v. Inch,* 408 F. Supp. 3d 1255, 1262-63 (N.D. Fla. 2019) (venue for actions challenging government policies is proper in the district where the policy was made, not where its effects were felt); *see also Stanton-Negley Drug Co. v. Pa. Dep't of Pub. Welfare,* 2008 WL 1881894, at *5 (W.D. Pa. Apr. 24, 2008) ("While Plaintiffs may feel the impact of those polices in the Western District of Pennsylvania, their due process and equal protection claims are directed at the policies and policymakers. Here, the polices are implemented and the policymakers reside in the Middle District of Pennsylvania").

Additionally, if the court moves to consider the venue impact of joining defendants that are not federal government agencies or employee, venue still ends up being improper in this district. The joinder language of §1391(e) says that "additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." Federal courts interpret this language to mean that where – as here

– plaintiffs who sue both a federal defendant and nonfederal defendant "must press [their] claim in a district having venue with respect to the nonfederal defendant by authority other than § 1391(e)." *Lamont v. Haig,* 590 F.2d 1124, 1131 n.36 (D.C. Cir. 1978); *see id.* at 1132. That takes us to §1391(b)(1).

Under the general provisions of §1391(b)(1), venue is also improper in the Southern District of Florida because: not all named defendants reside in Florida (i.e., Kristi Noem, Todd Lyons, and other federal defendants sued in their official capacities reside in Washington, D.C. and Virginia); no substantial amount of relevant alleged activity or omission occurred in this district, nor is the detention facility in this district; and there is a district in which the action may otherwise have been brought – the Middle District of Florida. *See also Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371 (11th Cir. 2003) (federal venue statute "emphasizes the importance of the place where the wrong has been committed"). Again, the Alligator Alcatraz facility is in Ochopee, an unincorporated community in Collier County, which is in the Middle District of Florida.

In sum, plaintiffs cannot establish a substantial likelihood of success on the claims because this is the wrong venue. For this reason, the Court should deny plaintiffs' motion for preliminary injunction.

### 3. *No First Amendment violations.*

Plaintiffs also fail to establish a substantial likelihood of success on the merits of their First Amendment claims against the federal defendants (Counts 1 and 3). First, while courts have recognized the associational and court access rights of civil detainees, as well as attorney rights to client consultation and solicitation in detention facilities, these rights are not unfettered. *See, e.g.*, *Haitian Refugee Ctr., Inc. v. Baker,* 953 F.2d 1498, 1513 (11th Cir. 1992) (per curiam)

("[T]he Government does not infringe on a third party's first amendment right to associate with an alien by holding the alien for a period of time during which the third-party is unable to contact him"); *see also id.* at 1513-14 ("Certainly [the case law] does not support the conclusion that the Government infringes associational freedom when it denies access to those whom it lawfully detains"); *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1429 (11th Cir. 1995) ("[A]ssociational freedom in no way implies a right to compel the Government to provide access to those with whom one wishes to associate").

As the state defendants fulsomely argue in their opposition, facility security and other realities must be considered in a First Amendment analysis. Alligator Alcatraz has been operating for only about a month. In their memorandum, the state defendants present declarations and argue that they made diligent efforts to secure phone calls and other communication channels between detainees and their lawyers, along with continuing to expand infrastructure for these purposes. Facility operators have continued to overcome the initial growing pains (as the Court alluded to them during the July 28th status conference). Since injunctions regulate future conduct only and are not meant to provide relief for past injuries, the Court should deny plaintiffs' motion for a mandatory preliminary injunction. *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014).

### 4. *No Fifth Amendment violations.*

Plaintiffs do not establish a substantial likelihood of succeeding on their Fifth Amendment claims against the federal defendants concerning immigration court access. As the attached declaration shows, temporary detainees at Alligator Alcatraz can file bond requests with the immigration courts that were already handling their cases. Lawyers are filing the bond

requests with the appropriate courts. Courts are accepting the filings and scheduling bond hearings. There is no basis for injunction here.

### 5. *Plaintiffs' proposed class and subclass are not likely to be certified.*

Based on preliminary review of the class matters (which the Court has directed), it appears that a class is not likely to be certified due, at minimum, to lack of commonality. As plaintiffs themselves describe in their complaint and other submissions, defendants are in varying stages of their immigration proceeding, some with final orders. This means that individuals in the proposed class will have different rights and privileges depending on the stage of proceedings they are in while detained.

Plus, the proposed main class definition -- all persons who are currently, or in the future, held at the Alligator Alcatraz detention facility -- is facially overbroad and unworkable. It includes unnamed, hypothetical future detainees who not only cannot be identified but, more importantly, do not yet have standing to sue. Courts have repeatedly held that such overinclusive definitions are impermissible. *See Florida Immigrant Coal. v. Uthmeier*, No. 25-21524-CV, 2025 WL 1423357, at *16 (S.D. Fla. Apr. 29, 2025) (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019)).

In addition, some named plaintiffs have already been released or will soon be transferred, calling into question their continued standing. *See, e.g., Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) ("[T]he district court must determine that at least one named class representative has Article III standing to raise each class subclaim").

### B. Plaintiffs fail to establish irreparable injury without an injunction.

The defendants are following the procedures in place for immigration court filings. And many of the temporary issues at the facility appear to be resolved. "To show irreparable harm,

the harm 'must be neither remote nor speculative, but actual and imminent.'" *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see also Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable."). Plaintiffs cannot make either showing here.

Plaintiffs' inability to show imminent harm is fatal to their motion. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added) (an "equitable remedy [that] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged *again*"); *see also Strickland*, 772 F.3d at 883 ("[I]njunctions regulate future conduct only."). Plaintiffs do not meet their "heavy burden" to obtain a mandatory preliminary injunction here and the court should deny their motion on this ground too.

### C. The balance of equities does not support granting an expedited preliminary injunction where plaintiffs are receiving their requested relief.

On his factor, Plaintiffs fare no better. There is a "public interest in allowing the government discretion to carry out its authorized functions." *S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533, at *33 (D.D.C. June 17, 2020). And there is an especially strong interest in allowing the federal government to enforce this country's immigration laws without burdensome roadblocks with no basis in law or fact. The balance of equities tips in favor of defendants.

For these reasons, the Court should deny plaintiffs' motion for a mandatory preliminary injunction.

                                                Respectfully submitted,

                                                HAYDEN P. O'BYRNE
                                                UNITED STATES ATTORNEY

**Marlene Rodriguez**
Marlene Rodriguez (FBN 120057)
Assistant U.S. Attorney
marlene.rodriguez@usdoj.gov
99 N.E. 4th Street, 3rd Floor
Miami, Florida 33132
(305) 961-9206

*Counsel for Federal Defendants*

14