**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

C.M., Michael Borrego Fernandez, J.M.C.,
E.R., *on behalf of themselves and all others
similarly situated, et al.*,

    Plaintiffs*,*

*v.*                   Case No 1:25-cv-23182-RAR

KRISTI NOEM, *Secretary of the United
States Department of Homeland Security, et
al.*,

    Defendants.
_____

**THE STATE DEFENDANTS' RESPONSES TO**
**PLAINTIFFS' MOTION FOR LIMITED EXPEDITED DISCOVERY**

    Defendants Ron DeSantis, in his official capacity as Governor of the State of Florida, Kevin

Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency

Management, and the Florida Division of Emergency Management (State Defendants), respond to

Plaintiffs' Motion for Limited Expedited Discovery and this Court's order (ECF 41) as follows:

**GENERAL OBJECTIONS**

    1.    By responding to these requests, the State Defendants do not admit or concede

that any fact, event, characterization, or legal conclusion in the requests is accurate or correct,

and the State Defendants reserve the right to contest all assumed facts, events, characterizations,

and legal conclusions.

    2.    The State Defendants provide these responses and objections without waiving or

intending to waive, but rather preserving and intending to preserve all applicable privileges,

immunities, and protections.

    3.    The State Defendants provide these responses to the best of their knowledge

based upon all information presently available to and known by them at this early stage of the

litigation. Because discovery in this case has not even begun, the State Defendants reserve the

right to supplement, amend, or otherwise revise these responses in accordance with the Federal

Rules of Civil Procedure and any applicable court order, as may be deemed appropriate upon

further review.

**Requests for Production**

1.      Produce all written agreements—including but not limited to all contracts,

memoranda of agreement under 8 U.S.C. § 1357(g)(1), and any other agreements—that provide

the legal authority for any government agency or private contractor to detain people and exercise

any other immigration officer functions at Alligator Alcatraz.

**Response**: The State Defendants have attached all responsive documents as **Exhibits 1-9**

to this response.


**Interrogatories**

1.      Identify all federal, state, and/or local government agencies that have legal custody

over people detained at Alligator Alcatraz.

**Response**: The State Defendants join in the Federal Government's response. The following

Florida state agencies, which are performing detention duties at the Facility, have 287(g)

agreements with ICE: Florida Department of Corrections; Florida Department of Business

& Professional Regulation, Division of Alcoholic Beverages and Tobacco; Florida

Department of Law Enforcement; Florida Department of Financial Services; Florida

Department of Highway Safety and Motor Vehicles, Division of Highway Patrol; Florida

Wildlife Conservation Commission; Florida Department of Environmental Protection; Florida Lottery; Florida National Guard.


2.      Identify all federal, state, and/or local government agencies and contractors that are responsible for carrying out detention operations at Alligator Alcatraz.

**<u>Response</u>**: The State Defendants object to the phrase "responsible for carrying out detention operations" as vague and unclear. Nonetheless, in addition to the state agencies listed in the response to Interrogatory #1, the Florida Division of Emergency Management, Florida State Guard, Critical Response Strategies, LLC; and GardaWorld Security Services, Inc., are assisting with detention operations at the Facility, all in accordance with the authority conferred by 8 U.S.C. § 1357(g)(1).


Dated: August 7, 2025                    Respectfully submitted,

                                        /s/*Nicholas J.P. Meros*
                                        NICHOLAS J.P. MEROS (FBN 120270)
                                        TARA K. PRICE (FBN 98073)
                                        KASSANDRA S. REARDON (FBN 1033220)
                                        **SHUTTS & BOWEN LLP**
                                        215 South Monroe Street, Suite 804
                                        Tallahassee, Florida 32301
                                        (850) 241-1717
                                        NMeros@shutts.com
                                        TPrice@shutts.com
                                        KReardon@shutts.com

                                        *Counsel for the State Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the

Court's CM/ECF system, which provides notice to all parties, on August 7, 2025.


/s/ *Nicholas J.P. Meros*
*Counsel for the State Defendants*

# EXHIBIT 1

## MEMORANDUM OF AGREEMENT
### 287(g) Task Force Model

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Florida DBPR, ABT, BLE _____, pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the Florida DBPR, ABT, BLE _____ (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), the authority to perform certain immigration enforcement functions as specified herein. The LEA represents Florida DBPR, ABT, BLE _____ in the implementation and administration of this MOA. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I.   PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II.   AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III.   POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

Defendants_TRO_00145

## IV.    TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V.    DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting,

Defendants_TRO_00146

photographing, and interviewing, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. (8 C.F.R. § 287.5(c)(6))

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI.    RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor, the alien whom participating LEA personnel have determined to be removable will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII.    NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based

on an oral agreement of the parties but will be subject to all the requirements of this MOA.

## VIII.    TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws; (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.    CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X.    COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are

Defendants_TRO_00148

defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority. The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI. ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate

**Florida DBPR, ABT, BLE**

Revised 03/07/2025

Defendants_TRO_00149

federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII.   REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.   RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the

**Florida DBPR, ABT, BLE**                      6

Defendants_TRO_00150

applicability of this section to requests for release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV.   LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at <u>Miami Florida</u>. OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be

Defendants_TRO_00151

used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV.    COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI.    CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII.    MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII.    EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged

**Florida DBPR, ABT, BLE**                    8                    Revised 03/07/2025

misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved for instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: 04/10/2025

Signature: Jerome Worley _Digitally signed by Jerome Worley Date: 2025.04.10 07:39:17 -04'00'_

Name: Jerome Worley

Title: Director

Agency: Florida DBPR, ABT, BLE

**For ICE:**

Date: 4.24.25

Signature:

Name: Todd M. Lyons

Title: Acting Director

Agency: Department of Homeland Security

U.S. Immigration and Customs Enforcement

Defendants_TRO_00153

## APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:
Department of Homeland Security
Immigration and Customs Enforcement
Enforcement and Removal Operations
Assistant Director for Enforcement
Washington DC

For the LEA:
**Claire Espada-Diaz**

Chief

954-551-0659

2601 Blair Stone Rd., Tallahassee, FL 32399

clariveth.espada-diaz@myfloridalicense.com

Defendants_TRO_00154

**APPENDIX B**

**COMPLAINT PROCEDURE**

This MOA is an agreement between ICE and the  Florida DBPR, ABT, BLE ,
hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA
personnel are authorized to perform immigration enforcement duties in specific situations
under federal authority. As such, the training, supervision, and performance of participating
LEA personnel pursuant to the MOA, as well as the protections for individuals' civil
and constitutional rights, are to be monitored. Part of that monitoring will be
accomplished through these complaint reporting and resolution procedures, which the
parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the
violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make
timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that
individual receiving professional discipline or becoming the subject of a criminal
investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from
the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and
certified pursuant to this MOA but are acting in immigration functions in violation of
this MOA. Any such complaints regarding non-designated LEA personnel acting in
immigration functions must be forwarded to the ICE Office of Professional
Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

**1. Complaint Reporting Procedures**

Complaint reporting procedures shall be disseminated as appropriate by the LEA within
facilities under its jurisdiction (in English and other languages as appropriate) in order to
ensure that individuals are aware of the availability of such procedures. Complaints will be
accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the
public).

Complaints may be reported to federal authorities as follows:

     A.    Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

     B.    Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

     A.    The LEA Internal Affairs Division; or
     B.    The supervisor of any participating LEA personnel.

Defendants_TRO_00155

## 2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel.  Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

## 3. Complaint Resolution Procedures

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

Defendants_TRO_00156

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

## APPENDIX C

### PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

Morgan Jones

Communications Director

850-717-1733

2601 Blair Stone Rd., Tallahassee, FL 32399

Morgan.Jones@myfloridalicense.com

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs

# EXHIBIT 2

# MEMORANDUM OF AGREEMENT
### 287(g) Jail Enforcement Model

## I. PARTIES

This Memorandum of Agreement (MOA) constitutes an agreement between U.S. Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and Florida Department of Corrections (Department), pursuant to which ICE delegates to nominated, trained, certified, and authorized Department personnel the authority to perform certain immigration enforcement functions as specified herein. The Department and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein.

## II. PURPOSE

The purpose of this collaboration is to enhance the safety and security of communities by focusing resources on identifying and processing removable aliens who have been arrested and booked into the Department's correctional facilities. This MOA sets forth the terms and conditions pursuant to which selected Department personnel (participating Department personnel) will be nominated, trained, and approved by ICE to perform certain limited functions of an immigration officer within the Department's correctional facilities. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating Department personnel as members of the Department. However, the exercise of the immigration enforcement authority delegated under this MOA to participating Department personnel shall occur only as provided in this MOA.

