## DECLARATION OF ALEX SOLOMIANY

I, Alex Solomiany, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a founding attorney of the Law Offices of Alex Solomiany, P.A., located in Miami, Florida. I am Board Certified as an expert in Immigration and Nationality Law by the Florida Supreme Court and have over 25 years of experience handling complex immigration cases before the immigration courts, Board of Immigration Appeals, and the U.S. federal courts. I am a graduate of the University of Michigan at Ann Arbor and Tulane University School of Law.

3. Since July 2025, I have represented two clients held at the facility known as "Alligator Alcatraz," and have had at least 10 prospective clients detained at the facility.

4. This includes my client, E.G.V., who is a national of Guatemala. E.G.V. has lived in the United States for over 20 years, and has a wife and four children, three who are citizens of the United States. He has worked as a handyman in the United States. E.G.V. has a pending appeal with the Board of Immigration Appeals ("BIA") based on an application for non-LPR cancellation of removal.

5. In early July 2025, E.G.V. was returning home from work when Florida Highway Patrol ("FHP") officers stopped his car on the highway. Immigration and Customs Enforcement ("ICE") officers also accompanied the FHP officers. ICE officers took E.G.V. directly to Alligator Alcatraz.

6. After learning that E.G.V. had been detained at Alligator Alcatraz, I filed a pre-NTA (Notice to Appear) bond motion on his behalf with the Krome Immigration Court. The Krome Immigration Court accepted the bond motion, and scheduled his bond motion for a hearing before an Immigration Judge to take place on July 25, 2025.

7. On July 24, 2025, I checked the EOIR's ECAS (EOIR Courts and Appeals System), the online portal for the immigration court system, to check for information regarding E.G.V.'s case. I was surprised to see that his bond hearing, previously scheduled for the next day on July 25, 2025, did not appear in the system. I immediately called the Krome Immigration Court to inquire about what had happened. However, the court employee told me that the immigration court had no jurisdiction over detainees at Alligator Alcatraz, and had taken the hearing off the calendar. I asked which court had jurisdiction over detainees held at that facility and the court employee could not provide me with an answer. He never had the opportunity to request release on bond on July 25, 2025, as had been scheduled.

8. Soon after, I learned that E.G.V. had been transferred from Alligator Alcatraz to the Krome Detention Center on July 24, 2025. I immediately filed a new bond motion on his behalf, and received notice that his virtual bond hearing was scheduled with the immigration court on August 1, 2025 at 1:00 p.m.

9. On Friday, August 1, 2025, I arrived at E.G.V.'s virtual bond hearing via WebEx. When I arrived, E.G.V. was not present. Instead, the government attorney told me off the record that E.G.V. had been deported. I was shocked to hear this information, because E.G.V. has no final order of removal, and has an appeal of his cancellation of removal petition before the Board of Immigration Appeals, which remains pending.

10. The Immigration Judge was also shocked to learn that E.G.V. had been deported, and on the record, asked the government what had happened. The government attorney stated that they were aware that my client had a pending appeal before the BIA and should not have been removed. They could not properly explain why my client had been removed to Guatemala while his appeal was pending.

11. E.G.V. should never have been deported. He does not have a final order of removal. He and his family seek his return to the United States.

12. I have attempted to receive answers from the government about E.G.V.'s erroneous deportation and request his return to the United States. However, my inquiries have been rebuffed. On Monday, August 4, I called the ICE duty attorney assigned to E.G.V.'s case. She hung up quickly after stating that she "couldn't talk because she had to appear in Court." I also called ICE's Supervisory Detention and Deportation Officer about E.G.V. The Officer asked me why E.G.V. couldn't just wait in Guatemala while his case was being decided. I stated that his deportation had been erroneous, and that he should be in the United States while his appeal was being decided. The Deportation Officer asked me to send an email to the DO assigned to his case and the Supervisor. I also sent a copy of the email to Carlos Lopez, Deputy Chief Counsel at Krome SPC requesting that E.G.V. be returned to the United States. As of today, I have not received a response.

13. If E.G.V.'s July 25, 2025 bond hearing hadn't been cancelled, none of this would have happened. I believe that E.G.V.'s erroneous deportation could have been prevented if E.G.V. had been able to receive his initial bond hearing on July 25, 2025. However, the immigration court canceled this bond hearing because he had been detained at Alligator Alcatraz, and stated that it lacked jurisdiction over his case.

14. Another client of mine, L.M.S., was also held at Alligator Alcatraz. L.M.S. is a citizen of Venezuela, has a pending asylum case, and has no criminal history. On or about July 2, 2025, L.M.S. was stopped by the Florida Highway Patrol, and turned over to ICE. ICE

agents then took him to Alligator Alcatraz on or about July 3, 2025. He was transferred to Krome approximately 10 days later.

15. During the time that L.M.S. was held at Alligator Alcatraz, I had no way to speak confidentially with either. I asked an attorney colleague of mine who planned to visit one of her clients at the facility to see if she could meet with L.M.S. in person so that he could sign the Form G-28 for me. However, my colleague was not permitted to enter the facility, and told me that attorneys were being barred from the facility. I was also unable to schedule any attorney-client calls with my clients as this was only days after the facility opened and neither ICE nor the State of Florida indicated how to arrange legal visits or calls with detainees at the facility. I was only able to speak to my clients held at Alligator Alcatraz via a monitored, recorded phone line when they called my office.

Executed on 7 of August, 2025, at Miami, Florida.

ALEX SOLOMIANY, ESQ.