DECLARATION OF Z. ZAREEFA KHAN

I, Z. Zareefa Khan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called on to testify I could and would do so competently and truthfully to these matters.

2. I make this declaration to supplement my declaration filed on July 24 in this case. *See* ECF No. 21-2.

3. My client G.T.C. was detained at Alligator Alcatraz from July 3, 2025 to approximately August 2, 2025. My client R.T.F. was detained at Alligator Alcatraz from July 3, 2025 to approximately August 3, 2025.

4. When my clients were first detained at Alligator Alcatraz, I investigated how to set up confidential attorney visits, calls, or videoconferences with them. I was unable to find any information. I also learned from other attorneys representing clients at Alligator Alcatraz that no visits were taking place and an email address they had been given by the facility was not functioning. Knowing these attempts had failed, I did not attempt to set up attorney visits, calls, or videoconferences with my clients while they were at Alligator Alcatraz. As a result, the only way that I was able to communicate information to and from them was to speak with their family and to ask them to relay information to and from them on monitored calls.

5. When G.T.C. was moved from Alligator Alcatraz on approximately August 3, 2025, he was transported to Krome Detention Center. Once G.T.C. was at Krome Detention Center, I was able to file a bond motion at the Krome immigration court on August 4, 2025.. This motion was scheduled for a hearing on August 7, 2025 and granted on that same day. G.T.C.'s family posted bond immediately on August 7, 2025 through the ICE EBONDS portal.  It took 24 hours for ICE EBONDS to process the bond, and we sent several messages concerning the delay. On August 8, 2025 at 3:00pm we were advised via email the bond was approved and to contact the detention center for release times. But instead of being released, G.T.C. was transferred from Krome Detention Center to a detention center in El Paso, Texas.

6. The flight that transferred G.T.C. to Texas took off from Florida at approximately 4:00 pm Eastern, after his bond had already been posted. I called the Krome Detention Center at 3:36pm and again at 3:38pm, at which point I was able to get someone on the phone. The person advised me that my client was still at Krome. It should be noted that when a person is transferred the attorney of record is supposed to receive a transfer notification. I did not receive one for G.T.C. Moreover, the person at Krome, after I stressed my concerns that my client was being moved, left me on hold for a few minutes, and came back onto the line to advise me that I needed to contact his deportation officer to determine if he would be released. I again stressed to the officer that I needed a phone number for his deportation officer as my client had been advised he was going to be

moved and not released, and that his bond was posted. The officer on the phone verified that he could see the approved bond in the system, approving him for release. Later that evening I learned that G.T.C had been transported to El Paso, Texas. It appears the flight taking him there left after his bond was posted, and after I spoke with the Officer on the phone who acknowledged seeing an approved release for him in the system.

7. I understand that Plaintiffs' counsel in this case reached contacted counsel for the federal defendants on August 9, 2025 about ICE's failure to release G.T.C. and transfer of him to El Paso. I received a notification at 12:34 am today (August 10, 2025) that G.T.C. would be transferred back to Krome Detention Center, and I have confirmed this morning that he is at Krome Detention Center. However, he remains in ICE custody despite having won his bond motion and having posted bond.

8. I represent Client R.T.F., who was apprehended with G.T.C. Subsequent to this suit being filed, R.T.F. after almost 30 days in custody was moved to the Krome Detention Facility and issued an A number, and I was able to file a bond motion for him.

9. R.T.F. is scheduled for a bond hearing on August 13, 2025 before an Immigration Judge at the Krome Detention Center. On Thursday August 7, 2025, I received an ERO efile detainee transfer email for R.T.F. The transfer email showed he was being transferred to the "Krome" detention center facility.

10. On August 8, 2025 I learned that R.T.F. had been transferred to El Paso along with G.T.C.

11. My client R.T.F. had never been in proceedings before any immigration court before he was apprehended on or about June 28, 2025. This means that, at the time he arrived at Alligator Alcatraz on July 3, 2025, there was no court presiding over his case. I understand that the federal defendants in this case represented that people detained at Alligator Alcatraz can file bond requests with the immigration courts that were already handling their cases before they arrived at the facility. For R.T.F., there was no court already handling his case when he arrived at Alligator Alcatraz. As a result, it would have been impossible for me to file a bond request with an immigration court already handling his case as the federal defendants state. Additionally, because R.T.F. had not received a Notice to Appear and had not been assigned an A number, I would not have been able to electronically file a bond motion using EOIR's ECAS system on his behalf. All immigration courts require those represented by counsel to file bond motions electronically through ECAS. As a result, there is no immigration court anywhere in the country where I could permissibly have filed a bond motion on R.T.F.'s behalf.

Executed this 10th day of August, 2025, at Ft. Lauderdale, Florida.



Z. ZAREEFA KHAN