## SUPPLEMENTAL DECLARATION OF AMANDA VELAZQUEZ

I, Amanda Velasquez, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a sole practitioner and I run Amanda Velazquez, P.A., an immigration law firm based in Key West and Miami, Florida. I previously did business as 'Florida Keys Immigration' but there has been confusion with another law firm with a similar name so I am now using my official registered business name, Amanda Velazquez, P.A. In my previous declaration, I was still doing business under "Florida Keys Immigration." *See* ECF No. 5-3 at ¶ 2. Through Amanda Velazquez, P.A., formerly known as Florida Keys Immigration, I represent clients in a wide range of immigration law matters, including affirmative applications for immigration relief and removal defense in proceedings before immigration courts.

3. I am an attorney in good standing in the state of Iowa. I specialize in the practice of immigration law. This declaration supplements my prior declaration filed in this case on July 17, 2025, at ECF No. 5-3.

4. Since July 2025, I have represented five clients held at the facility known as "Alligator Alcatraz." This includes a named Plaintiff in this case, C.M. C.M was previously detained at Alligator Alcatraz. On Aug. 1, 2025, he was transferred to Krome Detention Center where he is still held by ICE. My firm most recently represented one detained client at Alligator Alcatraz, and I plan to continue representing additional clients at the facility.

5. One of my clients, H.B., was detained by immigration officials on July 14, 2025 and on or about Aug. 9, 2025, he was transferred from Alligator Alcatraz to an ICE detention facility in El Paso, Texas, where he is currently at. On August 4, 2025, I found out H.B. had a bond hearing scheduled for Aug. 11, 2025. His bond hearing was held at Krome, even though he is at El Paso, and the Immigration Judge granted a bond.

6. Unless I have received direct confirmation from my clients, I am unable to locate my clients held at Alligator Alcatraz. ICE's online detainee locator, at https://locator.ice.gov/odls/, does not seem to function for people held at Alligator Alcatraz. My clients who have been held at Alligator Alcatraz have not appeared on ICE's online detainee locator. However, I spoke with him on Aug. 5, 2025, when he confirmed that he was still held at Alligator Alcatraz.

7. On July 28, 2025, I sent an email to legal@privacy6.com requesting a confidential video call with my client, H.B. As I described in my previous declaration, ECF No. 5-3 at ¶¶

10, the email address had not been working. When I sent the email to schedule a legal video call with H.B., I received a response on July 29, 2025. From July 14, 2025, when my client arrived at Alligator Alcatraz, until my legal call was scheduled on Aug. 1, 2025, H.B. called me on three occasions on a monitored, recorded outgoing phone line from Alligator Alcatraz. This was the only way for us to communicate.

8. More recently, I was finally able to get scheduled for a video call with HB. I had my first video call with my client on Aug. 1, 2025, almost three weeks since he was first detained by ICE officials, and three days after I requested a video call.

9. Even though it may seem that Alligator Alcatraz has allowed more attorney access since this lawsuit was filed, by allowing some video and in-person visits, my clients and I are still facing substantial, unreasonable restrictions on attorney-client communication.

10. As far as I am aware, there is no clear instruction anywhere about how attorneys are supposed to communicate with their clients at Alligator Alcatraz. No government agency, whether county, state, or federal, has provided any public information with instructions on how to communicate with my clients at the facility. This is very different from the practice at other immigration detention centers, as well as jails and prisons. No agency has published any email address or telephone number that I should call, or any protocols for in-person visitation or exchange of documents. The only information I have been able to find is by contacting a deportation officer at Krome Detention Center. *See* ECF No. 5-3 at ¶ 9.

11. Until my video legal call was scheduled, the only way that my clients have been able to call me is on a monitored, recorded outgoing phone line from Alligator Alcatraz.

12. Throughout our last video call, H.B., my client, was wearing shackles on his feet and his hands. This experience was unlike any of the other detention facilities where I've conducted multiple video legal calls as an immigration attorney. For example, when I have legal video calls with clients at Krome Detention Center, I have never had a client appear on video with restraints.

13. Alligator Alcatraz also requires attorneys to schedule in-person meetings with detainees, which is unlike any other detention facility. This is burdensome because there may be instances when I need to see a detained client regarding an urgent matter that cannot wait several days for scheduling, or they may be times when I need to visit a client during non-working hours because it is the only available time.

14. To my best knowledge and belief, H.B. has not been charged by ICE with a Notice to Appear, and has not been charged by the State of Florida with any civil or criminal charges that would justify his detention by the state.

15. I have discussed with C.M. his participation as a class representative in this case and C.M. has stated that he actively desires to participate in this case as a class representative. He is willing and eager to continue to represent the class, even though he has been transferred from Alligator Alcatraz.

Executed on 12th day of August, 2025, at Miami, Florida.

/s/ *Amanda Velazquez*
Amanda Velazquez