UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 25-CV-23182-RAR

C.M., MICHAEL BORREGO FERNANDEZ, J.M.C., E.R., on behalf of themselves and all others similarly situated, et al., — Miami, Florida

Plaintiffs, — August 14, 2025

vs. — 2:35 p.m. - 3:16 p.m.

KRISTI NOEM, Secretary of the United States Department of Homeland Security, et al.,

Defendants. — Pages 1 to 41

---

STATUS CONFERENCE - VIA ZOOM
BEFORE THE HONORABLE RODOLFO A. RUIZ, II
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

EUNICE HYUNHYE CHO
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 15th Street NW, 7th Floor
Washington, DC 20005

CORENE T. KENDRICK
KYLE A. VIRGIEN
MARISOL RODRIGUEZ-RUIZ
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street
Suite 700
San Francisco, California 94104

(Appearances continued.)

FOR THE PLAINTIFFS:

AMY NICOLE GODSHALL
4343 W. Flagler Street
Suite 400
Miami, Florida 33134

CHRISTINA ISABEL LaROCCA
AMERICANS FOR IMMIGRANT JUSTICE
LITIGATION and ADVOCACY TEAM
2200 NW 72nd Avenue
Miami, Florida 33152

PAUL RAYMOND CHAVEZ
AMERICANS FOR IMMIGRANT JUSTICE
LITIGATION and ADVOCACY
6355 NW 36th Street
Suite 309
Miami, Florida 33166

FOR DEFENDANTS, RONALD DeSANTIS and KEVIN GUTHRIE

NICHOLAS JOHN PETER MEROS
SHUTTS & BOWEN, LLP
215 S Monroe Street
Suite 804
Tallahassee, Florida 32301

FOR MIAMI-DADE COUNTY DEFENDANTS:

ANGELA ANGELICA VICIANA
MIAMI-DADE COUNTY ATTORNEY'S OFFICE
111 NW 1st Street
Suite 2810
Miami, Florida 33128

FOR FEDERAL DEFENDANTS:

MARLENE RODRIGUEZ
UNITED STATES ATTORNEY OFFICE
99 NE 4th Street
Suite 300
Miami, Florida

STENOGRAPHICALLY REPORTED BY:

ILONA LUPOWITZ, RMR, CRR
Official Court Reporter to:
The Honorable Rodolfo A. Ruiz, II
United States District Court
Southern District of Florida
400 North Miami Avenue
Room 11-2
Miami, Florida 33128
(305) 523-5737

(Call to the Order of the Court.)

THE COURT: Good afternoon, everybody. We are here this afternoon for a status conference in Case No. 25-23182. This is the matter of C.M., et al., versus Noem, et al.

We'll begin with appearances, please, on behalf of the plaintiffs.

MS. CHO: Yes, Your Honor. This is Eunice Cho, from the American Civil Liberties Union, on behalf of the plaintiffs. I will be speaking today. I'm joined by my co-counsel, Corene Kendrick, Kyle Virgien, Marisol Rodriguez-Ruiz, Amy Godshall, Paul Chaves, and Christina LaRocca.

THE COURT: Very good. And good afternoon to you-all.

And beginning with the state defendants, who do I have on the Zoom this afternoon?

MR. MEROS: Good afternoon, Your Honor. Nick Meros, from the Shutts and Bowen office, on behalf of Ron DeSantis and Executive Kevin Guthrie.

THE COURT: Good afternoon, Mr. Meros.

And who do I have on behalf of my federal defendants?

MS. RODRIGUEZ: Good afternoon, Your Honor. Marlene Rodriguez, from the U.S. Attorney's Office in Miami, on behalf of the federal defendants.

THE COURT: Good afternoon, Ms. Rodriguez.

So the main purpose behind today's status conference is

to handle some preparation and expectation, if you will, for Monday's hearing. I have had an opportunity over the past week, up to and including the recent reply that was filed and affidavits, to thoroughly review the record in preparation for Monday. My preparation is still ongoing.

It appears to me -- and I want to confirm it with everybody today -- that we have quite a fulsome record in this case by way of many affidavits from all parties. And so to me, at least, looking at the record as it stands, I would surmise that our focus on Monday should be primarily legal arguments that flow and arise from the evidentiary submissions that are already in the record by way of affidavit.

In other words, I don't foresee a need to have live witness testimony or bringing other folks in here to further establish the arguments on both sides. I think we have quite a bit -- I've read it all, and have a good handle on where everybody stands. And really, the focus on Monday should be legal argument and whether or not the burden for injunctive relief has been satisfied and, obviously, handle a couple of other gateway issues before that -- notably, venue -- which we're going to talk about in just a moment. But again, I want to confirm that so we can set expectations for Monday.

So Ms. Cho, on behalf of the plaintiffs, is there any concern with the way I've described the hearing for Monday, a plan for that? I don't know -- I think you would agree with

me, but, again, I just want to make sure we're all on the same page.

MS. CHO: Yes, Your Honor. We would agree with that plan.

THE COURT: Okay. So in other words, I don't need to go ahead and require that you and the state and federal defendants provide me with witness lists, or exhibit lists, because we've got so much in by way of affidavits that I think we have a very fulsome record that we can litigate over. So I'm happy to hear that.

I expect that to be the same position from federal and state counsel, but let me confirm, Mr. Meros, that your take is also -- that we don't need any additional testimony; we've got quite a bit?

Is that fair to say?

MR. MEROS: Yes, Your Honor, that's fair.

THE COURT: Very good.

And also, Ms. Rodriguez, on behalf of the federal defendants, we've got everything we need and can go straight to argument and, kind of, walk down the line of the different issues raised in the plaintiffs' pleadings; is that right?

MS. RODRIGUEZ: Yes, Your Honor.

THE COURT: Okay, great. So I'm glad we took care of, kind of, the parameters of the hearing because that's the impression I've been traveling under, and I didn't want anybody

to come in on Monday and be surprised by the witnesses and new documents.

And I will say, as far as I can tell, the record is really closed. The hearing is on Monday. I don't believe that we need any more supplemental filings or affidavits. So I would just caution the parties that absent something earth-shattering that changes a position, I would like to know that the universe of evidence that I have in the docket is all I need to study and review. So just a caution, that we shouldn't really be filing anything else between now and Monday.

Now, the next thing I wanted to briefly touch on is to the 12(b)(3) and the venue issue. We have primarily focused our Monday hearing on preliminary injunctive relief, the First Amendment and the Fifth Amendment claims, but, as we know, there's an overarching venue argument that has been raised by state and federal defendants from the very beginning. It has been more fulsomely developed in the pleadings.

I've had an opportunity to really dive deep into the venue statutes that apply and try to get a handle and a sense on where the case should be brought, if it's being brought in the right district, and some of those arguments I think have been crystallized a little bit more than when we first spoke and venue was raised. So I think we should all be prepared that before we get into any real argument about preliminary

injunctive relief, that we at least spend some time working through the venue issues. And the reason I say that is because I don't want any of the plaintiffs to come in and maintain a position which has been raised in the reply, that venue can be sidestepped before the Court can get into the merits of injunctive relief.

Now, there are some cases that have been cited for that proposition. I would respectfully disagree that they're applicable here. Not only are some, in my view, in opposite, but the procedural posture of a few of them, by way of a temporary restraining order standard, I think are a little different than where we are here. And so I say that because I don't want anyone to believe we're going to go straight into injunction arguments. We need to handle venue. The Court is not going to sidestep the venue issue to get into injunctive relief.

So flowing from that, as I'm trying to get my head around this for Monday, I have a few brief questions, really, first with the federal and then state defendants.

So I have taken a very, very close look at this venue issue. There is a strong possibility that some counts that have been alleged cannot be brought in this district and should have been brought in the Middle District of Florida. There is also a possibility that some counts do indeed belong in the Southern District of Florida. And when we had our original

status conference, my understanding, starting with the federal defendants, was a consent to litigate the case in full in the Middle District of Florida.

Is it still the federal defendants' position that the case should be litigated, in toto, in the Middle District even if the Court finds that perhaps some counts could remain and some should go? Where are the federal defendants on that issue?

MS. RODRIGUEZ: Yes, Your Honor. It's the federal defendants' position that the case should be litigated in the Middle District of Florida. We would argue that all of the counts, the appropriate venue is the Middle District of Florida. But if Your Honor were to find that some counts, that there is venue for some counts in the Southern District, we consent to the entire matter being handled in the Middle District of Florida. As a matter of convenience, Your Honor, it just makes sense. If Middle District is the district that has venue on some of the counts, the entire case should be decided in one district, by one judge.

THE COURT: And I appreciate that. That's what I thought, Ms. Rodriguez. I wanted to confirm that with you so we wouldn't have any dispute on that.

Now, I would imagine that the state is of the same opinion that even if, for whatever reason, the Court finds some counts should remain in this district, but others must be in

the Middle District, that you would also consent and want to have everything in the Middle District.

Am I correct on that, Mr. Meros?

MR. MEROS: Yes, Your Honor.

THE COURT: Okay.

MR. MEROS: Yes, Your Honor. You are correct. Thank you.

THE COURT: Okay. And let me ask you, Ms. Cho, on this point: I don't know where you stand on this other than obviously your position has been that it all properly remains in this district. And again, I am not in any way ruling on this. I'm just trying to work through all of the arguments on venue, which have been the main thrust, if you will, of the responsive pleadings from both state and federal defendants. I just want to know where you sit on this. It's almost a conditional consent, I know, because you are maintaining that it should all stay here. And certainly, I think my concerns will be better expressed on Monday, and you can walk me through those arguments.

But I just want to know, from your perspective, where would you be at if some should go and some should stay in terms of the counts? Would you want to consent to it all in the Middle District? Where would you be on that front?

MR. MEROS: Well, Your Honor, it's been our position, in both this case as well as --

THE COURT: Hold on, Mr. Meros. I'm sorry. I'm talking to Ms. Cho. You're with me 100 percent that you want it all in the Middle District, right?

MR. MEROS: Yes, Your Honor. I apologize.

THE COURT: Yeah. I wanted to hear from the ACLU. Yeah, I need to know from the ACLU.

Where do you think on this, Ms. Cho -- and again, I understand fully that you maintain that nothing should be in any other district than this district. I get that. But I'm just trying to work through what the possibilities are. I wanted to get a sense from your end, if I were to find that some counts cannot be brought in this district and others can, and some counts should be in the Middle District -- so essentially it's a possible mixed bag -- I want to know -- you've heard, obviously, your counterparts on the other side would consent to it all going there. We are all very much aware of the venue statute language in requiring that consent, especially in the 12(b)(3).

So I wanted to get a sense from you, would you also -- understanding there's argument to be made, would you also be consenting to that? Where do you stand on that?

MS. CHO: Your Honor, to be honest, we have not considered that option, and I don't know that I can give you that answer at this point.

THE COURT: That's absolutely fine with me. Part of

why I'm doing this today is I don't want to have you answer that question for the first time on Monday.

So my goal today was to tell you -- at least a preview on the threshold issue of venue -- that it has to be addressed by the Court before I'll get into preliminary injunctive relief. That's number one.

And number two: The record is as it is. We all are going in with the same universe of documents and evidence. And most importantly, that if, for whatever reason, I come out thinking that some counts cannot be maintained here and others can, that mixed bag on venue, I would want to know where everyone stands.

Now, I understand how the defendants feel. Their view is, even if you think some counts can only be brought in the Southern District, Judge, we consent to have it all in the Middle. My concern is, I need to know if you feel the same on that.