## III. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1357(g) (1996), as amended by the Homeland Security Act of 2002, Pub. L. No. 107-296, authorizes the Secretary of DHS to enter into written agreements with a State or any political subdivision of a State so that qualified personnel can perform certain functions of an immigration officer. Such authority has been delegated by the Secretary to ICE, and this MOA constitutes such a written agreement.

## IV. RESPONSIBILITIES

ICE retains sole discretion in determining how it will manage its limited resources and meet its mission requirements. ICE will assume custody of an alien only after said individual has been released from Department custody.

### A. DESIGNATION OF AUTHORIZED FUNCTIONS

Approved participating Department personnel will be authorized to perform only those immigration officer functions set forth in the Standard Operating Procedures (SOP) in Appendix A.

### B. NOMINATION OF PERSONNEL

The Department will use due diligence to screen and nominate candidates for ICE training and approval under this MOA. All candidates must be United States citizens, have knowledge of, and authority to enforce, laws and regulations pertinent to their law enforcement activities and their jurisdictions, and have been trained on maintaining the security of Department facilities, and have the authority to enforce rules and regulations governing inmate accountability and conduct.

ICE will conduct a background investigation and make an eligibility determination on each candidate prior to personnel being authorized to perform duties under this MOA.

1

All Department candidates must be approved by ICE and must be able to qualify for access to the appropriate DHS and ICE databases/systems and associated applications. Should a candidate not be approved, a qualified substitute candidate may be submitted.

### C. TRAINING OF PERSONNEL

Before participating Department personnel receive authorization to perform immigration officer functions under this MOA, they must successfully complete delegation of immigration authority training provided by ICE on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed.

The training will be taught by ICE instructors and tailored to the immigration enforcement functions to be performed. Each Department nominee must pass each examination with a minimum score of 70-percent to receive certification. If a Department nominee fails to attain a 70-percent rating on an examination, the Department nominee will have an opportunity to review the testing material and re-take a similar examination. During the entirety of training, the Department nominee will be offered a maximum of one remedial examination. Failure to achieve a 70-percent rating on any two examinations (inclusive of any remedial examination), will result in the disqualification of the Department nominee and discharge of the nominee from the training.

Participating Department personnel will also be required to complete refresher training as needed, but not more frequently than every two years after the initial course completion. Participating Department personnel will also complete any additional training required by ICE on relevant administrative, legal, and operational issues related to the immigration officer functions to be performed.

### D. CERTIFICATION AND AUTHORIZATION

Upon successful completion of initial training, Department personnel shall be deemed "certified" under this MOA.

ICE will certify in writing the names of those Department personnel who successfully complete training and pass all required test(s). Upon receipt of the certification, the ICE Field Office Director (FOD) will provide the participating Department personnel a signed authorization letter allowing the named Department personnel to perform specified functions of an immigration officer. ICE will also provide a copy of the authorization letter to the Department. ICE will also execute ICE Form 70-006, Designated Immigration Officer. Only those certified Department personnel who receive authorization letters and ICE Form 70-006 issued by ICE and whose immigration enforcement efforts are overseen by ICE may conduct immigration officer functions described in this MOA.

Along with the authorization letter and ICE Form 70-006, ICE will issue the certified Department personnel official immigration officer credentials. Participating Department personnel shall carry their ICE-issued credentials while performing immigration officer functions under this MOA. Such credentials provided by ICE shall remain the property of ICE and shall be returned to ICE upon termination of this agreement, when a participating Department employee ceases his/her participation, or when deemed necessary by the FOD.

Florida Department of Corrections

Department personnel may have their delegated authority revoked at any time for any reason. However, where a revocation would effectively amount to the suspension/termination of the entire MOA (i.e. where a revocation would leave no participating Department personnel available to carry out responsibilities under the 287(g) program), ICE will follow the suspension and termination notice processes described in Section VIII, below. The letter of authorization issued to Department personnel will remain valid until the Department personnel is revoked via the issuance of a letter of revocation signed by the FOD. The Department and FOD will be responsible for notification to the appropriate personnel in their respective agencies. The suspension or termination of this MOA, a process described in Section VIII, shall constitute immediate revocation of all immigration enforcement authorizations delegated hereunder.

### E. COSTS AND EXPENDITURES

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the Department's Designated Accreditation Authority. The Department agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The Department is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the Department's mission. ICE will provide instructors and training materials. The Department is responsible for the salaries and benefits, including any overtime, of all of its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating Department personnel while they are receiving training. ICE is responsible for the costs of the Department personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The Department is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The Department is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

### F. ICE SUPERVISION

Immigration enforcement activities conducted by participating Department personnel will be supervised and directed by ICE. Participating Department personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE. Additional supervisory and administrative responsibilities are specified in Appendix A.

The actions of participating Department personnel will be reviewed by ICE officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for individual training or guidance.

For purposes of this MOA, ICE officers will provide supervision of participating Department personnel only to immigration enforcement functions as authorized in this MOA. The Department retains supervision of all other aspects of the employment of and performance of duties by participating Department personnel.

Florida Department of Corrections

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating Department personnel in exercising these delegated authorities under this MOA shall be DHS and ICE policies and procedures. ICE is responsible for providing the Department with the applicable DHS and ICE policies. However, when engaged in immigration enforcement activities, no participating Department personnel will be expected or required to violate or otherwise fail to maintain the Department's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.

If a conflict arises between an order or direction of an ICE officer or a DHS or ICE policy and the Department's rules, standards, or policies, the conflict shall be promptly reported to the points of contact in Section VII, who shall attempt to resolve the conflict.

### G. INTERPRETATION SERVICES

Participating Department personnel will provide an opportunity for aliens with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the Department as needed. Whether or not an interpreter is used, the record should always include questions and answers concerning the need for an interpreter.

The Department will maintain a list of qualified interpreters or companies it contracts with to provide such interpreters. A qualified interpreter, which may include Department personnel, means an interpreter who can interpret effectively, accurately, and impartially, using any specialized vocabulary.

### H. LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by Federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the Department will be responsible and bear the costs of participating Department personnel with regard to their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability, as long as not inconsistent with State or Federal law.

Participating Department personnel will be treated as Federal employees only for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating Department personnel performing a function on behalf of ICE as authorized by this MOA will be considered acting under color of Federal authority for purposes of determining liability and immunity from suit under Federal or State law. *See* 8 U.S.C. § 1357(g)(8).

Participating Department personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. Department personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at 3535 Lawton Rd, Suite 100, Orlando, FL 32803. OPLA, through its headquarters, will assist Department personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. §

Florida Department of Corrections

50.15.

The Department agrees to cooperate with any Federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents, as long as it is not inconsistent with State and Federal laws. Failure to do so may result in the termination of this MOA. Failure of any participating Department employee to cooperate in any Federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The Department agrees to cooperate with Federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any Department personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating Department personnel under this MOA derive from Federal authority, the participating Department personnel will comply with Federal standards and guidelines relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The Department and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. §552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices with regard to data collection and use of information under this MOA.

## I. CIVIL RIGHTS STANDARDS

Participating Department personnel are bound by all Federal civil rights laws, regulations, and guidance relating to non-discrimination, including the U.S. Department of Justice "Guidance for Federal Law Enforcement Agencies Regarding the Use of Race, Ethnicity, Gender, National Origin, Religion, Sexual Orientation, or Gender Identity," dated December 2014; Executive Order 13,166, "Improving Access to Services for Persons with Limited English Proficiency," (Aug. 2000); Title VI of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000 et seq., which prohibits discrimination based upon race, color, or national origin (including limited English proficiency) in any program or activity receiving Federal financial assistance; and Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination based on disability and requires the Department to provide effective communication to individuals with disabilities, and/or Title II of the Americans with Disabilities Act of 1990, which also prohibits discrimination based on disability and requires the Department to provide effective communication to individuals with disabilities.

## V.     REPORTING AND DOCUMENTATION

### A. COMPLAINT PROCEDURES

The complaint reporting procedure for allegations of misconduct by participating Department personnel, including activities undertaken under the authority of this MOA, is included in Appendix B.