So just put a pin in that and let me know on Monday. Depending on how the hearing goes, I'm going to have a little more argument on this and show you where I'm at, at least to this point, and you can tell me if you think I'm in the wrong direction on venue. But I certainly want to know that if I ultimately come down with kind of a split on where some counts should be here versus the Middle District, I just want to know where you would be on that because I think that certainly the

other outcome of that might not provide for the ability to transfer without consent. So that's why I wanted to just kind of float that out.

Does that make sense?

MS. CHO: Yes. Thank you, Your Honor.

THE COURT: Of course.

Now, the last question I have really is going to stay on plaintiffs' side on this. It deals with the state defendants, though.

You know, this is another venue issue that I've been struggling with. And I've read through all the affidavits. And again, you may not have a direct answer to this question today, Ms. Cho, but it's one that I'm going to ask again on Monday.

Can you point me to any action, act, or omission occurring in the Southern District of Florida by the state defendants. What would you show me?

What would be the action, act, or omission by the state defendants in my district? Can you point me to where that is?

And if you feel like you don't want to necessarily be cabined to an answer today, I'll live with that on Monday. But I'm preparing for Monday, and I need kind of a sense of where you believe that act or omission from the state defendants is taking place in my district.

MS. CHO: Understood, Your Honor. I don't know that I

can answer that at this particular moment. I would be glad to answer that on Monday.

THE COURT: Okay. That's very important for me.

So I would ask that we have that ready because I think we all agree that when it comes to the state defendants, we're traveling under 1391(b)(2): The substantial events or omissions giving rise to the claim must have occurred in the Southern District of Florida. And we know that the state defendants are added to every count but Count 5. They are named in 2 and 4 individually, on 1983, and then we've got them on the kind of constitutional *Ex-Parte Young* equitable counts in 1 and 3.

Excuse me. My apologies. So 2 and 4 are state, with 1983. 1 and 3 are the state and feds on the constitutional component. So they're interposed and throughout the complaint on 1 through 4.

So I need to get a better handle, looking at all these affidavits, where the state defendants have essentially committed an act or omitted something, and that has occurred in the Southern District of Florida, as the statute requires.

So I just posit that because we've got still tomorrow, and then we have the weekend. We're all going to be preparing. I just want to make sure that the plaintiffs have thought about this, and are prepared to address this, because to me it is a crucial venue issue that I have to answer before I can move on

to some of the other arguments.

Going into Monday, the last thing I will say, just to pivot briefly, to make the hearing, I think, productive:

We've had -- and I think the ACLU has owned this -- and I get it -- from the original complaint to 15(d), to the affidavits, and the developing situation on the ground. The scope of the First Amendment claims has evolved. And when I say "evolved," they began as a total ban. They began as a characterization of a total ban.

Now, you may say to me today, Judge, it's still functionally a total ban. Just because we're getting some more access than we were a few weeks ago, the delays that you've pointed out in your papers still maintain the ban.

But by the same token, for example, in your reply, plaintiffs are now very narrowly defining the relief in that you're focusing more on the confidentiality, or lack thereof, that's provided in the facility. By the same token, your Fifth Amendment claim has become not necessarily different, but more attuned to the bond determination question.

So I will leave you with just what I think you're still asking for. Because what's going to happen is, if we get through venue, I need to get a better sense of the scope of relief, which I think has evolved. I'm not sure that where we started is where we are now, and that makes a big difference when it comes to injunctive relief.

Now, we've got to get through venue first, but I think we all need to go in eyes wide open that there have been material changes on the ground. So I need to know, when we get to Monday, what does that relief look like, at this stage of the game, if this case were to stay here or any component of it were to stay here. And, you know, there's a lot of additional material between affidavits and the reply that have been injected, that I think has changed some of the relief or at least the way it's been pled. So I just want to float that out there because these are the issues that I'm struggling with to determine whether or not I think we've met the threshold for injunctive relief.

But that's where I'm at. So this, I think, is hopefully assisting everybody going into Monday, what the expectation is, where I'm struggling a bit, what I'm looking at. Starting with venue, first and foremost, and then moving on to the nature of the relief being requested. Those are very important determinations.

And look, I understand perhaps it's a false hope from the Court that everybody would say to themselves, judicial economy serves that a judge who spent this much time going through this record down here should hold on to this case. But again, you know, plaintiffs are the masters of their own complaint.

But, you know, there does come a moment where I really

-- we have to get through venue. But I really would hope that if the parties felt comfortable with it continuing to be litigated here, just because we've spent so much time on it -- and time is of the essence -- that perhaps the parties can think about whether or not they really want to continue to insist on venue. But if we're there -- it's a 12(b)(3). It's been teed up clean. I've got to get to it. But as I stated, there may be problems keeping the case here, and they're starting to crystallize for me.

Yes, Mr. Meros. Go ahead.

MR. MEROS: Your Honor, thank you. I apologize for --

THE COURT: No, it's okay.

MR. MEROS: But I would be remiss if I didn't mention that on your last point, the state defendants think, quite frankly, that it's improper for the plaintiff to inject all these new arguments and all these new facts on a reply because the Southern District of Florida has made clear that the replies are not made and not designed to introduce new arguments and, certainly, not to introduce into evidence on the new arguments. They introduced 12 new declarations, almost 70 pages of new declarations that are, as this Court made clear, about different forms of relief. Plaintiffs do not dispute that the original motion for preliminary injunction that they sought simply requested attorney access. And as the Court has recognized, the state defendants and the federal defendants

have been providing that access since before they filed their complaint. So now they are shifting the goalpost and changing it to we just want limited relief and access to counsel to filing their complaint, to filing a second motion for preliminary injunction, all along not disputing the fact that they've been getting the relief they're seeking. And now they file a reply five days before a hearing with all this new evidence and all these new arguments saying: Not only do we want, you know, unrestricted access, no scheduling [indiscernible audio] all other things, but we want additional things; we want legal mail service; complaint hotline; we want all these other things.

So while I understand that the Court is certainly, you know, planning to go forward, we would ask that the arguments and the evidence being introduced at the hearing be limited to what is tied directly to their initial motion. So, you know, if their initial motion is seeking access to attorneys, that's fine. You know, it's obviously not disputed that we are providing that.

So it's our position that there is no hearing that is needed. But to the extent the plaintiffs are arguing that, that is fine. We're certainly fine with going to the hearing. We don't think there should be additional argument now on, okay, plaintiffs have admitted they've gotten what they've asked for, but they want to have new arguments that we haven't

had a chance to respond to.

So we would argue, if the hearing is going to be addressing these new arguments, new evidence, the hearing should be pushed back, and we should have the ability to either have a sur-reply or have a new motion for preliminary injunction and briefing on that aspect.

THE COURT: So let me briefly address that. I think a couple of points there are important. Certainly, the Court would not permit and has never permitted -- as you've pointed out correctly, Mr. Meros -- amendment by way of reply.

Now, I am being very cautious that any relief that's being requested needs to be tethered back to the operative complaint, which was amended by the 15(d) supplement. So to the extent that relief -- and there's a bit of a dispute about maybe, you know, going back from 15(d) to the complaint, some of the affidavits that have been referenced. We talked about that before.

To be clear, I do believe that circumstances on the ground have changed such that some of the relief that maybe has been requested initially might not necessarily be applicable anymore, but -- for example, confidentiality and legal mail, if my memory is correct, have always been in the original complaint. That never changed.

Now, access, I will give you, went from total ban to access, but access delayed. Some may argue that is tantamount

to access denied. So the theory, I think, has metamorphosized a bit; I will give you that.

But to the extent you or the federal defendants should be worried that it is a shifting goalpost, I can assure you that unless the operative pleadings -- and I don't mean the preliminary injunction motion; I mean the operative pleadings, the complaint that is at issue here -- asks and frames the relief -- you cannot be granting preliminary injunctive relief disconnected from your underlying complaint.

So I will tell you, there's no way I'm going to entertain that. It's got to be connected. I will say, I think it came through the door broader, and I think the relief has been narrowed; meaning, the remedies that are being requested, especially in the reply, are a subset of what was in the original complaint, just a little more fine-tuned. And that was why I mentioned the confidentiality concerns, whether it be confidentiality rooms or unmonitored lines, as well as the legal document concern and attorneys coming in. That's what I think it's starting to focus on.

But I'm with you a hundred percent, that I'm not going to allow this to come in on Monday and argue things that aren't framed. So you don't have to worry about that because no relief can be granted procedurally on that.

My only point is that when I get my plaintiffs in here on Monday, they need to be able to explain to the Court what

they would be seeking in terms of preliminary injunctive relief. And again, this is all presupposing that you don't prevail on venue, right? I'm going to entertain all these arguments because -- I recognize you guys wanted to brief venue only. And that's fair. I think what we've done now, though, is we're trying to handle all of it at once. And to the extent I can reach the arguments, we've got them briefed, and we can hear oral argument on Monday.

But I just don't want you to have any concern because I would agree with you; it would not be fair to have things shifting at the eleventh hour by new allegations that materially change the underlying complaint.

So I don't want you to be concerned with anything for sur-reply because I don't think it's going to help anything. I'm pledging to all parties, we must be guided by the operative complaint and the supplement amendment to that complaint. That's the nexus. Those are the facts that I've got to focus on.

So I don't know if that kind of gives you a little more peace of mind, but that's the way I'm planning on moving forward on Monday. If it's not in there, they can't ask for it now separate and distinct from what frame their case is coming into this courtroom door.

Does that make sense?

MR. MEROS: Yes, Your Honor. Thank you.

THE COURT: And to the extent the federal defendants are worried about that -- I assume you guys are on the same page, right, Ms. Rodriguez?

MS. RODRIGUEZ: Yes, Your Honor.

Your Honor, as we've been discussing this, something comes to mind. In the time period between filing the opposition memorandum and today, I've learned that bond hearings in certain of the cases, of the named plaintiffs' cases, have been granted. Bond motions have been filed. Hearings have been had. And I would just like the opportunity to supplement the record with the notices of those hearings.

THE COURT: So here's the thing. I mean, again -- I'll hear from the plaintiffs on this. My understanding was, even in your responsive pleadings, you have maintained this argument that named parties have had, perhaps, some bond hearings. The problem, as I saw it in the reply -- and plaintiffs can correct me if I'm wrong -- is obviously the relief is not limited to those who may have an open immigration case, and therefore there is a potential to address bond determination because there's an ongoing case. The argument has been made that there are those that do not have an ongoing case, nor know where to go in terms of the proper immigration court to adjudicate a bond determination. That's why the Fifth Amendment claim, which we'll talk about on Monday, is a little unusual in that regard. It's almost a request for information more than it is

a due process claim because they don't know where to go.

So I guess -- I hear you on that, but I don't think it's really in dispute that some bond hearings are being held with named parties. The argument in reply has been that doesn't change the equation for us because at the end of the day, we still have people who don't have open immigration proceedings, but cannot initiate a bond determination in the first place.

Correct me if I'm wrong, Ms. Cho, but I don't know that -- I don't even know if that's going to make a big difference to your arguments if there's even a supplement on filing affidavits, but where do you stand on this issue?

MS. CHO: That's correct, Your Honor. Thank you.

With respect to the due process claim, we are aware of one named plaintiff that was in Alligator Alcatraz that was granted a bond hearing. The other individuals have all been transferred from Alligator Alcatraz, and as a result of not being in Alligator Alcatraz were able to file bond motions and hearings because they were located at other detention facilities over which the immigration court states that they had jurisdiction. So the argument that the plaintiffs have been granted bond for the most part are untethered from the due process claim because they were transferred away from Alligator Alcatraz at the time that their bond motions were granted.

THE COURT: So in other words, the cure was when they

were out of the facility as opposed to bond determinations made while in the facility.