### B. COMMUNICATION

The FOD, or the FOD's management representative, and the Department shall make every effort to meet at least annually to ensure compliance with the terms of this MOA. When necessary, ICE and the Department may limit the participation of these meetings in regard to non-law enforcement

Florida Department of Corrections

personnel. The attendees will meet at a location to be agreed upon by the parties, or via teleconference. An initial review meeting between ICE and the Department should be held within approximately 12 months of the MOA's operational date.

### C. COMMUNITY OUTREACH

The Department, in coordination with the local ICE Field Office, will engage, as necessary, in Steering Committee meetings to enhance support for the 287(g) mission, and to ensure compliance with the terms of this MOA.

### D. RELEASE OF INFORMATION TO THIRD PARTIES

The Department may, at its discretion, communicate the substance of this agreement to media and other third parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the Department is authorized to do the same.

The Department hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the Department must coordinate in advance of release with the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval prior to any release. The points of contact for ICE and the Department for this purpose are identified in Appendix C. For releases of information to all other parties, the Department must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the Department that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the Department has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. Department questions regarding the applicability of this section to requests for the release of information shall be directed to an ICE officer.

Nothing herein limits Department's compliance with state public records laws regarding those records that are solely state records and not ICE records.

### VI.    MODIFICATIONS TO THIS MOA

Modifications to this MOA, including the Appendices, must be proposed in writing and approved and signed by both parties.

### VII. POINTS OF CONTACT

ICE and the Department's points of contact (POCs) for purposes of this MOA are:

For the Department:  Secretary of the Florida Department of Corrections
For DHS:  Miami Field Office Director

### VIII. EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the Department shall be provided, in writing, to the local Field Office.

Florida Department of Corrections

ICE reserves the right to conduct an internal review of this MOA every three years. In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the Department, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the Department can provide ICE with information regarding the alleged misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the Department with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the Department timely notice of a suspension being extended and vacated.

If the Department is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved in instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the Department a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

Date: CHRISTOPHER M CRONEN
Digitally signed by CHRISTOPHER M CRONEN
Date: 2020.08.21 09:55:42 -04'00'

Date: 08/17/2020

C.M. Cronen
Assistant Director, Enforcement
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
Department of Homeland Security

Mark S. Inch
Secretary
Florida Department of Corrections

7

Florida Department of Corrections

## APPENDIX A

### STANDARD OPERATING PROCEDURE (SOP)

The purpose of this appendix is to establish standard, uniform procedures for the implementation and oversight of this MOA within the FOD area of responsibility.

Pursuant to this MOA, the Department has been delegated authorities under the Jail Enforcement Model (JEM) Program as outlined below. The 287(g) JEM Program is designed to identify and process removable aliens within the Department's correctional facilities.

**Authorized Functions:**

Participating Department personnel performing immigration-related functions pursuant to this MOA will be Department officers assigned to detention duties. Those participating Department personnel will exercise their immigration-related authorities only during the course of their normal duties while assigned to the Department's correctional facilities.

Participating Department personnel are delegated only those authorities listed below:

- The power and authority to interrogate any person detained in the participating Department's correctional facilities who the officer believes to be an alien about his or her right to be or remain in the United States, 8 U.S.C. § 1357(a)(1) and 8 C.F.R. § 287.5(a)(1), and to process for immigration violations any removable alien or those aliens who have been arrested for violating a Federal, State, or local offense;

- The power and authority to serve and execute warrants of arrest for immigration violations, 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.5(e)(3), on designated aliens in Department correctional facilities at the time of the alien's scheduled release from criminal custody in order to transfer custody of the alien to ICE;
  - o Upon transfer of the alien's custody to ICE, the alien will continue to be held in the Department's correctional facilities <u>for no more than 48 hours unless</u> there exists an agreement pursuant to which the Department will continue to detain, for a reimbursable fee, aliens for immigration purposes. In the absence of an agreement, if the alien is not transferred to an ICE field office or an immigration detention facility within 48 hours, the alien <u>shall be released</u> from the Department's correctional facility.

- The power and authority to serve warrants of removal, 8 U.S.C. § 1357(a) and 8 C.F.R. §§ 241.2(b)(2), 287.5(e)(3), on designated aliens in Department correctional facilities at the time of the alien's scheduled release from criminal custody that executes the custodial transfer of the alien to ICE for removal purposes;
  - o Upon transfer of the alien's custody to ICE, the alien will continue to be held in the Department's correctional facilities <u>for no more than 48 hours unless</u> there exists an agreement pursuant to which the Department will continue to detain, for a reimbursable fee, aliens for immigration purposes. In the absence of an agreement, if the alien is not transferred to an ICE field office or an immigration detention facility within 48 hours, the alien <u>shall be released</u> from the Department's correctional facility.

- The power and authority to administer oaths and to take and consider evidence, 8 U.S.C § 1357(b) and 8 C.F.R. § 287.5(a)(2), to complete required alien processing, including fingerprinting, photographing, and interviewing of aliens, as well as the preparation of

**8**

Florida Department of Corrections

affidavits and the taking of sworn statements for ICE supervisory review;

- The power and authority to prepare charging documents, 8 U.S.C. §§ 1225(b)(1), 1228, 1229, and 1231(a)(5); 8 C.F.R. §§ 235.3 238.1, 239.1, and 241.8, including the preparation of a Notice to Appear or other charging document, as appropriate, for the signature of an ICE officer;

- The power and authority to detain and transport, 8 U.S.C. § 1357(g)(1) and 8 C.F.R. § 287.5(c)(6), arrested aliens subject to removal to ICE-approved detention facilities; and

- The power and authority to issue immigration detainers, 8 U.S.C. §§ 1226 and 1357, and 8 C.F.R. § 287.7, and I-213, Record of Deportable/Inadmissible Alien, for processing aliens.

**Additional Supervisory and Administrative Responsibilities:**

Participating Department personnel are only authorized to conduct immigration enforcement functions while under the direction and supervision of ICE.

Additional supervisory and administrative responsibilities for each entity include, but are not limited to:

- Participating Department personnel must notify ICE of any immigration detainer issued under the authority conferred by the MOA as soon as possible, but no longer than approximately 24 hours.

- Participating Department personnel are responsible for ensuring proper record checks have been completed.

- Participating Department personnel must report all encounters with asserted or suspected claims of U.S. citizenship to ICE immediately, but generally within one hour of the claim.

- Administrative files (A-files) are Federal records, subject to the Federal Records Act and applicable Federal confidentiality statues. It follows that the utilization and handling of the A-files must be consistent with applicable laws and DHS and ICE policy. ICE is responsible for requesting A-files and reviewing them for completeness. A-files can be maintained at a Department facility as long as there are ICE personnel assigned to that facility and the personnel have a work area where documents can be adequately secured and stored by ICE personnel. Representatives from DHS must be permitted access to the facility where ICE records are maintained at a reasonable time and in a reasonable manner as long as access is not inconsistent with any Department procedures or policies.

Florida Department of Corrections

## APPENDIX B

## COMPLAINT PROCEDURE

The training, supervision, and performance of participating Department personnel pursuant to the MOA, as well as the protections for U.S. citizens' and aliens' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through the complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating Department personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA or a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the Department shall, to the extent allowed by State law, make timely notification to an ICE officer within 48 hours of the Department receiving notice of the complaint or allegation, excluding weekends, of the existence and nature of the complaint or allegation. The results of any internal investigation or inquiry connected to the complaint or allegation and the resolution of the complaint shall also be reported to an ICE officer, as soon as practicable, but no later than 30 days from the date of the resolution. It is the responsibility of the ICE officer to ensure notification is made to the ICE Office of Professional Responsibility (OPR) via the Joint Intake Center (JIC) at JointIntake@cbp.dhs.gov.

The Department will also handle complaints filed against Department personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated Department personnel acting in immigration functions must be forwarded to an ICE officer within 48 hours of the Department receiving notice of the complaint. It is the responsibility of the ICE officer to ensure notification is made to JIC.

287(g) Complaint Process posters will be displayed in processing areas of the Department to ensure aliens encountered under the 287(g) Program are aware of the complaint process. Posters will be displayed in English and Spanish. If the alien understands a language other than English or Spanish or is unable to read, Department personnel will read and/or translate the complaint process in a language the alien understands.