MS. CHO: Correct, Your Honor.

THE COURT: Do you have any concerns -- only because it would maybe help in terms of the record -- with a supplemental filing on these affidavits suggested by Ms. Rodriguez? Again, I don't think it changes anything but I don't want to prejudice anybody. I'm trying to close the universe here of operative documents and filings. There's a lot. I've been reading through everything. It would help the Court, certainly, to prepare.

Do you have any strong feelings on that? I don't really think she needs them, quite frankly. No one's disputing. In fact, you've agreed that some folks have gotten bond determinations. It just hasn't happened in the facility, right?

MS. CHO: I think what we would want to make sure is that the government clarifies the location of the detainees at the time -- if the supplement is going to be provided, that the defendants clarify that plaintiffs were not actually at the facility at the time.

THE COURT: Well, let me ask you, Ms. Rodriguez: If there is a leave given just for you to file that supplement, would there be any problem with that supplement indicating where these individuals were at the time they received their

bond determination?

MS. RODRIGUEZ: I don't foresee an issue with that, Your Honor.

THE COURT: All right. So I'll do this. If you can file that by 5:00 p.m. tomorrow, so that I can get that, and I can look at it over the weekend -- again, I can't imagine it's very voluminous, but it has to specify to Ms. Cho's point, where were they when they were granted the bond determination, so that we could discuss it on Monday. It wouldn't be, of course, any argument, just a filing presumably of some affidavits or perhaps one affidavit from somebody, whether it be an official, local, or in D.C. I'm not sure.

MS. RODRIGUEZ: Yes, Your Honor.

THE COURT: Okay. All right.

MS. RODRIGUEZ: Understood. Thank you.

THE COURT: Ms. Cho, we'll see what we get. I don't think it, quite frankly, changes any of the issues in the case on the bond issue. But for what it's worth, we'll have a more fulsome record. And if anything, it might clarify that bond determinations are only taking place when someone is out of the facility as opposed to when they're in. We can deal with that.

I really want to emphasize, though -- although I am going to hear argument on all of this, I really want to emphasize, again, the venue. Really, that is a major issue for me. So I'm bringing it back up again, before we conclude,

because I need plaintiffs to be ready to explain to me their venue theory for the state defendants that would allow this Court to get into 1391 and handle venue issues under that (b)(2). Because I keep combing through this record, and that's where I am having a bit of a disconnect. So that, obviously, could have an impact on what claims can continue in this district and which ones cannot. And certainly, if the Court is able to get to the merits, and success of likelihood on the merits, it's what I would be prepared to do and what I've been readying myself to do. But I have to answer this venue question beforehand.

So I will just emphasize for plaintiffs to be prepared to put some energy towards that, when we start on Monday, because that's a gateway issue for me.

All right. So I think we know what we're expecting. It will not be, quite frankly, in my view, a drawn-out hearing. I think we all know what the record is. It's just clean argument based on affidavits submitted. And we're going to focus on trying to have the hearing in the morning. If anything changes, or any issues pop up, please notify the Court.

But I look forward to seeing everybody here on Monday morning at 10:00 a.m. We'll hear argument. I'm very well aware, as the ACLU has pointed out from the beginning, that time is of the essence. So the Court's goal is to immediately,

once the hearing is done, begin working on a ruling and trying to let everybody know where we stand on all of these issues. And that includes, of course, jurisdictional arguments, which I think we all know I have to address too, under 1252, which were the ones that were advanced by the federal defendants as another gateway issue with venue, before I get to the scope of First Amendment claims and anything regarding the Fifth Amendment. And I think that's where we're at.

So before I conclude -- this has been productive to help me out and help everybody out for the Court's expectations come Monday.

Any other issues or concerns? Anyone wants me to -- starting with my plaintiffs' team, anything else, Ms. Cho?

MS. CHO: Yes, Your Honor, just two quick points.

THE COURT: Yes, of course.

MS. CHO: We covered this a bit earlier, but just with respect to the complaint -- I think you noted this, as well, with respect to the supplemental complaint and the scope of relief that was expected -- although facts have changed since the filing and the point, of course, the voluntary cessation rules, the relief that is actually requested in the complaint is not just for some access to the facility. There is a very clear request with respect to the relief that should be granted by the Court with respect to forms of relief that they are -- it's confidential, that it is private, that is readily

accessible, that is timely granted, you know, that there is confidential and timely exchange of written documents, that there -- you know, we go through the colloquy of the relief that should be granted with respect to attorney access because the situation at Alligator Alcatraz is so anomalous from what is typically granted at any other immigration detention facility. So even though the defendants have been granted some modicum of access, as you noted, it is not timely; it is not confidential; and the delay is tantamount to denial in many of these cases.

So we would like to just point to the fact that the relief requested in the complaint, while the goalposts have changed because of the defendants' voluntary cessation, that the relief still remains the same.

THE COURT: Right. That was my reading. The scope is -- it's a little tweaked, but to your point, it's things that have developed on the ground, and you've pointed out kind of the timeliness, confidentiality, legal document issues, in your view, persist.

One thing that I have been looking at, and not necessarily struggling with -- but there is a lot of interplay between ICE regulations or what other detention facilities normally employ and what is done in Alligator Alcatraz.

Now, this isn't an APA claim. It's not a violation of a 287 contractual claim. And I want to bring that up because

there's a lot of other things in the pleadings that I perceived that aren't framed as counts for relief, but they're referenced by way of background and things of that nature. So when you talk about things like timeliness, you know, that's something that we need to kind of figure out, what does that mean. Right? I mean, where is there a delay that you believe is tantamount to a denial? Because of course, we see a lot of responses regarding some of the penological interest arguments, and some of that -- and we actually have to take a look at some of that, to the extent it's even applicable.

But I hear you. I don't think there's a problem with the initial framing of your relief. It's just there's been a lot of changes, so I kind of have to know where do you sit, as we sit here today -- or on Monday -- in terms of what's still, in your view, is noncompliant or needs to be fixed, right? That's one of my concerns.

MS. CHO: Yes, Your Honor.

THE COURT: But I think we're speaking the same language on this. I understand.

MS. CHO: Thank you, Your Honor. Yes.

We, of course, can point to you know how the ICE detention standards and certainly the draft policies that the defendants have promulgated are indicia of reasonability that come up in the *Turner* test. You're right. This is not an APA claim, but it does show that there are other reasonable

alternatives that the facility can easily implement to meet the First Amendment obligations here.

The other thing -- this is much more logistical in nature.

THE COURT: Sure.

MS. CHO: We wanted to know if the Court is planning to make the Zoom hearing available to members of the public. There are members of plaintiffs' families, for example, that would like to join and watch the pleadings, if possible, and they're not local. So we're wondering if that is a possibility.

THE COURT: Yeah. So I'm glad you asked that.

So pursuant to Judicial Conference rules, the best way to do it -- and what I've been planning on doing is -- and I don't know if this is the best case for families. But there's a call-in line. Because we're all going to be arguing live here. So there's going to be a publicly accessible broadcast line. We call it a narrowcast, if you will. But my Judicial Conference committee, we have blessed, if you will, this method in civil proceedings like this, of public importance. So we're going to put up the number. Anyone can call in and listen live. It's essentially like an audio stream.

So I'm not going to be broadcasting it on Zoom, but there will be an audio line. I will make that available on the docket, and it could be shared with whoever wants to be able to

listen, not watch, but listen to the proceedings. So I'll open the audio line in advance of the hearing on Monday.

MS. CHO: Thank you, Your Honor.

THE COURT: Yeah, absolutely.

And let me turn to my defense teams here. On the state defendant side, Mr. Meros, any other housekeeping concerns or issue before we conclude?

MR. MEROS: Yes, Your Honor, one. I know the local rules do not allow attorneys to bring in cell phones and computers without approval.

Do we need to file a motion? What's the best way to do that?

THE COURT: Yeah. If you could file a motion, I can quickly grant it. That way the marshals have it -- and that applies to anybody. If anyone wants to bring in laptops, phone, and the like, if you could just file a motion for me, I can quickly have -- my CRD and I get an order out so I can get it to the marshals before you check in on Monday. But great call. Let's go ahead and do that before you arrive so I can give them an order, please.

MR. MEROS: Thank you.

THE COURT: Ms. Rodriguez, anything else on your end on this point? Any other housekeeping issues? I know we might be getting that supplemental filing from you, but aside from that, any other concerns?

MS. RODRIGUEZ: No, Your Honor.

THE COURT: All right.

And the last thing that I will end with, going back to where I started on the venue concern: We've got a lot of production, pursuant to the Court's orders, of agreements, MOUs, 287s, and the like. I think it would be important when we come to court on Monday -- to the extent the defendants have a good sense of the communication levels between federal and state authorities, that would really help the Court get a better understanding. By that, I mean that there are alleged communications -- and the affidavit of Mr. Vega, I believe, points this out -- that there is a communication between federal officials in the Miami regional or field office and perhaps those on the ground in Alligator Alcatraz.

Now, as far as I can surmise from what I've reviewed, I don't know that there's any directives from the federal to the state in the administration of the facility. My understanding is there is, maybe, high level operational issues, which 287 provides for, but I don't know that day to day the federal authorities in regional facilities here, regional offices out of Krome, or whatever it may be, are doing anything with the state in how things are happening on the ground. And that is something relevant for Counts 1 through 4, which are all First Amendment counts. Count 5, I agree, is a separate ballgame. That's more a federal-focus count. We're dealing with that in

a different way, under the Fifth Amendment and the issues with the bond determination.

But I think to the extent that clarification can be provided when we get in on Monday, from the defendants, that would help me just get a better sense of the interplay, which I think could have a material impact on venue. And so I bring that up because I think you are all in the best position to explain that further, and I think that's also very much a developing situation.

So I just want to bring that out, Ms. Meros, especially for you and Ms. Rodriguez, coming into the hearing on Monday. When I get a sense from Ms. Cho on what activities the state has done or omissions they've done in my district, it will probably tie into the interplays between federal and state authorities, and that's going to help me get a sense of proper venue being here or being in the Middle District.

Does that make sense, Mr. Meros, what I'm concerned about?

MR. MEROS: Yes, sir, it does.

THE COURT: All right. And I'm sure, Ms. Rodriguez, that makes sense to you, right?

MS. RODRIGUEZ: Yes, sir.

THE COURT: So with that, I think I've got what I need. We all know the expectations. We'll put up that line. Make sure you get me those motions for access to phone and the like.

We'll look for a supplemental affidavit. The Court will continue to prepare for Monday, and we will have a complete record by the end of tomorrow, which shouldn't materially change much by way of Ms. Rodriguez's supplemental affidavits on bond issues. We're going to be coming in, and we'll be focusing on arguments. That's all we're going to be doing. We're going to being having legal arguments based upon all the evidentiary submissions, as agreed to by the parties, on Monday.

And I leave you also, Ms. Cho, also with a reminder that we'll want to know where you stand on the possibility of consent. I just want to bring that up again because I am going to ask you that again, and I need to know that depending on the outcome of 12(b)(3). So think about it. Talk to your colleagues and see where you're at.

MS. CHO: Yes, Your Honor.

THE COURT: Thank you, again, for making yourselves available on short notice so I could do some housekeeping. I'll see you-all at 10:00 a.m. on Monday.

MS. CHO: Thank you, Your Honor.

THE COURT: Thank you, everybody. Have a great day.

(Court recessed at 3:16 p.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

This hearing occurred via Zoom and is therefore subject to the technological limitations of reporting remotely.