**10**

Florida Department of Corrections

**APPENDIX C**

**PUBLIC INFORMATION POINTS OF CONTACT**

Pursuant to Section V(D) of this MOA, the signatories agree to coordinate appropriate release of information to the media, provided the release has been previously approved by both the ICE Privacy Officer and Public Affairs Officer, regarding actions taken under this MOA before any information is released. The points of contact for coordinating such activities are:

For the Department:

Public Affairs Officer

For ICE:

Public Affairs Office
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Washington, DC 20536
202-732-4242

**11**

Florida Department of Corrections

# ADDENDUM #1

## 1.1 PARTIES

This supplemental agreement shall constitute an Addendum to the Memorandum of Agreement, *287(g) Jail Enforcement Model* ("MOA") between U.S. Immigration and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS"), and the Florida Department of Corrections ("Department"), executed on August 21, 2020. The Department and ICE are collectively referred to herein as the "Parties" and individually as a "Party."

## 1.2 PURPOSE

The purpose of this Addendum is to set forth the terms and conditions pursuant to which the Department may provide detention services for ICE-approved, state-operated detention facilities, other than the Department's correctional facilities, that maintain, on ICE's behalf, custody of aliens detained pursuant to the federal immigration laws.  Nothing contained in this Addendum shall otherwise limit the powers normally possessed by the Department. However, the exercise of detention authority delegated under this Addendum to the Department shall occur only as provided in this Addendum.

## 1.3 APPLICABILITY OF MOA

For purposes of this limited Addendum, only Section III (Authority), Section IV.E (Costs and Expenditures), Section IV.G (Interpretation Services), Section IV.H (Liability and Responsibility), Section IV.I (Civil Rights Standards), Section V (Reporting and Documentation), Section VI (Modifications to This MOA), Section VII (Points of Contact), Appendix B (Complaint Procedure), and Appendix C (Public Information Points of Contact) shall apply and are incorporated by reference.  All other sections of the MOA shall not apply to circumstances addressed in this Addendum.

## 1.4 RESPONSIBILITIES

### A.  AUTHORIZED FUNCTIONS

The Department is hereby delegated the limited power and authority to maintain custody of aliens transferred by ICE on behalf of ICE under the federal immigration laws, *see* 8 U.S.C. §§ 1187, 1225, 1226, 1231.  The Department, in its discretion, may refuse to accept custody of any such alien. The detention authority delegated by this Addendum must be exercised in accordance with ICE-approved standards, including use-of-force standards, and only at a state-operated detention facility, other than a Department correctional facility, that has been approved by ICE or otherwise satisfies ICE-approved standards. Other than exercising the delegated authority under this Addendum, persons operating under the supervision of the Department who are providing detention services are not authorized to exercise any other duties of an immigration officer, unless otherwise permitted by the MOA.

1

## B.  QUALIFIED PERSONS

The Department shall provide to ICE the names and sufficient biographical information of all persons operating under the supervision of the Department who are providing detention services under this Addendum for purposes of accountability and background checks. The Department will confirm in writing that each such person is a certified corrections officer in good standing in any state (and provide the name of the state) or otherwise approved by ICE to perform detention duties and that the person has received training on ICE-approved detention standards, including use-of-force standards. All persons who are certified corrections officers in good standing and who have been trained shall be deemed to have received adequate training regarding the enforcement of relevant federal immigration laws, and may immediately exercise the limited detention authority delegated under this Addendum.  However, in its discretion, ICE may, in writing, prohibit, disallow, or revoke such delegation of authority to any person at any time for any reason.

## C.  ICE SUPERVISION

ICE shall provide oversight of the detention authority delegated by this Addendum to ensure compliance with federal immigration law and ICE policies.  Only aliens delivered and approved by ICE for detention may be detained under the authority delegated by this Addendum. Upon demand of ICE, any alien detained under such authority shall be returned to the physical custody of ICE or released, as directed by ICE. The Department retains supervision of all other aspects of the employment and performance of duties of all persons providing detention services under this Addendum. In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the Department in exercising the delegated authorities under this Addendum shall be ICE-approved policies and procedures. ICE is responsible for providing the Department with the applicable policies. However, no person will be expected or required to violate or otherwise fail to maintain the Department's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.  If a conflict arises between an order or direction of an ICE officer or an ICE-approved policy and the Department's rules, standards, or policies, the conflict shall be promptly reported to the points of contact in Section VII of the MOA, who shall attempt to resolve the conflict.

## 1.5 EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS ADDENDUM

This Addendum becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the Addendum. Termination by the Department shall be provided, in writing, to the local Field Office.

Any detention activities encompassed by this Addendum that were undertaken on behalf of ICE by persons providing detention services operating under the supervision of the Department prior to the effective date of this Addendum but after June 1, 2025, are ratified by the Parties and deemed in compliance with this Addendum.

All other provisions related to suspension and termination of the MOA remain in full force and in effect.

This Addendum does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this Addendum, each Party represents that it is fully authorized to enter into this Addendum; accepts the terms, responsibilities, obligations, and limitations of this Addendum; and agrees to be bound thereto to the fullest extent allowed by law.

Date: 8/5/2025

MARCOS D CHARLES
Digitally signed by MARCOS D CHARLES
Date: 2025.08.05 18:33:14 -04'00'

Marcos D. Charles
Acting Executive Associate Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
Department of Homeland Security

Date: 8/6/2025

Ricky D. Dixon
Ricky D. Dixon
2025.08.06 14:50:35 -04'00'
2025.001.20577

Ricky Dixon
Secretary
Florida Department of Corrections

# EXHIBIT 3

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Florida Department of Law Enforcement (FDLE), pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the FDLE (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), to perform certain immigration enforcement functions as specified herein. The LEA represents the State of Florida in the implementation and administration of this MOA. The FDLE and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I.        PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II.       AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III.      POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

Revised 02/12/2025

Defendants_TRO_00159

## IV.    TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V.    DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting, photographing, and interviewing, as well as the preparation of affidavits and the taking of

sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. 8 C.F.R. § 287.5(c)(6)

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI.     RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor the alien who participating LEA personnel have determined to be a removable alien, the alien will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII.     NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement of the parties but will be subject to all the requirements of this MOA.

Revised 02/12/2025

## VIII.    TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.    CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon receipt of the certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X.    COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority.

Revised 02/12/2025

The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI.    ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII.     REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.    RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the applicability of this section to requests for release of information shall be directed to an ICE officer.

Revised 02/12/2025

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV.   LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at ADDRESS. OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

Revised 02/12/2025

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV.   COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI.   CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII.   MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII.   EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged misconduct and/or violations, as well as any corrective measures it has undertaken.

Revised 02/12/2025

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved in instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: *13 FEB 2025*

Signature: _____

Title: *Commissioner*

*JD*
*2/13/25*

**For ICE:**

Date: **CALEB**    Digitally signed by
CALEB VITELLO

Signature: **VITELLO**    Date: 2025.02.14
08:23:40 -05'00'

Title: _____

Revised 02/12/2025

Defendants_TRO_00167

# APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:
Department of Homeland Security
Immigration and Customs Enforcement
Enforcement and Removal Operations
Assistant Director for Enforcement
Washington DC

For the LEA:
J. Mark Glass
Commissioner
Florida Department of Law Enforcement
Tallahassee, Florida

Revised 02/12/2025

Defendants_TRO_00168

## APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between ICE and the Florida Department of Law Enforcement, hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

### 1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

    A.    Telephonically to the ICE OPR at the toll-free number l-833-4ICE-OPR; or

    B.    Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

    A.    The LEA Internal Affairs Division; or
    B.    The supervisor of any participating LEA personnel.

**2. Review of Complaints**

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

**3. Complaint Resolution Procedures**

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the OHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

    A. Referral of Complaints to LEA Internal Affairs Division.

    The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

    B. Interim Action Pending Complaint Resolution

    Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

    C. Time Parameters for Resolution of Complaints

    It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

Revised 02/12/2025

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

Revised 02/12/2025

## APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**
Casey  Smith
Public  Information  Director
FDLE

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs

Revised 02/12/2025

# EXHIBIT 4

## MEMORANDUM OF AGREEMENT
### 287(g) Task Force Model

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the ___DFS, Criminal Investigations Division___, pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the ___DFS, Criminal Investigations Division___ (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), the authority to perform certain immigration enforcement functions as specified herein. The LEA represents ___DFS, Criminal Investigations Division___ in the implementation and administration of this MOA. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I.        PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II.        AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III.        POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

## IV.        TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V.        DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting,

photographing, and interviewing, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. (8 C.F.R. § 287.5(c)(6))

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI.     RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor, the alien whom participating LEA personnel have determined to be removable will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII.    NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based

on an oral agreement of the parties but will be subject to all the requirements of this MOA.