DATE: August 26, 2025

/s/Ilona Lupowitz
ILONA LUPOWITZ, CRR, RMR
Official Court Reporter
United States District Court
Southern District of Florida
400 North Miami Avenue
Room 11-2
Miami, Florida 33132
(305) 523-5737

**/**

**/s/Ilona** [1] - 34:10

**1**

**1** [5] - 1:10, 13:12, 13:14, 13:16, 31:23
**100** [1] - 10:2
**10:00** [2] - 25:23, 33:19
**11-2** [2] - 2:24, 34:13
**111** [1] - 2:15
**12** [1] - 16:20
**12(b)(3** [1] - 6:13
**12(b)(3)** [3] - 10:18, 16:6, 33:14
**1252** [1] - 26:4
**1391** [1] - 25:3
**1391(b)(2** [1] - 13:6
**14** [1] - 1:6
**15(d** [3] - 14:5, 18:13, 18:15
**15th** [1] - 1:19
**1983** [2] - 13:10, 13:14
**1st** [1] - 2:15

**2**

**2** [2] - 13:10, 13:13
**20005** [1] - 1:20
**2025** [2] - 1:6, 34:10
**215** [1] - 2:12
**2200** [1] - 2:6
**25-23182** [1] - 3:3
**25-CV-23182-RAR** [1] - 1:2
**26** [1] - 34:10
**2810** [1] - 2:16
**287** [2] - 27:25, 31:18
**287s** [1] - 31:6
**2:35** [1] - 1:7

**3**

**3** [2] - 13:12, 13:14
**300** [1] - 2:19
**305** [2] - 2:25, 34:14
**309** [1] - 2:9
**32301** [1] - 2:13
**33128** [2] - 2:16, 2:25
**33132** [1] - 34:14
**33134** [1] - 2:3
**33152** [1] - 2:6
**33166** [1] - 2:10
**36th** [1] - 2:9
**3:16** [2] - 1:7, 33:22

**4**

**4** [4] - 13:10, 13:13, 13:16, 31:23
**400** [3] - 2:3, 2:24, 34:13
**425** [1] - 1:23
**4343** [1] - 2:2
**4th** [1] - 2:18

**5**

**5** [2] - 13:9, 31:24
**523-5737** [2] - 2:25, 34:14
**5:00** [1] - 24:5

**6**

**6355** [1] - 2:9

**7**

**70** [1] - 16:20
**700** [1] - 1:24
**72nd** [1] - 2:6
**7th** [1] - 1:19

**8**

**804** [1] - 2:12

**9**

**915** [1] - 1:19
**94104** [1] - 1:24
**99** [1] - 2:18

**A**

**a.m** [2] - 25:23, 33:19
**ability** [2] - 12:1, 18:4
**able** [4] - 19:25, 22:18, 25:8, 29:25
**above-entitled** [1] - 34:4
**absent** [1] - 6:6
**absolutely** [2] - 10:25, 30:4
**access** [14] - 14:12, 16:24, 17:1, 17:3, 17:9, 17:17, 18:24, 18:25, 19:1, 26:22, 27:4, 27:8, 32:25
**accessible** [2] - 27:1, 29:17
**accurate** [1] - 34:3
**ACLU** [4] - 10:5, 10:6, 14:4, 25:24
**act** [4] - 12:15, 12:18, 12:23, 13:19
**action** [2] - 12:15, 12:18
**activities** [1] - 32:12
**added** [1] - 13:9
**additional** [4] - 5:13, 15:6, 17:10, 17:23
**address** [4] - 13:24, 18:7, 21:19, 26:4
**addressed** [1] - 11:4
**addressing** [1] - 18:3
**adjudicate** [1] - 21:22
**administration** [1] - 31:17
**admitted** [1] - 17:24
**advance** [1] - 30:2
**advanced** [1] - 26:5
**ADVOCACY** [2] - 2:5, 2:8
**affidavit** [4] - 4:12, 24:11, 31:11, 33:1
**affidavits** [14] - 4:4, 4:8, 5:8, 6:5, 12:11, 13:18, 14:6, 15:7, 18:16, 22:12, 23:6, 24:11, 25:18, 33:4
**afternoon** [8] - 3:2, 3:3, 3:13, 3:15, 3:16, 3:19, 3:21, 3:24
**ago** [1] - 14:12
**agree** [5] - 4:25, 5:3, 13:5, 20:10, 31:24
**agreed** [2] - 23:14, 33:8
**agreements** [1] - 31:5
**ahead** [3] - 5:6, 16:10, 30:19
**al** [4] - 1:5, 1:9, 3:4
**Alcatraz** [7] - 22:15, 22:17, 22:18, 22:24, 27:5, 27:23, 31:14
**allegations** [1] - 20:11
**alleged** [2] - 7:22, 31:10
**Alligator** [7] - 22:15, 22:17, 22:18, 22:23, 27:5, 27:23, 31:14
**allow** [3] - 19:21, 25:2, 30:9
**almost** [3] - 9:15, 16:20, 21:25
**alternatives** [1] - 29:1
**amended** [1] - 18:13
**Amendment** [10] - 6:15, 14:7, 14:18, 21:23, 26:7, 26:8, 29:2, 31:24, 32:1
**amendment** [2] - 18:10, 20:16
**American** [1] - 3:8
**AMERICAN** [2] - 1:18, 1:22
**AMERICANS** [2] - 2:5, 2:8
**Amy** [1] - 3:11
**AMY** [1] - 2:2
**ANGELA** [1] - 2:14
**ANGELICA** [1] - 2:14
**anomalous** [1] - 27:5
**answer** [8] - 10:24, 11:1, 12:12, 12:21, 13:1, 13:2, 13:25, 25:10
**APA** [2] - 27:24, 28:24
**apologies** [1] - 13:13
**apologize** [2] - 10:4, 16:11
**APPEARANCES** [1] - 1:15
**Appearances** [1] - 2:1
**appearances** [1] - 3:5
**applicable** [3] - 7:9, 18:20, 28:10
**applies** [1] - 30:15
**apply** [1] - 6:20
**appreciate** [1] - 8:20
**appropriate** [1] - 8:12
**approval** [1] - 30:10
**argue** [4] - 8:11, 18:2, 18:25, 19:21
**arguing** [2] - 17:21, 29:16
**argument** [16] - 4:18, 5:20, 6:16, 6:25, 10:20, 11:20, 17:23, 20:8, 21:14, 21:20, 22:4, 22:21, 24:10, 24:23, 25:18, 25:23
**arguments** [21] - 4:10, 4:15, 6:22, 7:14, 9:12, 9:19, 14:1, 16:16, 16:19, 16:20, 17:8, 17:14, 17:25, 18:3, 20:4, 20:7, 22:11, 26:3, 28:8, 33:6, 33:7
**arise** [1] - 4:11
**arrive** [1] - 30:19
**aside** [1] - 30:24
**aspect** [1] - 18:6
**assisting** [1] - 15:14
**assume** [1] - 21:2
**assure** [1] - 19:4
**ATTORNEY** [1] - 2:18
**attorney** [2] - 16:24, 27:4
**Attorney's** [1] - 3:22
**ATTORNEY'S** [1] - 2:14
**attorneys** [3] - 17:17, 19:18, 30:9
**attuned** [1] - 14:19
**audio** [4] - 17:10, 29:22, 29:24, 30:2
**August** [2] - 1:6, 34:10
**authorities** [3] - 31:9, 31:20, 32:15
**available** [3] - 29:7, 29:24, 33:18
**Avenue** [3] - 2:6, 2:24, 34:13
**aware** [3] - 10:17, 22:14, 25:24

**B**

**b)(2)** [1] - 25:4
**background** [1] - 28:3
**bag** [2] - 10:14, 11:11
**ballgame** [1] - 31:24
**ban** [5] - 14:8, 14:9, 14:11, 14:13, 18:24
**based** [2] - 25:18, 33:7
**become** [1] - 14:18
**BEFORE** [1] - 1:13
**beforehand** [1] - 25:11
**began** [2] - 14:8
**begin** [2] - 3:5, 26:1
**beginning** [3] - 3:14, 6:17,

25:24
**behalf** [8] - 1:4, 3:5, 3:8, 3:17, 3:20, 3:22, 4:23, 5:18
**behind** [1] - 3:25
**belong** [1] - 7:24
**best** [4] - 29:13, 29:15, 30:11, 32:7
**better** [5] - 9:18, 13:17, 14:22, 31:10, 32:5
**between** [7] - 6:10, 15:7, 21:6, 27:22, 31:8, 31:12, 32:14
**big** [2] - 14:24, 22:10
**bit** [8] - 4:16, 5:14, 6:23, 15:15, 18:14, 19:2, 25:5, 26:16
**blessed** [1] - 29:19
**bond** [20] - 14:19, 21:7, 21:9, 21:15, 21:19, 21:23, 22:3, 22:7, 22:16, 22:18, 22:22, 22:24, 23:1, 23:15, 24:1, 24:8, 24:18, 24:19, 32:2, 33:5
**BORREGO** [1] - 1:4
**BOWEN** [1] - 2:11
**Bowen** [1] - 3:17
**brief** [2] - 7:18, 20:4
**briefed** [1] - 20:7
**briefing** [1] - 18:6
**briefly** [3] - 6:12, 14:3, 18:7
**bring** [6] - 27:25, 30:9, 30:15, 32:6, 32:10, 33:12
**bringing** [2] - 4:14, 24:25
**broadcast** [1] - 29:17
**broadcasting** [1] - 29:23
**broader** [1] - 19:12
**brought** [6] - 6:21, 7:22, 7:23, 10:12, 11:14
**burden** [1] - 4:18
**BY** [1] - 2:20