## VIII.    TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws; (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.    CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X.    COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are

defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority. The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI.     ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate

federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII.    REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.    RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the

applicability of this section to requests for release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV.    LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at ⎯Miami, Florida⎯⎯⎯⎯⎯⎯⎯⎯⎯. OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be

used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV.      COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI.     CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII.    MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII.   EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged

misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved for instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.


**For the LEA:**

Date: 3/20/25

Signature: _Digitally signed by Simon Blank
Date: 2025.03.20 16:44:26 -04'00'_

Name: Simon J. Blank

Title: Colonel

Agency: DFS, Criminal Investigations Division


**For ICE:**

Date: March 26, 2025

Signature: _[signature]_

Name: Todd M. Lyons

Title: Acting Director

Agency: U.S. Immigration & Customs Enforcement

_____

_____

**APPENDIX A**

**POINTS OF CONTACT**

The ICE and LEA points of contact for purposes of implementation of this MOA are:


For ICE:            Department of Homeland Security
                    Immigration and Customs Enforcement
                    Enforcement and Removal Operations
                    Assistant Director for Enforcement
                    Washington DC


For the LEA:        Simon J. Blank
                    _____
                    Colonel
                    _____
                    850-413-4001
                    _____
                    200 East Gaines Street, Tallahassee, FL 32399
                    _____
                    Simon.Blank@MyFloridaCFO.com
                    _____

## APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between ICE and the  DFS, Criminal Investigations Division ,
hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA
personnel are authorized to perform immigration enforcement duties in specific situations
under federal authority.  As such, the training, supervision, and performance of participating
LEA personnel pursuant to the MOA, as well as the protections for individuals' civil
and constitutional rights, are to be monitored.  Part of that monitoring will be
accomplished through these complaint reporting and resolution procedures, which the
parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the
violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make
timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that
individual receiving professional discipline or becoming the subject of a criminal
investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from
the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and
certified pursuant to this MOA but are acting in immigration functions in violation of
this MOA.  Any such complaints regarding non-designated LEA personnel acting in
immigration functions must be forwarded to the ICE Office of Professional
Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

## 1.  Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within
facilities under its jurisdiction (in English and other languages as appropriate) in order to
ensure that individuals are aware of the availability of such procedures. Complaints will be
accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the
public).

Complaints may be reported to federal authorities as follows:

      A.     Telephonically to the ICE OPR at the toll-free number l-833-4ICE-OPR; or

      B.     Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

      A.     The LEA Internal Affairs Division; or
      B.     The supervisor of any participating LEA personnel.

## 2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

## 3. Complaint Resolution Procedures

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

Defendants_TRO_00196

## APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

Evangelina Brooks

Lt. Colonel

850-413-4020

200 East Gaines Street, Tallahassee, FL 32399

Evangelina.Brooks@MyFloridaCFO.com

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs

DFS, Criminal Investigations Division           14           Defendants_TRO_00197

# EXHIBIT 5

## MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Florida Department of Highway Safety and Motor Vehicles, Division of Highway Patrol, pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the Florida Department of Highway Safety and Motor Vehicles, Division of Highway Patrol (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), to perform certain immigration enforcement functions as specified herein. The LEA represents the Florida Department of Highway Safety and Motor Vehicles, Division of Highway Patrol in the implementation and administration of this MOA. The Florida Department of Highway Safety and Motor Vehicles, Division of Highway Patrol and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

### I. PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

### II. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

### III. POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision

1

while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

IV.   TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

V.   DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the

2

admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

• The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

• The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting, photographing, and interviewing, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review.

• The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

• The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

• The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. 8 C.F.R. § 287.5(c)(6)

• The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

VI.    DETENTION ISSUES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Detention and Removal Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

If ICE determines that it is necessary, the LEA shall, to the extent it operates a detention facility or facilities meeting the standards described herein, enter into an Inter-Governmental Service Agreement (IGSA) with ICE, pursuant to which the LEA shall provide, for a fee, detention of incarcerated aliens in LEA facilities, upon the completion of their sentences. The LEA facility shall meet that state's requirements for detention facilities used for United States citizens. Under no circumstances shall the eligibility requirements for the LEA to enter into an IGSA with ICE for the detention of aliens be higher than the state standard applicable for the detention of United

3

States citizens in that state. The LEA, however, must comply with the Prison Rape Elimination Act, including DHS's implementing regulations, 6 C.F.R. pt. 115, unless the LEA already complies with the Department of Justice's substantially equivalent standards. Nothing in this agreement excuses the LEA from complying with applicable federal laws.

After notification to and coordination with the ICE supervisor and upon completion of processing and release from LEA detention facilities of an alien who participating LEA personnel have determined to be a removable alien, the alien will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility. In the alternative, if ICE determines that continued incarceration at the LEA's detention facility is preferable, with the consent of the LEA, ICE may direct the participating LEA personnel to arrest the alien on behalf of ICE and continue detaining the alien at the detention facility of the LEA, thereafter treating the alien as being in the custody of ICE though held under the state's detention standards. Further, any contracting done by the state in support of satisfying their delegated mission shall follow the state's standards for contract rewards.

## VII.   NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement of the parties, but will be subject to all the requirements of this MOA.

## VIII.   TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational

Defendants_TRO_00201

issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XX below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

IX.    CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon receipt of the certification, the ICE Special Agent in Charge and the ICE Field Office Director will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and the ICE Special Agent in Charge and the relevant ICE Field Office Director will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XX below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

X.    COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority. The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all of its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by

Defendants_TRO_00202

the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

ICE and the LEA may separately enter into an Inter-Governmental Service Agreement (IGSA) for the provision of and payment for detention, transportation, and related services for aliens incarcerated in LEA facilities pursuant to this MOA.

XI.    ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE duty officer at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to the ICE Special Agent in Charge and ICE Field Office Director, or designees, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. The Special Agent in Charge, the ICE Field Office Director, and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security

Defendants_TRO_00203

Investigations (HSI) or ICE's Enforcement and Removal Operations (ERO) prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE agents with criminal investigations.

## XII.   REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.   RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the applicability of this section to requests for release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

7

## XIV.  LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel with regard to their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at ADDRESS. OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

Defendants_TRO_00205

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices with regard to data collection and use of information under this MOA.

## XV.   COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, with regard to activities undertaken under the authority of this MOA, is included at Appendix B.

## XV.   CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVI.   COMMUNITY OUTREACH

The LEA, in coordination with the local ICE Field Office, will engage, as necessary, in Steering Committee meetings to enhance support for the 287(g) mission, and to ensure compliance with the terms of this MOA.

## XIX.   MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XX.   DURATION AND TERMINATION OF THIS MOA

This MOA will be in effect from the date of signing until it is terminated by either party. Either party, upon written notice to the other party, may terminate the MOA at any time. A termination notice shall be delivered personally or by certified or registered mail, and termination shall take effect immediately upon receipt of such notice.

Either party, upon written or oral notice to the other party, may temporarily suspend activities under this MOA when resource constraints or competing priorities necessitate. Notice of termination or suspension by ICE shall be given to the chief officer of the LEA. Notice of termination or suspension by the LEA shall be given to the ICE Special Agent in Charge and the ICE Field Office Director. However, any alien detained by an LEA pursuant to this agreement shall only be released to ICE and at the earliest convenience to all signatories.

Defendants_TRO_00206

Except for the provisions contained in Section XIII, this MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create, any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents that it is fully authorized to agree to this MOA, and accepts the terms, responsibilities, obligations, and limitations of this MOA, and consents to be bound thereto to the fullest extent allowed by law.