## C

**C.M** [2] - 1:4, 3:4
**cabined** [1] - 12:21
**California** [2] - 1:23, 1:24
**call-in** [1] - 29:16
**cannot** [6] - 7:22, 10:12, 11:10, 19:8, 22:7, 25:7
**care** [1] - 5:23
**case** [16] - 4:8, 6:21, 8:2, 8:5, 8:10, 8:18, 9:25, 15:5, 15:22, 16:8, 20:22, 21:18, 21:20, 21:21, 24:17, 29:15
**Case** [1] - 3:3
**CASE** [1] - 1:2
**cases** [4] - 7:7, 21:8, 21:9, 27:10
**caution** [2] - 6:6, 6:9
**cautious** [1] - 18:11
**cell** [1] - 30:9
**certain** [1] - 21:8
**certainly** [10] - 9:17, 11:22, 11:25, 16:19, 17:13, 17:22, 18:8, 23:10, 25:7, 28:22
**certify** [1] - 34:2
**cessation** [2] - 26:20, 27:13
**chance** [1] - 18:1
**change** [3] - 20:12, 22:5, 33:4
**changed** [5] - 15:8, 18:19, 18:23, 26:19, 27:13
**changes** [6] - 6:7, 15:3, 23:7, 24:17, 25:20, 28:13
**changing** [1] - 17:2
**characterization** [1] - 14:9
**Chaves** [1] - 3:11
**CHAVEZ** [1] - 2:7
**check** [1] - 30:18
**Cho** [10] - 3:7, 4:23, 9:8, 10:2, 10:7, 12:13, 22:9, 24:16, 26:13, 33:10
**CHO** [17] - 1:17, 3:7, 5:3, 10:22, 12:5, 12:25, 22:13, 23:3, 23:17, 26:14, 26:16, 28:17, 28:20, 29:6, 30:3, 33:16, 33:20
**cho** [1] - 32:12
**Cho's** [1] - 24:7
**CHRISTINA** [1] - 2:4
**Christina** [1] - 3:11
**circumstances** [1] - 18:18
**cited** [1] - 7:7
**civil** [1] - 29:20
**Civil** [1] - 3:8
**CIVIL** [2] - 1:18, 1:22
**claim** [9] - 13:7, 14:18, 21:23, 22:1, 22:14, 22:23, 27:24, 27:25, 28:25
**claims** [4] - 6:15, 14:7, 25:6, 26:7
**clarification** [1] - 32:3
**clarifies** [1] - 23:18
**clarify** [2] - 23:20, 24:19
**clean** [2] - 16:7, 25:17
**clear** [4] - 16:17, 16:21, 18:18, 26:23
**close** [2] - 7:20, 23:8
**closed** [1] - 6:4
**co** [1] - 3:10
**co-counsel** [1] - 3:10
**colleagues** [1] - 33:15
**colloquy** [1] - 27:3
**combing** [1] - 25:4
**comfortable** [1] - 16:2
**coming** [4] - 19:18, 20:22, 32:11, 33:5
**committed** [1] - 13:19
**committee** [1] - 29:19
**communication** [2] - 31:8, 31:12
**communications** [1] - 31:11
**complaint** [19] - 13:15, 14:5, 15:24, 17:2, 17:4, 17:11, 18:13, 18:15, 18:23, 19:7, 19:9, 19:15, 20:12, 20:16, 26:17, 26:18, 26:21, 27:12
**complete** [1] - 33:2
**component** [2] - 13:15, 15:5
**computers** [1] - 30:10
**concern** [5] - 4:24, 11:16, 19:18, 20:9, 31:4
**concerned** [2] - 20:13, 32:17
**concerns** [7] - 9:17, 19:16, 23:4, 26:12, 28:16, 30:6, 30:25
**conclude** [3] - 24:25, 26:9, 30:7
**conditional** [1] - 9:16
**CONFERENCE** [1] - 1:12
**conference** [3] - 3:3, 3:25, 8:1
**Conference** [2] - 29:13, 29:19
**confidential** [3] - 26:25, 27:2, 27:9
**confidentiality** [5] - 14:16, 18:21, 19:16, 19:17, 27:18
**confirm** [4] - 4:6, 4:22, 5:12, 8:21
**connected** [1] - 19:11
**consent** [10] - 8:2, 8:15, 9:1, 9:16, 9:22, 10:16, 10:17, 11:15, 12:2, 33:12
**consenting** [1] - 10:21
**considered** [1] - 10:23
**constitutional** [2] - 13:11, 13:14
**continue** [3] - 16:5, 25:6, 33:2
**continued** [1] - 2:1
**continuing** [1] - 16:2
**contractual** [1] - 27:25
**convenience** [1] - 8:16
**Corene** [1] - 3:10
**CORENE** [1] - 1:21
**correct** [7] - 9:3, 9:6, 18:22, 21:16, 22:9, 22:13, 23:3
**correctly** [1] - 18:10
**counsel** [3] - 3:10, 5:12, 17:3
**count** [2] - 13:9, 31:25
**Count** [2] - 13:9, 31:24
**counterparts** [1] - 10:15
**Counts** [1] - 31:23
**counts** [17] - 7:21, 7:24, 8:6, 8:12, 8:13, 8:14, 8:18, 8:25, 9:22, 10:12, 10:13, 11:10, 11:14, 11:23, 13:11, 28:2, 31:24
**COUNTY** [2] - 2:14, 2:14
**couple** [2] - 4:19, 18:8
**course** [7] - 12:6, 24:10, 26:3, 26:15, 26:20, 28:7, 28:21
**court** [3] - 21:22, 22:20, 31:7
**Court** [25] - 2:22, 2:23, 3:1, 7:5, 7:14, 8:6, 8:24, 11:5, 15:20, 16:21, 16:24, 17:13, 18:8, 19:25, 23:10, 25:3, 25:7, 25:21, 26:24, 29:6, 31:9, 33:1, 33:22, 34:11, 34:12
**COURT** [39] - 1:1, 3:2, 3:13, 3:19, 3:24, 5:5, 5:17, 5:23, 8:20, 9:5, 9:8, 10:1, 10:5, 10:25, 12:6, 13:3, 16:12, 18:7, 21:1, 21:12, 22:25, 23:4, 23:22, 24:4, 24:14, 24:16, 26:15, 27:15, 28:18, 29:5, 29:12, 30:4, 30:13, 30:22, 31:2, 32:20, 32:23, 33:17, 33:21
**Court's** [3] - 25:25, 26:10, 31:5
**courtroom** [1] - 20:23
**covered** [1] - 26:16
**CRD** [1] - 30:17
**CRR** [2] - 2:21, 34:11
**crucial** [1] - 13:25
**crystallize** [1] - 16:9
**crystallized** [1] - 6:23
**cure** [1] - 22:25

## D

**D.C** [1] - 24:12
**DADE** [2] - 2:14, 2:14
**DATE** [1] - 34:10
**days** [1] - 17:7
**DC** [1] - 1:20
**deal** [1] - 24:21
**dealing** [1] - 31:25
**deals** [1] - 12:8
**decided** [1] - 8:19
**declarations** [2] - 16:20, 16:21
**deep** [1] - 6:19
**defendant** [1] - 30:6
**Defendants** [1] - 1:10
**defendants** [30] - 3:14, 3:20, 3:23, 5:7, 5:19, 6:17, 7:19, 8:2, 8:7, 9:14, 11:13, 12:9, 12:17, 12:19, 12:23,

13:5, 13:9, 13:18, 16:14, 16:25, 19:3, 21:1, 23:20, 25:2, 26:5, 27:7, 28:23, 31:7, 32:4
**DEFENDANTS** [3] - 2:11, 2:14, 2:17
**defendants'** [3] - 8:4, 8:10, 27:13
**defense** [1] - 30:5
**defining** [1] - 14:15
**delay** [2] - 27:9, 28:6
**delayed** [1] - 18:25
**delays** [1] - 14:12
**denial** [2] - 27:9, 28:7
**denied** [1] - 19:1
**Department** [1] - 1:9
**DeSantis** [2] - 2:11, 3:17
**described** [1] - 4:24
**designed** [1] - 16:18
**detainees** [1] - 23:18
**detention** [4] - 22:19, 27:6, 27:22, 28:22
**determination** [7] - 14:19, 21:19, 21:23, 22:7, 24:1, 24:8, 32:2
**determinations** [4] - 15:18, 23:1, 23:15, 24:20
**determine** [1] - 15:11
**developed** [2] - 6:18, 27:17
**developing** [2] - 14:6, 32:9
**difference** [2] - 14:24, 22:10
**different** [5] - 5:20, 7:12, 14:18, 16:22, 32:1
**direct** [1] - 12:12
**direction** [1] - 11:22
**directives** [1] - 31:16
**directly** [1] - 17:16
**disagree** [1] - 7:8
**disconnect** [1] - 25:5
**disconnected** [1] - 19:9
**discuss** [1] - 24:9
**discussing** [1] - 21:5
**dispute** [4] - 8:22, 16:22, 18:14, 22:3
**disputed** [1] - 17:18
**disputing** [2] - 17:5, 23:14
**distinct** [1] - 20:22
**DISTRICT** [3] - 1:1, 1:1, 1:13
**District** [25] - 2:23, 2:23, 7:23, 7:25, 8:3, 8:5, 8:11, 8:12, 8:14, 8:16, 8:17, 9:1, 9:2, 9:23, 10:3, 10:13, 11:15, 11:24, 12:16, 13:8, 13:20, 16:17, 32:16, 34:12, 34:12
**district** [13] - 6:22, 7:22, 8:17, 8:19, 8:25, 9:11, 10:9, 10:12, 12:19, 12:24, 25:7, 32:13
**dive** [1] - 6:19
**DIVISION** [1] - 1:2
**docket** [2] - 6:8, 29:25
**document** [2] - 19:18, 27:18
**documents** [4] - 6:2, 11:8, 23:9, 27:2
**done** [5] - 20:5, 26:1, 27:23, 32:13
**door** [2] - 19:12, 20:23
**down** [3] - 5:20, 11:23, 15:22
**draft** [1] - 28:22
**drawn** [1] - 25:16
**drawn-out** [1] - 25:16
**due** [3] - 22:1, 22:14, 22:22

## E

**E.R** [1] - 1:4
**earth** [1] - 6:7
**earth-shattering** [1] - 6:7
**easily** [1] - 29:1
**economy** [1] - 15:21
**either** [1] - 18:4
**eleventh** [1] - 20:11
**emphasize** [3] - 24:22, 24:24, 25:12
**employ** [1] - 27:23
**end** [5] - 10:11, 22:5, 30:22, 31:3, 33:3
**energy** [1] - 25:13
**entertain** [2] - 19:11, 20:3
**entire** [2] - 8:15, 8:18
**entitled** [1] - 34:4
**equation** [1] - 22:5
**equitable** [1] - 13:11
**especially** [3] - 10:18, 19:14, 32:10
**essence** [2] - 16:4, 25:25
**essentially** [3] - 10:14, 13:18, 29:22
**establish** [1] - 4:15
**et** [4] - 1:5, 1:9, 3:4
**Eunice** [1] - 3:7
**EUNICE** [1] - 1:17
**events** [1] - 13:6
**evidence** [6] - 6:8, 11:8, 16:19, 17:8, 17:15, 18:3
**evidentiary** [2] - 4:11, 33:8
**evolved** [3] - 14:7, 14:8, 14:23
**Ex** [1] - 13:11
**Ex-Parte** [1] - 13:11
**example** [3] - 14:14, 18:21, 29:8
**exchange** [1] - 27:2
**excuse** [1] - 13:13
**Executive** [1] - 3:18
**exhibit** [1] - 5:7
**expect** [1] - 5:11
**expectation** [2] - 4:1, 15:15
**expectations** [3] - 4:22, 26:10, 32:24
**expected** [1] - 26:19
**expecting** [1] - 25:15
**explain** [3] - 19:25, 25:1, 32:8
**expressed** [1] - 9:18
**extent** [8] - 17:21, 18:14, 19:3, 20:6, 21:1, 28:10, 31:7, 32:3
**eyes** [1] - 15:2