For the LEA:

For ICE:

Date: 2/7/2025

Date: __2/7/2025_____

Signature: _____

Signature: _____

Title: Executive Director

Title: __Acting Director, ICE_____

10

Defendants_TRO_00207

## APPENDIX     A

### POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:                    _____

                            _____

                            _____

                            _____

                            _____


For the LEA:        Florida Highway Safety and Motor Vehicles
                    Attn: Office of the Executive Director
                    2900 Apalachee Parkway,
                    Tallahassee, FL 32399

                    _____

Defendants_TRO_00208

**APPENDIX B**

**COMPLAINT PROCEDURE**

This MOA is an agreement between ICE and the Florida Department of Highway Safety and Motor Vehicles, Division of Highway Patrol, hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA or a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall, to the extent allowed by state law, make timely notification to an ICE officer within 48 hours of the LEA receiving notice of the complaint or allegation, excluding weekends, of the existence and nature of the complaint or allegation. The results of any internal investigation or inquiry connected to the complaint or allegation and the resolution of the complaint shall also be reported to an ICE officer, as soon as practicable, but no later than 30 days from the date of the resolution. It is the responsibility of the ICE officer to ensure notification is made to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

The LEA will also handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to an ICE officer within 48 hours of the LEA receiving notice of the complaint. It is the responsibility of the ICE officer to ensure notification is made to the OPR.

1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

    A.    Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

    B.    Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

    A.    The LEA Internal Affairs Division; or

    B.    The supervisor of any participating LEA personnel; or

2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of the ICE Special Agent in Charge and the ICE Field Office Director. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Defendants_TRO_00210

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

3. Complaint Resolution Procedures

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting require1nents. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the OHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

**APPENDIX C**

**PUBLIC INFORMATION POINTS OF CONTACT**

Pursuant to Section XVIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

For the LEA:

FLHSMV Executive Director
davekerner@flhsmv.gov

For ICE:

_____
_____
_____
_____
_____

# EXHIBIT 6

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and FL Fish & Wildlife Conservation Commission (FWC), pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the FWC (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), to perform certain immigration enforcement functions as specified herein. The LEA represents an agency of the State of Florida in the implementation and administration of this MOA.  The FWC and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I.        PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II.       AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III.      POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

Revised 02/12/2025

## IV.     TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V.     DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting, photographing, and interviewing, as well as the preparation of affidavits and the taking of

sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. 8 C.F.R. § 287.5(c)(6)

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI.      RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor the alien who participating LEA personnel have determined to be a removable alien, the alien will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII.      NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement of the parties but will be subject to all the requirements of this MOA.

## VIII.    TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.    CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon receipt of the certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X.    COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority.

Revised 02/12/2025

The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI.      ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate federal law.

Revised 02/12/2025

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII.    REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.    RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the applicability of this section to requests for release of information shall be directed to an ICE officer.

Revised 02/12/2025

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV.    LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at ADDRESS. OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV.     COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI.     CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII.     MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII.     EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved in instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: February 14, 2025

Signature:

Title: Executive Director

**For ICE:**

Date: February 14, 2025

Signature:

Title: Acting Director, ICE

Revised 02/12/2025

Defendants_TRO_00221

**APPENDIX A**

**POINTS OF CONTACT**

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:             Department of Homeland Security

                     Immigration and Customs Enforcement

                     Enforcement and Removal Operations

                     Assistant Director for Enforcement

                     Washington DC

For the LEA:         Florida Fish and Wildlife Conservation Commission

                     Offie of the Executive Director

                     Division of Law Enforcement

                     620 S. Meridian Street

                     Tallahassee, FL 32399-1600

Revised 02/12/2025

Defendants_TRO_00222

## APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between ICE and the FL Fish & Wildlife Conservation Commission (FWC), hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

## 1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

      A.     Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

      B.     Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

      A.     The LEA Internal Affairs Division; or
      B.     The supervisor of any participating LEA personnel.

**2.  Review of Complaints**

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR.  The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE.  Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel.  Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

**3.  Complaint Resolution Procedures**

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements.  As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the OHS OIG and/or another legally required entity.  Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution.  The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days.  However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

## APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

Florida Fish and Wildlife Conservation Commission

Office of the Executive Director

FWC Division of Law Enforcement

620 S Meridian Street

Tallahassee, FL 32399-1600

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs

Revised 02/12/2025

Defendants_TRO_00226

# EXHIBIT 7

# MEMORANDUM OF AGREEMENT
## 287(g) Task Force Model

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the <sub>Florida Department of Lottery, Division of Security, State of Florida</sub>, pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the <sub>Florida Department of Lottery, Division of Security, State of Florida</sub> (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), the authority to perform certain immigration enforcement functions as specified herein. The LEA represents <sub>Florida Department of Lottery, Division of Security, State of Florida</sub> in the implementation and administration of this MOA. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I.      PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II.     AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III.    POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

Defendants_TRO_00227

## IV.      TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V.      DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting,

Defendants_TRO_00228

photographing, and interviewing, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(l), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. (8 C.F.R. § 287.5(c)(6))

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI.    RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor, the alien whom participating LEA personnel have determined to be removable will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII.    NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based

on an oral agreement of the parties but will be subject to all the requirements of this MOA.

## VIII.   TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws; (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.   CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X.   COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are

Defendants_TRO_00230

defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority. The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI.      ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate

Defendants_TRO_00231

federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII.    REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.   RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the

Defendants_TRO_00232

applicability of this section to requests for release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV.    LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at Miami, Florida                                    .
OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be

Defendants_TRO_00233

used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV.  COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI.  CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII.  MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII.  EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged

Defendants_TRO_00234

misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved for instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: 04/13/2025

Signature: Reginald D. Dixon _Digitally signed by Reginald D. Dixon Date: 2025.04.13 10:50:11 -04'00'_

Name: Reginald "Reggie" Dixon

Title: Chief of Staff

Agency: Florida Department of Lottery, Division of Security, State of Florida

**For ICE:**

Date: 4.24.25

Signature:

Name: Todd M. Lyons

Title: Acting Director

Agency: Department of Homeland Security

U.S. Immigration and Customs Enforcement

Defendants_TRO_00235

## APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:          Department of Homeland Security
                  Immigration and Customs Enforcement
                  Enforcement and Removal Operations
                  Assistant Director for Enforcement
                  Washington DC


For the LEA:      **Steven Harriett**

                  Director

                  850-487-7730

                  250 Marriott Drive, Tallahassee, Florida, 32301

                  HarriettS@flalottery.com

Defendants_TRO_00236

## APPENDIX B

## COMPLAINT PROCEDURE

This MOA is an agreement between ICE and the <u>Florida Department of Lottery, Division of Security, State of Florida</u>, hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

### 1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

    A.    Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

    B.    Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

    A.    The LEA Internal Affairs Division; or
    B.    The supervisor of any participating LEA personnel.

Defendants_TRO_00237

## 2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

## 3. Complaint Resolution Procedures

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

Defendants_TRO_00238

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

Defendants_TRO_00239

# APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

Communications Director

Communications Director

850-487-7727

250 Marriott Drive, Tallahassee, Florida, 32301

communications@flalottery.com

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs

Defendants_TRO_00240

# EXHIBIT 8

## MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Florida National Guard (FLNG)    , pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the FLNG    (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), to perform certain immigration enforcement functions as specified herein. The LEA represents        the Florida National Guard (FLNG) in the implementation and administration of this MOA. The   Florida National Guard (FLNG) and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

### I.      PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

### II.      AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

### III.      POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

Revised 02/12/2025

## IV.    TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V.    DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting, photographing, and interviewing, as well as the preparation of affidavits and the taking of

Revised 02/12/2025

sworn statements for ICE supervisory review,

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(I), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. 8 C.F.R. § 287.5(c)(6)

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI.      RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor the alien who participating LEA personnel have determined to be a removable alien, the alien will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII.     NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement of the parties but will be subject to all the requirements of this MOA.

Revised 02/12/2025

Defendants_TRO_00243

## VIII.   TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.   CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon receipt of the certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X.   COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority.

Revised 02/12/2025

Defendants_TRO_00244

The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI.    ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate federal law.

Revised 02/12/2025

Defendants_TRO_00245

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII.     REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.    RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the applicability of this section to requests for release of information shall be directed to an ICE officer.

Revised 02/12/2025

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV.     LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at ADDRESS. OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

Revised 02/12/2025

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV.      COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI.     CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII.    MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII.   EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged misconduct and/or violations, as well as any corrective measures it has undertaken.