## F

**facilities** [3] - 22:20, 27:22, 31:20
**facility** [10] - 14:17, 23:1, 23:2, 23:15, 23:21, 24:21, 26:22, 27:7, 29:1, 31:17
**fact** [3] - 17:5, 23:14, 27:11
**facts** [3] - 16:16, 20:17, 26:19
**fair** [4] - 5:15, 5:16, 20:5, 20:10
**false** [1] - 15:19
**families** [2] - 29:8, 29:15
**far** [2] - 6:3, 31:15
**federal** [22] - 3:20, 3:23, 5:6, 5:11, 5:18, 6:17, 7:19, 8:1, 8:4, 8:7, 8:9, 9:14, 16:25, 19:3, 21:1, 26:5, 31:8, 31:13, 31:16, 31:19, 31:25, 32:14
**FEDERAL** [1] - 2:17
**federal-focus** [1] - 31:25
**feds** [1] - 13:14
**feelings** [1] - 23:12
**felt** [1] - 16:2
**FERNANDEZ** [1] - 1:4
**few** [3] - 7:10, 7:18, 14:12
**field** [1] - 31:13
**Fifth** [5] - 6:15, 14:17, 21:23, 26:7, 32:1
**figure** [1] - 28:5
**file** [7] - 17:7, 22:18, 23:23, 24:5, 30:11, 30:13, 30:16
**filed** [3] - 4:3, 17:1, 21:9
**filing** [9] - 6:10, 17:4, 21:6, 22:11, 23:6, 24:10, 26:20, 30:24
**filings** [2] - 6:5, 23:9
**fine** [5] - 10:25, 17:18, 17:22, 19:15
**fine-tuned** [1] - 19:15
**First** [5] - 6:14, 14:7, 26:7, 29:2, 31:23
**first** [6] - 6:23, 7:19, 11:2,
15:1, 15:16, 22:8
**five** [1] - 17:7
**fixed** [1] - 28:15
**Flagler** [1] - 2:2
**float** [2] - 12:3, 15:9
**Floor** [1] - 1:19
**FLORIDA** [1] - 1:1
**Florida** [21] - 1:4, 2:3, 2:6, 2:10, 2:13, 2:16, 2:19, 2:23, 2:25, 7:23, 7:25, 8:3, 8:11, 8:13, 8:16, 12:16, 13:8, 13:20, 16:17, 34:12, 34:14
**flow** [1] - 4:11
**flowing** [1] - 7:17
**focus** [6] - 4:10, 4:17, 19:19, 20:17, 25:19, 31:25
**focused** [1] - 6:13
**focusing** [2] - 14:16, 33:6
**folks** [2] - 4:14, 23:14
**FOR** [7] - 1:17, 2:2, 2:5, 2:8, 2:11, 2:14, 2:17
**foregoing** [1] - 34:2
**foremost** [1] - 15:16
**foresee** [2] - 4:13, 24:2
**forms** [2] - 16:22, 26:24
**forward** [3] - 17:14, 20:21, 25:22
**FOUNDATION** [2] - 1:18, 1:23
**frame** [1] - 20:22
**framed** [2] - 19:22, 28:2
**frames** [1] - 19:7
**framing** [1] - 28:12
**Francisco** [1] - 1:24
**frankly** [4] - 16:15, 23:13, 24:17, 25:16
**front** [1] - 9:23
**full** [1] - 8:2
**fully** [1] - 10:8
**fulsome** [3] - 4:7, 5:9, 24:19
**fulsomely** [1] - 6:18
**functionally** [1] - 14:11

## G

**game** [1] - 15:5
**gateway** [3] - 4:20, 25:14, 26:6
**given** [1] - 23:23
**glad** [3] - 5:23, 13:1, 29:12
**goal** [2] - 11:3, 25:25
**goalpost** [2] - 17:2, 19:4
**goalposts** [1] - 27:12
**Godshall** [1] - 3:11
**GODSHALL** [1] - 2:2
**government** [1] - 23:18
**grant** [1] - 30:14
**granted** [11] - 19:23, 21:9, 22:16, 22:22, 22:24, 24:8,

26:23, 27:1, 27:4, 27:6, 27:7
**granting** [1] - 19:8
**great** [3] - 5:23, 30:18, 33:21
**ground** [6] - 14:6, 15:3, 18:19, 27:17, 31:14, 31:22
**guess** [1] - 22:2
**guided** [1] - 20:15
**Guthrie** [1] - 3:18
**GUTHRIE** [1] - 2:12
**guys** [2] - 20:4, 21:2

## H

**handle** [8] - 4:1, 4:16, 4:19, 6:20, 7:14, 13:17, 20:6, 25:3
**handled** [1] - 8:15
**happy** [1] - 5:10
**head** [1] - 7:17
**hear** [8] - 5:10, 10:5, 20:8, 21:13, 22:2, 24:23, 25:23, 28:11
**heard** [1] - 10:15
**hearing** [21] - 4:2, 4:24, 5:24, 6:4, 6:14, 11:19, 14:3, 17:7, 17:15, 17:20, 17:22, 18:2, 18:3, 22:16, 25:16, 25:19, 26:1, 29:7, 30:2, 32:11, 34:7
**hearings** [6] - 21:8, 21:10, 21:11, 21:15, 22:3, 22:19
**held** [1] - 22:3
**help** [8] - 20:14, 23:5, 23:10, 26:10, 31:9, 32:5, 32:15
**hereby** [1] - 34:2
**high** [1] - 31:18
**hold** [2] - 10:1, 15:22
**Homeland** [1] - 1:9
**honest** [1] - 10:22
**Honor** [32] - 3:7, 3:16, 3:21, 5:3, 5:16, 5:22, 8:9, 8:13, 8:16, 9:4, 9:6, 9:24, 10:4, 10:22, 12:5, 12:25, 16:11, 20:25, 21:4, 21:5, 22:13, 23:3, 24:3, 24:13, 26:14, 28:17, 28:20, 30:3, 30:8, 31:1, 33:16, 33:20
**HONORABLE** [1] - 1:13
**Honorable** [1] - 2:22
**hope** [2] - 15:19, 16:1
**hopefully** [1] - 15:14
**hotline** [1] - 17:11
**hour** [1] - 20:11
**housekeeping** [3] - 30:6, 30:23, 33:18
**hundred** [1] - 19:20
**HYUNHYE** [1] - 1:17

## I

**ICE** [2] - 27:22, 28:21
**II** [2] - 1:13, 2:22
**ILONA** [2] - 2:21, 34:11
**imagine** [2] - 8:23, 24:6
**immediately** [1] - 25:25
**IMMIGRANT** [2] - 2:5, 2:8
**immigration** [5] - 21:18, 21:22, 22:6, 22:20, 27:6
**impact** [2] - 25:6, 32:6
**implement** [1] - 29:1
**importance** [1] - 29:20
**important** [4] - 13:3, 15:18, 18:8, 31:6
**importantly** [1] - 11:9
**impression** [1] - 5:25
**improper** [1] - 16:15
**includes** [1] - 26:3
**including** [1] - 4:3
**indeed** [1] - 7:24
**indicating** [1] - 23:24
**indicia** [1] - 28:23
**indiscernible** [1] - 17:10
**individually** [1] - 13:10
**individuals** [2] - 22:16, 23:25
**information** [1] - 21:25
**initial** [3] - 17:16, 17:17, 28:12
**initiate** [1] - 22:7
**inject** [1] - 16:15
**injected** [1] - 15:8
**injunction** [5] - 7:14, 16:23, 17:5, 18:6, 19:6
**injunctive** [10] - 4:18, 6:14, 7:1, 7:6, 7:15, 11:5, 14:25, 15:12, 19:8, 20:1
**insist** [1] - 16:6
**interest** [1] - 28:8
**interplay** [2] - 27:21, 32:5
**interplays** [1] - 32:14
**interposed** [1] - 13:15
**introduce** [2] - 16:18, 16:19
**introduced** [2] - 16:20, 17:15
**ISABEL** [1] - 2:4
**issue** [15] - 6:13, 7:15, 7:21, 8:8, 11:4, 12:10, 13:25, 19:7, 22:12, 24:2, 24:18, 24:24, 25:14, 26:6, 30:7
**issues** [14] - 4:20, 5:21, 7:2, 15:10, 24:17, 25:3, 25:20, 26:2, 26:12, 27:18, 30:23, 31:18, 32:1, 33:5

## J

**J.M.C** [1] - 1:4
**JOHN** [1] - 2:11
**join** [1] - 29:9
**joined** [1] - 3:9
**judge** [2] - 8:19, 15:21
**JUDGE** [1] - 1:13
**Judge** [2] - 11:15, 14:10
**Judicial** [2] - 29:13, 29:18
**judicial** [1] - 15:20
**jurisdiction** [1] - 22:21
**jurisdictional** [1] - 26:3
**JUSTICE** [2] - 2:5, 2:8

## K

**keep** [1] - 25:4
**keeping** [1] - 16:8
**Kendrick** [1] - 3:10
**KENDRICK** [1] - 1:21
**Kevin** [1] - 3:18
**KEVIN** [1] - 2:11
**kind** [10] - 5:20, 5:24, 11:23, 12:2, 12:22, 13:11, 20:19, 27:17, 28:5, 28:13
**KRISTI** [1] - 1:8
**Krome** [1] - 31:21
**KYLE** [1] - 1:21
**Kyle** [1] - 3:10

## L

**lack** [1] - 14:16
**language** [2] - 10:17, 28:19
**laptops** [1] - 30:15
**LaRocca** [2] - 2:4, 3:12
**last** [4] - 12:7, 14:2, 16:14, 31:3
**learned** [1] - 21:7
**least** [5] - 4:9, 7:1, 11:3, 11:20, 15:9
**leave** [3] - 14:20, 23:23, 33:10
**legal** [7] - 4:10, 4:18, 17:11, 18:21, 19:18, 27:18, 33:7
**level** [1] - 31:18
**levels** [1] - 31:8
**LIBERTIES** [2] - 1:18, 1:22
**Liberties** [1] - 3:8
**likelihood** [1] - 25:8
**limitations** [1] - 34:8
**limited** [3] - 17:3, 17:15, 21:17
**line** [6] - 5:20, 29:16, 29:18, 29:24, 30:2, 32:24
**lines** [1] - 19:17
**listen** [3] - 29:21, 30:1
**lists** [2] - 5:7
**litigate** [2] - 5:9, 8:2
**litigated** [3] - 8:5, 8:10, 16:3
**LITIGATION** [2] - 2:5, 2:8
**live** [4] - 4:13, 12:21, 29:16, 29:22
**LLP** [1] - 2:11
**local** [3] - 24:12, 29:10, 30:8
**located** [1] - 22:19
**location** [1] - 23:18
**logistical** [1] - 29:3
**look** [7] - 7:20, 15:4, 15:19, 24:6, 25:22, 28:9, 33:1
**looking** [4] - 4:9, 13:17, 15:15, 27:20
**Lupowitz** [1] - 34:10
**LUPOWITZ** [2] - 2:21, 34:11

## M

**mail** [2] - 17:11, 18:21
**main** [2] - 3:25, 9:13
**maintain** [3] - 7:3, 10:8, 14:13
**maintained** [2] - 11:10, 21:14
**maintaining** [1] - 9:16
**major** [1] - 24:24
**MARISOL** [1] - 1:22
**Marisol** [1] - 3:10
**MARLENE** [1] - 2:17
**Marlene** [1] - 3:21
**marshals** [2] - 30:14, 30:18
**masters** [1] - 15:23
**material** [3] - 15:3, 15:7, 32:6
**materially** [2] - 20:12, 33:3
**matter** [4] - 3:4, 8:15, 8:16, 34:4
**mean** [6] - 19:5, 19:6, 21:12, 28:5, 28:6, 31:10
**meaning** [1] - 19:13
**meet** [1] - 29:1
**members** [2] - 29:7, 29:8
**memorandum** [1] - 21:7
**memory** [1] - 18:22
**mention** [1] - 16:13
**mentioned** [1] - 19:16
**merits** [3] - 7:5, 25:8, 25:9
**Meros** [10] - 3:16, 3:19, 5:12, 9:3, 10:1, 16:10, 18:10, 30:6, 32:10, 32:17
**MEROS** [13] - 2:11, 3:16, 5:16, 9:4, 9:6, 9:24, 10:4, 16:11, 16:13, 20:25, 30:8, 30:21, 32:19
**met** [1] - 15:11
**metamorphosized** [1] - 19:1
**method** [1] - 29:19
**MIAMI** [3] - 1:2, 2:14, 2:14
**Miami** [12] - 1:4, 2:3, 2:6, 2:10, 2:16, 2:19, 2:24, 2:25,