Revised 02/12/2025

Defendants_TRO_00248

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved in instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: _2 APRIL 2025_

Signature: _____
Major General John D. Haas

Title: _The Adjutant General_

**For ICE:**

Date: _April 2, 2025_

Signature: _____

Title: _Acting Director_

Revised 02/12/2025

## APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:        Department of Homeland Security

Immigration and Customs Enforcement

Enforcement and Removal Operations

Assistant Director for Enforcement Washington DC


For the LEA:    The Adjutant General, MG John Haas, john.d.haas.mil@army.mil

State Aviation Officer, COL Brett Rhodenizer, brett.s.rhodenizer.mil@army.mil

General Counsel, Col Jeffrey Pozen, jeffrey.m.pozen.mil@army.mil

Revised 02/12/2025

Defendants_TRO_00250

## APPENDIX B

### COMPLAINT PROCEDURE

This MOA is an agreement between ICE and the                              , hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored.  Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA.  Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

### 1. Complaint Reporting Procedures

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

      A.     Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

      B.     Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

      A.     The LEA Internal Affairs Division; or
      B.     The supervisor of any participating LEA personnel.

Defendants_TRO_00251

## 2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

## 3. Complaint Resolution Procedures

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the OHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall he honored. If appropriate, an individual may he removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

Revised 02/12/2025

Defendants_TRO_00252

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

Revised 02/12/2025

Defendants_TRO_00253

## APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

Executive Officer, COL (Ret) Allison Reinwald, allison.reinwald2.nfg@army.mil

Public Affairs Officer, Lt Col Caitlin Brown, mary.c.brown26.mil@army.mil

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs

Revised 02/12/2025

# EXHIBIT 9

## MEMORANDUM OF AGREEMENT
### 287(g) Task Force Model

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Florida Department of Environmental Protection, Div. of Law Enfore, pursuant to which ICE delegates to nominated, trained, and certified officers or employees of the Florida Department of Environmental Protection, Div. of Law Enforcement (hereinafter interchangeably referred to as "Law Enforcement Agency" (LEA)), the authority to perform certain immigration enforcement functions as specified herein. The LEA represents Florida Department of Environmental Protection, Div. of Law Enforcement in the implementation and administration of this MOA. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein. The ICE and LEA points of contact for purposes of this MOA are identified in Appendix A.

## I.      PURPOSE

The purpose of this MOA is to set forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and thereafter be approved by ICE to perform certain functions of an immigration officer under the direction and supervision of ICE within the LEA's jurisdiction. This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA. This MOA also describes the complaint procedures available to members of the public regarding immigration enforcement actions taken pursuant to this agreement by participating LEA personnel.

## II.     AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of Homeland Security, or her designee, to enter into written agreements with a State or any political subdivision of a State so that qualified officers and employees can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III.    POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating LEA personnel to perform. It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating LEA personnel be subject to ICE direction and supervision while performing delegated immigration officer functions pursuant to this MOA. For the purposes of this MOA, ICE officers will provide direction and supervision for participating LEA personnel only as to immigration enforcement functions as authorized in this MOA. The LEA retains supervision of all other aspects of the employment and performance of duties of participating LEA personnel.

## IV.      TRAINING AND ASSIGNMENTS

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed as provided by ICE instructors and thereafter pass examinations equivalent to those given to ICE officers. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE. Only participating LEA personnel who are nominated, trained, certified, and authorized, as set out herein, have authority pursuant to this MOA to conduct the delegated immigration officer functions, under ICE direction and supervision, enumerated in this MOA.

Upon the LEA's agreement, participating LEA personnel performing immigration-related duties pursuant to this MOA will be assigned to various units, teams, or task forces designated by ICE.

## V.      DESIGNATION OF AUTHORIZED FUNCTIONS

For the purposes of this MOA, participating LEA personnel are authorized to perform the following functions pursuant to the stated authorities, subject to the limitations contained in this MOA:

- The power and authority to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(l)) and to process for immigration violations those individuals who have been arrested for State or Federal criminal offenses.

- The power and authority to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officer's presence or view, or any alien in the United States, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(2) and 8 C.F.R. § 287.5(c)(1). Subsequent to such arrest, the arresting officer must take the alien without unnecessary delay for examination before an immigration officer having authority to examine aliens as to their right to enter or remain in the United States.

- The power to arrest without warrant for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if the officer has reason to believe the alien to be arrested is in the United States in violation of law and is likely to escape before a warrant can be obtained. INA § 287(a)(4) and 8 C.F.R. § 287.5(c)(2).

- The power to serve and execute warrants of arrest for immigration violations under INA § 287(a) and 8 C.F.R. § 287.5(e)(3).

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)) to complete required alien processing to include fingerprinting,

photographing, and interviewing, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review.

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(I), 8 C.F.R. § 235.3) including the preparation of the Notice to Appear (NTA) or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors.

- The power and authority to issue immigration detainers (8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for aliens in categories established by ICE supervisors.

- The power and authority to take and maintain custody of aliens arrested by ICE, or another State or local law enforcement agency on behalf of ICE. (8 C.F.R. § 287.5(c)(6))

- The power and authority to take and maintain custody of aliens arrested pursuant to the immigration laws and transport (8 C.F.R. § 287.5(c)(6)) such aliens to ICE-approved detention facilities.

## VI.       RESOLUTION OF LOCAL CHARGES

The LEA is expected to pursue to completion prosecution of any state or local charges that caused the alien to be taken into custody. ICE may assume custody of aliens who have been convicted of a state or local offense only after such aliens have concluded service of any sentence of incarceration. The ICE Enforcement and Removal Operations Field Office Director or designee shall assess on a case-by-case basis the appropriate actions for aliens who do not meet the above criteria based on special interests or other circumstances after processing by the LEA.

After notification to and coordination with the ICE supervisor, the alien whom participating LEA personnel have determined to be removable will be arrested on behalf of ICE by participating LEA personnel and be transported by the LEA on the same day to the relevant ICE detention office or facility.

## VII.      NOMINATION OF PERSONNEL

The chief officer of the LEA will nominate candidates for initial training and certification under this MOA. For each candidate, ICE may request any information necessary for a background check and to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years of LEA work experience. All candidates must be approved by ICE and must be able to qualify for appropriate federal security clearances and access to appropriate DHS and ICE databases/systems and associated applications.

Should a candidate not be approved, a substitute candidate may be submitted if time permits such substitution to occur without delaying the start of training. Any subsequent expansion in the number of participating LEA personnel or scheduling of additional training classes may be based

on an oral agreement of the parties but will be subject to all the requirements of this MOA.

## VIII.     TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with the mandatory training tailored to the immigration functions to be performed. The mandatory training may be made available to the LEA in both in-person and online, recorded or virtual-meeting formats, as determined by ICE.

Training will include, among other things: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws; (vi) the detention of aliens; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligations under federal law, including applicable treaties or international agreements, to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions, unless either party terminates this MOA pursuant to Section XVIII below. Local training on relevant issues will be provided on an ongoing basis by ICE supervisors or a designated team leader.

## IX.     CERTIFICATION AND AUTHORIZATION

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required testing. Upon certification, ICE will provide the participating LEA personnel with a signed authorization to perform specified functions of an immigration officer for an initial period of two years from the date of the authorization. ICE will also provide a copy of the authorization to the LEA. The ICE supervisory officer, or designated team leader, will evaluate the activities of all personnel certified under this MOA.

Authorization of participating LEA personnel to act pursuant to this MOA may be revoked at any time and for any reason by ICE or the LEA. Such revocation will require notification to the other party to this MOA within 48 hours. The chief officer of the LEA and ICE will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA, pursuant to Section XVIII below, shall constitute revocation of all immigration enforcement authorizations delegated herein.

## X.     COSTS AND EXPENDITURES

Participating LEA personnel will carry out designated functions at the LEA's expense, including salaries and benefits, local transportation, and official issue material. Whether or not the LEA receives financial reimbursement for such costs through a federal grant or other funding mechanism is not material to this MOA.

ICE is responsible for the installation and maintenance of the Information Technology (IT) infrastructure. The use of the IT infrastructure and the DHS/ICE IT security policies are

defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE's Chief Information Security Officer and the LEA's Designated Accreditation Authority. The LEA agrees that each of its sites using an ICE-provided network access or equipment will sign the ISA, which defines the DHS ICE 4300A Sensitive System Policy and Rules of Behavior for each user granted access to the DHS network and software applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

The LEA is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material used in the execution of the LEA's mission. ICE will provide instructors and training materials. The LEA is responsible for the salaries and benefits, including any overtime, of all its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. ICE is responsible for the costs of the LEA personnel's travel expenses while in a training status, as authorized by the Federal Travel Regulation and the ICE Travel Handbook. These expenses include housing, per diem and all transportation costs associated with getting to and from training. ICE is responsible for the salaries and benefits of all ICE personnel, including instructors and supervisors.