3:22, 31:13, 34:13, 34:14
**MIAMI-DADE** [2] - 2:14, 2:14
**MICHAEL** [1] - 1:4
**Middle** [15] - 7:23, 8:3, 8:5, 8:11, 8:12, 8:15, 8:17, 9:1, 9:2, 9:23, 10:3, 10:13, 11:16, 11:24, 32:16
**might** [4] - 12:1, 18:20, 24:19, 30:23
**mind** [2] - 20:20, 21:6
**mixed** [2] - 10:14, 11:11
**modicum** [1] - 27:8
**moment** [3] - 4:21, 13:1, 15:25
**Monday** [38] - 4:5, 4:10, 4:17, 4:22, 4:24, 6:1, 6:4, 6:11, 6:14, 7:18, 9:18, 11:2, 11:18, 12:14, 12:21, 12:22, 13:2, 14:2, 15:4, 15:14, 19:21, 19:25, 20:8, 20:21, 21:24, 24:9, 25:13, 25:22, 26:11, 28:14, 30:2, 30:18, 31:7, 32:4, 32:11, 33:2, 33:9, 33:19
**Monday's** [1] - 4:2
**Monroe** [1] - 2:12
**morning** [2] - 25:19, 25:23
**most** [2] - 11:9, 22:22
**motion** [9] - 16:23, 17:4, 17:16, 17:17, 18:5, 19:6, 30:11, 30:13, 30:16
**motions** [4] - 21:9, 22:18, 22:24, 32:25
**MOUs** [1] - 31:6
**move** [1] - 13:25
**moving** [2] - 15:16, 20:20
**MR** [12] - 3:16, 5:16, 9:4, 9:6, 9:24, 10:4, 16:11, 16:13, 20:25, 30:8, 30:21, 32:19
**MS** [25] - 3:7, 3:21, 5:3, 5:22, 8:9, 10:22, 12:5, 12:25, 21:4, 22:13, 23:3, 23:17, 24:2, 24:13, 24:15, 26:14, 26:16, 28:17, 28:20, 29:6, 30:3, 31:1, 32:22, 33:16, 33:20
**must** [3] - 8:25, 13:7, 20:15

## N

**named** [5] - 13:10, 21:8, 21:15, 22:4, 22:15
**narrowcast** [1] - 29:18
**narrowed** [1] - 19:13
**narrowly** [1] - 14:15
**NATIONAL** [1] - 1:19
**nature** [3] - 15:17, 28:3, 29:4
**NE** [1] - 2:18
**necessarily** [4] - 12:20, 14:18, 18:20, 27:21
**need** [20] - 4:13, 5:5, 5:13, 5:19, 6:5, 6:9, 7:14, 10:6, 11:16, 12:22, 13:17, 14:22, 15:2, 15:3, 19:25, 25:1, 28:5, 30:11, 32:23, 33:13
**needed** [1] - 17:21
**needs** [3] - 18:12, 23:13, 28:15
**never** [2] - 18:9, 18:23
**new** [14] - 6:1, 16:16, 16:18, 16:20, 16:21, 17:7, 17:8, 17:25, 18:3, 18:5, 20:11
**next** [1] - 6:12
**nexus** [1] - 20:17
**NICHOLAS** [1] - 2:11
**Nick** [1] - 3:16
**NICOLE** [1] - 2:2
**NO** [1] - 1:2
**Noem** [1] - 3:4
**NOEM** [1] - 1:8
**noncompliant** [1] - 28:15
**normally** [1] - 27:23
**North** [2] - 2:24, 34:13
**notably** [1] - 4:20
**noted** [2] - 26:17, 27:8
**nothing** [1] - 10:8
**notice** [1] - 33:18
**notices** [1] - 21:11
**notify** [1] - 25:20
**number** [3] - 11:6, 11:7, 29:21
**NW** [4] - 1:19, 2:6, 2:9, 2:15

## O

**obligations** [1] - 29:2
**obviously** [6] - 4:19, 9:10, 10:15, 17:18, 21:17, 25:5
**occurred** [3] - 13:7, 13:19, 34:7
**occurring** [1] - 12:16
**OF** [1] - 1:1
**office** [2] - 3:17, 31:13
**OFFICE** [2] - 2:15, 2:18
**Office** [1] - 3:22
**offices** [1] - 31:20
**official** [1] - 24:12
**Official** [2] - 2:22, 34:11
**officials** [1] - 31:13
**omission** [3] - 12:15, 12:18, 12:23
**omissions** [2] - 13:7, 32:13
**omitted** [1] - 13:19
**once** [2] - 20:6, 26:1
**one** [9] - 8:19, 11:6, 12:13, 22:15, 24:11, 27:20, 28:16, 30:8
**one's** [1] - 23:13
**ones** [2] - 25:7, 26:5
**ongoing** [3] - 4:5, 21:20, 21:21
**open** [4] - 15:2, 21:18, 22:6, 30:1
**operational** [1] - 31:18
**operative** [5] - 18:12, 19:5, 19:6, 20:15, 23:8
**opinion** [1] - 8:24
**opportunity** [3] - 4:2, 6:19, 21:10
**opposed** [2] - 23:1, 24:21
**opposite** [1] - 7:9
**opposition** [1] - 21:7
**option** [1] - 10:23
**oral** [1] - 20:8
**Order** [1] - 3:1
**order** [3] - 7:11, 30:17, 30:20
**orders** [1] - 31:5
**original** [5] - 7:25, 14:5, 16:23, 18:22, 19:15
**outcome** [2] - 12:1, 33:14
**overarching** [1] - 6:16
**own** [1] - 15:23
**owned** [1] - 14:4

## P

**p.m** [4] - 1:7, 24:5, 33:22
**page** [2] - 5:2, 21:3
**pages** [1] - 16:21
**Pages** [1] - 1:10
**papers** [1] - 14:13
**parameters** [1] - 5:24
**part** [2] - 10:25, 22:22
**Parte** [1] - 13:11
**particular** [1] - 13:1
**parties** [8] - 4:8, 6:6, 16:2, 16:4, 20:15, 21:15, 22:4, 33:8
**past** [1] - 4:2
**PAUL** [1] - 2:7
**Paul** [1] - 3:11
**peace** [1] - 20:20
**penological** [1] - 28:8
**people** [1] - 22:6
**perceived** [1] - 28:1
**percent** [2] - 10:2, 19:20
**perhaps** [6] - 8:6, 15:19, 16:4, 21:15, 24:11, 31:14
**period** [1] - 21:6
**permit** [1] - 18:9
**permitted** [1] - 18:9
**persist** [1] - 27:19
**perspective** [1] - 9:20
**PETER** [1] - 2:11
**phone** [2] - 30:16, 32:25
**phones** [1] - 30:9
**pin** [1] - 11:18
**pivot** [1] - 14:3
**place** [3] - 12:24, 22:8, 24:20
**plaintiff** [2] - 16:15, 22:15
**plaintiffs** [17] - 3:6, 3:9, 4:23, 7:3, 13:23, 14:15, 15:23, 16:22, 17:21, 17:24, 19:24, 21:13, 21:16, 22:21, 23:20, 25:1, 25:12
**Plaintiffs** [1] - 1:6
**PLAINTIFFS** [2] - 1:17, 2:2
**plaintiffs'** [5] - 5:21, 12:8, 21:8, 26:13, 29:8
**plan** [2] - 4:25, 5:4
**planning** [4] - 17:14, 20:20, 29:6, 29:14
**pleadings** [8] - 5:21, 6:18, 9:14, 19:5, 19:6, 21:14, 28:1, 29:9
**pled** [1] - 15:9
**pledging** [1] - 20:15
**point** [13] - 9:9, 10:24, 11:21, 12:15, 12:19, 16:14, 19:24, 24:7, 26:20, 27:11, 27:16, 28:21, 30:23
**pointed** [4] - 14:13, 18:9, 25:24, 27:17
**points** [3] - 18:8, 26:14, 31:12
**policies** [1] - 28:22
**pop** [1] - 25:20
**posit** [1] - 13:21
**position** [9] - 5:11, 6:7, 7:4, 8:4, 8:10, 9:10, 9:24, 17:20, 32:7
**possibilities** [1] - 10:10
**possibility** [4] - 7:21, 7:24, 29:11, 33:11
**possible** [2] - 10:14, 29:9
**posture** [1] - 7:10
**potential** [1] - 21:19
**prejudice** [1] - 23:7
**preliminary** [9] - 6:14, 6:25, 11:5, 16:23, 17:5, 18:5, 19:6, 19:8, 20:1
**preparation** [3] - 4:1, 4:4, 4:5
**prepare** [2] - 23:11, 33:2
**prepared** [4] - 6:24, 13:24, 25:9, 25:12
**preparing** [2] - 12:22, 13:22
**presumably** [1] - 24:10
**presupposing** [1] - 20:2
**prevail** [1] - 20:3
**preview** [1] - 11:3
**primarily** [2] - 4:10, 6:13
**PRISON** [1] - 1:19
**private** [1] - 26:25
**problem** [3] - 21:16, 23:24,

28:11
**problems** [1] - 16:8
**procedural** [1] - 7:10
**procedurally** [1] - 19:23
**proceedings** [4] - 22:7, 29:20, 30:1, 34:3
**process** [3] - 22:1, 22:14, 22:23
**production** [1] - 31:5
**productive** [2] - 14:3, 26:9
**PROJECT** [1] - 1:19
**promulgated** [1] - 28:23
**proper** [2] - 21:22, 32:15
**properly** [1] - 9:10
**proposition** [1] - 7:8
**provide** [2] - 5:7, 12:1
**provided** [3] - 14:17, 23:19, 32:4
**provides** [1] - 31:19
**providing** [2] - 17:1, 17:19
**public** [2] - 29:7, 29:20
**publicly** [1] - 29:17
**purpose** [1] - 3:25
**pursuant** [2] - 29:13, 31:5
**pushed** [1] - 18:4
**put** [4] - 11:18, 25:13, 29:21, 32:24

## Q

**questions** [1] - 7:18
**quick** [1] - 26:14
**quickly** [2] - 30:14, 30:17
**quite** [7] - 4:7, 4:15, 5:14, 16:14, 23:13, 24:17, 25:16