The LEA is responsible for providing all administrative supplies (e.g. paper, printer toner) necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

## XI.   ICE SUPERVISION

Immigration enforcement activities conducted by participating LEA personnel will be supervised and directed by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.

When operating in the field, participating LEA personnel shall contact an ICE supervisor at the time of exercising the authority in this MOA, or as soon as is practicable thereafter, for guidance. The actions of participating LEA personnel will be reviewed by the ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for that specific individual.

For the purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law unless doing so would violate

federal law.

If a conflict arises between an order or direction of an ICE supervisory officer and LEA rules, standards, or policies, the conflict shall be promptly reported to ICE, and the chief officer of the LEA, or designee, when circumstances safely allow the concern to be raised. ICE and the chief officer of the LEA shall attempt to resolve the conflict.

Whenever possible, the LEA will deconflict all addresses, telephone numbers, and known or suspected identities of violators of the INA with ICE's Homeland Security Investigations or ICE's Enforcement and Removal Operations prior to taking any enforcement action. This deconfliction will, at a minimum include wants/warrants, criminal history, and a person's address, and vehicle check through TECS II or any successor system.

LEA participating personnel authorized pursuant to this MOA may be assigned and/or co-located with ICE as task force officers to assist ICE with criminal investigations.

## XII.    REPORTING REQUIREMENTS

The LEA will be responsible for tracking and maintaining accurate data and statistical information for their 287(g) program, including any specific tracking data requested by ICE. Upon ICE's request, such data and information shall be provided to ICE for comparison and verification with ICE's own data and statistical information, as well as for ICE's statistical reporting requirements and to assess the progress and success of the LEA's 287(g) program.

## XIII.    RELEASE OF INFORMATION TO THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to the media and other parties expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

The LEA hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the LEA must coordinate in advance of release with the ICE Office of Public Affairs, which will consult with ICE Privacy Office for approval prior to any release. The points of contact for ICE and the LEA for this purpose are identified in Appendix C. For releases of information to all other parties, the LEA must coordinate in advance of release with the FOD or the FOD's representative.

Information obtained or developed as a result of this MOA, including any documents created by the LEA that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. LEA questions regarding the

applicability of this section to requests for release of information shall be directed to an ICE officer.

Nothing herein limits LEA's compliance with state public records laws regarding those records that are solely state records and not ICE records.

The points of contact for ICE and the LEA for the above purposes are identified in Appendix C.

## XIV.    LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel regarding their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating LEA personnel performing a function on behalf of ICE authorized by this MOA will be considered acting under color of federal authority for purposes of determining liability and immunity from suit under federal or state law. *See* 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. LEA personnel who wish to submit a request for representation shall notify the local ICE Office of the Principal Legal Advisor (OPLA) field location at Miami, Florida                        . OPLA, through its headquarters, will assist LEA personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g) and this MOA; and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

The LEA agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating LEA employee to cooperate in any federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be

used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA derive from federal authority, the participating LEA personnel will comply with federal standards relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. § 552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices regarding data collection and use of information under this MOA.

## XV.       COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating LEA personnel, regarding activities undertaken under the authority of this MOA, is included at Appendix B.

## XVI.      CIVIL RIGHTS STANDARDS

Participating LEA personnel who perform certain federal immigration enforcement functions are bound by all applicable federal civil rights statutes and regulations.

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA as needed.

## XVII.     MODIFICATION OF THIS MOA

Modifications of this MOA must be proposed in writing and approved by the signatories.

## XVIII.    EFFECTIVE DATE, SUSPENSION, AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party terminates or suspends the MOA. Termination by the LEA shall be provided, in writing, to the local Field Office.

In instances where serious misconduct or violations of the terms of the MOA come to the attention of ICE, the ICE Director may, upon recommendation of the Executive Associate Director for Enforcement and Removal Operations, elect to immediately suspend the MOA pending investigation of the misconduct and/or violations.

Notice of the suspension will be provided to the LEA, and the notice will include, at a minimum, (1) an overview of the reason(s) that ICE is suspending the 287(g) agreement, (2) the length of the temporary suspension, and (3) how the LEA can provide ICE with information regarding the alleged

misconduct and/or violations, as well as any corrective measures it has undertaken.

ICE shall provide the LEA with a reasonable opportunity to respond to the alleged misconduct and/or violations and to take actions to implement corrective measures (e.g., replace the officer(s) who are the focus of the allegations). ICE will provide the LEA timely notice of a suspension being extended or vacated.

If the LEA is working to take corrective measures, ICE will generally not terminate an agreement. The termination of an agreement is generally reserved for instances involving problems that are unresolvable and detrimental to the 287(g) Program.

If ICE decides to move from suspension to termination, ICE will provide the LEA a 90-day notice in advance of the partnership being terminated. The notice will include, at a minimum: (1) An overview of the reason(s) that ICE seeks to terminate the 287(g) agreement; (2) All available data on the total number of aliens identified under the 287(g) agreement; and (3) Examples of egregious criminal aliens identified under the 287(g) agreement. ICE's decision to terminate a MOA will be published on ICE's website 90 days in advance of the MOA's termination.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

**For the LEA:**

Date: 04/18/2025

Signature: Justin M. Davis *Digitally signed by Justin M. Davis Date: 2025.04.18 08:36:29 -04'00'*

Name: Justin Davis

Title: Director of Law Enforcement

Agency: Florida Department of Environmental Protection, Div. of Law Enforcement

**For ICE:**

Date: 4.24.25

Signature: _____

Name: Todd M. Lyons

Title: Acting Director

Agency: Department of Homeland Security

U.S. Immigration and Customs Enforcement

**APPENDIX A**

**POINTS OF CONTACT**

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For ICE:        Department of Homeland Security
                Immigration and Customs Enforcement
                Enforcement and Removal Operations
                Assistant Director for Enforcement
                Washington DC

For the LEA:    Justin Davis
                _____
                Director of Law Enforcement
                _____
                850-245-2038
                _____
                3900 Commonwealth Blvd. Tallahassee, Fl 32399
                _____
                Justin.M.Davis@FloridaDEP.gov
                _____

**APPENDIX B**

**COMPLAINT PROCEDURE**

This MOA is an agreement between ICE and the <u>Florida Department of Environmental Protection, Div. of Law Enforcement</u>, hereinafter referred to as the "Law Enforcement Agency" (LEA), in which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

If any participating LEA personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA the LEA shall, to the extent allowed by state law, make timely notification to ICE.

Further, if the LEA is aware of a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the LEA shall remove the designated LEA personnel from the program, until such time that the LEA has adjudicated the allegation.

The LEA will handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated LEA personnel acting in immigration functions must be forwarded to the ICE Office of Professional Responsibility (OPR) at ICEOPRIntake@ice.dhs.gov.

**1. Complaint Reporting Procedures**

Complaint reporting procedures shall be disseminated as appropriate by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public).

Complaints may be reported to federal authorities as follows:

    A.    Telephonically to the ICE OPR at the toll-free number 1-833-4ICE-OPR; or

    B.    Via email at ICEOPRIntake@ice.dhs.gov.

Complaints may also be referred to and accepted by any of the following LEA entities:

    A.    The LEA Internal Affairs Division; or
    B.    The supervisor of any participating LEA personnel.

## 2. Review of Complaints

All complaints (written or oral) reported to the LEA directly, which involve activities connected to immigration enforcement activities authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify participating personnel status under the MOA with the assistance of ICE. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures.

In all instances, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the LEA's Internal Affairs Division when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

## 3. Complaint Resolution Procedures

Upon receipt of any complaint the ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or another legally required entity. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to LEA Internal Affairs Division.

The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Affairs Division for resolution. The Internal Affairs Division Commander will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating LEA personnel are under investigation and subject to interrogation by the LEA for any reason that could lead to disciplinary action, demotion, or dismissal, the policy requirements of the LEA shall be honored. If appropriate, an individual may be removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the LEA's Internal Affairs Division to ensure notification as appropriate to the subject(s) of a complaint regarding the resolution of the complaint.

# APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XIII of this MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

**For the LEA:**

Justin Davis

Director of Law Enforcement

850-245-2038

3900 Commonwealth Blvd. Tallahassee, Fl 32399

Justin.M.Davis@FloridaDEP.gov

**For ICE:**

Department of Homeland Security
Immigration and Customs Enforcement
Office of Public Affairs