## R

**raised** [4] - 5:21, 6:16, 6:24, 7:4
**RAYMOND** [1] - 2:7
**reach** [1] - 20:7
**read** [2] - 4:16, 12:11
**readily** [1] - 26:25
**reading** [2] - 23:9, 27:15
**ready** [2] - 13:4, 25:1
**readying** [1] - 25:10
**real** [1] - 6:25
**really** [15] - 4:17, 6:4, 6:10, 6:19, 7:18, 12:7, 15:25, 16:1, 16:5, 22:3, 23:13, 24:22, 24:23, 24:24, 31:9
**reason** [3] - 7:2, 8:24, 11:9
**reasonability** [1] - 28:23
**reasonable** [1] - 28:25
**received** [1] - 23:25
**recent** [1] - 4:3
**recessed** [1] - 33:22
**recognize** [1] - 20:4
**recognized** [1] - 16:25
**record** [14] - 4:4, 4:7, 4:9, 4:12, 5:9, 6:3, 11:7, 15:22, 21:11, 23:5, 24:19, 25:4, 25:17, 33:3
**referenced** [2] - 18:16, 28:2
**regard** [1] - 21:25
**regarding** [2] - 26:7, 28:8
**regional** [3] - 31:13, 31:20
**regulations** [1] - 27:22
**relevant** [1] - 31:23
**relief** [34] - 4:19, 6:14, 7:1, 7:6, 7:16, 11:6, 14:15, 14:23, 14:25, 15:4, 15:8, 15:12, 15:17, 16:22, 17:3, 17:6, 18:11, 18:14, 18:19, 19:8, 19:12, 19:23, 20:2, 21:17, 26:19, 26:21, 26:23, 26:24, 27:3, 27:12, 27:14, 28:2, 28:12
**remain** [2] - 8:6, 8:25
**remains** [2] - 9:10, 27:14
**remedies** [1] - 19:13
**reminder** [1] - 33:10
**remiss** [1] - 16:13
**remotely** [1] - 34:9
**replies** [1] - 16:18
**reply** [12] - 4:3, 7:4, 14:14, 15:7, 16:16, 17:7, 18:5, 18:10, 19:14, 20:14, 21:16, 22:4
**REPORTED** [1] - 2:20
**Reporter** [2] - 2:22, 34:11
**reporting** [1] - 34:8
**request** [2] - 21:25, 26:23
**requested** [7] - 15:17, 16:24, 18:12, 18:20, 19:13, 26:21, 27:12
**require** [1] - 5:6
**requires** [1] - 13:20
**requiring** [1] - 10:17
**respect** [6] - 22:14, 26:17, 26:18, 26:23, 26:24, 27:4
**respectfully** [1] - 7:8
**respond** [1] - 18:1
**responses** [1] - 28:8
**responsive** [2] - 9:14, 21:14
**restraining** [1] - 7:11
**result** [1] - 22:17
**review** [2] - 4:4, 6:9
**reviewed** [1] - 31:15
**rise** [1] - 13:7
**RMR** [2] - 2:21, 34:11
**RODOLFO** [1] - 1:13
**Rodolfo** [1] - 2:22
**RODRIGUEZ** [11] - 1:22, 2:17, 3:21, 5:22, 8:9, 21:4, 24:2, 24:13, 24:15, 31:1, 32:22
**Rodriguez** [11] - 3:11, 3:22, 3:24, 5:18, 8:21, 21:3, 23:6, 23:22, 30:22, 32:11, 32:20
**Rodriguez's** [1] - 33:4
**RODRIGUEZ-RUIZ** [1] - 1:22
**Rodriguez-Ruiz** [1] - 3:11
**Ron** [1] - 3:17
**RONALD** [1] - 2:11
**Room** [2] - 2:24, 34:13
**rooms** [1] - 19:17
**Ruiz** [2] - 2:22, 3:11
**RUIZ** [2] - 1:13, 1:22
**rules** [3] - 26:21, 29:13, 30:9
**ruling** [2] - 9:11, 26:1

## S

**San** [1] - 1:24
**satisfied** [1] - 4:19
**saw** [1] - 21:16
**scheduling** [1] - 17:9
**scope** [5] - 14:7, 14:22, 26:6, 26:18, 27:15
**second** [1] - 17:4
**Secretary** [1] - 1:8
**Security** [1] - 1:9
**see** [4] - 24:16, 28:7, 33:15, 33:19
**seeing** [1] - 25:22
**seeking** [3] - 17:6, 17:17, 20:1
**sense** [14] - 6:20, 8:17, 10:11, 10:19, 12:4, 12:22, 14:22, 20:24, 31:8, 32:5, 32:12, 32:15, 32:17, 32:21
**separate** [2] - 20:22, 31:24
**serves** [1] - 15:21
**service** [1] - 17:11
**set** [1] - 4:22
**shared** [1] - 29:25
**shattering** [1] - 6:7
**shifting** [3] - 17:2, 19:4, 20:11
**short** [1] - 33:18
**show** [3] - 11:20, 12:17, 28:25
**Shutts** [1] - 3:17
**SHUTTS** [1] - 2:11
**side** [3] - 10:15, 12:8, 30:6
**sides** [1] - 4:15
**sidestep** [1] - 7:15
**sidestepped** [1] - 7:5
**similarly** [1] - 1:5
**simply** [1] - 16:24
**sit** [3] - 9:15, 28:13, 28:14
**situated** [1] - 1:5
**situation** [3] - 14:6, 27:5, 32:9
**someone** [1] - 24:20
**sorry** [1] - 10:1
**sought** [1] - 16:24
**Southern** [9] - 2:23, 7:25, 8:14, 11:15, 12:16, 13:8, 13:20, 16:17, 34:12
**SOUTHERN** [1] - 1:1
**speaking** [2] - 3:9, 28:18
**specify** [1] - 24:7
**spend** [1] - 7:1
**spent** [2] - 15:21, 16:3
**split** [1] - 11:23
**stage** [1] - 15:4
**stand** [5] - 9:9, 10:21, 22:12, 26:2, 33:11
**standard** [1] - 7:11
**standards** [1] - 28:22
**stands** [3] - 4:9, 4:17, 11:12
**start** [1] - 25:13
**started** [2] - 14:24, 31:4
**starting** [5] - 8:1, 15:16, 16:9, 19:19, 26:13
**state** [25] - 3:14, 5:6, 5:12, 6:17, 7:19, 8:23, 9:14, 12:8, 12:16, 12:18, 12:23, 13:5, 13:8, 13:13, 13:14, 13:18, 16:14, 16:25, 25:2, 30:5, 31:9, 31:17, 31:22, 32:12, 32:14
**states** [1] - 22:20
**STATES** [3] - 1:1, 1:13, 2:18
**States** [3] - 1:9, 2:23, 34:12
**status** [3] - 3:3, 3:25, 8:1
**STATUS** [1] - 1:12
**statute** [2] - 10:17, 13:20
**statutes** [1] - 6:20
**stay** [5] - 9:17, 9:21, 12:7, 15:5, 15:6
**STENOGRAPHICALLY** [1] - 2:20
**still** [9] - 4:5, 8:4, 13:21, 14:10, 14:13, 14:20, 22:6, 27:14, 28:14
**straight** [2] - 5:19, 7:13
**stream** [1] - 29:22
**Street** [7] - 1:19, 1:23, 2:2, 2:9, 2:12, 2:15, 2:18
**strong** [2] - 7:21, 23:12
**struggling** [4] - 12:11, 15:10, 15:15, 27:21
**study** [1] - 6:9
**subject** [1] - 34:8
**submissions** [2] - 4:11, 33:8
**submitted** [1] - 25:18
**subset** [1] - 19:14
**substantial** [1] - 13:6
**success** [1] - 25:8

**suggested** [1] - 23:6
**Suite** [6] - 1:24, 2:3, 2:9, 2:12, 2:16, 2:19
**supplement** [7] - 18:13, 20:16, 21:11, 22:11, 23:19, 23:23, 23:24
**supplemental** [6] - 6:5, 23:5, 26:18, 30:24, 33:1, 33:4
**sur** [2] - 18:5, 20:14
**sur-reply** [2] - 18:5, 20:14
**surmise** [2] - 4:9, 31:15
**surprised** [1] - 6:1

## T

**Tallahassee** [1] - 2:13
**tantamount** [3] - 18:25, 27:9, 28:7
**TEAM** [1] - 2:5
**team** [1] - 26:13
**teams** [1] - 30:5
**technological** [1] - 34:8
**teed** [1] - 16:7
**temporary** [1] - 7:11
**terms** [5] - 9:21, 20:1, 21:22, 23:5, 28:14
**test** [1] - 28:24
**testimony** [2] - 4:14, 5:13
**tethered** [1] - 18:12
**THE** [41] - 1:13, 1:17, 2:2, 3:2, 3:13, 3:19, 3:24, 5:5, 5:17, 5:23, 8:20, 9:5, 9:8, 10:1, 10:5, 10:25, 12:6, 13:3, 16:12, 18:7, 21:1, 21:12, 22:25, 23:4, 23:22, 24:4, 24:14, 24:16, 26:15, 27:15, 28:18, 29:5, 29:12, 30:4, 30:13, 30:22, 31:2, 32:20, 32:23, 33:17, 33:21
**themselves** [2] - 1:4, 15:20
**theory** [2] - 19:1, 25:2
**therefore** [2] - 21:18, 34:7
**thereof** [1] - 14:16
**they've** [4] - 17:6, 17:24, 32:13
**thinking** [1] - 11:10
**thoroughly** [1] - 4:4
**threshold** [2] - 11:4, 15:11
**throughout** [1] - 13:15
**thrust** [1] - 9:13
**tie** [1] - 32:14
**tied** [1] - 17:16
**timeliness** [2] - 27:18, 28:4
**timely** [3] - 27:1, 27:2, 27:8
**today** [9] - 3:9, 4:7, 11:1, 11:3, 12:13, 12:21, 14:10, 21:7, 28:14
**today's** [1] - 3:25
**token** [2] - 14:14, 14:17
**tomorrow** [3] - 13:21, 24:5, 33:3
**took** [1] - 5:23
**total** [4] - 14:8, 14:9, 14:11, 18:24
**toto** [1] - 8:5
**touch** [1] - 6:12
**towards** [1] - 25:13
**transcription** [1] - 34:3
**transfer** [1] - 12:2
**transferred** [2] - 22:17, 22:23
**traveling** [2] - 5:25, 13:6
**try** [1] - 6:20
**trying** [7] - 7:17, 9:12, 10:10, 20:6, 23:8, 25:19, 26:1
**tuned** [1] - 19:15
**turn** [1] - 30:5
**Turner** [1] - 28:24
**tweaked** [1] - 27:16
**two** [2] - 11:7, 26:14
**typically** [1] - 27:6

## U

**U.S** [1] - 3:22
**ultimately** [1] - 11:23
**under** [5] - 5:25, 13:6, 25:3, 26:4, 32:1
**underlying** [2] - 19:9, 20:12
**understood** [2] - 12:25, 24:15
**Union** [1] - 3:8
**UNION** [2] - 1:18, 1:22
**UNITED** [3] - 1:1, 1:13, 2:18
**United** [3] - 1:8, 2:23, 34:12
**universe** [3] - 6:8, 11:8, 23:8
**unless** [1] - 19:5
**unmonitored** [1] - 19:17
**unrestricted** [1] - 17:9
**untethered** [1] - 22:22
**unusual** [1] - 21:24
**up** [10] - 4:3, 16:7, 24:25, 25:20, 27:25, 28:24, 29:21, 32:7, 32:24, 33:12

## V

**Vega** [1] - 31:11
**venue** [35] - 4:20, 6:13, 6:16, 6:20, 6:24, 7:2, 7:4, 7:14, 7:15, 7:20, 8:12, 8:14, 8:18, 9:13, 10:17, 11:4, 11:11, 11:22, 12:10, 13:25, 14:22, 15:1, 15:16, 16:1, 16:6, 20:3, 20:4, 24:24, 25:2, 25:3, 25:10, 26:6, 31:4, 32:6, 32:16
**versus** [2] - 3:4, 11:24
**via** [1] - 34:7
**VIA** [1] - 1:12
**VICIANA** [1] - 2:14
**view** [5] - 7:9, 11:13, 25:16, 27:19, 28:15
**violation** [1] - 27:24
**VIRGIEN** [1] - 1:21
**Virgien** [1] - 3:10
**voluminous** [1] - 24:7
**voluntary** [2] - 26:20, 27:13
**vs** [1] - 1:7

## W

**walk** [2] - 5:20, 9:18
**wants** [3] - 26:12, 29:25, 30:15
**Washington** [1] - 1:20
**watch** [2] - 29:9, 30:1
**week** [1] - 4:3
**weekend** [2] - 13:22, 24:6
**weeks** [1] - 14:12
**wide** [1] - 15:2
**witness** [2] - 4:14, 5:7
**witnesses** [1] - 6:1
**wondering** [1] - 29:10
**words** [3] - 4:13, 5:5, 22:25
**worried** [2] - 19:4, 21:2
**worry** [1] - 19:22
**worth** [1] - 24:18
**written** [1] - 27:2

## Y

**you-all** [2] - 3:13, 33:19
**Young** [1] - 13:11
**yourselves** [1] - 33:17

## Z

**ZOOM** [1] - 1:12
**Zoom** [4] - 3:15, 29:7, 29:23, 34:7